1   DAVID R. SINGH (Bar No. 300840)
2   david.singh@weil.com
    WEIL, GOTSHAL & MANGES LLP
3   201 Redwood Shores Parkway, 4th Floor
    Redwood Shores, CA  94065
4   Telephone: (650) 802-3000
    Facsimile: (650) 802-3100
5

6   (*Additional Counsel Listed on Signature Page*)

7

8   Attorneys for Defendants PARAMOUNT
    SKYDANCE CORPORATION & PLUTO INC.
9

10                  UNITED STATES DISTRICT COURT

11                 CENTRAL DISTRICT OF CALIFORNIA

12                        EASTERN DIVISION

13

| 14 | RAQUEL DIAZ, on behalf of her minor child, B.E., and all others similarly situated, LISA MEDINA, on behalf of her minor child, G.C., and all others similarly situated, OSCAR RODRIGUEZ, on behalf of his minor child, F.R., and all others similarly situated, STACY RADER, on behalf of her minor child, S.C., and KATRINA MONTGOMERY, on behalf of her minor children, J.M., J.A., and J.M., and all others similarly situated, | Case No. 5:25-cv-02945-KK (DTBx) |
|---|---|---|
| | | **PARAMOUNT SKYDANCE CORPORATION AND PLUTO INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| | | Date: February 19, 2026 |
| | | Time: 9:30 a.m. |
| | | Courtroom 3, 3rd Floor |
| | | Honorable Kenly Kiya Kato |
| | Plaintiffs, | |
| | v. | |
| | PARAMOUNT SKYDANCE CORPORATION and PLUTO INC., | |
| | Defendants. | |

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION & MOTION

TO THE COURT AND ALL PARTIES OF RECORD:

PLEASE TAKE NOTICE that on Thursday, February 19, 2026 at 9:30 a.m. or as soon thereafter as the matter may be heard, before the Honorable Kenly Kiya Kato in Courtroom 3, located at 3470 Twelfth Street, Riverside, California 92501-3801, Defendants Paramount Skydance Corp. and Pluto Inc. (together, "Defendants") will and hereby do move to dismiss the Class Action Complaint filed by Raquel Diaz, on behalf of her minor child, B.E., Lisa Medina, on behalf of her minor child, G.C., Oscar Rodriguez, on behalf of his minor child, F.R., Stacy Rader, on behalf of her minor child, S.C., and Katrina Montgomery, on behalf of her minor children, J.M., J.A., and J.M. in this action. Defendants' motion to dismiss is brought pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6).

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the Request for Judicial Notice, and the Declaration of Blake J. Steinberg ("Steinberg Decl."), and all other pleadings and papers on file herein, and such argument and evidence as may be presented to the Court.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on December 31, 2025.

Dated: January 8, 2026                    Respectfully submitted,

WEIL, GOTSHAL & MANGES LLP

By:  */s/ David R. Singh*
        DAVID R. SINGH

Attorney for Defendant Paramount Skydance Corp. & Pluto INC.

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ......................................................................... 1

I.     BACKGROUND.......................................................................... 2

    A.    Plaintiffs' Alleged Use of Pluto TV .................................. 2

    B.    The Alleged Transmissions .............................................. 3

II.    LEGAL STANDARD ................................................................. 3

III.   ARGUMENT ........................................................................... 4

    A.    Plaintiffs Lack Article III Standing ................................. 4

    B.    The Pluto TV Terms of Use and Privacy Policy Bar Plaintiffs' Claims .................................................................................... 6

        1.    Those Plaintiffs With Accounts Failed to Comply With Conditions Precedent and Filed in the Wrong Venue .............. 7

        2.    Those Plaintiffs With Accounts Consented to the Alleged Disclosures.................................................................... 7

    C.    Plaintiffs Fail to State a VPPA Claim ............................. 8

        1.    Plaintiffs Do Not Plausibly Allege Disclosure of PII ............. 8

        2.    Plaintiffs' Allegations are Deficient as to Defendant's Knowledge........................................................................ 9

    D.    Plaintiffs Fail to State a CIPA Claim............................. 10

        1.    Pluto Is a Party to the Alleged Communications ................. 10

        2.    Plaintiffs Can Prove No Underlying Violation of § 631 ........ 11

            a)    Plaintiffs Do Not Plead Use of a Telephone................ 11

            b)    Plaintiff Do Not Plead an Interception in Transit ........ 11

            c)    No Content Was Transmitted to Google..................... 12

        3.    Pluto Did Not Aid and Abet a § 631 Violation ..................... 12

    E.    Plaintiffs Fail to State an ECPA Claim ........................... 13

        1.    No Criminal or Tortious Purpose ......................................... 13

        2.    No "Temporally Distinct" Crime or Tort............................. 14

        3.    Plaintiffs Cannot Rely On COPPA ....................................... 14

F.    Plaintiffs Fail to Allege Common Law or California Constitution Invasion of Privacy Claims ........................... 16

  1.   Plaintiffs Do Not State a Common Law Invasion of Privacy Claim ..................................................... 16

    a)   Intrusion Upon Seclusion ........................... 16

    b)   Public Disclosure of Private Facts ............... 17

  2.   Plaintiffs Do Not State an Invasion of Privacy Claim Under California's Constitution ................................. 17

G.    Plaintiffs Fail to State Any Other Common Law Claims ............... 18

  1.   Plaintiffs Fail to State a Negligence Claim ........................... 18

  2.   Plaintiffs Fail to Allege a Breach of an Implied Contract ...... 19

  3.   Plaintiffs Fail to Allege an Unjust Enrichment Claim ........... 20

H.    Paramount Is Not a Proper Defendant ............................... 20

I.    Plaintiffs' Case Cannot Proceed as Class Action ..................... 21

IV.   CONCLUSION ....................................................... 21

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5    *Aliign Activation Wear v. lululemon*,
6       2020 WL 5790418, (C.D. Cal. Aug. 24, 2020) ...................................................21

7    *Angelo v. Moriarty*,
8       2016 WL 640525 (N.D. Ill. Feb. 18, 2016) ......................................................16

9    *Ashcroft v. Iqbal*,
       556 U.S. 662 (2009) .............................................................................................4

10   *Avecilla v. Live Nation Ent.*,
11      2025 WL 3292617 (C.D. Cal. Nov. 25, 2025) .................................................. 22

12   *B.K. v. Eisenhower Med. Ctr.*,
       721 F. Supp. 3d 1056 (C.D. Cal. 2024) ..............................................................13

13
     *Bell Atl. Corp. v. Twombly*,
14      550 U.S. 544 (2007) ...........................................................................................16

15   *Belluomini v. Citigroup*,
16      2013 WL 3855589 (N.D. Cal. July 24, 2013) .................................................. 18

17   *Beltran v. Doctors Med. Ctr.*,
18      2025 WL 1635467 (E.D. Cal. June 9, 2025) ...............................................20, 21

19   *Bender v. Twilio*,
20      2025 WL 2308484 (N.D. Cal. Aug. 11, 2025) ...................................................6

21   *Benson v. Perris Elementary Sch. Dist.*,
22      2022 WL 3574290 (C.D. Cal. July 1, 2022) .....................................................15

23   *Blanco v. County of Kings*,
24      142 F. Supp. 3d 986 (E.D. Cal. 2015) ............................................................... 18

25   *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*,
       949 F. Supp. 2d 486 (S.D.N.Y. 2013) ................................................................19

26
     *Buckman Co. v. Plaintiffs' Legal Comm.*,
27      531 U.S. 341 (2001) ...........................................................................................15

28

*Burget v. R.A.M. Ent., LLC,*
  2015 WL 4490938 (N.D. Ind. July 23, 2015) .................................................... 21

*Chandra v. Prager Univ. Found.,*
  2025 WL 3049870 (C.D. Cal. Oct. 21, 2025) .................................................... 10

*Cmty. Health Network v. McKenzie,*
  185 N.E.3d 368 (Ind. 2022) ............................................................................... 18

*Cody v. Boscov's,*
  2024 WL 2228973 (C.D. Cal. May 6, 2024) ..................................................... 11

*Darocha v. Wal-Mart Stores,*
  2012 WL 13032900 (D.N.J. May 9, 2012) ........................................................ 17

