Sonjay C. Singh (*pro hac vice*)
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: ssingh@sirillp.com

Daniel Srourian, Esq. (SBN: 285678)
**SROURIAN LAW FIRM, P.C.**
468 N. Camden Dr. Suite 200
Beverly Hills, CA 90210
Telephone: (213) 474-3800
Facsimile: (213) 471-4160
Email: daniel@slfla.com

*Attorneys for Plaintiffs, Minor
Plaintiffs, and the Putative Class*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| **RAQUEL DIAZ**, on behalf of her minor child, **B.E.**, and all others similarly situated, **LISA MEDINA**, on behalf of her minor child, **G.C.**, and all others similarly situated, **OSCAR RODRIGUEZ**, on behalf of his minor child, **F.R.**, and all others similarly situated, **STACY RADER**, on behalf of her minor child, **S.C.**, and all others similarly situated, and **KATRINA MONTGOMERY**, on behalf of her minor children, **J.M.**, **J.A.**, and **J.M.**, and all others similar situated, | Case No. 5:25-cv-02945-KK (DTBx) Honorable Kenly Kiya Kato Courtroom 3, 3rd Floor **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** Date:        February 19, 2026 Time:        9:30 a.m. Courtroom:  3, 3rd Floor |
| Plaintiffs, | |
| v. | |
| **PARAMOUNT SKYDANCE CORPORATION** and **PLUTO INC.**, | |
| Defendants. | |

# **TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT.................................................................1

II.  LEGAL STANDARD...........................................................................3

III. ARGUMENT ....................................................................................3

    A.      PLAINTIFFS HAVE ARTICLE III STANDING............................3

    B.      DEFENDANTS' TERMS OF USE AND PRIVACY POLICY DO NOT BAR THIS ACTION ...........................................................6

        i.    Defendants Have Not Established the Existence of Any Agreement Between Itself and Plaintiffs or Minor Plaintiffs.6

        ii.   Even assuming *arguendo* that Plaintiffs agreed to the Terms and Privacy Policy, Defendants have not established that Minor Plaintiffs agreed to the Terms and Privacy Policy. .....7

            1.    *Minor Plaintiffs are Not Bound by their Parents' Acceptance of Defendants' Terms.* ...............................7

            2.    *Minor Plaintiffs have disaffirmed any contractual agreement with Defendants.* ...........................................7

        iii.  Even Assuming *Arguendo* That Minor Plaintiffs Agreed to the Privacy Policy, They Did Not Consent to Defendants' Conduct. ........................................................................8

            1.    *The Privacy Policy Does Not Disclose Defendants' Unlawful Conduct*........................................................8

            2.    *Defendants Fails to Establish That Plaintiffs Had Notice of the Children's Privacy Policy*......................9

    C.      PLAINTIFFS' VPPA CLAIM IS WELL PLED. ...........................10

        i.    Plaintiffs Plausibly Allege Disclosure of PII.......................10

        ii.   Plaintiffs Plausibly Allege that Defendant Knowingly Disclosed PII ......................................................................12

    D.      PLAINTIFFS' CIPA CLAIM IS WELL PLED .............................13

        i.    Defendants' status as party to the communications does not shield them from liability under CIPA. ...............................13

        ii.   Plaintiffs allege interceptions in transit. ...............................14

        iii.  Plaintiffs allege the interception of "contents"....................15

i

   iv. Plaintiffs allege scienter...................................................15

E. PLAINTIFFS' ECPA CLAIM IS WELL PLED. .........................16

  i. Plaintiffs satisfy the crime-tort exception............................16

  ii. Plaintiffs allege that Defendant's criminal and tortious
   purposes were separate from the interception. ....................19

F. PLAINTIFFS' INVASION OF PRIVACY CLAIM IS WELL
  PLED..........................................................................................20

G. PLAINTIFFS' NEGLIGENCE CLAIM IS WELL PLED............22

H. PLAINTIFFS' IMPLIED CONTRACT CLAIM IS WELL PLED.
  ....................................................................................................22

I. PLAINTIFFS' UNJUST ENRICHMENT CLAIM IS WELL
  PLED..........................................................................................23

J. PARAMOUNT IS A PROPER DEFENDANT IN THIS ACTION
  ....................................................................................................24

IV. CONCLUSION ...............................................................................24

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Midwest Express Care, Inc.*,
    2025 U.S. Dist. LEXIS (N.D. Ill. 2025) ..................................................29

*Apaydin v. Move, Inc.*,
    2025 U.S. Dist. LEXIS (C.D. Cal. 2025) ................................................18

*Ashcroft v. Iqbal*,
    556 U.S. (2009)...........................................................................................3

*B.K. v. Desert Care Network*,
    2024 U.S. Dist. LEXIS (C.D. Cal. 2024) ..........................................20, 27

*B.K. v. Eisenhower Med. Ctr.*,
    2024 U.S. Dist. LEXIS (C.D. Cal. 2024) ..........................................20, 22

*Balestrieri v. SportsEdTV, Inc.*,
    2025 U.S. Dist. LEXIS (N.D. Cal. 2025) ..................................................6

*Berman v. Freedom Fin. Network, LLC*,
    30 F.4th (9th Cir. 2022) ......................................................................10, 11

*Beverly v. Newport Mesa Riding Ctr.*,
    2024 Cal. Super. LEXIS (Cal. Sup. Ct. 2024).........................................10

*Cahill v. Liberty Mut. Ins. Co.*,
    80 F.3d (9th Cir. 1996) ..............................................................................3

*Chandra v. Prager Univ. Found.*,
    2025 U.S. Dist. LEXIS 216657 (C.D. Cal. 2025) ....................................13

*Cousin v. Sharp Healthcare*,
    702 F. Supp. 3d (S.D. Cal. 2023) .............................................................26

*Dawson v. Target Corp.*,
    2025 U.S. Dist. LEXIS (N.D. Cal. 2025) ..................................................7

*Dellasala v. Samba TV, Inc.*,
    2025 U.S. Dist. LEXIS (N.D. Cal. 2025) ..................................................5

iii

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

*Doe v. Meta Platforms, Inc.*,
690 F.Supp.3d (N.D. Cal. 2023) .................................................................................24

*Doe v. Regents of the Univ. of Cal.*,
672 F. Supp. 3d (N.D. Cal. 2023) ...............................................................................26

*Eichenberger v. ESPN, Inc.*,
876 F.3d (9th Cir. 2017) .........................................................................................4, 12

*Gaige v. Exer Holding Co., LLC*,
2025 U.S. Dist. LEXIS (C.D. Cal. 2025) ...................................................................20

*Garcia v. Bandai Namco Ent. Am. Inc.*,
2025 U.S. Dist. LEXIS (C.D. Cal. 2025) ...................................................................14

*Garcia v. Build.com, Inc.*,
2023 U.S. Dist. LEXIS (S.D. Cal. 2023) ...............................................................5, 14

*Gerber v. Twitter, Inc.*,
2024 U.S. Dist. LEXIS (N.D. Cal. 2024) ...................................................................28

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d (S.D. Cal. 2023) .................................................................................4

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
328 F.3d (9th Cir. 2003) .............................................................................................29

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d (C.D. Cal. 2024) ........................................................................12, 16

*Hernandez v. Hillsides, Inc.*,
47 Cal 4th (2009) ........................................................................................................25

*I.B. ex rel. Fife v. Facebook, Inc.*,
905 F. Supp. 2d (N.D. Cal. 2012) .................................................................................9

iv
**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

*In re Facebook Inc. Internet Tracking Litigation* ("*Facebook Tracking*"),
956 F.3d (9th Cir. 2020) .................................................................4, 16, 17, 25

*In re Facebook, Inc.*,
402 F. Supp. 3d (N.D. Cal. 2019).................................................................27

*In re Grp. Health Plan Litig.*,
709 F. Supp. 3d (D. Minn. 2023)..................................................................24

*In re Hulu Privacy Litig.*,
86 F. Supp. 3d 1090 (N.D. Cal. 2015)..........................................................13

*In re Pacific Fertility Center Litigation*,
U.S. Dist. LEXIS (N.D. Cal. 2019) ..............................................................30