*Dawidzik v. Tesla,*
  2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) (Kato, J.) ................................ 4, 5

*Doe v. Eating Recovery Ctr.,*
  2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) ............................................ 12, 14

*Doe v. Genesis Health Sys.,*
  2025 WL 1000192 (C.D. Ill. Mar. 18, 2025) .................................................... 20

*Doe v. Kaiser Found. Health Plan,*
  2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ................................................... 15

*Duffy v. Lewis Bros. Bakeries,*
  760 F. Supp. 3d 704 (S.D. Ind. 2024) ............................................................... 20

*Dunahoo v. Hewlett-Packard,*
  2012 WL 178332 (S.D.N.Y. Jan. 20, 2012) ...................................................... 10

*Eichenberger v. ESPN,*
  876 F.3d 979 (9th Cir. 2017) ................................................................... 4, 8, 10

*Fouad v. Qatar,*
  2020 WL 13311759 (C.D. Cal. Apr. 14, 2020), *aff'd*, 846 F. App'x 466
  (9th Cir. 2021) ............................................................................................... 4, 7

*Gabrielli v. Haleon US Inc.,*
  2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) .................................................. 12

*Greenstein v. Noblr Reciprocal Exch.,*
  585 F. Supp. 3d 1220 (N.D. Cal. 2022) ............................................................ 18

*Gutierrez v. Converse*,
   2025 WL 1895315 (9th Cir. July 9, 2025) ........................................................ 11

*Hemy v. Perdue Farms*,
   2011 WL 6002463 (D.N.J. Nov. 30, 2011) ....................................................... 20

*Hernandez-Silva v. Instructure, Inc.*,
   2025 WL 2233210 (C.D. Cal. Aug. 5, 2025), *appeal filed*, No. 25-5438
   (9th Cir. Aug. 27, 2025) .................................................................................. 11

*Hill v. NCAA.*,
   7 Cal. 4th 1, 865 P.2d 633 (1994) .................................................................... 17

*Horton v. Dow Jones & Co.*,
   804 F. App'x 81 (2d Cir. 2020) ........................................................................ 21

*Hughes v. NFL*,
   2025 WL 1720295 (2d Cir. June 20, 2025) ......................................................... 9

*Huynh v. Quora, Inc.*,
   2020 WL 7408230 (N.D. Cal. June 1, 2020) ..................................................... 18

*In re Google, Inc. Priv. Pol'y Litig.*,
   58 F. Supp. 3d 973-74 (N.D. Cal. 2014) ............................................................ 5

*In re Hulu Priv. Litig.*,
   86 F. Supp. 3d 1090 (N.D. Cal. 2015) .............................................................. 10

*iMotorsports, Inc. v. Vanderhall Motor Works*,
   2022 IL App (2d) 210785 ................................................................................ 19

*In re Nickelodeon Consumer Priv. Litig.*,
   827 F.3d 262 (3d Cir. 2016) ............................................................................ 10

*In re iPhone Application Litig.*,
   2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) .................................................. 20

*In re iPhone Application Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012) .............................................................. 5

*In re U.S. Vision Data Breach Litig.*,
   732 F. Supp. 3d 369 (D.N.J. 2024) .................................................................. 19

*In re Uber Tech., Inc., Data Sec. Breach Litig.*,
   2019 WL 6522843 (C.D. Cal. Aug. 19, 2019) .................................................... 6

*In re Zynga Priv. Litig.*,
  750 F.3d 1098 (9th Cir. 2014) ............................................................12

*Irwin v. Jimmy John's Franchise*,
  175 F. Supp. 3d 1064 (C.D. Ill. 2016) ...............................................20

*Jarrett v. Upperline Health*,
  2025 WL 3067545 (S.D. Ind. Aug. 8, 2025) ......................................16

*Katz-Lacabe v. Oracle Am.*,
  668 F. Supp. 3d 928 (N.D. Cal. 2023) ...............................................13

*Khamooshi v. Politico LLC*,
  786 F. Supp. 3d 1174 (N.D. Cal. 2025) ...........................................4, 5

*Kurowski v. Rush Sys. for Health*,
  659 F. Supp. 3d 931 (N.D. Ill. 2023)..................................................16

*Kurowski v. Rush Sys. for Health*,
  683 F. Supp. 3d 836 (N.D. Ill. 2023)..................................................17

*Lakes v. Ubisoft*,
  777 F. Supp. 3d 1047 (N.D. Cal. 2025), *appeal filed*, No. 25-2857 (9th
  Cir. May 2, 2025).........................................................................8, 14

*Lax v. City of Atlantic City*,
  2019 WL 7207472 (D.N.J. Dec. 27, 2019) ........................................18

*Licea v. Vitacost.com*,
  683 F. Supp. 3d 1118 (S.D. Cal. 2023) ..............................................10

*Lipeles v. United Airlines*,
  2024 WL 891792 (C.D. Cal. Jan. 9, 2024) (Kato, J.)...........................7

*Low v. LinkedIn*,
  900 F. Supp. 2d 1010 (N.D. Cal. 2012)...............................................18

*Martin v. Meredith Corp.*,
  657 F. Supp. 3d 277 (S.D.N.Y. 2023) ..................................................9

*Martinez v. D2C, LLC*,
  2024 WL 4367406 (S.D. Fla. Oct. 1, 2024) ..........................................9

*McDonald v. Kiloo ApS*,
  385 F. Supp. 3d 1022 (N.D. Cal. 2019)...............................................17

*Mikulsky v. Bloomingdale's*,
   713 F. Supp. 3d 833 (S.D. Cal. 2024) ................................................ 12

*Mount v. PulsePoint*,
   2016 WL 5080131 (S.D.N.Y. Aug. 17, 2016), *aff'd*, 684 F. App'x 32
   (2d Cir. 2017)......................................................................................... 20

*N.Z. v. Fenix Int'l*,
   2025 WL 3627591 (C.D. Cal. Dec. 12, 2025)...................................... 8

*Nabozny v. Optio Sols. LLC*,
   84 F.4th 731 (7th Cir. 2023) ................................................................ 17

*Neims v. Neovia Logistics Distrib.*,
   2023 WL 6369780 (C.D. Cal. Aug. 10, 2023) .................................... 21

*Pisciotta v. Old Nat'l Bancorp*,
   499 F.3d 629 (7th Cir. 2007) ............................................................... 18

*Planned Parenthood Fed'n of Am. v. Newman*,
   51 F.4th 1125 (9th Cir. 2022) ............................................................. 14

*Popa v. Microsoft*,
   153 F.4th 784 (9th Cir. 2025) ................................................... 4, 5, 16

*Price v. Converse*,
   2025 WL 3285119 (C.D. Cal. Sept. 30, 2025) ..................................... 5

*Provencher v. Dell, Inc.*,
   409 F. Supp. 2d 1196 (C.D. Cal. 2006) .............................................. 21

*Romaine v. Kallinger*,
   109 N.J. 282 (1988) ............................................................................. 17

*S. G. v. Epic Games*,
   796 F. Supp. 3d 614 (N.D. Cal. 2025).................................................. 7

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
   2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) ............................... 5, 16

*Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*,
   131 N.Y.S.3d 817 (Sup. Ct. 2020) ..................................................... 19

*Smith v. YETI Coolers*,
   754 F. Supp. 3d 933 (N.D. Cal. 2024)................................................ 12

*Solomon v. Flipps Media*,
  136 F.4th 41 (2d Cir. 2025), *cert. denied*, 2025 WL 3506993 (U.S. Dec.
  8, 2025) .................................................................................................. 9

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ............................................................................. 4

*Sussman v. ABC*,
  186 F.3d 1200 (9th Cir. 1999) ............................................................ 13

*Tate v. VITAS Healthcare*,
  762 F. Supp. 3d 949 (E.D. Cal. 2025) ................................................ 12

*Tawam v. Feld Ent. Inc.*,
  684 F. Supp. 3d 1056 (S.D. Cal. 2023) ................................................ 8

*Thomas v. Papa John's*,
  2025 WL 1704437 (9th Cir. June 18, 2025) ....................................... 10

*Trader Joe's Co. v. Trader Joe's United*,
  150 F.4th 1040 (9th Cir. 2025) ............................................................ 2