*In re San Francisco 49ers Data Breach Litig.*,
2024 U.S. Dist. LEXIS (N.D. Cal. 2024) .....................................................28

*In re TikTok, Inc.*,
2025 U.S. Dist. LEXIS (C.D. Cal. 2025) .....................................................27

*Johnson v. Nice Pak Prods.*,
736 F. Supp. 3d (S.D. Ind. 2024).................................................................27

*Kane v. Univ. of Rochester*,
2024 U.S. Dist. LEXIS (W.D.N.Y. 2024).....................................................22

*Kishore v. Times Internet (UK) Ltd.*,
2024 U.S. Dist. LEXIS (N.D. Cal. 2024) .....................................................15

*Knappenberger v. City of Phoenix*,
566 F.3d (9th Cir. 2009) .................................................................................3

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d (9th Cir. 2002) ...............................................................................17

*Krayzman v. Istockphoto LP*,
2024 U.S. Dist. LEXIS (N.D. Cal. 2024) .....................................................11

*Kurowski v. Rush Sys. for Health* ("*Rush III*"),
2023 U.S. Dist. LEXIS (N.D. Ill. 2023) .......................................................22

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

*Lau v. Gen. Digit. Inc.*,
    2024 U.S. Dist. LEXIS (N.D. Cal. 2024) ........................................................26

*Lewis v. Magnite, Inc.*,
    2025 U.S. Dist. LEXIS (C.D. Cal. 2025) ........................................................29

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. (2014) ...............................................................................................3

*Lujan v. Defenders of Wildlife*,
    504 U.S. (1992) ...............................................................................................3

*M.G. v. Therapymatch, Inc.*,
    2024 U.S. Dist. LEXIS (N.D. Cal. 2024) ........................................................19

*McKee v. Audible, Inc.*,
    2017 U.S. Dist. LEXIS, (C.D. Cal. 2017) ......................................................11

*Mekhail v. N. Mem'l Health Care*,
    726 F. Supp. 3d (D. 25 Minn. 2024) ..............................................................22

*Meyers v. Alphabet, Inc.*,
    2022 U.S. Dist. LEXIS 98298 (C.D. Cal. 2022) ............................................12

*Mollett v. Netflix, Inc.*,
    795 F.3d 1062 (9th Cir. 2015) ..........................................................................6

*N.A. v. Nintendo of Am. Inc.*,
    2023 U.S. Dist. LEXIS (N.D. Cal. 2023) ..........................................................9

*N.Z. v. Fenix Int'l Ltd.*,
    2025 U.S. Dist. LEXIS (C.D. Cal., 2025) ......................................................13

*NovelPoster v. Javitch CanField Grp.*,
    140 F. Supp. 3d (N.D. Cal. 2014)....................................................................17

*Opperman v. Path, Inc.*,
    87 F. Supp. 3d (N.D. Cal. 2014)......................................................................26

*Patel v. Facebook, Inc.*,
    932 F.3d (9th Cir. 2019) ...................................................................................4

*Perez v. Bath & Body Works, LLC*,

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

2022 U.S. Dist. LEXIS 15091 (N.D. Cal. 2022) ........................................... 7

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ........................................................................ 5

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d (C.D. Cal. 2024) ........................................... 19, 20, 23

*R.S. v. Prime Healthcare*,
2025 U.S. Dist. LEXIS (C.D. Cal. 2025) ......................................... 21

*Ramirez v. Trusper, Inc.*,
2024 U.S. Dist. LEXIS (N.D. Cal. 2024) ......................................... 11

*Ribas v. Clark*,
38 Cal. 3d (1985) ........................................................................ 16

*Riganian v. LiveRamp Holdings, Inc.*,
2025 U.S. Dist. LEXIS (N.D. Cal. 2025) ......................................... 23

*S.G. v. Epic Games* ("*Epic*"),
796 F. Supp. 3d (N.D. Cal. 2025) ........................................... 8, 10

*Scollan v. Gov't Employees Ins. Co.*,
222 Cal. App. 2d (1963) ............................................................ 9

*Silver v. Stripe Inc.*,
2021 U.S. Dist. LEXIS (N.D. Cal. 2021) ................................... 25, 26

*Smith v. Trinity Broad. of Tex., Inc.*,
2024 U.S. Dist. LEXIS (C.D. Cal. 2024) ......................................... 15

*Snow v. Eventbrite, Inc.*,
2020 U.S. Dist. LEXIS (N.D. Cal. 2020) ........................................... 7

*Solomon v. Flipps Media*,
136 F.4th (2d Cir. 2025) ............................................................ 14

*Spencer v. Collins*,
156 Cal. (1909) ........................................................................ 9

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 U.S. Dist. LEXIS (N.D. Cal. 2024) ......................................... 26

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

*Toy v. Life Line Screening of Am. Ltd.,*
    2024 U.S. Dist. LEXIS (N.D. Cal. 2024) ........................................................ 19

*TransUnion LLC v. Ramirez,*
    594 U.S. (2021) ................................................................................................ 4

*United States v. Christensen,*
    828 F.3d (9th Cir. 2015) ................................................................................ 19

*Y.H. v. Blizzard Entm't, Inc.,*
    2023 U.S. Dist. LEXIS (C.D. Cal. 2023) ..................................................... 9

*Yoon v. Lululemon United States,*
    549 F. Supp. 3d (C.D. Cal. 2021) ............................................................... 18

**Statutes**

15 U.S.C. § 6502 ............................................................................................... 21

18 U.S.C. § 2511 ............................................................................................... 20

18 U.S.C. § 2710 ............................................................................................... 12

18 U.S.C.S.§ 2511 ............................................................................................. 23

Cal. Fam. Code § 6710 ....................................................................................... 9

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

# I.    **PRELIMINARY STATEMENT**

Defendants Paramount Skydance Corporation ("Paramount") and Pluto Inc. ("Pluto") operate PlutoTV, a video streaming service providing streaming content to over 1-billion subscribers worldwide (the "Platform").[1] In their Complaint, Plaintiffs Raquel Diaz, Lisa Medina, Oscar Rodriquez, Stacy Rader and Katrina Montgomery (collectively, "Plaintiffs") allege that their pseudonymously named minor children (collectively, "Minor Plaintiffs") watched child-directed video content hosted on the Platform's "Kids" section. *Id*. ¶¶ 4-5. Unfortunately, unbeknownst to Plaintiffs, Defendants were secretly tracking and disclosing Minor Plaintiffs' interactions with the Platform, including specific information about the videos they viewed and personally identifying information (the "Sensitive Information") through the use of surreptitious online surveillance software (the "Tracking Tools") produced by Microsoft Corp. ("Microsoft") and Alphabet, Inc. ("Google"). *Id.* ¶¶ 6-12. As a result of Defendants' use of the Tracking Tools, Minor Plaintiffs' Sensitive Information was disclosed to unauthorized third parties, including the largest internet advertisers in the world. Plaintiffs thus allege that Defendants' use of the Tracking Tools violated both the federal and California wiretap statutes, the Video Privacy Protection Act ("VPPA"),[2] and establishes common law claims including for invasion of privacy. *Id.* ¶¶ 13-14.

In their Motion to Dismiss, Defendants do not challenge the fact that they collected and disclosed Sensitive Information through the Platform, including from children watching video content hosted on the Platform's "Kids" section.[3] Nor do they dispute that they shared the Sensitive Information of children with the largest advertisers in the world. *Id*. Instead, Defendants argue that Plaintiffs cannot establish Article III standing; failed to abide by conditions precedent and consented to Defendants' use of

---

[1] *See* ECF No. 1 (the "Complaint" or "Comp."), at ¶¶.
[2] 18 U.S.C. § 2710, *et seq.*
[3] *See* ECF No. 32 (the "Motion" or "Mot.").

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

the Tracking Tools through operation of the Platform's Terms of Use ("Terms") and Privacy Policy; and fail to properly plead every one of their statutory and common law claims. None of these arguments are availing.

*First*, Minor Plaintiffs have suffered privacy injuries sufficient to establish Article III standing through the disclosure of their Sensitive Information. This injury is both the type of privacy injury common recognized at common law and, moreover, is additionally codified through two independent federal statues: the VPPA, which protects the confidentiality of video consumption; and the Children's Online Privacy Protection Act ("COPPA"),[4] which broadly protects the online privacy of children, like Minor Plaintiffs.