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ..................................................................... 3, 4, 5

*Turbin v. Thumbtack*,
  2025 WL 3013972 (N.D. Cal. Oct. 28, 2025) ...................................... 6

*Valenzuela v. Keurig Green Mountain*,
  674 F. Supp. 3d 751 (N.D. Cal. 2023) ................................................ 11

*Valenzuela v. Kroger*,
  2024 WL 1336959 (C.D. Cal. Mar. 28, 2024) .................................... 12

*Wakley v. Sustainable Loc. Foods LLC*,
  2017 WL 1880814 (S.D. Ind. May 9, 2017) ....................................... 19

*Webster v. Bradford-Scott Data*,
  2025 WL 560917 (N.D. Ind. Feb. 20, 2025) ....................................... 18

**Statutes**

Children's Online Privacy Protection Act ("COPPA"),

  15 U.S.C. § 6502, 6505 ....................................................................... 15

Electronic Communications Privacy Act ("ECPA"),

    18 U.S.C. § 2511 *et seq.* ........................................................................13

Video Privacy Protection Act ("VPPA"),

    18 U.S.C. §§ 2710(a)(1), (b)(1) ..............................................................8

California Constitution ..............................................................2, 16, 17

California Invasion of Privacy Act ("CIPA"),

    Cal. Penal Code § 631(a)....................................................10, 11, 12

Fed. R. Civ. P. 8................................................................................1

Fed. R. Civ. P. 12(b)(1) ...............................................................1, 1, 3

Fed. R. Civ. P. 12(b)(3) ...............................................................1, 1, 4

Fed. R. Civ. P. 12(b)(6) ...............................................................1, 1, 3

1    Defendant Paramount Skydance Corporation ("**Paramount**") and Defendant Pluto

2   Inc. ("**Pluto**") (together, "**Defendants**") respectfully request that the Court dismiss the

3   Complaint brought by Raquel Diaz, on behalf of her minor child, B.E., Lisa Medina, on

4   behalf of her minor child, G.C., Oscar Rodriguez, on behalf of his minor child, F.R., Stacy

5   Rader, on behalf of her minor child, S.C., and Katrina Montgomery, on behalf of her

6   minor children, J.M., J.A., and J.M. pursuant to Federal Rules of Civil Procedure 12(b)(1),

7   12(b)(3), and 12(b)(6).

8                                **PRELIMINARY STATEMENT**

9    This is a haphazard and scattershot putative privacy class action brought by five

10   parents ("**Parents**") on behalf of their children ("**Plaintiffs**").    Plaintiffs allegedly

11   watched content on the "Kids" section of the Pluto TV platform.  The Parents now claim

12   that when Plaintiffs accessed videos on Pluto TV, certain information, including IP

13   addresses, device information, URLs, cookies, and the video title accessed was

14   transmitted to third parties, giving rise to eight statutory and common law claims.

15   Plaintiffs' claims fail at the outset.

16    To begin, none of the alleged injuries map onto any of the four privacy-related torts

17   actionable at common law as required to demonstrate Article III standing.  Moreover, to

18   the extent Plaintiffs' parents were Pluto TV account holders, they are bound by the Pluto

19   TV Terms of Use which require sending a written notice of dispute and attempting to

20   resolve the dispute with Pluto on an informal basis, neither of which they did.  Even if

21   Plaintiffs complied with these conditions precedent, their claims would be barred,

22   including because they filed in the incorrect venue, consented to the alleged data sharing

23   at issue, and agreed to a class action waiver provision.  Lastly, to the extent one of the

24   Plaintiffs claims not to have watched through a Pluto TV account, that Plaintiff would not

25   have a VPPA claim.

26    Even if Plaintiffs could overcome these deficiencies, their claims fail under Rule

27   8's plausibility standard.  Plaintiffs' Video Protection Privacy Act ("**VPPA**") claim

28   suffers from a myriad of pleading deficiencies, including because an ordinary person

could not identify an individual through analysis of the alleged transmission. Their California Invasion of Privacy Act ("**CIPA**") claim also fails because Pluto is a party to the communications, and no interception occurred in transit. Finally, Plaintiffs' Electronic Communications Privacy Act ("**ECPA**") claim fails because Plaintiffs do not plausibly allege Defendants acted for the purpose of later committing a further crime or tort, nor can Plaintiffs rely on an alleged violation of the Children's Online Privacy Protection Act ("**COPPA**") to avoid ECPA's crime-tort exception.

Plaintiffs' common law claims are similarly deficient. Plaintiffs' nationwide and California Constitution invasion of privacy claims fail because no offensive "intrusion" occurred. Plaintiffs' negligence claims fail for failure to allege a duty or damages. Plaintiffs' implied contract claim fails because Plaintiffs fail to allege the fundamental elements of a contract. Plaintiffs' unjust enrichment claim fails because Plaintiffs are not entitled to compensation for watching free online videos.

For all these reasons, the Court should dismiss the Complaint in its entirety.

# I.    BACKGROUND

## A.    Plaintiffs' Alleged Use of Pluto TV

Pluto is a Paramount subsidiary that owns and operates the Pluto TV video streaming service, which offers content via its website as well as mobile and other applications. Compl. ¶ 5; Ex. A (Pluto, *Pluto TV Live TV Webpage*, https://pluto.tv/us/live-tv/65e23f340d4561000821540d).[1] Individuals can watch Pluto TV and register accounts for free, but individuals under 18 cannot create accounts. Compl. ¶ 5*;* Ex. C (Pluto, *Terms of Use*, § 1, https://legal.paramount.com/us/en/plutotv/terms-of-use?r=pluto.tv).

---

[1] The Court may consider the materials from the Pluto website attached to the Steinberg Declaration, as the website is referenced in the Complaint and central to Plaintiffs' claims. *Trader Joe's Co. v. Trader Joe's United*, 150 F.4th 1040, 1053 n.2 (9th Cir. 2025) (finding the "district court appropriately considered TJU's website under the doctrine of incorporation by reference, as [plaintiff] extensively referenced TJU's website throughout its complaint"). All references to exhibits ("Ex.") are to those attached to the Steinberg Declaration.

Plaintiffs and their Parents plead they had to "sign-up" to access Pluto TV on an application.  Compl. ¶ 5.  Plaintiffs have now confirmed all of their Parents had accounts, with the exception of Raquel Diaz, who asserts that her minor child watched Pluto TV without registering for an account.  Ex. G (Plaintiffs' Counsel Email).  When making a Pluto TV account, they would have had to consent to the Terms of Use, Privacy Policy, and Children's Privacy Policy.  Ex. B (Pluto, Sign Up Page, https://pluto.tv/us/account/sign-up).[2]

### B.    The Alleged Transmissions

Plaintiffs claim Defendants installed "tracking pixels" onto the Pluto TV website, which allegedly transmitted Plaintiffs' information to Google and Microsoft.  Compl. ¶ 8.  Plaintiffs claim that when they watched videos on Pluto's platform, telemetric data (*e.g.*, clicks and scrolls), and other device-related information such as IP addresses, browser software, and operating system information, were transmitted in two transmissions to Google and Microsoft without their consent.  *Id.* ¶¶ 100-101.  According to Plaintiffs, URLs and Google and Microsoft cookies are disclosed as well.  *Id.*  Plaintiffs, however, do not show the alleged disclosure of their <u>own</u> information, but rather information from an unidentified third-party internet user.  *Id.*

## II.    LEGAL STANDARD

Under Rule 12(b)(1), Plaintiffs must show they have Article III standing.  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430-31 (2021).  A plaintiff must demonstrate they suffered "an injury in fact that is concrete, particularized, and actual or imminent," that "was likely caused by the defendant," and "would likely be redressed by judicial relief."  *Id.* at 423.

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S.

---

[2] Although Plaintiffs do not specify the months they accessed the website, the Terms, Privacy Policy, and sign-up flow have remained nearly identical since 2024. *See, e.g.*, https://web.archive.org/web/20240109112511/https://legal.paramount.com/us/en/plutotv/terms-of-use.

1    662, 678 (2009) (citation omitted).  A court must disregard conclusory allegations and

2    legal conclusions, which are not entitled to the assumption of truth, and determine whether

3    the remaining "well-pleaded factual allegations" suggest the plaintiff has a plausible

4    claim for relief.  *Id.* at 679.