*Second*, Defendants' arguments relating to the Terms and Privacy Policy attached to the Motion must fail for at least four independent reasons:[5] (1) Defendants' fail to actually show that they have attached versions of the Terms and Privacy Policy that are applicable to Plaintiffs; (2) Defendants failed to provide sufficient notice to Plaintiffs and Minor Plaintiffs of the terms that they claim establish Plaintiffs' consent; (3) Defendants fail to establish that any agreement with Plaintiffs may be imputed to Minor Plaintiffs; and (4) in any instance, Minor Plaintiffs have disaffirmed any contractual obligations with Defendants through filing the Complaint.

*Third*, Plaintiffs' allegations that Defendants knowinly used the Tracking Tools to intercept and contemporaneously transmit Minor Plaintiffs' Sensitive Information to unauthorized third parties is sufficient to establish the claims alleged in the Complaint.

For these reasons, as explained further herein, Defendants' Motion should be denied in its entirety.

---

[4] 15 USCS § 6501, *et seq.*
[5] *See* ECF No 32-1 (the "Steinberg Decl."), Exhibits A-F (Dfts. Exs. A-F").

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

## II.     LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss, the burden of proof is on the movant, and the court draws all reasonable inferences in plaintiff's favor, assuming all well pleaded factual allegations to be true and determining whether they plausibly give rise to an entitlement to relief. *See, e.g., Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337– 38 (9th Cir. 1996). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Courts are instructed to freely grant leave to amend unless the defects identified could not possibly be cured. *See, e.g., Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## III.     ARGUMENT

### A. PLAINTIFFS HAVE ARTICLE III STANDING.

Article III standing "requires only that the plaintiff's injury be fairly traceable to the defendant's conduct." *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 572 U.S. 118, 134 n.6 (2014). At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Intangible harms can be concrete where the injuries have "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts. Those include, for example, reputational harms, **disclosure of private information, and intrusion upon seclusion**." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) (emphasis added). Indeed, "violations of the right to privacy have long been actionable at common law." *Patel v. Facebook, Inc*., 932 F.3d 1264, 1272 (9th Cir. 2019) (quoting *Eichenberger v. ESPN, Inc*., 876 F.3d 979, 983 (9th Cir. 2017)); *see also Greenley v. Kochava, Inc*., 684 F. Supp. 3d 1024, 1037 (S.D. Cal. 2023) ("Violations of [the right to privacy] fall into the category of traditionally recognized harms." (citation omitted)). "A right to privacy 'encompass[es] the individual's control of information

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

concerning his or her person.'" *In re Facebook Inc. Internet Tracking Litigation* ("*Facebook Tracking*"), 956 F.3d 589, 598 (9th Cir. 2020) (quoting *Eichenberger*, 876 F.3d at 983).

As the Ninth Circuit made explicit in *Facebook Tracking*, data tracking and collection practices which "cause harm or a material risk of harm to [an individual's] interest in controlling their personal information" constitute a "concrete injury sufficient to confer standing." 956 F.3d at 598-99 (9th Cir. 2020). Numerous courts have held that *TransUnion*'s holding that "Article III standing requires a concrete injury even in the context of a statutory violation," does not undermine the reasoning in *Facebook Tracking* because "that aspect of *TransUnion*'s holding was not new; it was a reiteration (and a direct quote) of the Supreme Court's holding in *Spokeo*, decided in 2016." *Garcia v. Build.com, Inc.*, 2023 U.S. Dist. LEXIS 121085, at *9 (S.D. Cal. July 13, 2023) (internal quotation marks and citations omitted).

Contrary to Defendants' argument,[6] the Ninth Circuit's decision in *Popa v. Microsoft Corp.*, 153 F.4th 784, 794 (9th Cir. 2025) did not change this calculus. Rather, the Ninth Circuit explicitly recognized that *Transunion* did *not* jeopardize the *Facebook Tracking* or *Eichenberger* opinions because "those decisions still accounted for the individual circumstances giving rise to the plaintiffs' alleged injuries rather than simply greenlighting a per se rule for privacy statutes." *Popa*, 153 F.4th at 794. More precisely, "*Popa* did not set forth a new rule of law—the issue of whether a privacy violation gives rise to an injury-in-fact for purposes of Article III standing is a frequent feature in these [types of data tracking] cases." *Dellasala v. Samba TV, Inc.*, 2025 U.S. Dist. LEXIS 214580, at *6 (N.D. Cal. Oct. 30, 2025) (citing *Facebook Tracking*, 956 F.3d at 598).

Indeed, the facts of the *Popa* case are entirely distinct from those present here. In *Popa*, the plaintiff was simply browsing for pet supplies on the website, www.petsuppliesplus.com. 153 F.4th at 786. Importantly, and unlike here, the

---

[6] *See* Def. Mot. at 4:22-23.

**4**

1    allegations in *Popa* did not involve disclosures to third parties nor did the plaintiff
2    identify any "embarrassing, invasive, or otherwise private information collected by [the
3    tracking software]." *Id.* at 791. Rather, the Ninth Circuit analogized the injuries suffered
4    by the plaintiff to a store clerk observing customers. *Id.*

5        The facts of this case are like those that gave rise to the enactment of VPPA to
6    begin with: a video clerk disseminating customer records to a third party without the
7    customer's authorization. *See Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir.
8    2015) (discussing the origin of the VPPA). "[T]he requirement of concrete injury
9    for Article III standing is satisfied when a consumer alleges that his video viewing
10   history has been impermissibly disclosed in violation of the VPPA." *Balestrieri v.*
11   *SportsEdTV, Inc.*, 2025 U.S. Dist. LEXIS 194373, at *21 (N.D. Cal. Sep. 16, 2025).
12   Plaintiffs allege that their children's video viewing history was extensively tracked by
13   Defendants and disclosed—without their consent—to third parties, including Google
14   and Microsoft, two of the largest digital advertisers in the world.

15       The alleged disclosure at issue here is far more intrusive than that considered in
16   *Popa. See De Ayora v. Inspire Brands, Inc.*, 2025 U.S. Dist. LEXIS 264583, at *6
17   ("Using the same analogy in *Popa*," allegations that "[d]efendants' cookies scooped up
18   [plaintiffs'] historical data . . . via referring URLs" are "beyond what would be
19   observable to a store clerk tasked with monitoring shoppers").[7] Thus, Plaintiffs have
20   adequately alleged a concrete injury for the purposes of establishing Article III standing.

21
22
23
24
_____
25   [7] *See also Tsering v. Meta*, 2026 U.S. Dist. LEXIS 5762, at *8 (N.D. Cal. Jan. 12, 2026) (finding the scope of the alleged data collection materially more invasive than the
26   allegations in *Popa*); *Gilligan v. Experian Data Corp.*, 2026 U.S. Dist. LEXIS 1907, at *6 (N.D. Cal. Jan. 6, 2026) (same); *Camplisson v. Adidas Am., Inc.*, 2025 U.S. Dist.
27   LEXIS 228012, at *17-18 (S.D. Cal. Nov. 18, 2025) (same); *Deivaprakash v. Conde Nast Digit.*, 2025 U.S. Dist. LEXIS 193968, at *4 (N.D. Cal. Sep. 30, 2025) (same).
28
                              **5**
                **PLAINTIFFS' RESPONSE IN OPPOSITION TO**
                **DEFENDANTS' MOTION TO DISMISS**

## B.  DEFENDANTS' TERMS OF USE AND PRIVACY POLICY DO NOT BAR THIS ACTION

### i.  Defendants Have Not Established the Existence of Any Agreement Between Itself and Plaintiffs or Minor Plaintiffs.