5          Courts in this District have held Rule 12(b)(3) governs motions to dismiss based

6    on forum selection clauses.  *Fouad v. Qatar*, 2020 WL 13311759, *3 (C.D. Cal. Apr. 14,

7    2020), *aff'd*, 846 F. App'x 466 (9th Cir. 2021).  On such a motion, the Court "may

8    consider facts outside of the pleadings."  *Id.*

9    **III.   ARGUMENT**

10         **A.    Plaintiffs Lack Article III Standing**

11         To establish Article III standing, Plaintiffs must allege a concrete injury, "even in

12   the context of a statutory violation."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).

13   This requires demonstrating a "physical, monetary, or cognizable intangible harm

14   traditionally recognized as providing a basis for a lawsuit in American Courts."

15   *TransUnion*, 594 U.S. at 427.  As this Court recognized in a factually similar case,

16   violations of privacy statutes do not *de facto* confer Article III standing.  *Dawidzik v.*

17   *Tesla*, 2025 WL 3786963, *3 (C.D. Cal. Dec. 29, 2025) (Kato, J.) (dismissing similar

18   tracking technology case alleging CIPA violations based on lack of standing).  Plaintiffs

19   must allege "a close historical or common-law analogue for their asserted injury" based

20   on one of the "four discrete torts that protected specific kinds of privacy-related harms":

21   intrusion upon seclusion, publication of private fact, misappropriation of likeness, or false

22   light.   *Popa v. Microsoft*, 153 F.4th 784, 792, 794 (9th Cir. 2025) (holding standing

23   analysis changed after *Eichenberger v. ESPN*, 876 F.3d 979 (9th Cir. 2017) in light of

24   *Transunion*); *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1181 (N.D. Cal. 2025)

25   ("*Transunion* precludes standing where plaintiffs fail to allege a concrete injury, even if

26   they have asserted a violation of CIPA.").  But Plaintiffs fail to plead any physical,

27   monetary, or traditionally recognized cognizable intangible harm.

28

1     Indeed, as this Court and others have held in these exact kinds of cases, generic

2 invasion of privacy allegations "pitched at a high level of generality[,]" do not qualify.

3 *Popa*, 153 F.4th at 792; *see also Dawidzik*, 2025 WL 3786963, *4; *Price v. Converse*,

4 2025 WL 3285119, *3 (C.D. Cal. Sept. 30, 2025) (mere allegation of privacy invasion

5 "does not align" with *TransUnion*); Compl. ¶¶ 51, 62.

6     Plaintiffs' claims are also distinct from "the 'highly offensive' interferences or

7 disclosures that were actionable at common law[.]"  *Popa,* 153 F.4th at 791.  Intrusion

8 upon seclusion claims have traditionally protected claimants from highly offensive

9 *intrusions* into private affairs.  *Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025

10 WL 1141168, *6 (C.D. Cal. Feb. 27, 2025).  But there was no "intrusion" here, let alone

11 a highly offensive one, given Plaintiffs willingly "provided" their information to Pluto.

12 Compl. ¶ 236; *Saedi*, 2025 WL 1141168, *8 ("one cannot logically intrude into

13 communications to which they are a party").  Nor is the publication of private fact tort

14 analogous, which targets conduct "'giv[ing] publicity' to a matter that concerns 'the

15 private life of another,' [when] the information is '*highly offensive* to a reasonable

16 person[.]'"  *Popa*, 153 F.4th at 791; *Khamooshi*, 786 F. Supp. 3d at 1180.  Here,

17 Defendants neither gave publicity to a matter nor disclosed highly offensive information.

18 *In re Google, Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d 973-74, 988 (N.D. Cal. 2014)

19 (collection and disclosure of browsing histories was not highly offensive); *In re iPhone*

20 *Application Litig.*, 844 F. Supp. 2d 1040, 1050, 1063 (N.D. Cal. 2012) (no invasion of

21 privacy based on disclosure of addresses, device identifiers, gender, and age, among other

22 information).  Accordingly, there is no "common-law analogue for [Plaintiffs'] asserted

23 injury" and Plaintiffs cannot establish Article III standing.  *Popa*, 153 F.4th at 794

24 (citation omitted); *Dawidzik*, 2025 WL 3786963, *5.

25     Plaintiffs also suggest they suffered an injury because Pluto "diminished the value"

26 of their information.  Compl. ¶ 121.  This theory is implausible because it is contrary to

27 the thesis of their case, which is that they wanted privacy, not to sell their information.

28 Furthermore, conclusory allegations of "a 'loss of value of [their] private

1    information'…without any more details, [are] 'too abstract and speculative to support

2    Article III standing.'" *In re Uber Tech., Inc., Data Sec. Breach Litig*., 2019 WL 6522843,

3    *5 (C.D. Cal. Aug. 19, 2019) (citation omitted) (to plead diminution of value, a plaintiff

4    must "establish both the existence of a market for her personal information and an

5    impairment of her ability to participate in that market."). Given Plaintiffs identify no

6    actual monetary loss, no market they could participate in to sell their information, or an

7    impairment to participation in said market, Plaintiffs' "diminution" theory fails.

8    **B.    The Pluto TV Terms of Use and Privacy Policy Bar Plaintiffs' Claims**

9        Plaintiffs' Parents plead that they had to "sign up" for accounts to access Pluto TV

10    on an application, and have now confirmed four of the five Parents consented to the Terms

11    of Use and Privacy Policy on their children's behalf when they created Pluto TV accounts.

12    Compl. ¶ 5; Ex. G. Indeed, the sign-up process these Plaintiffs reference provides "[b]y

13    selecting Sign Up below, you confirm that you have read and agree to our Terms of Use

14    and acknowledge our Privacy Policy." Ex. B. This notice is conspicuous, as the

15    hyperlinks to the Terms and Privacy Policy appear in bright yellow, distinguished from

16    the surrounding text, and the language appears immediately above the "Sign Up" button.

17    *Turbin v. Thumbtack,* 2025 WL 3013972, *3 (N.D. Cal. Oct. 28, 2025). These Parents

18    manifested assent by pressing "Sign Up" and thus consented to the Terms and Privacy

19    Policy. *Id*.; *Bender v. Twilio*, 2025 WL 2308484, *5 (N.D. Cal. Aug. 11, 2025) (finding

20    assent when users agreed to website terms and acknowledged the privacy policy).

21        The Terms, which incorporate the Privacy Policy by reference, state that a "parent

22    …by allowing [their children] to use the Services, [] are subject to these Terms and [] are

23    responsible for [their] child's activity on the Services." Ex. C § 1. Further, individuals

24    "must be at least 18 years of age," and a minor may access Pluto only with the "permission

25    of [their] parent[s]," and the Terms provide their "use of the Services is subject to [their]

26    parent or legal guardian's supervision and control," and require their "parent [to] read[]

27    these Terms with [them]." *Id*. This acknowledgement binds both the Parents and

28

Plaintiffs. *S. G. v. Epic Games*, 796 F. Supp. 3d 614, 620-21 (N.D. Cal. 2025) (binding child to agreement entered by his parent).

### 1. Those Plaintiffs With Accounts Failed to Comply With Conditions Precedent and Filed in the Wrong Venue

Before a party commences an action against Pluto, the Terms require sending a "written notice of dispute" which must, among other things, "be sent by certified mail[,]" "describe the nature and basis of your Claim[,]" "include any relevant facts regarding your use of the Services, including…whether you have created an account[,]" "specify the nature and basis of the specific relief sought," and "include a personally signed statement from you…verifying the accuracy of the contents[.]" Ex. C § 2.1. In addition, the parties must "engage in a good faith effort to resolve the dispute for a period of 60 days." *Id.* Those Plaintiffs with accounts do not plead they complied with these requirements, which requires dismissal. *Lipeles v. United Airlines*, 2024 WL 891792, *3-4 (C.D. Cal. Jan. 9, 2024) (Kato, J.) (dismissing class action where plaintiff did not provide a notice of dispute or engage in 60-day dispute resolution period required by parties' agreement).