**First,** two of the Plaintiffs allege that their minor children used the Platform in 2024. *See* Compl. ¶¶ 27-34. The other two Plaintiffs allege use of the Platform in 2025, but do not assert a specific date on which their accounts were created. *Id*. ¶¶ 15-26. Yet, the Privacy Policy included with Defendants' Motion states that it was "Last Modified: August 7, 2025." Dfts. Ex. E. Accordingly, this Privacy Policy is clearly not the one that Plaintiffs alleging use of the Platform in 2024 would have supposedly agreed to, nor have Defendants provided evidence that Plaintiffs alleging use of the Platform in 2025 registered for their accounts after August 7th. *See* Dfts. Ex. G. Defendants cannot satisfy their burden to show an agreement existing between themselves and Plaintiffs through a document that was drafted after that agreement was allegedly formed.[8]

**Second**, Plaintiffs allege that the Platform may be accessed not just online, but through "Defendants' many mobile phone, tablet, and desktop applications." Compl. ¶ 5. While Defendants provide a screenshot showing the account registration page on their website, Defendants do not assert that Plaintiffs used their website to register for an account, as opposed to one of their many other applications. Dfts. Ex. B. This information is firmly within Defendants' control because Plaintiffs provided information to Defendants at their request so that Defendants could identify Plaintiffs' Platform accounts. *See* Dfts. Ex. G. Without providing evidence that the account creation page depicted in Dfts. Ex. B was used by Plaintiffs to create their accounts,

---

[8] *See, e.g., Snow v. Eventbrite, Inc.*, 2020 U.S. Dist. LEXIS 193249, at *15 (N.D. Cal. Oct. 19, 2020) (stating defendant would only meet its burden to show an agreement to operate "if it could show what the agreements looked like during the period when the plaintiffs would have actually seen them"); *Dawson v. Target Corp.*, 2025 U.S. Dist. LEXIS 111315, at *5 (N.D. Cal. June 11, 2025) ("[Defendant] cannot rely on screenflows from 2022 to prove consent in 2014"); *Perez v. Bath & Body Works, LLC*, 2022 U.S. Dist. LEXIS 15091, at *2 (N.D. Cal. Jan. 27, 2022) (finding defendant did not meet its burden where "[plaintiff] allegedly registered for the loyalty program in September 2017" but defendant attached terms and conditions that "did not take effect until October 15, 2019").

Defendants cannot meet their burden of showing a binding agreement between themselves and Plaintiffs.

### ii. Even assuming *arguendo* that Plaintiffs agreed to the Terms and Privacy Policy, Defendants have not established that Minor Plaintiffs agreed to the Terms and Privacy Policy.

#### 1. *Minor Plaintiffs are Not Bound by their Parents' Acceptance of Defendants' Terms.*

Defendants cite one case to summarily conclude that Minor Plaintiffs are bound by any acceptance of Defendants' Terms and Privacy Policy made by Plaintiffs. *See* Mot. at 7 (citing *S. G. v. Epic Games* ("*Epic*"), 796 F. Supp. 3d 614, 620-21 (N.D. Cal. 2025). Not so. In reality, as *Epic* acknowledges, a parent's agreement is generally only imputed against a child where "the parent entered the agreement at least in part for the child's benefit." 796 F. Supp. 3d 614, 621 (N.D. Cal. 2025). But, unlike in *Epic*, Defendants fail to provide any facts to suggest that (1) Plaintiffs agreed to the Terms contemporaneously with their children's use of the Platform; (2) use of the Plaintiffs Platform account was limited solely to use by Minor Plaintiffs; and/or (3) that Plaintiffs subsequently re-affirmed acceptance of the Terms after Minor Plaintiffs use of the Platform. *See id*. Absent such a showing, the Court cannot impute any contractual acceptance by Plaintiffs onto the Minor Plaintiffs. *See, e.g., Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1036 (N.D. Cal. 2020).

#### 2. *Minor Plaintiffs have disaffirmed any contractual agreement with Defendants.*

Even if Minor Plaintiffs *did* assent to the Terms, they have disclaimed any contractual agreement by filing this action. "Under [Cal. Fam. Code] section 6710, a minor may disaffirm a contract 'before majority or within a reasonable time' after reaching majority." *N.A. v. Nintendo of Am. Inc*., 2023 U.S. Dist. LEXIS 220175, at *10 (N.D. Cal. Dec. 11, 2023) (quoting Cal. Fam. Code § 6710). "A contract (or conveyance) of a minor may be avoided by any act or declaration disclosing an

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

unequivocal intent to repudiate its binding force and effect." *Spencer v. Collins*, 156 Cal. 298, 303 (1909). "No specific language is required to communicate an intent to disaffirm." *Berg v. Traylor*, 148 Cal. App. 4th 809, 820 (2007). "Disaffirmation by a minor rescinds the entire contract, rendering it a nullity." *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1000 (N.D. Cal. 2012) (citing *Scollan v. Gov't Employees Ins. Co.*, 222 Cal. App. 2d 181, 183-84 (1963)). In this case, by filing this action, the Plaintiffs' Children have disaffirmed any contract that exists between them and Defendants. *See Y.H. v. Blizzard Entm't, Inc*., 2023 U.S. Dist. LEXIS 92679, at *6 (C.D. Cal. Feb. 27, 2023) ("…there is simply no disagreement in the case law as to whether a minor's initiation of a lawsuit is sufficient to disaffirm a contract—the answer is unequivocally yes") (collecting cases). Moreover, Minor Plaintiffs' disaffirmation of any contract with Defendants is valid as to both contracts entered into by Minor Plaintiffs themselves, or by Plaintiffs on their behalf. *See Beverly v. Newport Mesa Riding Ctr.*, 2024 Cal. Super. LEXIS 39443, *14 (Cal. Sup. Ct. Sep. 26, 2024) (finding that "minor may disaffirm an arbitration agreement signed by a parent"). Neither Defendants' Motion nor the authority cited therein address Minor Plaintiffs' clear disaffirmation of any contractual obligations with Defendants. *See Epic*, 796 F. Supp. 3d at 622 (N.D. Cal. 2025) (nothing that the minor plaintiff's "sole challenge to the arbitration agreement is based on the issue of contract formation").

### iii. Even Assuming *Arguendo* That Minor Plaintiffs Agreed to the Privacy Policy, They Did Not Consent to Defendants' Conduct.

#### 1. *The Privacy Policy Does Not Disclose Defendants' Unlawful Conduct*

The Privacy Policy explicitly states that it does not apply to minors. Thus, it could not have provided notice to Plaintiffs or Minor Plaintiffs of Defendants' use of the Tracking Tools to collect Minor Plaintiffs' Sensitive Information. *See* Dfts. Ex. D, at 16.

**8**

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

### 2. *Defendants Fails to Establish That Plaintiffs Had Notice of the Children's Privacy Policy*

A sign-in wrap agreement like that on Defendants' account creation page is enforceable where: "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022); *accord Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1154 (9th Cir. 2025). "Website users are entitled to assume that important provisions—such as those that disclose the existence of proposed contractual terms—will be prominently displayed, not buried in fine print." *Berman*, 30 F.4th at 857. Accordingly, "[c]ourts commonly reject[] agreements…where a multi-step process is required for a website visitor to view the agreement at issue." *Ramirez v. Trusper, Inc.*, 2024 U.S. Dist. LEXIS 186303, at *15-16 (N.D. Cal. Oct. 11, 2024).

Defendants' account creation page does not disclose the existence of a separate Children's Privacy Policy. *See* Dft. Ex. B. Rather, to find the Children's Privacy Policy, a user must click the link to the Defendant's Privacy Policy on the account creation page, scroll to the **seventeenth** page of the Privacy Policy before even being informed of the existence of the Children's Privacy Policy, then follow another link to see the actual terms of the Children's Privacy Policy. *See* Dft. Ex. D, at 17. Defendants' failure to notify Plaintiffs of the contractual terms to which they were agreeing, combined with the attenuated process that Plaintiffs would have had to embark upon to find those terms, is irreconcilable with the prominent notice requirement imposed under California law for enforcement of a sign-in wrap agreement. Indeed, courts applying California law routinely refuse to enforce contractual terms under similar circumstances.[9]

---

[9] *See, e.g., Krayzman v. Istockphoto LP*, 2024 U.S. Dist. LEXIS 181294, at *1-2 (N.D. Cal. Oct. 3, 2024) (finding statement that users agree to a Terms of Use and Privacy Policy did not bind users to a separate License Agreement linked within the Privacy

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

## C. PLAINTIFFS' VPPA CLAIM IS WELL PLED.

The VPPA provides that "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person[.]" 18 U.S.C. § 2710(b)(1). Congress's passing of the VPPA "evinces the principle that protection is merited when the consumer lacks control over the dissemination of the information at issue." *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 856 (C.D. Cal. 2024). Here, Defendants knowingly disclosed Minor Plaintiffs' Sensitive Information to third parties, including Google and Microsoft, without their consent.