Even beyond their failure to comply with conditions precedent, those Plaintiffs with accounts failed to bring their claims in the agreed-upon venue. The Terms call for claims to be brought "in the state and federal courts in New York County," and provide that the Terms and "all claims arising from or related to your use of the Services will be governed by and construed in accordance with the laws of the State of New York, except New York's conflict of law rules." Ex. C § 15. These Plaintiffs' failure to comply with this provision provides another reason for dismissal. *Fouad*, 2020 WL 13311759, *10.

### 2. Those Plaintiffs With Accounts Consented to the Alleged Disclosures

The Privacy Policy to which the Plaintiffs with accounts agreed states Pluto may "automatically receive certain information about [Plaintiffs'] device[s] using browser or device-based tracking technologies,…[that] allow us…[to] provide and measure

advertisements, and provide personalized content[.]" Ex. D (Pluto, *Privacy Policy,*
"Cookies and Other Tracking Technologies",
https://privacy.paramount.com/en/policy?r=pluto.tv#information-we-collect-about-you).
Furthermore, it incorporates by reference the Children's Privacy Policy, which is
referenced in the Complaint and discloses that on child-directed services, Pluto may
collect IP addresses and "identifiers associated with cookies, pixels, tags, beacons, scripts
or other technology." Compl. ¶ 105; Ex. E (Pluto, *Children's Privacy Policy*,
"Information Collected About Your Computer," https://privacy.paramount.com
/en/childrens?r=pluto.tv). Those Plaintiffs with accounts thus consented to the alleged
disclosures, which requires dismissal. *Lakes v. Ubisoft*, 777 F. Supp. 3d 1047, 1058 (N.D.
Cal. 2025) (dismissing ECPA, CIPA and VPPA based on consent to terms on defendant's
website), *appeal filed*, No. 25-2857 (9th Cir. May 2, 2025).

### C.    Plaintiffs Fail to State a VPPA Claim

VPPA plaintiffs must show they are "renter[s], purchaser[s], or subscriber[s] of
goods or services from a video tape service provider[.]" 18 U.S.C. §§ 2710(a)(1), (b)(1).
To the extent one of the Plaintiffs did not watch Pluto TV using an account, that Plaintiff's
VPPA claim fails because Plaintiff is not a "renter, purchaser, or subscriber[.]" *See*, *e.g.*,
*Tawam v. Feld Ent. Inc.*, 684 F. Supp. 3d 1056, 1062 (S.D. Cal. 2023) (finding viewing
videos and signing up for email newsletter insufficient). Moreover, other pleading
deficiencies require dismissal of all the Plaintiffs' VPPA claims.

### 1.    Plaintiffs Do Not Plausibly Allege Disclosure of PII

First, for both Google and Microsoft, Plaintiffs allege no facts establishing an
ordinary person could identify what videos a specific person requested or obtained as
required under the VPPA. *Eichenberger*, 876 F.3d at 985; *N.Z. v. Fenix Int'l*, 2025 WL
3627591 *13 (C.D. Cal. Dec. 12, 2025) (dismissing VPPA claim and finding collection
and transmission of a user's username, interaction and communication history were
insufficient). Indeed, applying the same standard used in the Ninth Circuit, the Second
Circuit has held pixel-based claims are foreclosed under the VPPA where an ordinary

person would not be able to determine from the numbers allegedly passed the identity of a specific person that requested or obtained specific videos. *Solomon v. Flipps Media*, 136 F.4th 41, 54 (2d Cir. 2025) ("[I]t is not plausible that an ordinary person…would see the 'c_user' [number] on [a] server[] and conclude that the phrase was a person's FID."), *cert. denied*, 2025 WL 3506993 (U.S. Dec. 8, 2025); *Hughes v. NFL*, 2025 WL 1720295, *2 (2d Cir. June 20, 2025) ("*Solomon* effectively shut the door for Pixel-based VPPA claims."). Plaintiffs' screenshots underscore that the alleged cookies, and "string[s] of numerals[,]" do not identify individuals for VPPA purposes. Compl. ¶¶ 100-101; *Hughes*, 2025 WL 1720295, *3. Because an ordinary person could not identify an individual based on the alleged transmissions, Plaintiffs' VPPA claims should be dismissed.

Second, Plaintiffs do not adequately allege disclosure of PII under the VPPA because they do not allege a specific video title was included in the alleged transmission to Google. Because Plaintiffs fail to allege "essential information for a VPPA claim," including "which 'specific video materials' were requested or obtained by the website visitor," their VPPA claim based on alleged transmissions to Google fails. *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 284 (S.D.N.Y. 2023).

Third, Plaintiffs admit the screenshots depicting "network transmissions" do not actually represent their own interactions with Pluto. Compl. ¶ 32 ("Figures 1 & 2 depicts network transmission data captured while *an Internet user* watches a video on the 'Kids' section of the Platform.") (emphasis added). This too precludes their claim. *Chandra v. Prager Univ. Found.,* 2025 WL 3049870, *4 (C.D. Cal. Oct. 21, 2025) (screenshot not attributed to plaintiffs insufficient to state VPPA claim). Plaintiffs also fail to plead they did not block cookies or otherwise use a browser that does so. Courts have found this to be fatal to such claims. *See Martinez v. D2C, LLC*, 2024 WL 4367406, *7-8 (S.D. Fla. Oct. 1, 2024). Plaintiffs' VPPA claim therefore fails.

**2.    Plaintiffs' Allegations are Deficient as to Defendant's Knowledge**

Plaintiffs also do not plausibly allege Defendants *knowingly* disclosed PII. At most, Plaintiffs allege Defendants "knew" Pluto's website "incorporated the Tracking Tools."

Compl. ¶ 131. But that is insufficient here. *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1105 (N.D. Cal. 2015) (dismissing VPPA claim where plaintiffs could not establish whether "[defendant] knew that Facebook might link the user-identifying information in the c_user cookie with title-bearing watchpage addresses"). Furthermore, Plaintiffs do not allege Defendants possessed or could access Plaintiffs' information. Indeed, Plaintiffs' claim is Microsoft and/or Google obtained the relevant information, not Defendants, as the information is allegedly passed directly from Plaintiffs' browsers to those parties. Compl. ¶ 8. Defendants cannot be held liable for allegedly disclosing identifiable information that it "never even possessed[.]" *Eichenberger*, 876 F.3d 979 at 986.

### D.    Plaintiffs Fail to State a CIPA Claim

Plaintiffs' agreement to the New York choice of law provision renders claims predicated on other states' laws dubious, particularly privacy claims, given "New York does not recognize a common-law right to privacy." *Dunahoo v. Hewlett-Packard*, 2012 WL 178332, *4 (S.D.N.Y. Jan. 20, 2012). Even if the Court were to consider these other state law claims, it should still dismiss the Complaint for various reasons.

#### 1.    Pluto Is a Party to the Alleged Communications

With respect to Plaintiffs' CIPA § 631(a) claim, that statute provides an exemption from liability if the alleged eavesdropper is a "party" to the communication. *Licea v. Vitacost.com*, 683 F. Supp. 3d 1118, 1121 (S.D. Cal. 2023). When a user requests to view a video on Pluto's platform, Pluto is the intended recipient of that request, and a party to the communication. *Thomas v. Papa John's,* 2025 WL 1704437, *1 (9th Cir. June 18, 2025) ("A party to a conversation cannot be liable under section 631 for 'eavesdropping'"). Furthermore, as the Third Circuit held in a seminal decision, the federal "Wiretap Act's one-party consent regime [does not] depend[] on the age of the non-consenting party…given the vast potential for unexpected liability whenever a minor happened to browse an Internet site that deployed cookies…." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 275 (3d Cir. 2016). Because Pluto is a party to the

communication and Plaintiffs' age does not dismantle the one-party exception, Defendants are exempt from liability.

### 2. Plaintiffs Can Prove No Underlying Violation of § 631

#### a) Plaintiffs Do Not Plead Use of a Telephone

Plaintiffs' claim under CIPA § 631(a)'s first clause fails because they do not allege use of a telephone. *Gutierrez v. Converse*, 2025 WL 1895315, *1 (9th Cir. July 9, 2025) (dismissing plaintiffs' claim because they did not allege the defendant made an "unauthorized connection through a telephone"); *Cody v. Boscov's*, 2024 WL 2228973, *2 (C.D. Cal. May 6, 2024).