### i. Plaintiffs Plausibly Allege Disclosure of PII

The VPPA defines PII as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). The Ninth Circuit has adopted an "ordinary person" test to determine what information satisfies the statutory definition of PII. *See Eichenberger*, 876 F.3d at 985. To adequately plead a disclosure of PII under the VPPA, a plaintiff must allege that the defendant disclosed to a third party "1) a consumer's identity; 2) the identity of specific video materials; and 3) the fact that the person identified requested or obtained that material." *Chandra v. Prager Univ. Found.*, 2025 U.S. Dist. LEXIS 216657, at *9-10 (C.D. Cal. Oct. 21, 2025) (citing *In re Hulu Privacy Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015)). Plaintiffs do so.

***First***, Plaintiffs allege that when Minor Plaintiffs watched videos on the Platform, Google and Microsoft Pixels acquire data from cookies on Minor Plaintiffs' browsers that identify Minor Plaintiffs' Google and Microsoft accounts, which often contain

---

Policy and Terms of Use); *McKee v. Audible, Inc.*, 2017 U.S. Dist. LEXIS 174278, at *31-32 (C.D. Cal. July 17, 2017) (same where agreement to Terms did not bind users to terms contained in agreements listed as part of those Terms"); *Meyers v. Alphabet, Inc.*, 2022 U.S. Dist. LEXIS 98298, at *11 (C.D. Cal. Feb. 14, 2022) (same where agreement to Terms and Conditions did not bind users to "a forum selection clause found numerous hyperlinks away").

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

identifying information, such as names, locations, and contact information. Compl. ¶¶ 85-87. The Pixels combine this identifying data with information about the specific videos Minor Plaintiffs watched, and simultaneously transmit the information to Google and Microsoft, enabling them to identify the individual and the video they watched. *Id.* ¶¶ 56, 88, 100-01. The Pixels also transmit Minor Plaintiffs' unique browser fingerprints, which can reveal their physical locations. *Id.* ¶¶ 86, 91-92, 100-01.

By installing and configuring the Tracking Tools on the Platform (*Id.* ¶¶ 77, 97, 103), Defendants disclosed Minor Plaintiffs' and Class Members' PII. Contrary to Defendants' suggestions, Minor Plaintiffs' allegations are not comparable to the allegations in *N.Z. v. Fenix Int'l Ltd.*, 2025 U.S. Dist. LEXIS 259990 (C.D. Cal. Dec. 12, 2025). In *Fenix*, plaintiffs allege the platform at issue collected and transmitted users' platform usernames. *Id.* at *40. Importantly, usernames used to locate and view a user's profile on a specific platform cannot be likened to cookies that allow users' activity across the internet to be tracked, linked to their Google and Microsoft accounts, and compiled into advertising profiles specific to the individual's demography and interests. Compl. ¶¶ 6, 65, 85, 88, 106. Nor can Defendants rely on the out-of-circuit cases *Solomon v. Flipps Media*, 136 F.4th 41(2d Cir. 2025) and *Hughes v. NFL*, 2025 U.S. App. LEXIS 15216 (2d Cir. June 20, 2025). *See Garcia v. Bandai Namco Ent. Am. Inc.*, 2025 U.S. Dist. LEXIS 152616, at *22 (C.D. Cal. Aug. 7, 2025) ("The Court is not bound to follow the Second Circuit's application of the ordinary person standard.").

Indeed, in *Eichenberger*, the Ninth Circuit has acknowledged that "modern technology may indeed alter—or may already have altered—what qualifies [as PII] under the [VPPA]." 876 F.3d at 986. As courts have further recognized, "[c]onsidering how code is the primary communication medium for data sharing technologies and a growing proportion of the public has the technological fluency to discern information from lines of code, particularly with the advent of artificial intelligence tools," *Garcia*, 2025 U.S. Dist. LEXIS 152616, at *23, the "ordinary person" inquiry must be assessed

**11**

in light of contemporary technological realities. With this in mind, and because corporations are routinely treated as "persons" under the law, it follows that the "ordinary person" standard encompasses companies like Google and Microsoft. Minor Plaintiffs have plausibly alleged that Defendants' disclosure of "highly specific viewing behavior data on a massive scale with great accuracy" amounts to the disclosure of PII at this stage. *Vizio*, 238 F. Supp. 3d 1204, 1225 (C.D. Cal. 2017) (denying motion to dismiss); *see also Garcia*, 2025 U.S. Dist. LEXIS 152616, at *22 ("[I]t is a question of fact whether an ordinary person could identify [p]laintiffs . . . from [] pixel code.").

**Second**, Plaintiffs allege, using exemplar screenshots, that Defendants disclosed the specific titles of the videos Minor Plaintiffs watched. Compl. ¶¶ 98-101. Contrary to Defendants' assertions, nothing more is required this juncture. *See Vizio*, 238 F. Supp. 3d at 1225-26 ("Ultimately, [p]laintiffs will have to demonstrate that Vizio's disclosures are reasonably and foreseeably likely to reveal what video content [p]laintiffs have watched…But this is a factual inquiry ill-suited on a motion to dismiss."); *see also Kishore v. Times Internet (UK) Ltd.*, 2024 U.S. Dist. LEXIS 164633, at *7 (N.D. Cal. Sept. 12, 2024) (declining to "decide a factual dispute at the heart of plaintiffs' case" and finding that plaintiffs sufficiently alleged plaintiff—"as a past subscriber who watched prerecorded videos on [the website]—had his [PII] shared with Meta by the Pixel").

### ii. Plaintiffs Plausibly Allege that Defendant Knowingly Disclosed PII

Plaintiffs allege that by installing third-party Tracking Tools on the Platform, and by configuring those Tracking Tools to collect Sensitive Information, Defendants knowingly caused Plaintiffs' Sensitive Information to be transmitted to third parties, including Google and Microsoft. Compl. ¶¶ 77, 97, 103-04. This is all that is required of Plaintiffs at this stage. *Smith v. Trinity Broad. of Tex., Inc.*, 2024 U.S. Dist. LEXIS 176039, at *8-9 (C.D. Cal. Sept. 27, 2024) (finding plaintiff plausibly pled knowing

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

disclosure of PII where she alleged that defendant knew Facebook IDs would be transmitted due to its installation of the Facebook Pixel on their website, defendant programmed the pixel on its website to share beyond the default categories, and defendant did not deny its usage of pixel technology).

## D. PLAINTIFFS' CIPA CLAIM IS WELL PLED

Plaintiffs successfully allege claims under Section 631(a) by both establishing that Defendants directly violated CIPA, and that Defendants aided and abetted Google and Microsoft's interception and use of Minor Plaintiffs' intercepted Sensitive Information.

### i. Defendants' status as party to the communications does not shield them from liability under CIPA.

The Ninth Circuit has held that "simultaneous unknown duplication and communication of GET requests [the requests made by a web browser to a website] do not exempt a defendant from liability under the party exception." *Facebook Tracking*, 956 F.3d at 608. In coming to this conclusion, the Ninth Circuit reasoned that "[p]ermitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion, allowing the [party] exception to swallow the rule." *Id*. "[S]uch secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the first-hand dissemination of his statements." *Ribas v. Clark*, 38 Cal. 3d 355, 361 (1985). As discussed further *infra*, Plaintiffs allege that while communicating with Defendants, Defendants contemporaneously shares their communications with third parties, including Google and Microsoft—precisely the type of "unannounced second auditors" Section 631 seeks to protect against. Compl. ¶¶ 4, 102, 106, 184; *see Heerde*, 741 F. Supp. 3d at 861 (quoting *Ribas*, 38 Cal. 3d at 361).