#### b) Plaintiff Do Not Plead an Interception in Transit

"To be liable [under CIPA], the eavesdropper must listen to a communication... [while it is] in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state.'" *Valenzuela v. Keurig Green Mountain*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023). Plaintiffs conclusorily allege Pluto allowed Microsoft and Google to "intercept in real-time…Plaintiffs'…communications." Compl. ¶ 209. But "that statement does little more than restate the pleading requirement of real time interception." *Valenzuela*, 674 F. Supp 3d at 758. When Plaintiffs attempt to describe how this technology works, they allege the Pixels request identifying information, then first "combine" the data received, and only then "transmit" that information back to Google and Microsoft. Compl. ¶ 87, 88. Plaintiffs describe a stepwise sequence of events, not an in-transit interception. *Hernandez-Silva v. Instructure, Inc.*, 2025 WL 2233210, *5 (C.D. Cal. Aug. 5, 2025) ("Learning the content of a communication after it has been sent is not eavesdropping"), *appeal filed*, No. 25-5438 (9th Cir. Aug. 27, 2025).

Moreover, because CIPA is a criminal statute, the rule of lenity applies. *Doe v. Eating Recovery Ctr.*, 2025 WL 2971090, *6 (N.D. Cal. Oct. 17, 2025). CIPA was enacted in the 1960s and uses technological conventions of its time, and a term like "in transit" is "ill-suited for application to internet communications." *Id*. Because there is

no indication the California legislature intended to criminalize the conduct alleged, the "in transit" requirement should not be read "so broadly as to cover the conduct at issue here." *Id.*

### c)    No Content Was Transmitted to Google

To state a § 631(a) claim, a Plaintiff must show the *content* of their communication was intercepted. But the alleged Google transmission only includes device information and a URL. Compl. ¶¶ 100-01. This "record information" does not qualify as content. *Mikulsky v. Bloomingdale's*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) ("[I]nteractions with [a] website" are not contents); *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108-1109 (9th Cir. 2014) (a URL without "a search term or similar communication" was contentless). Because no content was transmitted to Google, Plaintiffs cannot state a § 631 claim based on the alleged Google transmissions.

### 3.    Pluto Did Not Aid and Abet a § 631 Violation

Plaintiffs also do not plausibly allege Defendants aided and abetted a CIPA violation. While some courts have held otherwise, the better view is "in the absence of an explicit statutory scienter requirement, in California civil actions, the common law definition [of aiding and abetting] applies." *Valenzuela v. Kroger*, 2024 WL 1336959, *4 (C.D. Cal. Mar. 28, 2024); *Smith v. YETI Coolers*, 754 F. Supp. 3d 933, 942 (N.D. Cal. 2024) (CIPA's "fourth clause does require some level of knowledge and intent.").[3] Therefore, Plaintiffs must show Defendants "(a) kn[e]w[] the other's conduct constitutes a breach of duty and g[a]ve[] substantial assistance or encouragement to the other to so act or (b) g[a]ve[] substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty[.]" *Kroger*, 2024 WL 1336959, *4. But, Plaintiffs do not plausibly allege Defendants *knew* their actions would violate CIPA. Thus, even if Google and Microsoft violated CIPA,

---

[3] Cases such as *Tate v. VITAS Healthcare* and *Gabrielli v. Haleon US In*c., which hold otherwise, fail to properly analyze CIPA's text, given the statute lacks an explicit, defined scienter requirement. 762 F. Supp. 3d 949, 959 (E.D. Cal. 2025); 2025 WL 2494368 (N.D. Cal. Aug. 29, 2025).

Plaintiffs do not plausibly allege Defendants intended to participate in a CIPA violation, requiring dismissal of their CIPA claims.

### E.    Plaintiffs Fail to State an ECPA Claim

The ECPA provides a right of action against any person who "intentionally intercepts...any...electronic communication" or any person who discloses or uses the contents of an intercepted electronic communication. 18 U.S.C. § 2511(1)(a), (c), (d). Like CIPA, however, the ECPA has a one-party exception. This exception defeats Plaintiffs' ECPA claim because Defendants were necessary parties to the alleged communications. *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024); Compl. ¶ 227.[4]

Nor have Plaintiffs plausibly alleged that the crime-tort exception to the one-party exception applies. That exception applies only when a "communication is intercepted for the purpose of committing any criminal or tortious act[,]" 18 U.S.C. § 2511(2)(d), which Plaintiffs do not plausibly allege.

### 1.    No Criminal or Tortious Purpose

"[W]here the [interception] is legal, but is done for the purpose of facilitating some further impropriety, such as blackmail, [the crime-tort exception] applies. Where the purpose is not illegal or tortious, but the means are, the victims must seek redress elsewhere." *Sussman v. ABC*, 186 F.3d 1200, 1202-03 (9th Cir. 1999). Therefore, Plaintiffs' claims turn on plausibly alleging Defendants acted "for the purpose of facilitating some further impropriety, such as blackmail[.]" *Id.* at 1202. But Plaintiffs allege no such facts. Rather, they allege only that Defendants attempted to "increase its profit margins" by using "advertising and marketing analytics services." Compl. ¶¶ 115, 190. There is nothing criminal or tortious about using an analytics service to improve a website's functionality or to attempt to make money. *Katz-Lacabe v. Oracle Am.*, 668 F.

---

[4] "'[C]ontents' of a communication under CIPA has the same meaning as the parallel term in the [ECPA]." *Eating Recovery,* 2025 WL 2971090, *4. Therefore, for the reasons explained previously, Plaintiffs also cannot bring ECPA claims based on alleged Google transmissions.

Supp. 3d 928, 945 (N.D. Cal. 2023) (the crime-tort exception "does not apply…where Defendant's 'purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money'"); *Lakes*, 777 F. Supp. 3d at 1058. Therefore, Plaintiffs have not alleged Defendants intercepted communications for the purpose of facilitating a crime or tort.

### 2.    No "Temporally Distinct" Crime or Tort

To trigger the crime-tort exception, "[t]he recording party must also have the independent criminal or tortious purpose at the time the recording was made." *Planned Parenthood Fed'n of Am. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022).  In other words, "[t]here is a temporal thread that runs through the fabric of the statute and the case law.  At the time of the recording the offender must intend to use the recording to commit a criminal or tortious act." *Id.* (citation omitted).  This further criminal or tortious act must occur at some point *after* the interception or disclosure and be distinct from the interception or disclosure. *Doe v. Kaiser Found. Health Plan*, 2024 WL 1589982, *8-10 (N.D. Cal. Apr. 11, 2024) (ECPA's crime-tort exception did not apply to tracking technologies when the further crime or tort "inheres in the alleged interception").  There is a clear practical reason for this requirement.  If an act synonymous with the interception or disclosure could trigger the crime-tort exception, any alleged interception or disclosure could trigger the crime-tort exception, and the exception would swallow the party exception.

Here, Plaintiffs' claims are all predicated upon the same event: an alleged disclosure of information to third-parties.  Compl. ¶¶ 43, 154, 159, 178, 202, 214, 220, 230. Therefore, Plaintiffs do not—and cannot—allege Defendants intercepted any communication in furtherance of a later temporally distinct crime or tort.

### 3.    Plaintiffs Cannot Rely On COPPA

COPPA cannot trigger the crime-tort exception because private plaintiffs may not predicate claims on regulatory violations exclusively enforceable by the government. Courts do not permit private Plaintiffs to enforce COPPA and regularly dismiss attempts

to bring COPPA claims, which Plaintiffs are effectively doing here.  *Benson v. Perris Elementary Sch. Dist.*, 2022 WL 3574290, *5 (C.D. Cal. July 1, 2022) (rejecting COPPA claims brought by private plaintiffs and holding COPPA does not "create a private right of action" and, citing *Hubbard v. Google LLC*, 508 F. Supp. 3d 623 (N.D. Cal. 2020), "COPPA enforcement is 'assigned...to the FTC and state attorneys general'").  Plaintiffs also cannot assert claims when their "critical elements" are predicated upon violations of regulations that the government retains sole discretion to enforce.  *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 352-53 (2001) (finding claims preempted that "exist solely" upon laws "enforced exclusively by the Federal Government" when such laws form the basis of "a critical element" in their case).  If Plaintiffs could bring claims reserved for government enforcement, private litigation would "exert an extraneous pull on the scheme established by Congress[.]"  *Id.* at 353.  Here, similar to the claims in *Buckman*, Plaintiffs improperly seek to rely on COPPA—a regulation that "shall be enforced by the [Federal Trade] Commission" and state attorneys general exclusively.  15 U.S.C. § 6505.