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

### ii.  Plaintiffs allege interceptions in transit.

For a communication with a website to be "intercepted" without authorization, it "must be acquired during transmission, not while it is in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002); *NovelPoster v. Javitch CanField Grp.*, 140 F. Supp. 3d 938, 954 (N.D. Cal. 2014) (applying *Konop* in the context of a CIPA claim). On a motion to dismiss, a plaintiff "need not prove their theory of interception," but rather "must provide fair notice to [d]efendants of when they believe ['the defendant] intercepts their communications." *Vizio*, 238 F. Supp. 3d at 1228. A plaintiff properly alleges interception in transit where they allege that communications made with a website were "replicated and sent in parallel to the tracking entities." *Heerde*, 741 F. Supp. 3d at 849; *see also Facebook Tracking*, 956 F.3d at 608 ("simultaneous, unknown duplication and communication of GET requests do not exempt a defendant from liability under the party exception").

Here, Plaintiffs allege throughout the Complaint that Defendants' transmissions of Sensitive Information occur contemporaneously as Minor Plaintiffs navigate the Platform. *See* Compl. ¶¶ 4, 102, 106, 184 (characterizing transmissions as simultaneous, contemporaneous duplication and transmission). These allegations clearly state interception in-transit under Ninth Circuit law. *See Gray*, 2024 U.S. Dist. LEXIS 243633, at *14-15 ("*Facebook Tracking* squarely controls" where pixels directed users' browsers to "contemporaneously send a separate message to Facebook's servers").[10]

---

[10] Defendants' passing argument that there is "no indication the California legislature intended to criminalize the conduct alleged" is equally unavailing. Mot. at 12:1. Indeed, the California Legislature enacted CIPA in response to "advances in science and technology" that "have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications[,]" recognizing that "the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." Compl. ¶ 207 (quoting Cal. Pen. Code § 630).

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

### iii.   Plaintiffs allege the interception of "contents"

Under CIPA, "contents" includes "any information concerning the substance, purport, or meaning of that communication." *Yoon v. Lululemon United States*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (applying the ECPA definition of "content" to Section 631(a) claims). The "content" inquiry is "a contextual 'case-specific' analysis hinging on 'how much information would be revealed' by the information's tracking and disclosure." *Id.* at 1082 (citations omitted). Minor Plaintiffs allege the interception of their identifiable information, the specific videos they watched, and any other interactions on the Platform. Compl. ¶¶ 4, 102-03, 179, 210. This is not "record information" as Defendants suggest (Mot. at 12), but information that reveals the specific video content that Minor Plaintiffs requested and viewed on the Platform. Compl. ¶ 6; *see also Yoon*, 549 F. Supp. 3d at 1082 (CIPA protects "user-generated material"). This District has found, "[a]s many courts in the Ninth Circuit" have, that allegations like Plaintiffs' adequately allege this element of CIPA. *Apaydin v. Move, Inc.*, 2025 U.S. Dist. LEXIS 215336, at *8-9 (C.D. Cal. Oct. 29, 2025) (denying motion to dismiss plaintiff's CIPA claim where plaintiff alleged that the "specific video content they requested . . . and the type of actions they [took] on the website" were disseminated through the use of Facebook Tracking Tools) (collecting cases)).

### iv.   Plaintiffs allege scienter.

To plead the intent requirement of the fourth clause of Section 631(a), a plaintiff must plead facts showing that the defendant "acted consciously and deliberately with the goal of intercepting wire communications." *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024) (quoting *United States v. Christensen*, 828 F.3d 763, 775 (9th Cir. 2015)). Plaintiffs allege that Defendants intentionally installed the Tracking Tools on the Platform to collect data, including Minor Plaintiffs' Sensitive Information, knowing that they would receive "compensation in the form of advanced advertising and data analysis services and/or cost-effective marketing on third-party platforms[.]"

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Compl. ¶ 57-95, 116. These allegations demonstrate that Defendants knew that Google and Microsoft were violating CIPA by collecting and monetizing Minor Plaintiffs' communications through the Platform and installed the Tracking Tools to further those violations. Numerous courts have found that CIPA's scienter requirement is satisfied through allegations similar to Plaintiffs'. *See, e.g.*, *Toy v. Life Line Screening of Am. Ltd.*, 2024 U.S. Dist. LEXIS 88872, at *3 (N.D. Cal. Mar. 19, 2024) (allegations that defendant "purposely installed these tracking technologies to optimize its advertising and marketing" satisfied scienter); *M.G. v. Therapymatch, Inc.*, 2024 U.S. Dist. LEXIS 166534, at *5 (N.D. Cal. Sept. 16, 2024) (allegations that defendant "knowingly agreed to use Google Analytics, embedded tracking technology code on its website, and allowed Google to have direct access to [defendant's website] users' private medical information" sufficiently pled aiding and abetting under CIPA).

For the foregoing reasons, the Court should deny Defendants' motion to dismiss Plaintiffs' CIPA claims.

### E. PLAINTIFFS' ECPA CLAIM IS WELL PLED.

#### i. Plaintiffs satisfy the crime-tort exception.

Plaintiffs allege that Defendants violated the ECPA, 18 U.S.C. § 2511, *et seq.*, which forbids (i) interception of electronic communications, (ii) disclosure of intercepted electronic communications and (iii) using the contents of those electronic communications. *See* Compl. ¶¶ 224-61. Defendants argue that there can be no ECPA liability because they were parties to the communications at issue and the crime-tort exception does not apply. *See* Mot. at 13-15.

***First***, as explained further in § (III)(F), *infra*, Defendants tortiously invaded Minor Plaintiffs' privacy, which is sufficient to support the application of the crime-tort exception. *See Walgreen*, 733 F. Supp. 3d at 902 (denying motion to dismiss ECPA and CIPA claim where plaintiffs' invasion of privacy claim was sufficiently pled); *Gaige v. Exer Holding Co., LLC*, 2025 U.S. Dist. LEXIS 17146, at *15 (C.D. Cal. Jan. 30, 2025)

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

(finding the complaint sufficiently alleged an "illegitimate purpose that was at least a determining factor for defendant's actions" where plaintiff alleged violations of invasion of privacy); *B.K. v. Desert Care Network*, 2024 U.S. Dist. LEXIS 18970, at *16 (C.D. Cal. Feb. 1, 2024) (finding the ECPA's one-party exemption did not apply because "[d]efendants disclosed these communications to Meta in violation of various state tort claims and state and federal laws" including common law invasion of privacy).[11]

**Second**, Plaintiffs allege that Defendants' disclosures violated the VPPA (as explained above) and COPPA. Defendants argue that "Plaintiffs do not plead they used Pluto's separate 'Kids Mode' when they watched through their Parents' accounts," and so "have not plausibly alleged Pluto had 'actual knowledge'" that it was collecting information of the Minor Plaintiffs as opposed to their parents to support a COPPA violation. Mot. 15:20-23. But COPPA applies both when a web services operator has actual knowledge that a user is a minor *and* to any data collection from an "online service directed to children." 15 U.S.C. § 6502(b)(1); *see also* 16 CFR § 312.2. Because all Minor Plaintiffs allege that they watched content hosted in the "Kids" section of the Platform, COPPA inarguably governs Defendants' data collection.

Defendants further argue that Plaintiffs cannot rely on COPPA to satisfy the crime-tort exception because COPPA lacks a private right of action. But Plaintiffs do not allege an independent cause of action for violations of COPPA. Rather, they correctly allege that a COPPA violation is a "violation of the… laws of the United States" as required by the crime-tort exception. 18 U.S.C.S.§ 2511(2)(d). In opposing this conclusion, Defendants purposefully ignore the overwhelming consensus in the

---

[11] Even were the Court to find that Defendants' disclosures did not invade Plaintiff's privacy, the allegations as to its intent to do so are sufficient to support the application of the crime-tort exception. *See R.S. v. Prime Healthcare*, 2025 U.S. Dist. LEXIS 6338, at *12 (C.D. Cal. Jan. 13, 2025) (holding "the focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception—its intended use—was criminal or tortious.") (citation omitted)).

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Ninth Circuit and beyond that a violation of the HIPAA Privacy Rule resulting from similar Tracking Tool disclosures satisfies the crime-tort exception.[12] Like HIPAA, COPPA is a federal statute protecting the privacy of individually identifiable information that does not have a private right of action but is instead enforced by federal agencies, including the FTC. Defendants offer no explanation for why a HIPAA violation satisfies the crime-tort exception, but a COPPA violation does not.