In any event, Plaintiffs do not plausibly allege the conduct at issue violated COPPA, particularly given Defendants obtained their consent, and the information allegedly disclosed amounts to identifiers that may be shared by the children with their Parents, including IP addresses and device identifiers.  Compl. ¶¶ 100-01.  Indeed, considering individuals under 18 cannot make accounts, and Plaintiffs do not plead they used Pluto's separate "Kids Mode" when they watched through their Parents' accounts, Plaintiffs have not plausibly alleged Pluto had "actual knowledge" of any collection of Plaintiffs' "personal information[,]" as opposed to their Parents' information, as required. 15 U.S.C. § 6502; Ex. F (Pluto, *What streaming features are available on Pluto TV?*, https://support.pluto.tv/s/article/PTV-What-streaming-features-are-available-on-Pluto-TV?language=en_US) (describing "Kids Mode").  Plaintiffs therefore cannot rely on COPPA to satisfy the crime-tort exception.

1

2

### F.    Plaintiffs Fail to Allege Common Law or California Constitution Invasion of Privacy Claims

3

4    Plaintiffs fail to specify the state laws under which they bring their common law

5    claims.  That itself is a basis for dismissal. *See* F.C.R.P. 8(a)(2); *Bell Atl. Corp. v. Twombly*,

6    550 U.S. 544, 555 (2007).  Assuming Plaintiffs intend to bring these claims under the law

7    of their states of residence—California, Illinois, Indiana, and New Jersey—they still fail

to state a claim.

8

### 1.    Plaintiffs Do Not State a Common Law Invasion of Privacy Claim

9    There are four common law privacy torts: intrusion upon seclusion; appropriation

10    of likeness; publication of private fact; and false light.  *Popa*, 153 F.4th at 792.[5]  Plaintiffs

11    have not alleged which common law tort underlies their claim, and instead plead a generic

12    "Invasion of Privacy[.]"  Compl. ¶¶ 156-68.  Notwithstanding this deficiency, Plaintiffs'

13    Invasion of Privacy claim cannot be animated by any common law torts.

14

### a)    Intrusion Upon Seclusion

15    Plaintiffs cannot state a claim for intrusion upon seclusion under Indiana law

16    because they allege no physical intrusion:  Indiana courts "narrowly construe [the tort] by

17    requiring the invasion be of the plaintiff's *physical* space." *Jarrett v. Upperline Health,*

18    2025 WL 3067545, *7 (S.D. Ind. Aug. 8, 2025).  As to the remaining states, Plaintiffs

19    incorrectly suggest a disclosure constitutes an intrusion.  Compl. ¶ 160.  The proper basis

20    for an intrusion upon seclusion claim is not a disclosure but an offensive intrusion.  *Angelo*

21    *v. Moriarty*, 2016 WL 640525, *5 (N.D. Ill. Feb. 18, 2016); *Saedi*, 2025 WL 1141168,

22    *6.  Moreover, where a party was the intended recipient of information, there is no

23    "intrusion."  *Kurowski v. Rush Sys. for Health,* 659 F. Supp. 3d 931, 944 (N.D. Ill. 2023)

24    (dismissing claims involving alleged disclosure of health information when sent in

25    "voluntary communications with defendant"); *Saedi,* 2025 WL 1141168, *6 (no

26    "intrusion" via tracking tools when plaintiff "voluntarily provide[d] information" like IP

27

28    ---
[5] Plaintiffs do not allege facts that suggest they are making appropriation of likeness or false light claims.

1  address, website activity, and health information); *Darocha v. Wal-Mart Stores*, 2012 WL

2  13032900, \*4 (D.N.J. May 9, 2012).  Because Plaintiffs "provided" their information to

3  Defendants, there was no intrusion, let alone a highly offensive one.  Compl. ¶ 236.

### b)    Public Disclosure of Private Facts

5      Plaintiffs similarly do not allege publication of private facts because the names of

6  children's movies are not "sensitive or scandalizing," and because the purported

7  disclosure was made to private companies and not the public-at-large, as required.

8  *Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 736 (7th Cir. 2023); *Cmty. Health Network v.*

9  *McKenzie*, 185 N.E.3d 368, 382 (Ind. 2022) ("[I]nformation must be communicated in a

10  way that either reaches or is sure to reach the public [or] is sure to become public

11  knowledge"); *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 849 (N.D. Ill. 2023)

12  (emphasizing the "only disclosures allegedly made were to…private companies" like

13  Google, not "the public at large"); *Romaine v. Kallinger*, 109 N.J. 282, 297 (1988); *Hill*

14  *v. NCAA.*, 7 Cal. 4th 1, 27, 865 P.2d 633, 648-49 (1994).

### 2.    Plaintiffs Do Not State an Invasion of Privacy Claim Under California's Constitution

17      The intrusion upon seclusion and constitutional privacy inquiries "[are]

18  functionally identical" and "analyzed…together" when predicated on the same facts.

19  *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1033 (N.D. Cal. 2019).  As explained,

20  Plaintiffs do not and cannot surmount the "high bar" California courts set for "an invasion

21  of privacy claim" under "both" the "California Constitution and the common law."

22  *Belluomini v. Citigroup*, 2013 WL 3855589, \*6 (N.D. Cal. July 24, 2013).  Even if

23  Plaintiffs could sufficiently plead invasion of privacy under the California Constitution,

24  the California Constitution "does not permit a private right of action for money

25  damages…for an alleged violation of the privacy provision[.]"  *Blanco v. County of Kings*,

26  142 F. Supp. 3d 986, 1000 (E.D. Cal. 2015).

### G.    Plaintiffs Fail to State Any Other Common Law Claims

Plaintiffs assert three further common law claims: negligence, breach of implied contract, and unjust enrichment—all fail.

#### 1.    Plaintiffs Fail to State a Negligence Claim

To plead damages for a negligence claim, Plaintiffs must allege an "appreciable, nonspeculative, present injury." *Low v. LinkedIn*, 900 F. Supp. 2d 1010, 1032 (N.D. Cal. 2012) (dismissing negligence claim when plaintiff did not show "actual or realized harm"); *Lax v. City of Atlantic City*, 2019 WL 7207472 (D.N.J. Dec. 27, 2019) (stating negligence requires actual damages); *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 639-40 (7th Cir. 2007); *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 949 F. Supp. 2d 486, 504 (S.D.N.Y. 2013) (plaintiff must plead damages resulting from the alleged breach). Plaintiffs provide only conclusory allegations of damages, not actual damages.

Plaintiffs conclusorily allege "Defendants' conduct has caused Plaintiffs' Children and Class Members to suffer damages by having their Private Children's Data accessed, stored, and disseminated[.]" Compl. ¶ 223.  However, Plaintiffs fail to allege how this alleged dissemination resulted in actual monetary losses. *Huynh v. Quora, Inc*., 2020 WL 7408230, *6 (N.D. Cal. June 1, 2020) (dismissing negligence claims where Plaintiffs failed to allege they suffered monetary damages due to data breach and dissemination of their information).  Plaintiffs also contend Defendants "still hold[] the [data] in an unsafe and unsecure manner."  Compl. ¶¶ 223, 225.  This allegation represents an inadequate "speculative" harm without factual support.  *Low*, 900 F. Supp. 2d at 1032; *Webster v. Bradford-Scott Data*, 2025 WL 560917, *8 (N.D. Ind. Feb. 20, 2025).  Accordingly, Plaintiffs fail to adequately allege they suffered damages.

As explained *supra* § III(B), Plaintiffs' allegations that they suffered damages due to the "diminution" of value of data, Compl. ¶ 13, are also unavailing.  *Greenstein v. Noblr Reciprocal Exch.*, 585 F. Supp. 3d 1220, 1229 (N.D. Cal. 2022) ("[P]laintiffs must show that the loss of value is not arbitrary or hypothetical").  Finally, the alleged disclosure is not personal information—and is at most allegedly a disclosure of a video

title in connection with a device.  It is implausible Plaintiffs' information diminished in value when it was not theirs to begin with.  For these reasons, Plaintiffs fail to plausibly allege actual damages, and their negligence claims should be dismissed.