**Third**, Defendants argue that Defendants' purpose in using the Tracking Tools was "to improve [their] website's functionality or attempt to make money." Mot. at 13:24-25. Maybe so, but "the existence of a lawful purpose does not mean that the interception is not also for a tortious or unlawful purpose." *Sussman v. ABC*, 186 F.3d 1200, 1202 (9th Cir. 1999). As many courts have noted, Defendants' argument is "difficult to square with the statutory text" of the ECPA as the "language of the statute gives no hint that conduct falls outside the reach of the statute if a person acted based on financial motivations." *Stein v. Edward-Elmhurst Health*, 2025 U.S. Dist. LEXIS 31273, at *14 (N.D. Ill. Feb. 21, 2025). The *Stein* Court precisely illustrates the flaws in Defendants' reasoning:

> [I]t would be odd to exclude an otherwise criminal or tortious act solely because it was also motivated by financial gain. The existence of an underlying financial motivation does not mean that the act lacked a criminal or a tortious purpose. That's like saying that a bank robber's purpose was not to commit a crime — it was to make money.

---

[12] *See, e.g., Prime Healthcare Servs.*, 2025 U.S. Dist. LEXIS 6338, at *16 ("[Plaintiff] does not allege that [Defendant's] interception itself violated HIPAA. Instead, [Plaintiff] asserts that the violation stems from [Defendant's] intentional disclosure of the collected Private Information [via Tracking Tools], which constitutes a 'further impropriety' independent and separate from [the] interception"); *Eisenhower Med. Ctr.*, 2024 U.S. Dist. LEXIS 67497, at *4 ) (crime-tort exception satisfied where defendant intercepted and unlawfully disclosed sensitive health information to third parties through Tracking Tools installed on website in violation of HIPAA); *Kane v. Univ. of Rochester*, 2024 U.S. Dist. LEXIS 48515, at *23 (W.D.N.Y. Mar. 19, 2024) (same); *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 928 (D. Minn. 2024) (same); *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 380 (S.D.N.Y. 2024) (same); *Kurowski v. Rush Sys. for Health*, 2023 U.S. Dist. LEXIS 219895, at *8 (N.D. Ill. Dec. 11, 2023) (same).

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

*Id*. at *14-16. Numerous courts within this Circuit concur.[13]

### ii. Plaintiffs allege that Defendant's criminal and tortious purposes were separate from the interception.

The crime-tort exception applies where a "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C.S.§ 2511(2)(d). Defendants contend that Plaintiffs fail to allege a distinct crime or tort because their claims "are all predicated upon the same event: an alleged disclosure of information to third-parties." Mot. at 14:21-24. But the crime-tort exception requires a criminal or tortious purpose distinct from the requisite **interception**, not from any **disclosure** of the intercepted communications. *See Costco*, 2024 U.S. Dist. LEXIS 207197, at *18-19 (finding that disclosure of sensitive information through analogous Tracking Tools does not "inhere[] in the alleged interception"). As one court explains:

> A person can have a purpose of committing an act that is criminal or tortious, without having a criminal or tortious purpose. Imagine changing lanes on the highway without looking, and nailing the car in the other lane. The bad driver may have acted with the purpose of committing an act — changing lanes — that was tortious (because of the lack of ordinary care). But that's different than saying that the driver acted with a tortious purpose.
>
> In setting forth the crime-tort exception, the Wiretap Act expressly distinguishes between the interception of communications and a separate criminal or tortious purpose by providing that the communication must be '*intercepted* for the purpose of committing any criminal or tortious act.' The Wiretap Act does not distinguish between the use of communications and a separate criminal or tortious purpose. Indeed, the use of intercepted communications is often the criminal or tortious purpose.

*Id.*

Here, Plaintiffs allege that Defendants knowingly intercepted their

---

[13] *See Walgreen*, 733 F. Supp. 3d at 901 ("But even where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that the defendant's conduct violated state law, including state law privacy claims."); *Riganian v. LiveRamp Holdings, Inc.*, 2025 U.S. Dist. LEXIS 138122, at *29 (N.D. Cal. July 18, 2025) ("Accordingly, the Court declines to adopt any 'bright-line rule insulating financial motives from the crime-tort exception'") (quoting *Castillo*, 2024 U.S. Dist. LEXIS 207197, at *6); *Doe v. Tenet Healthcare Corp.*, 2025 U.S. Dist. LEXIS 109134, at *69 (E.D. Cal. June 9, 2025) ("Plaintiffs' allegations that Defendants were financially motivated to disclose their information to Meta do not immunize Defendants from liability under the ECPA").

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

communications for the purpose of disclosing them to Google and Microsoft. Compl. ¶ 16. In other words, Plaintiffs allege that the purpose of the interception was to share their Sensitive Information with unauthorized third parties in violation of COPPA, VPPA, and Minor Plaintiffs' common law privacy rights. Plaintiffs thus allege that Defendants had a criminal or tortious purpose for their interceptions. Numerous courts in this District faced with similar allegations agree.[14]

Finally, whether Defendants had criminal or tortious intent when intercepting Plaintiffs' communications is a factual issue that cannot be resolved at this stage. *See, e.g.*, *Doe v. Meta Platforms, Inc.*, 690 F.Supp.3d 1064, 1076 (N.D. Cal. 2023) (noting the intent inquiry turned on "disputed questions of fact that need development on a full evidentiary record"); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 719 (D. Minn. 2023) ("determination of [defendant]'s actual purpose for . . . using the Pixel Code requires a factual undertaking").

## F. PLAINTIFFS' INVASION OF PRIVACY CLAIM IS WELL PLED.

To state a claim for intrusion upon seclusion under California common law, "[p]laintiffs must show that: (1) a defendant 'intentionally intrude[d] into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy,' and (2) that the intrusion was 'highly offensive' to a reasonable person." *Silver v. Stripe Inc.*, 2021 U.S. Dist. LEXIS 141090, *16 (N.D. Cal. July 28, 2021) (quoting *Hernandez v. Hillsides, Inc.*, 47 Cal 4th 272, 287 (2009)). Likewise,

> [t]o state a claim for invasion of privacy under the California Constitution, Plaintiffs must show that '(1) they possess a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and (3) the

---

[14] *See, e.g.*, *Walgreen*, 733 F. Supp. 3d at 901 (recognizing that "a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is ***independent*** of the intentional act of recording or interception itself" and holding that crime-tort exception applied because communications were intercepted with intent to commit the tort of invasion of privacy) (emphasis in original); *Eisenhower Medical Center*, 2024 U.S. Dist. LEXIS 67497, at *10 (acknowledging that a violation of HIPAA can constitute independent conduct such that the crime-tort exception would apply).

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

intrusion is 'so serious . . . as to constitute an egregious breach of the social norms' such that the breach is 'highly offensive.'"

*Tenet Healthcare Corp.*, 2025 U.S. Dist. LEXIS 109134, *48 (quoting *Facebook Tracking*, 956 F.3d at 601). "Because of the similarity of the tests, courts consider the claims together and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *Facebook Tracking*, 956 F.3d at 601. California courts are "generally hesitant" to decide privacy claims at the pleading stage. *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 799.

Defendants argue that, as it was a party to the communications at-issue, Plaintiffs' invasion of privacy claim must fail for want of an intrusion. Mot. 16:22-23. But, the majority of courts applying California law have upheld claims for invasion of privacy in cases involving identical or similar Tracking Tools to those at issue here.[15]  Indeed, even where a defendant is the intended recipient of the private information at-issue, California courts will find an intrusion if the plaintiffs provided their private information to the defendant with an expectation that it would be kept confidential. For example, in *Lau v. Gen. Digit. Inc.*, the court found that the defendant could not "escape liability [for invasion of privacy] by arguing that there is no 'intrusion'" because the plaintiffs "did not expect for [the program] to collect and store extensive dossiers of their browsing data that could later be sold to third-party advertisers." 2024 U.S. Dist. LEXIS 81310, at *8 (N.D. Cal. Apr. 3, 2024).[16]

---

[15] *See, e.g.*, *Silver*, 2021 U.S. Dist. LEXIS 141090, at *15 ("plaintiffs' allegations that [defendant] compiled and disseminated plaintiffs' sensitive data precludes the Court from finding that plaintiffs have no reasonable expectation of privacy"); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 801 (same); *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 973 (S.D. Cal. 2023) ("the Court finds that their interactions on Defendant's website, while 'unauthenticated' or publicly facing, sufficient to plead invasion of privacy claims); *Doe v. Regents of the Univ. of Cal.*, 672 F. Supp. 3d 813, 820 (N.D. Cal. 2023) (same); *St. Aubin v. Carbon Health Techs., Inc.*, 2024 U.S. Dist. LEXIS 179067, at *37 (N.D. Cal. Oct. 1, 2024) (same).