Illinois "has not recognized an independent common law duty to safeguard personal information." *Doe v. Genesis Health Sys*., 2025 WL 1000192, *4 (C.D. Ill. Mar. 18, 2025).  Similarly, Indiana courts have either not recognized or rejected a common law duty to protect private information.  *Duffy v. Lewis Bros. Bakeries*, 760 F. Supp. 3d 704, 720 (S.D. Ind. 2024) (citation omitted) (explaining state statutes "strongly suggest that Indiana law would not recognize' a common law duty…to protect and safeguard [] private information").  Accordingly, Plaintiffs' negligence claims fail under Illinois and Indiana law.  Compl. ¶ 219.

### 2.    Plaintiffs Fail to Allege a Breach of an Implied Contract

Plaintiffs' implied contract claim fails because Plaintiffs do not plausibly allege Plaintiffs and Defendants reached a "meeting of the minds" with respect to the information allegedly disclosed.  *Wakley v. Sustainable Loc. Foods LLC*, 2017 WL 1880814, *3 (S.D. Ind. May 9, 2017); *iMotorsports, Inc. v. Vanderhall Motor Works*, 2022 IL App (2d) 210785, ¶ 32; *Beltran v. Doctors Med. Ctr.*, 2025 WL 1635467, * 12 (E.D. Cal. June 9, 2025); *In re U.S. Vision Data Breach Litig.*, 732 F. Supp. 3d 369, 377-78 (D.N.J. 2024); *Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*, 131 N.Y.S.3d 817, 826 (Sup. Ct. 2020).

Plaintiffs allege when they "provided their Private Children's Data[,]" "they entered into an implied contract pursuant to which Defendants agreed to safeguard and not disclose their Private Children's Data without consent."  Compl. ¶ 227.  However, Plaintiffs' complaint is predicated on Defendants "intentionally" disclosing their information.  *Id.* ¶ 97.  By Plaintiffs' own account, there was never a "meeting of the minds" to "safeguard and not disclose" their data, rendering their implied contract claim implausible.  *See, e.g.*, *Vision Data*, 732 F. Supp. 3d at 378.

Plaintiffs also fail to allege they provided consideration (e.g., payment), a necessary element for an implied contract claim. *See, e.g.*, *Beltran*, 2025 WL 1635467, *12 (dismissing implied contract claims where "Plaintiffs have not made any allegations regarding consideration received by Defendants for their purported promise to safeguard Plaintiffs' information"). Finally, Plaintiffs fail to explain how any breach damaged them, as required. *See, e.g.*, *id.* at *11. Because Plaintiffs fail to allege a meeting of the minds, the exchange of consideration, or damages, their implied contract claims fail.

### 3. Plaintiffs Fail to Allege an Unjust Enrichment Claim

Plaintiffs cannot state a claim for unjust enrichment in any state because (1) there is no independent unjust enrichment cause of action under California law, and (2) Plaintiffs do not—and cannot—allege that they expected to receive renumeration or some benefit they did not receive from Defendants under New Jersey, Indiana and Illinois law. *In re iPhone Application Litig.*, 2011 WL 4403963, *15 (N.D. Cal. Sept. 20, 2011); *Hemy v. Perdue Farms*, 2011 WL 6002463, *22-23 (D.N.J. Nov. 30, 2011) (dismissing unjust enrichment claim for failure to allege an expectation of remuneration*); Burget v. R.A.M. Ent., LLC*, 2015 WL 4490938 at *7-8 (N.D. Ind. July 23, 2015) (same). Furthermore, Plaintiffs do not state a claim because Defendants did not receive a benefit from a third-party that should have been given to Plaintiffs, as required under Illinois law. *Irwin v. Jimmy John's Franchise*, 175 F. Supp. 3d 1064, 1072 (C.D. Ill. 2016) (dismissing unjust enrichment claims where plaintiff "paid for food[,]" not "a side order of data security and protection"). Nor can Plaintiffs state a claim for unjust enrichment under New York law, given they do not plausibly allege the value of their information was diminished. *Mount v. PulsePoint*, 2016 WL 5080131,*13 (S.D.N.Y. Aug. 17, 2016) (emphasizing failure "to plead injury based on misappropriation of the value of their browsing information"), *aff'd*, 684 F. App'x 32 (2d Cir. 2017). Accordingly, Plaintiffs' unjust enrichment claims fail.

### H. Paramount Is Not a Proper Defendant

Paramount is also not a proper defendant. Plaintiffs themselves assert "Pluto is a Paramount subsidiary operating the Pluto TV video streaming service[,]" Compl. ¶ 5, and

Pluto's Terms provide: "Welcome to the network of interactive services provided by Pluto Inc. ('Pluto TV')[.]" Ex. C, Preamble. Paramount is a separate corporation and thus not a proper defendant. *Aliign Activation Wear v. lululemon*, 2020 WL 5790418, *2 (C.D. Cal. Aug. 24, 2020) ("[T]he corporation and its shareholders are distinct entities…insulat[ing] a parent corporation from liability created by its subsidiary, notwithstanding the parent's ownership of the subsidiary") (citation omitted).

## I.     Plaintiffs' Case Cannot Proceed as Class Action

Lastly, Plaintiffs' class claims should be dismissed because the Terms to which those Plaintiffs with accounts agreed contain a class waiver. *Provencher v. Dell, Inc.*, 409 F. Supp. 2d 1196, 1201 (C.D. Cal. 2006) ("[T]here is no blanket policy in California against class action waivers in the consumer context."). The Terms state that "YOU AND WE EACH AGREE TO RESOLVE SUCH DISPUTES THROUGH AN INDIVIDUAL BINDING ARBITRATION OR AN INDIVIDUAL ACTION IN SMALL CLAIMS COURT." Ex. C § 2. Though the Terms mandate application of New York law, class action waivers are routinely enforced by courts in New York and California. *Neims v. Neovia Logistics Distrib.*, 2023 WL 6369780, *6-8 (C.D. Cal. Aug. 10, 2023) (dismissing class claims because Plaintiff agreed to a class waiver); *Avecilla v. Live Nation Ent.*, 2025 WL 3292617, *1 (C.D. Cal. Nov. 25, 2025) (class action waiver clause enforced even though parties were not proceeding to arbitration); *Horton v. Dow Jones & Co.*, 804 F. App'x 81, 84-85 (2d Cir. 2020) (summary order) (similar). Because those Plaintiffs with accounts consented to the class waiver, their class claims should be dismissed.

## IV.   CONCLUSION

For all the foregoing reasons, Pluto respectfully requests that the Court dismiss the Complaint in its entirety.

1    The undersigned, counsel of record for Paramount Skydance Corporation and Pluto

2    Inc., certifies that this brief contains 6,999 words, which complies with the word limit of

3    L.R. 11-6.1.

4

5    Dated: January 8, 2026                    Respectfully submitted,

6                                             WEIL, GOTSHAL & MANGES LLP

7

8                                             By:  /s/ David R. Singh

9                                                  DAVID R. SINGH

10

11                                           DAVID R. SINGH
                                             david.singh@weil.com
12                                           WEIL, GOTSHAL & MANGES LLP
                                             201 Redwood Shores Parkway, 6th Floor
13                                           Redwood Shores, CA 94065-1134
                                             Telephone: (650) 802-3000
14                                           Facsimile: (650) 802-3100

15

16                                           DAVID L. YOHAI (*pro hac vice* pending)
                                             david.yohai@weil.com
17                                           BLAKE J. STEINBERG (*pro hac vice*
                                             pending)
18                                           blake.steinberg@weil.com
19                                           WEIL, GOTSHAL & MANGES LLP
                                             767 Fifth Avenue
20                                           New York, NY 10153
                                             Telephone: (212) 310-8000
21                                           Facsimile: (212) 310-8007
22

23                                           Attorneys for Defendants PARAMOUNT
                                             SKYDANCE CORPORATION & PLUTO
24                                           INC.

25

26

27

28