[16] *See also Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1060 (N.D. Cal. 2014) (finding plaintiffs stated an intrusion upon seclusion claim where defendant's mobile phone app secretly collected information from plaintiffs' mobile phone address books and used it for commercial purposes, because allegations that consent was fraudulently obtained supported a finding that plaintiffs had a reasonable expectation of privacy in the copied contacts).

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Thus, Plaintiffs have adequately alleged a claim for invasion of privacy under common law and the California Constitution.

## G. PLAINTIFFS' NEGLIGENCE CLAIM IS WELL PLED.

Defendants argue that Plaintiffs fail to allege a cognizable injury in support of their negligence claim. Not so. Plaintiffs allege a privacy injury that is recognizable under applicable law. *See Desert Care*, 2024 U.S. Dist. LEXIS 18970, at \*28 (finding plaintiffs' allegations that certain categories of medical information were "improperly accessed, disclosed, and otherwise compromised" were sufficient to establish harm); *In re Facebook, Inc.*, 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019) (finding plaintiffs "alleged present and non-speculative privacy injuries" sufficient to state negligence claim predicated on defendant's alleged collection and dissemination of user information to third parties). Further, Plaintiffs allege that Defendants' conduct violated COPPA. Compl. ¶¶ 12, 48-49. Thus, Plaintiffs need not allege future misuse of their Sensitive Information as under COPPA, "the collection of children's private information in the first instance . . . is the harm." *In re TikTok, Inc.*, 2025 U.S. Dist. LEXIS 218421, at \*79-80 (C.D. Cal. Nov. 5, 2025).

Plaintiffs' allegations are similarly sufficient to state a claim for negligence under Illinois and Indiana law. *See, e.g., Stein*, 2025 U.S. Dist. LEXIS 31273, at \*22-23 (finding in similar case involving Tracking Tools that "Illinois law imposes a duty on data collectors to maintain reasonable security measures…."); *Johnson v. Nice Pak Prods.*, 736 F. Supp. 3d 639, 647 (S.D. Ind. 2024) (denying motion to dismiss negligence claim in data breach context).

Therefore, the Court should deny Defendants' motion to dismiss Plaintiffs' negligence claim.

## H. PLAINTIFFS' IMPLIED CONTRACT CLAIM IS WELL PLED.

By registering for accounts, Plaintiffs exchanged their Sensitive Information for Defendants' services with the understanding that Defendants would safeguard the

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

information and not disclose it without consent—an understanding without which Plaintiffs would not have entrusted their data to Defendants. Compl. ¶¶ 227, 229. Defendants breached that implied agreement by disclosing Plaintiffs' Sensitive Information to Google and Microsoft without consent. *Id.* at ¶ 230. Courts routinely find such allegations sufficient at the pleadings stage. *See, e.g., Gerber v. Twitter, Inc.*, 2024 U.S. Dist. LEXIS 229023, at *27 (N.D. Cal. Dec. 18, 2024); *Jimenez v. OE Fed. Credit Union*, 2025 U.S. Dist. LEXIS 161144, at *11-12 (N.D. Cal. Aug. 19, 2025); *In re San Francisco 49ers Data Breach Litig.*, 2024 U.S. Dist. LEXIS 145876, at *7 (N.D. Cal. Aug. 15, 2024); *Castillo v. Seagate Tech., LLC,* 2016 U.S. Dist. LEXIS 187428, at *28 (N.D. Cal. Sept. 14, 2016). As alleged, Defendants' breach caused Minor Plaintiffs' numerous injuries, including invasion of privacy, emotional distress, loss of trust in online services, loss of the benefit of the bargain, statutory damages, and diminution in value of their Sensitive Information. *See* Compl. ¶¶ 13, 121.

## I.  PLAINTIFFS' UNJUST ENRICHMENT CLAIM IS WELL PLED.

Plaintiffs allege their unjust enrichment claim in the alternative to their breach of implied contract claim. Compl. ¶ 235. Ninth Circuit precedent "does not preclude a plaintiff from pleading equitable remedies in the alternative." *Lewis v. Magnite, Inc.*, 2025 U.S. Dist. LEXIS 263675, at *45 (C.D. Cal. Dec. 4, 2025) (citation omitted). Plaintiffs' allegations that Defendants intentionally disclosed Minor Plaintiffs' Sensitive Information suffice to adequately plead unjust enrichment at the motion to dismiss stage. *See Walgreen*, 733 F. Supp. 3d at 900 (declining to dismiss unjust enrichment claim where plaintiffs alleged data collected and disclosed through Tracking Tools was used to enhance advertising services and increase defendant's own profits); *Allen v. Midwest Express Care, Inc.*, 2025 U.S. Dist. LEXIS 151237, at *12 (N.D. Ill. Aug. 6, 2025) (unjust enrichment claims proper where plaintiff alleged defendant was motivated by financial profit when it disclosed plaintiff's data to unauthorized third parties); *Elkins v. Bartholomew Cnty, Pub. Hosp.*, 2024 Ind. Super. LEXIS 340, at *10

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

(Dec. 16, 2024) ("[p]laintiff did not expect monetary compensation for their data *precisely because* they assumed that the data would not be shared with any third parties") (emphasis in original).

### J.  PARAMOUNT IS A PROPER DEFENDANT IN THIS ACTION

Paramount asserts that it is not a proper defendant in this action because Pluto is its subsidiary. Mot. 20:27-28. But Plaintiffs need only "make a prima facie showing of jurisdiction to avoid the defendant's motion to dismiss…Unless directly contravened [through affidavit], [Plaintiffs'] version of the facts is taken as true[.]" *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003). Here, Defendants provide no sworn statement contradicting Plaintiffs' allegations that Paramount exercises control over the Platform. On the contrary, the exhibits to Defendants' Motion suggest that Paramount does have relevant control over the conduct at-issue. *See* Dfts. Ex. C (Platform Terms hosted on Paramount Website); Dfts. Ex. D-E (privacy policies titled as "Paramount's" Privacy Policy and refer to Paramount and its affiliates collectively as the "Paramount Services"). The Court cannot conclude that Paramount is not a proper defendant in contradiction of Plaintiffs' allegations in the absence of any supporting affidavit from Defendants. *See In re Pacific Fertility Center Litigation*, U.S. Dist. LEXIS 133922, at *10-11 (N.D. Cal. Aug. 8, 2019) ("…where the defendants are alleged to be 'related entities' who acted in concert 'it is entirely possible that the allegations of wrongdoing are intended to include each and every entity defendant.'").

### IV.  <u>CONCLUSION</u>

For the aforementioned reasons, this Honorable Court should **DENY** Defendants' Motion to Dismiss.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

The undersigned counsel certifies that this brief contains 8,196 words, pursuant to the contemporaneously filed Consent Motion for Leave to Exceed Word Limits.

Dated: February 9, 2026                          Respectfully submitted,

                                                 */s/ Sonjay C. Singh*
                                                 Sonjay C. Singh (*pro hac vice*)
                                                 **SIRI & GLIMSTAD LLP**
                                                 745 Fifth Avenue, Suite 500
                                                 New York, NY 10151
                                                 Tel: (212) 532-1091
                                                 E: ssingh@sirillp.com

                                                 Daniel Srourian, Esq. (SBN: 285678)
                                                 **SROURIAN LAW FIRM, P.C.**
                                                 468 N. Camden Dr. Suite 200
                                                 Beverly Hills, CA 90210
                                                 Telephone: (213) 474-3800
                                                 Facsimile: (213) 471-4160
                                                 Email: daniel@slfla.com

                                                 *Attorneys for Plaintiffs, Minor Plaintiffs, and the Putative Class*

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**