DAVID R. SINGH (Bar No. 300840)
david.singh@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway, 4th Floor
Redwood Shores, CA 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

Attorneys for Defendant PARAMOUNT SKYDANCE CORPORATION & PLUTO INC.

(*Additional Counsel Listed on Signature Page*)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

RAQUEL DIAZ, on behalf of her minor child, B.E., and all others similarly situated, LISA MEDINA, on behalf of her minor child, G.C., and all others similarly situated, OSCAR RODRIGUEZ, on behalf of his minor child, F.R., and all others similarly situated, STACY RADER, on behalf of her minor child, S.C., and KATRINA MONTGOMERY, on behalf of her minor children, J.M., J.A., and J.M., and all others similarly situated,

Plaintiffs,

v.

PARAMOUNT SKYDANCE CORPORATION and PLUTO INC.,

Defendants.

Case No. 5:25-cv-02945-KK (DTBx)

**PARAMOUNT SKYDANCE CORPORATION AND PLUTO INC.'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

Date: April 9, 2026
Time: 9:30 am
Courtroom 3, 3rd Floor
Honorable Kenly Kiya Kato

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 2

I. PLAINTIFFS LACK ARTICLE III STANDING ........ 2

A. Plaintiffs Rely on a Standing Argument Rejected by *Popa* ........ 3

B. Plaintiffs Fail to Analogize their Claims to Privacy Torts Traditionally Recognized at Common Law ........ 4

C. Plaintiffs Concede Their Information Did Not Diminish in Value ........ 5

D. Plaintiffs Fail to Plead Facts Establishing They Have Personally Been Injured ........ 5

E. At a Minimum, Plaintiffs Have Failed to Establish Article III Standing as to Counts II-VIII ........ 6

II. THOSE PLAINTIFFS WITH ACCOUNTS ASSENTED TO PLUTO'S TERMS OF USE AND PRIVACY POLICY ........ 7

A. Plaintiffs Proceed from A False Premise that the Relevant Terms May Not Have Been in Place When They Registered ........ 7

B. Those Plaintiffs with Accounts are Bound by the Terms, and Have Not Disaffirmed the Contract ........ 8

C. Plaintiffs Present No Argument on the Class Waiver, Forum Selection, and Choice of Law and Venue Clauses ........ 9

D. Those Plaintiffs with Accounts Have Consented to Defendants' Alleged Conduct ........ 10

III. PLAINTIFFS HAVE FAILED TO STATE A VPPA CLAIM ........ 11

A. Plaintiffs Do Not Plausibly Allege a Disclosure of PII ........ 11

B. Plaintiffs Still Fail to Show a Knowing Transmission to a Third Party ........ 12

IV. PLAINTIFFS HAVE FAILED TO STATE A CIPA CLAIM ........ 12

A. Defendants, Parties to Any Communication, Did Not Aid and Abet a CIPA Violation ........ 13

B. No In-Transit Interception Has Occurred ........ 14

C. Defendants Intercept No Contents with Regard to the Alleged Google Transmission ........ 15

V. PLAINTIFFS HAVE FAILED TO STATE AN ECPA CLAIM ............ 16
A. COPPA Cannot Trigger the Crime-Tort Exception ........................ 16
B. Plaintiffs Do Not Allege a Further Crime or Tort Distinct From the Interception.................................................................. 17
C. Plaintiffs Fail to Plausibly Allege Defendants Intercepted Communications *For the Purpose of* Committing a Further Crime or Tort ..................................................................... 18
VI. PLAINTIFFS HAVE FAILED TO STATE AN INVASION OF PRIVACY CLAIM ..................................................................... 19
A. Plaintiffs Abandon Most of Their Common Law Invasion of Privacy Claims................................................................. 19
B. Plaintiffs Fail to Plead a California Invasion of Privacy Claim at Common Law or Under the California Constitution ...................................................................... 20
VII. PLAINTIFFS FAIL TO STATE ANY OTHER COMMON LAW CLAIMS..................................................................................... 21
A. Plaintiffs' Remaining Negligence Claims Are Not Well-Pled ............................................................................... 21
B. Plaintiffs' Remaining Breach of Implied Contract Claims Fail ................................................................................. 22
C. Plaintiffs' Remaining Unjust Enrichment Claims Are Not Well-Pled ......................................................................... 23
VIII. PLAINTIFFS HAVE FILED SUIT AGAINST THE WRONG DEFENDANT ........................................................................ 23
CONCLUSION ................................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. I-Flow Corp.*, 2010 WL 1339948 (C.D. Cal. Mar. 30, 2010) ....24

*Aliign Activation Wear, LLC v. lululemon athletica,* 2020 WL 5790418 (C.D. Cal. Aug. 24, 2020) ....24

*Apaydin v. Move, Inc.*, 2025 U.S. Dist. LEXIS 215336 (C.D. Cal. Oct. 29, 2025) ....15

*Archey v. Osmose Util. Serv., Inc.*, 2021 WL 3367156 (N.D. Ill. Aug. 3, 2021) ....23

*B.K. v. Desert Care Network*, 2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) ....22

*B.K. v. Eisenhower Med. Ctr.*, 721 F.Supp.3d 1056 (C.D. Cal. 2024) ....18

*Balestrieri v. SportsEdTV*, 2025 WL 2776356 (N.D. Cal. Sep. 16, 2025) ....4

*Belluomini v. Citigroup, Inc.*, 2013 WL 3855589 (N.D. Cal. July 24, 2013) ....20

*Beltran v. Doctors Med. Ctr.*, 2025 WL 1635467 (E.D. Cal. June 9, 2025) ....22

*Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001) ....16

*Burget v. R.A.M. Ent., LLC*, 2015 WL 4490938 (N.D. Ind. July 23, 2015) ....23

*Caro v. Weintraub*, 618 F.3d 94 (2nd Cir. 2010) ....18

*D'Antonio v. Smith & Wesson Inc.*, 2026 WL 446310 (N.D. Cal. Feb. 17, 2026) ....6

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006) .......... 3, 6

*Dawidzik v. Tesla*, 2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) (Kato, J.) .......... 1

*DellaSala v. Samba TV, Inc.*,
2025 WL 3034069 (N.D. Cal. Oct. 30, 2025) .......... 3

*Doe v. Kaiser Found. Health Plan*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) .......... 14, 17

*Doe v. Eating Recovery* Ctr., 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) .......... 15

*Dunahoo v. Hewlett-Packard Co.*,
2012 WL 178332 (S.D.N.Y. Jan. 20, 2012) .......... 12

*In re Facebook, Inc.*,
402 F.Supp.3d 767 (N.D. Cal. 2019) .......... 3, 22

*Fernandez v. Citigroup Mortg. Loan Tr.*,
2020 WL 6162149 (C.D. Cal. Aug. 17, 2020) .......... 5, 16, 22

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal.App.4th 986 (Ct. App. 2011) .......... 20, 21

*Fouad v. Qatar*,
2020 WL 13311759 (C.D. Cal. Apr. 14, 2020), *aff'd*, 846 F.App'x 466
(9th Cir. 2021) .......... 7

*Garcia v. Bandai Namco Ent. Am. Inc.*,
2025 WL 2451033 (C.D. Cal. Aug. 7, 2025) .......... 11, 12

*Garcia v. Roblox Corp.*,
2026 WL 413636 (C.D. Cal. Feb. 11, 2026) .......... 8

*In re Google Gmail Litig.*,
2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) .......... 18

*Gray v. Luxottica*, 2024 WL 5689566 (C.D. Cal. Dec. 16, 2024) .......... 15

*Greenley v. Avis Budget Grp. Inc.*,
2020 WL 1493618 (S.D. Cal. Mar. 27, 2020) .......... 10

*Griffin v. Green Tree Servicing, LLC*,
166 F.Supp.3d 1030 (C.D. Cal. 2015) .......... 19, 21

*Gutierrez v. Converse Inc.*, 2025 WL 1895315 (9th Cir. July 9, 2025) ........................................ 15

*Harris Rutsky & Co. Ins. Servs. Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122 (9th Cir. 2003) ........................................ 24

*Heiting v. Taro Pharms. USA, Inc.*, 728 F.Supp.3d 1112 (C.D. Cal. 2024) ........................................ 14

*Hemy v. Perdue Farms, Inc.*, 2011 WL 6002463 (D.N.J. Nov. 30, 2011) ........................................ 23

*Heerde v. Learfield Communications, LLC*, 741 F.Supp.3d 849 (C.D. Cal. 2024) ........................................ 14

*HFC Acceptance, LLC v. AEZ Rent a Car LLC*, 2025 WL 3778916 (C.D. Cal. Apr. 18, 2025) ........................................ 10

*Hill v. NCAA.*, 7 Cal.4th 1 (1994) ........................................ 5, 21

*In re Holl*, 925 F.3d 1076 (9th Cir. 2019) ........................................ 10

*In re Hulu Privacy Litig.*, 86 F.Supp.3d 1090 (N.D. Cal. 2015) ........................................ 11

*In re iPhone Application Litig.*, 2011 WL 4403963 (N.D. Cal Sept. 20, 2011) ........................................ 23

*In re iPhone Application Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........................................ 22

*Irwin v. Jimmy John's Franchise LLC*, 175 F.Supp.3d 1064 (C.D. Ill. 2016) ........................................ 23

*Katz-Lacabe v. Oracle Am. Inc.*, 668 F.Supp.3d 928 (N.D. Cal. 2023) ........................................ 19

*Khamooshi v. Politico LLC*, 786 F.Supp.3d 1174 (N.D. Cal. 2025) ........................................ 4

*Krayzman v. iStockPhoto LP*, 2024 WL 4658107 (N.D. Cal. Oct. 3, 2024) ........................................ 10

*Lau v. Gen Digital Inc.*,
2024 WL 1880161 (N.D. Cal. Apr. 3, 2024)....20

*Martin v. Meredith Corp.*,
657 F.Supp.3d 277 (S.D.N.Y. 2023)....11

*Martinez v. D2C, LLC*,
2024 WL 4367406 (S.D. Fla. Oct. 1, 2024)....6

*McKee v. Audible*, 2017 WL 4685039 (C.D. Cal. July 17, 2017)....10

*Meyers v. Alphabet*, 2022 U.S. Dist. LEXIS 98298 (C.D. Cal. Feb. 14, 2022)....10

*Minor v. Fedex Office & Print Services, Inc.*,
182 F.Supp.3d 966 (N.D. Cal. 2016)....22

*Mollett v. Netflix*
795 F.3d 1062 (9th Cir. 2015)....5

*Mount v. PulsePoint Inc.*,
2016 WL 5080131 (S.D.N.Y. Aug. 17, 2016)....23

*N.A. v. Nintendo of Am. Inc.*,
2023 WL 8587628 (N.D. Cal. Dec. 11, 2023)....9

*N.Z. v. Fenix Int'l Ltd.*,
2025 WL 3627591 (C.D. Cal. Dec. 12, 2025)....11

*Norcia v. Samsung Telecomms. Am., LLC*,
845 F.3d 1279 (9th Cir. 2017)....10

*Opperman v. Path, Inc.*,
87 F.Supp.3d 1018 (N.D. Cal. 2014)....20

*In re Pacific Fertility Center Litig.*, 2019 WL 3753456 (N.D. Cal. Aug. 8, 2019)....24

*Paster v. Putney Student Travel, Inc.*,
1999 WL 1074120 (C.D. Cal. June 9, 1999)....9

*Planned Parenthood Fed'n of Am. v. Newman*,
51 F.4th 1125 (9th Cir. 2022)....17

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 2, 3, 4

*Reisberg v. Renaissance Learning, Inc.*,
2026 U.S. Dist. LEXIS 33288 (C.D. Cal. Feb. 17, 2026) .......... 13, 17

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 21

*Roe v. Amgen*,
2024 WL 2873482 (C.D. Cal. June 5, 2024) .......... 18, 19

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (Cal. Ct. App. 1975) .......... 20

*S.G. v. Epic Games, Inc.*,
796 F.Supp.3d 614 (N.D. Cal. 2025) .......... 8, 9

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) .......... 17, 20

*Stein v. Edward-Elmhurst Health*,
2025 WL 580556 (N.D. Ill. Feb. 21, 2025) .......... 18

*Smith v. Trinity Broad. of Tex., Inc.*, 2024 WL 4394557 (C.D. Cal. Sept. 27, 2024) .......... 12

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999) .......... 17, 18, 19

*Tawam v. Feld Ent. Inc.*,
684 F.Supp.3d 1056 (S.D. Cal. 2023) .......... 11

*Valenzuela v. Kroger Co.*,
2024 WL 1336959 (C.D. Cal. Mar. 28, 2024) .......... 13

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F.Supp.3d 1204 (C.D. Cal. 2017) .......... 14

*Warth v. Seldin*,
422 U.S. 490 (1975) .......... 6

*Y.H. v. Blizzard Entertainment*,
2023 WL 3565078 (C.D. Cal. Feb. 27, 2023) .......... 9

*In re Yahoo Mail Litig.*,
7 F.Supp. 3d 1016 (N.D. Cal. 2014) .......... 21

*Yeh v. Tesla, Inc.*,
2023 WL 6795414 (N.D. Cal. Oct. 12, 2023) .......... 9

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 15

**Statutes & Rules**

Children's Online Privacy Protection Act ("COPPA"),
15 U.S.C. § 6505 .......... 16

Electronic Communications Privacy Act ("ECPA"),
18 U.S.C. § 2511(2)(d) .......... 16, 18

Video Privacy Protection Act ("VPPA"),
18 U.S.C. §§ 2710(a)(1), (b)(1) .......... 11

California Constitution .......... 20, 21

California Consumer Privacy Act ("CCPA")
Cal. Civ. Code § 1798.100 .......... 15

California Invasion of Privacy Act ("CIPA"),
Cal. Penal Code § 631(a) .......... 14, 15

Federal Rule 12(b)(3) .......... 7

## PRELIMINARY STATEMENT

Plaintiffs' Opposition to Defendants' Motion to Dismiss fails to respond to numerous points raised by Defendants and, to the extent responsive, does not revive their deficient claims:

First, Plaintiffs have not established Article III standing. As this Court held in *Dawidzik v. Tesla,* statutory violations alone are not concrete injury, and Plaintiffs must map their claims on to one of the four common law privacy torts. 2025 WL 3786963, *3 (C.D. Cal. Dec. 29, 2025) (Kato, J.). Moreover, standing must be assessed on a claim-by-claim basis. Plaintiffs fail to establish standing on their claims which warrants dismissal of most, if not all, of their claims.

Second, the Opposition concedes that four out of five of the Plaintiffs' parents registered for Pluto TV accounts; in so doing, they assented to both the Terms of Use and Privacy Policy on behalf of themselves and their children. The Terms include conditions precedent to filing suit (which Plaintiffs did not comply with), a class waiver, a New York venue clause and a New York (not California) choice of law provision. Plaintiffs analyze none of these issues in their Opposition and thus concede them, relying on the demonstrably incorrect premise that the relevant terms and conditions in place now were not in place when they signed up. The Privacy Policy also discloses use of tracking technologies and thus Plaintiffs consented to the alleged data collection.

Third, Plaintiffs' statutory claims are deficient for yet additional reasons. Under the Video Protection Privacy Act ("VPPA"), Plaintiffs have not plausibly alleged that an ordinary person would be able to identify them with the cookie IDs referenced in the Complaint. With respect to the California Invasion of Privacy Act ("CIPA"), Plaintiffs' allegations that Defendants aided and abetted a CIPA violation, and that any in-transit interception of information occurred, are conclusory and unsupported by their cited authority. Plaintiffs have likewise failed to state an Electronic Communications Privacy Act ("ECPA") claim because they concede only the Federal Trade Commission has

authority to enforce the Children's Online Privacy Protection Act ("COPPA"), and they still do not plausibly allege Defendants acted for the purpose of committing a temporally distinct crime or tort.

Fourth, Plaintiffs' common law claims are also deficient for additional independent reasons. Plaintiffs abandon their common law invasion of privacy of claims under New Jersey, Illinois, and Indiana law and they failed to state a claim under California law because they have not plausibly alleged an "intrusion" or that Defendants disclosed any confidential information. Plaintiffs remaining common law claims also suffer from pleading deficiencies: They have not stated a negligence claim because they do not and cannot plead a cognizable privacy injury or damages, they have waived their implied contract claims by failing to allege the fundamental elements of a contract, and they have waived their unjust enrichment claims by failing to respond to any of Defendants' arguments.

Finally, Plaintiffs fail to explain why Paramount is a proper defendant, because neither the Complaint nor the Opposition explains how Paramount controls the Pluto TV service, which the Terms explain is provided by Pluto.

For all these reasons, the Court should dismiss the Complaint in its entirety.

## ARGUMENT

### I. PLAINTIFFS LACK ARTICLE III STANDING

As Defendants explained in their moving brief, Plaintiffs pled their common law claims only at a high level of generality and failed to allege "a close historical or common-law analogue for their asserted injury" based on one of the "four discrete torts that protected specific kinds of privacy-related harms[,]" as required for Article III standing under *TransUnion*. *Popa v. Microsoft Corp.*, 153 F.4th 784, 792, 794 (9th Cir. 2025). In their Opposition, Plaintiffs (1) rely on a standing theory based on an inability to control information that was rejected by *Popa*; (2) fail to analogize any alleged "injury" to any privacy tort recognized at common law; and (3) fail to respond to Defendants' argument

that they have not plausibly alleged their information diminished in value. Plaintiffs also fail to satisfy their burden of demonstrating standing on a claim-by-claim basis. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("'[A] plaintiff must demonstrate standing separately for each form of relief sought.'") (citation omitted).

### A. Plaintiffs Rely on a Standing Argument Rejected by *Popa*

Plaintiffs incorrectly suggest, under *TransUnion* and *Popa*, that allegations of an "interest in controlling [Plaintiffs'] personal information" suffice for purposes of establishing Article III standing and cite *Facebook Tracking* and *Eichenberger* in support. Opp. at 4:6, 15–19. But this very argument was considered and rejected in *Popa*. 153 F.4th at 794. In *Popa*, the Ninth Circuit acknowledged the holdings of *Eichenberger* and *Facebook Tracking*, which recognized plaintiffs had an "interest in controlling their personal information[,]" but rejected the idea that an injury to such an interest sufficed under *TransUnion*, explaining "even though our analysis in *Eichenberger* and *In re Facebook* might have arguably offered at the time some support for the position that [Plaintiff] now advances, that analysis finds no support in *TransUnion*." *Id*. Instead, "courts should assess whether 'plaintiffs have identified a close historical or common-law analogue for their asserted injury[.]'" *Id*. (citation omitted). Therefore, Plaintiffs' contention that "the Ninth Circuit explicitly recognized that *Transunion* did *not* jeopardize the *Facebook Tracking* or *Eichenberger* opinions" is incorrect. Opp. at 4:16–17.[1]

Plaintiffs also misstate the facts of *Popa*, asserting "*Popa* did not involve disclosures to third parties." Opp. at 5:2–3. In *Popa*, Microsoft—an alleged third party to the plaintiff's communications on the petsuppliesplus.com website—allegedly intercepted and tracked interactions with the website, "including: the date a user visited

[1] Plaintiffs misleadingly quote *DellaSala v. Samba TV, Inc*., 2025 WL 3034069 (N.D. Cal. Oct. 30, 2025) to argue *Popa* did not impact the relevant Article III standing analysis. But the *DellaSala* quotation only reflects that Court's explanation that Defendant failed to raise standing issues in their moving brief, not the relevant standing analysis. Opp. at 4:20–22.

the website, the device the user accessed the website on, [etc.]" 153 F.4th at 786. Thus, *Popa* did involve disclosures to third parties, like those alleged here. Nonetheless, *Popa* held plaintiffs did not plausibly allege the infringement of a privacy interest analogous to those actionable at common law. *Id*. at 791.

### B. Plaintiffs Fail to Analogize their Claims to Privacy Torts Traditionally Recognized at Common Law

Plaintiffs do not attempt to analogize their claims to any of the four privacy torts recognized at common law, as *TransUnion* and *Popa* require. *Popa*, 153 F.4th 792, 794; Opp. at 5. Plaintiffs instead argue an alleged VPPA violation suffices for Article III standing and claim the "facts of this case are like those that gave rise to the VPPA[.]" Opp. at 5:5–7. This argument fails because (1) a statutory violation alone does not create an injury for purposes of Article III standing, and (2) to the extent Plaintiffs suggest they have alleged a harm similar to a publication of private fact—that tort traditionally requires information be *made public* unlike the allegedly disclosed information here.

First, as this Court and *Popa* have both recognized, standing requires "more than just a statutory violation when evaluating whether a plaintiff has alleged a concrete injury." 153 F.4th at 793; *Dawidzik,* 2025 WL 3786963, *3 ("An injury is not simply concrete because there is a statutory violation"); *see also Khamooshi v. Politico LLC*, 786 F.Supp.3d 1174, 1181 (N.D. Cal. 2025) ("*Transunion* precludes standing where plaintiffs fail to allege a concrete injury, even if they have asserted a violation of CIPA."). Accordingly, Plaintiffs' suggestion that an alleged VPPA violation alone creates Article III standing is incorrect.[2] Further, Plaintiffs also fail to plausibly allege facts to support their VPPA claims as explained herein, meaning they cannot rely on those claims to establish standing.

---

[2] Plaintiffs cite *Balestrieri v. SportsEdTV, Inc.* to argue a VPPA violation alone creates Article III standing, but *Balestrieri* involved different tracking technologies (the Meta Pixel) and did not address the "publicity" element of a publication of private fact claim. 2025 WL 2776356, *8 (N.D. Cal. Sep. 16, 2025).

Second, Plaintiffs do not allege facts establishing that their claims are analogous to a publication of private fact or an intrusion upon seclusion tort. Plaintiffs refer to *TransUnion*'s discussion of these common law torts, but do not actually argue *they* have pled harms analogous to these common law torts, and thus concede such arguments. Opp. at 3:20–21; *Fernandez v. Citigroup Mortg. Loan Tr.,* 2020 WL 6162149, *5 (C.D. Cal. Aug. 17, 2020) (dismissing claims with prejudice and holding "a failure to address an argument in opposition briefing constitutes a concession of that argument").

To the extent Plaintiffs suggest they alleged a harm similar to a publication of private fact by analogizing their case to the historical context "that gave rise to the enactment of VPPA[,]" they are also wrong. Opp. at 5:5–7. As Plaintiffs' cited case acknowledges, the VPPA was enacted "in response to the *Washington City Paper*'s publication of then-Supreme Court nominee Robert Bork's video rental history" *to the public*. *Mollett v. Netflix* 795 F.3d 1062, 1065 (9th Cir. 2015). There is no "publication" at issue in this case like the one that gave rise to the VPPA, or that meets the "publication" requirement of publication of private fact, which requires that the matter is made public, by communicating it to the public at large. *Hill v. NCAA.*, 7 Cal.4th 1, 27 (1994) ("[P]ublic disclosure of private facts requires that the actionable disclosure be widely published and not confined to a few persons or limited circumstances"). Plaintiffs accordingly fail to allege facts sufficient to analogize their claims to the four privacy torts recognized at common law, as required for Article III standing.

**C. Plaintiffs Concede Their Information Did Not Diminish in Value**

Plaintiffs failed to respond to Defendants' argument that they did not plausibly allege their information "diminished in value," and thus concede this point. *Fernandez*, 2020 WL 6162149, *5.

**D. Plaintiffs Fail to Plead Facts Establishing They Have Personally Been Injured**

Plaintiffs concede the screenshots in the Complaint are "exemplar" screenshots that

do not represent disclosures from their own browsers, and do not contest that they failed to plead they blocked cookies or used a browser that does so. Opp. at 12; *see Martinez v. D2C, LLC*, 2024 WL 4367406, *7–8 (S.D. Fla. Oct. 1, 2024). Thus, Plaintiffs have still not shown personal injury required for Article III standing. *D'Antonio v. Smith & Wesson Inc.*, 2026 WL 446310, *4–5 (N.D. Cal. Feb. 17, 2026) (dismissing allegations that defendant tracked unspecified "[w]ebsite users[,]" because plaintiffs had not "alleged that *they* ever communicated with the website"); *Warth v. Seldin*, 422 U.S. 490, 502 (1975) (Article III standing requires the plaintiffs be injured, "not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.").

For all these reasons, Plaintiffs lack Article III standing.

**E. At a Minimum, Plaintiffs Have Failed to Establish Article III Standing as to Counts II-VIII**

Even if Plaintiffs could establish Article III standing for their VPPA claims, which they cannot, they lack standing for the remaining claims.[3] Plaintiffs must establish standing for each of their claims, *DaimlerChrysler*, 547 U.S. at 352, and this Court just dismissed a CIPA claim for lack of standing where, as here, the defendant allegedly used "tracking pixels" that transmitted data to "third-party servers only when the user visited [d]efendant's website." *Dawidzik*, 2025 WL 3786963, *4. As in *Dawidzik*, Plaintiffs here simply cannot establish an invasion of a protected privacy right, cannot analogize their claims to the common law torts, and do not plausibly allege they suffered harm on an unjust enrichment theory. *Id.* at *3–5. These issues permeate their Complaint, and at a minimum, Counts II through VIII (the non-VPPA claims) should be dismissed for lack of Article III standing.

[3] Plaintiffs' VPPA claims fail for myriad other reasons as explained *infra* in § III.

## II. THOSE PLAINTIFFS WITH ACCOUNTS ASSENTED TO PLUTO'S TERMS OF USE AND PRIVACY POLICY

Contrary to Plaintiffs' assertions, Pluto's Terms of Use and Privacy Policy bind the Plaintiffs with accounts. Each of these Plaintiffs' parents consented to the Terms of Use, Privacy Policy, and Children's Privacy Policy. Compl. ¶ 5; Declaration of Blake J. Steinberg, Ex. G (Plaintiffs' Counsel Email).[4] Therefore, their claims should be dismissed. Plaintiffs do not dispute they have failed to satisfy the mandatory pre-arbitration dispute resolution requirements in the Terms, that the Terms require bringing claims in New York under New York law, or that the Terms bar putative class claims. And, because Pluto's Privacy Policy discloses Pluto may use tracking technologies, Plaintiffs also consented to the alleged disclosures. Each of Plaintiffs' arguments otherwise fail.[5]

### A. Plaintiffs Proceed from A False Premise that the Relevant Terms May Not Have Been in Place When They Registered

Plaintiffs suggest they may have agreed to an earlier version of the Terms of Use and Privacy Policy, or signed up on the Pluto TV app, but this conjecture does not suffice. The Terms of Use have included the same mandatory pre-arbitration notice and informal dispute resolution procedure, class action waiver, and New York choice of law and venue provisions throughout 2024 and to the present. Declaration of Tad Ro ("Ro Decl.") ¶ 4. The Privacy Policy and Children's Privacy Policy have disclosed that Pluto may use cookies, pixels, and other tracking technologies during this period as well. *Id.* ¶ 5. And the registration process on the Pluto TV website and apps have also required the same agreement to the Terms of Use and Privacy Policy during this period. *Id.* ¶ 6; *see also*

---

[4] Courts may look outside the pleadings to determine whether dismissal is proper due to a forum selection clause like the one at issue here under Federal Rule 12(b)(3). *Fouad v. Qatar*, 2020 WL 13311759, *3 (C.D. Cal. Apr. 14, 2020), *aff'd*, 846 F.App'x 466 (9th Cir. 2021).

[5] Plaintiffs' assertion that Defendants have not established that Plaintiffs had notice of the Children's Privacy Policy is unavailing. Plaintiffs themselves rely on Paramount's Children's Privacy Policy as a basis for their claims, alleging that Defendants misrepresented in the Policy how children's data would be handled. *See* Compl. ¶¶ 105-09, 112.

Mot. at 3, n.2. So regardless of how the parents registered, Plaintiffs assented to the Terms and Privacy Policy.

**B. Those Plaintiffs with Accounts are Bound by the Terms, and Have Not Disaffirmed the Contract**

The Plaintiffs with accounts are bound by the Terms because their parents have entered into agreements with Defendants for their children's benefit. *Garcia v. Roblox Corp.*, 2026 WL 413636, *5 (C.D. Cal. Feb. 11, 2026).

Plaintiffs claim that *Epic Games*, which found a minor plaintiff was bound by an agreement entered by his father, holds that a parent's agreement is generally only imputed against a child where "the parent entered the agreement at least in part for the child's benefit." Opp. at 7:10–12; *S.G. v. Epic Games, Inc.*, 796 F.Supp.3d 614, 621 (N.D. Cal. 2025). But as in *Epic Games* where the child used his parent's account for the benefit of playing a video game, Plaintiffs here received the benefit of watching Pluto TV content through their parents' accounts. *Id*. at 621; Steinberg Decl., Ex. G.

Moreover, nothing in *Epic Games* suggests the presence of a "contemporaneous agreement" is necessary to bind a minor to contracts made by their parents on their behalf as Plaintiffs suggest, Opp. at 7:12–14; *Epic Games*, 796 F.Supp.3d at 621, and, even if this was a requirement, the Terms here suffice. They expressly state that "by allowing your child to use the Services, you are subject to these Terms and you are responsible for your child's activity on the Services," and, that if a user is a child, he or she warrants that "you have the permission of your parent or legal guardian to use the Services, your use of the Services is subject to your parent or legal guardian's supervision and control, and your parent or legal guardian reads these Terms with you." Steinberg Decl., Ex. C § 1; *Epic Games,* 796 F.Supp.3d at 621 ("By assenting to the [Agreement], which explicitly contemplates a parent consenting to the minor's acceptance of the agreement, S.G.'s father was facilitating S.G.'s ongoing gameplay…[this] is no different than the waiver forms parents routinely sign on behalf of their children to allow them to participate in

sports or other recreational activities.”).

Plaintiffs’ arguments that *Epic Games* requires “sole[] use” by the child to bind them to a contract or reaffirmance of the contract multiple times are incorrect. *Epic Games* did not require such “sole use,” Opp. at 7:14–15; *Epic Games*, 796 F.Supp.3d at 619, and other California cases establish that re-affirmance of a contract multiple times is not a necessary element as Plaintiffs suggest. Opp. at 7:15–17; *Yeh v. Tesla, Inc.*, 2023 WL 6795414, *8–9 (N.D. Cal. Oct. 12, 2023) (binding child to parent’s contract due to arbitration agreement signed during purchase of a vehicle without requiring reaffirmance).

Plaintiffs’ assertion that they have disaffirmed the contracts also ignores that under California law “[t]he infancy defense may not be used inequitably to retain the benefits of a contract while reneging on the obligations attached to that benefit[,]” which Plaintiffs attempt now. *Yeh,* 2023 WL 6795414, *9 (citation omitted). Plaintiffs should not be allowed to retain the benefit of having access to Pluto TV accounts and attempt to avoid any allegedly “irksome portions” of the terms to which they agreed on registering. *Paster v. Putney Student Travel, Inc.,* 1999 WL 1074120, *2 (C.D. Cal. June 9, 1999) (minor could not disaffirm student program contract when she had already completed the program).[6]

For these reasons, the Plaintiffs with accounts are bound by the Terms.

### C. Plaintiffs Present No Argument on the Class Waiver, Forum Selection, and Choice of Law and Venue Clauses

Plaintiffs do not contest the enforceability of the class waiver, forum selection, and choice of law and venue clauses in their Opposition. Therefore, if the Court finds that the four Plaintiffs with accounts assented to the Terms, their claims should be dismissed based on these provisions.

---

[6] Plaintiffs’ citations to cases purportedly showing a complaint can communicate disaffirmance are inapposite, given the plaintiffs in these cases specifically noted they were disaffirming their contracts in the complaints. *Y.H. v. Blizzard Entertainment*, 2023 WL 3565078, *2 (C.D. Cal. Feb. 27, 2023); *N.A. v. Nintendo of Am. Inc.*, 2023 WL 8587628, *1 (N.D. Cal. Dec. 11, 2023).

**D. Those Plaintiffs with Accounts Have Consented to Defendants' Alleged Conduct**

Plaintiffs argue that they could not consent to the alleged collection of data because the Privacy Policy "explicitly states that it does not apply to minors," but ignore that Privacy Policy clearly links to the Children's Privacy Policy. Steinberg Decl., Ex. E; Opp. at 8:23.

Plaintiffs also incorrectly argue that the Privacy Policy did not provide conspicuous notice of the Children's Privacy Policy. Opp. at 9:18–24. At the beginning of the Privacy Policy, there is a hyperlinked table of contents, directing to readers the "Children's Privacy" section, where they can easily click a hyperlink directing them to the Children's Privacy Policy. Steinberg Decl., Ex. D.

Those Plaintiffs with accounts were thus on notice of the Children's Privacy Policy. *In re Holl*, 925 F.3d 1076, 1084 (9th Cir. 2019) ("Where it is clear that a party is assenting to a contract that incorporates other documents by reference, the incorporation is valid[.]"); *Greenley v. Avis Budget Grp. Inc*., 2020 WL 1493618, *5 (S.D. Cal. Mar. 27, 2020) (similar). Indeed, "a person who signs a contract has a general duty to read it," and party who signs a contract is bound by "*all* its terms," even if he or she did not read them. *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1284 (9th Cir. 2017); *HFC Acceptance, LLC v. AEZ Rent a Car LLC*, 2025 WL 3778916, *5 (C.D. Cal. Apr. 18, 2025) (citations omitted). Those Plaintiffs with accounts are thus bound by the Privacy Policy and Children's Privacy Policy, which provided Pluto may collect IP addresses and "identifiers associated with cookies, pixels, tags, beacons, scripts or other technology." Steinberg Decl., Ex. E. Plaintiffs' claims should be dismissed for this reason as well.[7]

[7] Plaintiffs' cases are inapposite. *Krayzman v. iStockPhoto LP* involved a "License Agreement" unrelated to the terms to which visitors agreed in subscribing, unlike the Children's Privacy Policy here, which is clearly related to and incorporated by reference in the general Privacy Policy. 2024 WL 4658107, *1 (N.D. Cal. Oct. 3, 2024). In *McKee v. Audible*, the terms were mislabeled and were in "small, undifferentiated font," unlike here. 2017 WL 4685039, *8 (C.D. Cal. July 17, 2017). Finally, in *Meyers v. Alphabet*, the at-issue clause was "numerous hyperlinks away" after making a purchase at a physical storefront. 2022 U.S. Dist. LEXIS 98298, *11 (C.D. Cal. Feb. 14, 2022).

## III. PLAINTIFFS HAVE FAILED TO STATE A VPPA CLAIM

With respect to Plaintiffs' VPPA claims, Plaintiffs must show they are "renter[s], purchaser[s], or subscriber[s] of goods or services from a video tape service provider[.]" 18 U.S.C. §§ 2710(a)(1), (b)(1). Plaintiffs do not dispute that one Plaintiff's parent (Raquel Diaz) did not have an account with Pluto TV, and therefore is not a renter, purchaser, or subscriber under the VPPA. *E.g.*, *Tawam v. Feld Ent. Inc.*, 684 F.Supp.3d 1056, 1062 (S.D. Cal. 2023). That Plaintiff's VPPA claim should therefore be dismissed.

As for the other Plaintiffs, they have not plausibly alleged that Defendants knowingly transmitted PII under the VPPA.

### A. Plaintiffs Do Not Plausibly Allege a Disclosure of PII

Plaintiffs contest the applicability of Second Circuit law, notwithstanding their agreement to a New York choice of law provision. Opp. at 11:16–20. Regardless, courts in the Ninth Circuit have followed the same standard as the Second Circuit when assessing a purported disclosure of PII under the VPPA. *See N.Z. v. Fenix Int'l Ltd.*, 2025 WL 3627591, *13 (C.D. Cal. Dec. 12, 2025). Plaintiffs' VPPA claim would fail under the law of either jurisdiction.

First, for the alleged Google transmission, Plaintiffs' VPPA claim is barred because they do not plead nor establish in their Opposition that a video title was disclosed as required to meet the definition of PII within the VPPA. Compl. ¶ 100–01; Opp. at 12:9–11; *In re Hulu Privacy Litig*., 86 F.Supp.3d 1090, 1095 (N.D. Cal. 2015) (to state a VPPA claim, a plaintiff must show a disclosure to a third party contained, among other things, "the identity of specific video materials" and "the fact that the person identified 'requested or obtained' that material."); *Martin v. Meredith Corp*., 657 F.Supp.3d 277, 284-85 (S.D.N.Y. 2023) (a transmission must "reveal the title of video" to be actionable).

Second, as to both alleged transmissions, Plaintiffs do not allege facts plausibly establishing the transmission of information an ordinary person could use to identify an individual. Opp. at 11:21-12:7. Unlike in the *Garcia* case Plaintiffs cite, Plaintiffs here do

not plead either transmission would allow an ordinary person to locate an individual's social media profile. *Garcia v. Bandai Namco Ent. Am. Inc.*, 2025 WL 2451033, *7 (C.D. Cal. Aug. 7, 2025) (finding a user's Facebook profile could be located with a Facebook ID by "appending [it] to [the] 'Facebook.com'" URL).

Without citing any supporting caselaw, Plaintiffs also suggest that because companies are treated as "persons" under the law, the ordinary person standard should take account of their capabilities. Opp. at 12:1–3. But Plaintiffs' own case explains the ordinary person standard applies based on *the public's* "technological fluency[,]" not Google or Microsoft's. *Garcia,* 2025 WL 2451033, *8. Because neither alleged transmission contains either a video title or information that could allow an ordinary person to identify Plaintiffs, their VPPA claims fail.

**B. Plaintiffs Still Fail to Show a Knowing Transmission to a Third Party**

Plaintiffs also do not plausibly allege that Defendant "knowingly" transmitted PII to a third party as required to state a VPPA claim. Plaintiffs cite *Smith v. Trinity Broad. of Tex., Inc.*, which found a knowing transmission because plaintiffs there alleged with specificity that defendants knew Facebook IDs would be transmitted due to installation of the Meta Pixel. 2024 WL 4394557, *3 (C.D. Cal. Sept. 27, 2024). Here, Plaintiffs do not plead Defendants *knew* the third-party technologies would transmit an identifier like a Facebook ID. Instead, they at most plead "Defendants knew that their Platform incorporated the Tracking Tools[,]" which is insufficient. Compl. ¶ 131. This is yet another pleading deficiency in Plaintiffs' VPPA claim.

## IV. PLAINTIFFS HAVE FAILED TO STATE A CIPA CLAIM

As Defendants previously explained, because the Plaintiffs with accounts agreed to a New York choice of law provision, they cannot bring privacy claims under the laws of another state. Mot. at 10 (citing *Dunahoo v. Hewlett-Packard Co.*, 2012 WL 178332, *4 (S.D.N.Y. Jan. 20, 2012)). However, even if the Court applies California law, Plaintiffs have not and cannot plead a CIPA claim because they have not plausibly alleged an in-

transit interception, that any contents have been disclosed to Google, or that Defendants aided and abetted a CIPA violation. Also, as explained above, Plaintiffs' screenshots and references to an unspecified "internet user" as opposed to Plaintiffs themselves do not establish Plaintiffs suffered an injury. Compl. ¶¶ 100–01.

### A. Defendants, Parties to Any Communication, Did Not Aid and Abet a CIPA Violation

Plaintiffs admit Defendants are a direct party to the communication, Opp. at 13:10–11 (recognizing "Defendants' status as party to the communications"), which forecloses a claim for direct liability under CIPA. *Reisberg v. Renaissance Learning, Inc.*, 2026 U.S. Dist. LEXIS 33288, *18 (C.D. Cal. Feb. 17, 2026) (dismissing CIPA and ECPA claims against developer of children's educational software based on application of party exception). Thus, Plaintiffs are limited to attempting to state a claim for aiding and abetting a third-party in intercepting their communications.

As detailed in Defendants' moving brief, while some courts have held differently, "in the absence of an explicit statutory scienter requirement, in California civil actions," the better view is the "common law definition [of aiding and abetting] applies." *Valenzuela v. Kroger Co.*, 2024 WL 1336959, *4 (C.D. Cal. Mar. 28, 2024). Thus, to aid and abet a CIPA violation, Plaintiffs must allege facts making it plausible that Defendants knew they assisted a third party whose conduct would constitute a "breach of duty" or a "tortious result." *Id.* at *4. But Plaintiffs do not analyze the common law aiding and abetting definition and do not allege facts making it plausible that Defendants knew that the third parties' conduct would violate CIPA. Indeed, each of the cases Plaintiffs cite—*R.C. v. Walgreen Co.*, *Toy v. Life Line Screening of Am. Ltd*, and *M.G. v. Therapymatch, Inc.*—are inapposite. Opp. at 15-16. *R.C.* and *Toy* do not analyze whether the common law aiding and abetting definition should apply, and all three cases involved "private health information" allegedly intercepted and sent to Facebook—information far more sensitive than the button clicks, device information, and children's video titles at issue

here. 733 F.Supp.3d 876, 903 (C.D. Cal. 2024); 2024 WL 1701263, *1 (N.D. Cal. Mar. 19, 2024); 2024 WL 4219992, *1 (N.D. Cal. Sept. 16, 2024).

**B. No In-Transit Interception Has Occurred**

Contrary to Plaintiffs' suggestion in their Opposition, Plaintiffs have not plausibly alleged they have satisfied CIPA's "in transit" requirement, because each of their references to "contemporaneous" or "simultaneous" transmissions in the Complaint are conclusory and do little more than restate the pleading requirement of real-time interception. Compl. ¶¶ 4, 102, 106, 184; *Heiting v. Taro Pharms. USA, Inc.*, 728 F.Supp.3d 1112, 1126 (C.D. Cal. 2024) (dismissing conclusory allegations that a transmission was intercepted in transit because they "merely restate the statutory language, which is insufficient[.]"). Put differently, Plaintiffs do not explain how Google or Microsoft intercepted communications Plaintiffs made to Pluto *at same time* these communications were made to Pluto. *E.g.*, Compl. ¶¶ 102, 106. Indeed, Plaintiffs also allege the Google and Microsoft technologies combine data received from users' browsers with data from cookies, and then instruct the users' browsers to transmit information "back to Google and Microsoft" after this initial collection. Mot. at 11; Compl. ¶¶ 87-88.[8] This suggests a stepwise sequence that is also inconsistent with an "in transit" interception.

Furthermore, Plaintiffs' contention that the transmissions occur "in transit" contradicts their ECPA allegations, where they suggest disclosures to third parties occurred *after* the alleged interception. Opp. at 14; *Doe v. Kaiser Found. Health Plan*, 2024 WL 1589982, *8-10 (N.D. Cal. Apr. 11, 2024). In other words, Plaintiffs cannot bring both CIPA § 631(a) and ECPA claims upon these same predicate facts.

[8] Plaintiffs' cited authority does not establish otherwise. *In re Vizio* dismissed Plaintiffs' Wiretap Act and CIPA claims and held a more fulsome written description of the allegations was necessary to assess plaintiffs' CIPA claim where transmissions are pled in a stepwise sequence, as here. *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F.Supp.3d 1204, 1228 (C.D. Cal. 2017); Compl. ¶¶ 87, 88. *Heerde v. Learfield Communications, LLC* is similarly inapposite because there, "search Terms were replicated and sent in parallel to the tracking entities." 741 F.Supp.3d 849, 862 (C.D. Cal. 2024).

Finally, under the rule of lenity, CIPA should not be read "so broadly as to cover" Defendant's conduct under the "in transit" requirement. *Doe v. Eating Recovery* Ctr., 2025 WL 2971090, *6 (N.D. Cal. Oct. 17, 2025). Plaintiffs argue that because CIPA was enacted by the California Legislature to respond to new advances in technology, it should apply to internet tracking. Opp. at 14 n.10. Not so. The California Legislature, instead, has promulgated new laws that specifically address internet tracking through the California Consumer Privacy Act ("CCPA"), and as one Ninth Circuit judge has recognized: "California has failed to update § 631(a) to account for advances in technology since 1967. It is not our job to do it for them." *Gutierrez v. Converse Inc.,* 2025 WL 1895315, *3 (9th Cir. July 9, 2025) (concurring with majority).

**C. Defendants Intercept No Contents with Regard to the Alleged Google Transmission**

Plaintiffs have also failed to meaningfully rebut Defendants' argument that they have not plausibly alleged that the Google transmissions contain any contents as required to state a wiretapping claim under CIPA. Compl. ¶¶ 100-01. Mere interactions with a website are not contents. *E.g.*, *In re Zynga Priv. Litig*., 750 F.3d 1098, 1108-09 (9th Cir. 2014). The cases Plaintiffs cite do not support any other conclusion. *Yoon v. Lululemon USA, Inc.* specifically ruled that "keystrokes and mouse clicks," as well as device information—exactly what Plaintiffs allege were disclosed here—are not contents. 549 F.Supp.3d 1073, 1082-83 (C.D. Cal. 2021); Compl ¶ 89. Plaintiffs suggest *Yoon* held contents include "user-generated" material, but this was in reference to text messages and emails, which are not at issue. 549 F.Supp.3d at 1082. Similarly, *Apaydin v. Move, Inc*. is devoid of reasoning on the topic of contents, and in a conclusory manner follows only one case—*Gray v. Luxottica*—which involved a distinct alleged disclosure that a "patient was booking an eye exam." 2025 U.S. Dist. LEXIS 215336, *8–9 (C.D. Cal. Oct. 29, 2025); 2024 WL 5689566, *7 (C.D. Cal. Dec. 16, 2024).

## V. PLAINTIFFS HAVE FAILED TO STATE AN ECPA CLAIM

As noted, Plaintiffs concede Defendants are a party to the communications. Opp. at 13:10–11. The ECPA, as Defendants have previously explained, exempts direct parties to communications from liability unless the crime-tort exception is satisfied. Mot. at 13. Therefore, the question becomes whether Plaintiffs have plausibly alleged the crime-tort exception—whether Defendants intercepted communications "for the purpose of committing any criminal or tortious act[.]" 18 U.S.C. § 2511(2)(d). Plaintiffs have not.

### A. COPPA Cannot Trigger the Crime-Tort Exception

Plaintiffs suggest an alleged COPPA violation may satisfy the crime-tort exception, despite acknowledging they "do not allege an independent cause of action for violations of COPPA." Opp. at 17:19–20. This is wrong for three reasons.

First, as Defendants explained and Plaintiffs failed to contest in their Opposition, the FTC retains sole authority to enforce COPPA. *See* Mot. at 15:5–15; 15 U.S.C. § 6505. Therefore, Plaintiffs cannot rely on COPPA to satisfy the crime-tort exception and thereby exert an "extraneous pull on the scheme established by Congress[.]" *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 353 (2001).[9]

Second, Plaintiffs still do not plausibly allege a COPPA violation, including because Pluto obtained their consent. Plaintiffs do not respond to Defendants' argument that Defendants did not have "actual knowledge" that Plaintiffs, as opposed to their parents, were using Defendants' service. Opp. at 17:14–15. Plaintiffs thus concede this point. *Fernandez*, 2020 WL 6162149 at *5. Instead, Plaintiffs at most contend Defendants offer an online service directed to children. Opp. at 17. But Plaintiffs still do not assert they used Pluto's Kids Mode, such that Pluto could have known they were using the service. *Id.*

---

[9] Plaintiffs suggest "Defendants purposefully ignore" decisions where courts have held an alleged HIPAA violation can satisfy the crime-tort exception. Opp. at 17:22–18:2. But Plaintiffs do not allege a HIPAA violation. Furthermore, COPPA and HIPAA are different statutes with different enforcement regimes. The FTC retains not only rule making authority for COPPA, but has exclusive control over determinations central to COPPA claims. 16 C.F.R. § 312.2.

Third, Plaintiffs cannot invoke the crime-tort exception to ECPA because the alleged interception that forms the basis of their ECPA claims is one and the same as the alleged violation of COPPA.

**B. Plaintiffs Do Not Allege a Further Crime or Tort Distinct From the Interception**

Plaintiffs argue the alleged disclosure of intercepted communications is distinct from the alleged interception itself and a "subsequent crime or tort[.]" *Sussman v. Am. Broad. Companies, Inc.,* 186 F.3d 1200, 1202 (9th Cir. 1999) (holding the interception must be done "for the purpose of facilitating some further impropriety"); Opp. at 19:22–20:4. But, as described herein, Plaintiffs fail to plead facts necessary to establish any further (subsequent) alleged crime or tort (*e.g.*, a VPPA claim). *Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 WL 1141168, *13 (C.D. Cal. Feb. 27, 2025) ("Plaintiff failed to sufficiently state a claim for intrusion upon seclusion. This, therefore, cannot serve as the basis for the Crime-Tort Exception to apply"); *Reisberg*, 2026 U.S. Dist. LEXIS 33288, *18 (similar).[10]

Further, the alleged disclosures cannot be "further improprietie[s]" or "subsequent crime[s] or tort[s]" for purposes of triggering the crime-tort exception because Plaintiffs conflate all such alleged disclosures with the alleged interception. *Sussman*, 186 F.3d at 1202. Plaintiffs assert in their Opposition that they "allege throughout the Complaint that Defendants' transmissions of Sensitive Information occur contemporaneously as Minor Plaintiffs navigate the Platform." Opp. at 14:14–18 (citations omitted); *see also id.* at 2:19–21, 13:21–23. Plaintiffs cannot have it both ways. The alleged disclosures cannot be "subsequent crime[s] or tort[s]" and be contemporaneous with the alleged interception. *Sussman*, 186 F.3d at 1202; *Doe*, 2024 WL 1589982, *8–10 (ECPA's crime-tort exception did not apply to tracking technologies when the further crime or tort "inheres in the alleged interception"); *Planned Parenthood Fed'n of Am. v. Newman*, 51 F.4th

[10] Given Plaintiffs abandon their Illinois, Indiana, and New Jersey invasion of privacy claims, their ECPA claims cannot be based off these claims.

1125, 1136 (9th Cir. 2022) (holding "[Plaintiff's] argument is circular: according to [Plaintiff], the civil RICO conspiracy is furthered by the recordings, and the recordings themselves further the ongoing civil RICO conspiracy. Such reasoning is not permitted by § 2511(2)(d)"). Therefore, as pled, Plaintiffs cannot plausibly plead a crime or tort that is independent of the alleged interception or recording.

### C. Plaintiffs Fail to Plausibly Allege Defendants Intercepted Communications *For the Purpose of* Committing a Further Crime or Tort

Plaintiffs also attempt to make a strawman out of Defendants' point that there "is nothing criminal or tortious about using an analytics service to improve a website's functionality or to attempt to make money." Mot. at 13:24–25; Opp. at 18:7–19:1. Defendants do not claim a financial motive automatically renders ECPA claims inactionable, as Plaintiffs suggest. Rather, Defendants argue that Plaintiffs need to plead facts establishing the actual criminal or tortious motivation.[11] *See* Opp. at 19 n.13 (collecting cases); *Sussman*, 186 F.3d at 1202 (recognizing blackmail, a crime with a possible financial motive, could trigger the crime tort exception); *Roe v. Amgen*, 2024 WL 2873482, *6 (C.D. Cal. June 5, 2024) (emphasizing "[t]here are no allegations in Plaintiffs' complaint supporting the averment that Defendant's primary motivation, or a determining factor, in intercepting Plaintiffs' communications using its data collection tools was tortious or criminal"); *B.K. v. Eisenhower Med. Ctr.*, 721 F.Supp.3d 1056 (C.D. Cal. 2024) (similar). As a Northern District Court explained, "[a]lleged interceptions fall within the tort or crime exception only where the 'primary motivation or a determining factor in [the interceptor's] actions has been to injure plaintiffs tortiously.'" *In re Google Gmail Litig.*, 2014 WL 1102660, 18 n.13 (N.D. Cal. Mar. 18, 2014) (citation omitted);

[11] Plaintiff's citation to *Stein v. Edward-Elmhurst Health,* 2025 WL 580556 (N.D. Ill. Feb. 21, 2025), is unavailing given the out-of-circuit case conflicts with the Ninth Circuit's ruling in *Sussman*. 186 F.3d at 1202 (dismissing claims where plaintiffs did not allege "the tape was made for the purpose of committing some other subsequent crime or tort."). It further conflicts with the statute's legislative history and interpretation by other circuits. *E.g.*, *Caro v. Weintraub,* 618 F.3d 94, 99 (2nd Cir. 2010).

*Sussman*, 186 F.3d at 1202 ("the focus...is upon whether the purpose for the interception—its intended use—was criminal or tortious" (citation omitted)).

But Plaintiffs "allege no such facts" (Mot. at 13:22) that Defendants intended to "perpetuate torts on millions of Internet users[.]" *Katz-Lacabe v. Oracle Am. Inc.*, 668 F.Supp.3d 928, 945 (N.D. Cal. 2023). Indeed, another court in this District recognized that where "Plaintiffs aver that Defendant's motivations were to improve their marketing and advertising efforts, the crime-tort exception is inapplicable [because] [D]efendant[s'] primary motivation is to make money rather than to injure plaintiffs tortiously or criminally." *Roe*, 2024 WL 2873482, *6; Compl. ¶¶ 115, 190 ("Defendants[] receive access to advertising and marketing analytics services in exchange for installing Google and Microsoft's Tracking Tools") ("Defendants intentionally used the wire or electronic communications to increase its profit margins"). Plaintiffs therefore do not plausibly allege Defendants acted for the purpose of committing a crime or tort.

## VI. PLAINTIFFS HAVE FAILED TO STATE AN INVASION OF PRIVACY CLAIM

### A. Plaintiffs Abandon Most of Their Common Law Invasion of Privacy Claims

Plaintiffs do not oppose Defendants' 12(b)(6) arguments regarding common law invasion of privacy in their Opposition and make no common law invasion of privacy arguments under Illinois, Indiana, New Jersey or New York law. Mot. at 16:14–17:14. "Because [Plaintiffs] did not oppose defendants' motion to dismiss the claim, which constitutes abandonment," dismissal with prejudice is warranted for Plaintiffs' Illinois, Indiana, and New Jersey common law claims. *Griffin v. Green Tree Servicing, LLC*, 166 F.Supp.3d 1030, 1054 (C.D. Cal. 2015).[12] Even if the Court evaluates the remaining California claims, notwithstanding the New York choice of law provision to which those Plaintiffs with accounts agreed, these California claims should be dismissed.

[12] Further, since Plaintiffs conceded their diminution of value argument, without common law invasion of privacy claims, the Illinois, Indiana, and New Jersey plaintiffs cannot establish Article III standing.

### B. Plaintiffs Fail to Plead a California Invasion of Privacy Claim at Common Law or Under the California Constitution

In their moving brief, Defendants pointed to *Belluomini v. Citigroup, Inc.,* 2013 WL 3855589, *6 (N.D. Cal. July 24, 2013) and noted the "high bar" required for California Constitution and common law invasion of privacy claims. Mot. at 17. Citing California state court precedent, *Belluomini* explained, "[e]ven disclosure of personal information, including social security numbers, does not constitute an 'egregious breach of the social norms' to establish an invasion of privacy claim." 2013 WL 3855589, *6 (citation omitted). In their Opposition, Plaintiffs do not explain how the alleged disclosure here is more egregious than the disclosure of social security numbers and instead focus on the theory that, "even where a defendant is the intended recipient of the private information at-issue, California courts will find an intrusion if the plaintiffs provided their private information to the defendant with an expectation that it would be kept confidential." Opp. at 21:12–14. This is incorrect.

First, Plaintiffs do not grapple with Defendants' point that Plaintiffs fail to allege how a party to a communication can "intrude" upon said communication. Mot. at 17:15–26.[13] In California, intrusion upon seclusion "is proven only if the plaintiff had an objectively reasonable expectation of seclusion or solitude in the place, conversation or data source." *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal.App.4th 986, 992 (Ct. App. 2011). But "it is never a secret to one party to a conversation that the other party is listening to the conversation." *Rogers v. Ulrich,* 52 Cal. App. 3d 894, 899 (Cal. Ct. App. 1975). Accordingly, "one cannot logically intrude into communications to which they are a party" for purposes of an intrusion upon seclusion claim, and Plaintiffs' argument thus falls short. *Saedi,* 2025 WL 1141168, *8.

---

[13] Plaintiffs suggest *Lau v. Gen Digital Inc.*, 2024 WL 1880161, *2 (N.D. Cal. Apr. 3, 2024) supports their argument, but *Lau* involved representations from Defendant that it would "help protect' [plaintiffs'] privacy while browsing the internet" and then did the opposite. Further, in *Opperman v. Path, Inc.,* 87 F.Supp.3d 1018, 1059 (N.D. Cal. 2014), the defendant did not "contest that the apps intruded upon [Plaintiffs privacy interest]."

Second, Plaintiffs do not establish there was an expectation their communications would "be kept confidential."[14] Opp. at 21:14. To have a legally protected privacy interest under the California Constitution, Plaintiffs must allege their internet communications "actually included content that qualifies under California law as 'confidential' or 'sensitive.'" *In re Yahoo Mail Litig.*, 7 F.Supp. 3d 1016, 1039-41 (N.D. Cal. 2014) (citing *Hill*, 7 Cal. 4th 1, 35 (1994)). "[I]n California, courts have developed a presumption that Internet communications do not reasonably give rise to that expectation [that a communication is confidential]." *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, *3 (N.D. Cal. Oct. 23, 2019) (collecting cases); *Folgelstrom,* 195 Cal.App. 4th at 992 ("[O]btaining plaintiff's address without his knowledge or permission, and using it to mail him coupons and other advertisements" was "not an egregious breach of social norms, but routine commercial behavior").

Plaintiffs do not plausibly allege an actionable "intrusion" into a "confidential" communication, and thus fail to state an invasion of privacy claim under California law.

## VII. PLAINTIFFS FAIL TO STATE ANY OTHER COMMON LAW CLAIMS

The Opposition also fails to resurrect Plaintiffs' negligence, implied contract, and unjust enrichment claims. Plaintiffs do not cite New Jersey or New York law in their arguments on these claims, and do not cite any Indiana or Illinois law in support of their implied contract claims. Those claims are therefore abandoned. *Griffin*, 166 F.Supp.3d at 1054.

### A. Plaintiffs' Remaining Negligence Claims Are Not Well-Pled

Defendants argued Plaintiffs failed to allege Defendants owed a duty to safeguard Plaintiffs' information under Illinois or Indiana law, and failed to plead damages for purposes of a negligence claim under any states' law. Mot. at 18:5–6, 19:4–11. Plaintiffs do not contest that Indiana or Illinois do not recognize a common law duty to safeguard

[14] In support of their invasion of privacy claims under California law, Plaintiffs cite five cases in a footnote. *See* Opp. n. 15. But these decisions either (1) considered claims brought against third party interceptors of communications or (2) entailed allegations that involved the disclosure of health information, which California Courts have recognized as actionable sensitive information.

or not disclose Plaintiffs' information, and thus waive those arguments. *Fernandez*, 2020 WL 6162149 at *5. Plaintiffs further fail to respond to Defendants' arguments that the alleged information is not actually "personal information" and that Plaintiffs' allegations that Defendants store "data in an unsafe manner" is purely speculative, waiving these arguments too. *Id.*; Mot. at 18:27–19:1.

Plaintiffs instead rely on conclusory assertions of a purported "privacy injury[.]" Opp. at 22; Compl. ¶¶ 13, 223, 225. But such allegations are either speculative or do not constitute a cognizable privacy injury for reasons described above. *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1064 (N.D. Cal. 2012) (dismissing negligence claims where Plaintiffs failed to identify an "appreciable, nonspeculative, present injury") (citation omitted). Plaintiffs' cases do not establish otherwise, including because they rely on pre-*Popa* cases to suggest they have sufficiently alleged a privacy injury for purposes of their negligence claim. *B.K. v. Desert Care Network*, 2024 WL 1343305, *10 (C.D. Cal. Feb. 1, 2024); *In re Facebook, Inc.*, 402 F.Supp.3d 767, 799 (N.D. Cal. 2019). Moreover, the information at issue in Plaintiffs' cases included medical information or private conversations, unlike the information here. Opp. at 22:6–16. Accordingly, Plaintiffs do not allege an "appreciable, nonspeculative, present injury" and the Court should therefore dismiss their negligence claims. *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1064.[15]

### B. Plaintiffs' Remaining Breach of Implied Contract Claims Fail

Plaintiffs do not respond to Defendants' argument that Plaintiffs failed to plead a "meeting of the minds," an exchange of consideration, or contractual damages, all required elements under every state's law Plaintiffs have put at issue, thus waiving these points. Mot. at. 19–20 (citing, *e.g.*, *Beltran v. Doctors Med. Ctr.*, 2025 WL 1635467, *12

[15] Plaintiffs' invocation of COPPA in their negligence argument is improper because (1) Defendants did not violate COPPA, and (2) Plaintiffs did not plead a negligent violation of COPPA in the Complaint. *Minor v. Fedex Office & Print Services, Inc.*, 182 F.Supp.3d 966, 977 (N.D. Cal. 2016) ("Plaintiff may not use his opposition to raise and argue new allegations or claims not in the complaint").

(E.D. Cal. June 9, 2025)).

Instead, Plaintiffs merely reallege allegations found in the Complaint and cite data breach cases to suggest they have adequately alleged an implied contract claim. But data breach cases, where defendants allegedly failed to safeguard sensitive information (*e.g.*, financial accounts and social security numbers) from unauthorized hackers, are distinct from Plaintiffs' claims here. *See* Opp. at 23:5–10.

Plaintiffs' Illinois claims—to the extent not waived entirely, as explained above—fail for the additional reason that Illinois law requires well-pled allegations of actual monetary damages. *Archey v. Osmose Util. Serv., Inc.*, 2021 WL 3367156, *2 (N.D. Ill. Aug. 3, 2021). As discussed, Plaintiffs waived their diminution of value argument, their only basis for arguing they suffered a monetary damage. Accordingly, Plaintiffs' Illinois implied contract claims should be dismissed.

### C. Plaintiffs' Remaining Unjust Enrichment Claims Are Not Well-Pled

Plaintiffs do not respond to Defendants' argument that there is no independent unjust enrichment cause of action under California law. *In re iPhone Application Litig.*, 2011 WL 4403963, *15 (N.D. Cal Sept. 20, 2011). Nor did Plaintiffs respond to Defendants' argument that Plaintiffs failed to show Defendants were enriched or how Plaintiffs suffered a tangible detriment, required elements under Illinois, Indiana, New Jersey and New York law. Mot. at. 20; *Irwin v. Jimmy John's Franchise LLC*, 175 F.Supp.3d 1064, 1072 (C.D. Ill. 2016); *Hemy v. Perdue Farms, Inc.*, 2011 WL 6002463, *22-23 (D.N.J. Nov. 30, 2011); *Burget v. R.A.M. Ent., LLC*, 2015 WL 4490938, *7-8 (N.D. Ind. July 23, 2015); *Mount v. PulsePoint Inc.*, 2016 WL 5080131, *13 (S.D.N.Y. Aug. 17, 2016). Plaintiffs therefore waive these arguments, warranting dismissal of the unjust enrichment claims.

## VIII. PLAINTIFFS HAVE FILED SUIT AGAINST THE WRONG DEFENDANT

Finally, Plaintiffs argue that because the Terms and Privacy Policy refer to Paramount, Paramount must "control" Pluto TV. This is incorrect. To begin, Plaintiffs do

not even plead Paramount "controls" Pluto in their Complaint, and in fact allege "Pluto is a Paramount subsidiary operating the Pluto TV video streaming service[.]" Compl. ¶ 5. Plaintiffs also ignore language in Pluto's Terms that describes the "network of interactive services" as being "provided by Pluto Inc." Steinberg Decl., Ex. C, Preamble. This is evidence in "direct[] contraven[tion] [of] Plaintiffs' claims[,]" as contemplated in their own cited case. *Harris Rutsky & Co. Ins. Servs. Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003). Indeed, a mere parent-subsidiary relationship, which is all that is pled here, is insufficient, as Defendants outlined in their moving brief. *Aliign Activation Wear, LLC v. lululemon athletica,* 2020 WL 5790418, *3 (C.D. Cal. Aug. 24, 2020) (plaintiffs' allegations that a parent company controlled a subsidiary were insufficient, even where a wholly owned subsidiary shared directors, officers, and resources).

Finally, Plaintiffs' reliance on *In re Pacific Fertility Center Litigation* is misplaced, because even if Paramount was a proper defendant, Plaintiffs do not allege Paramount and Pluto have "acted in concert" to injure Plaintiffs. 2019 WL 3753456, *3 (N.D. Cal. Aug. 8, 2019); *Adams v. I-Flow Corp.*, 2010 WL 1339948, *1 (C.D. Cal. Mar. 30, 2010) (rejecting group pleading where plaintiffs sued several defendants, but did not differentiate between defendants and pled their claims against "defendants" generally without tying their factual allegations to a particular defendant). Accordingly, Plaintiffs' failure to plead how Paramount acted with Pluto to injure Plaintiffs requires dismissal of their claims against Paramount.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint in its entirety.

The undersigned, counsel of record for Defendant PARAMOUNT SKYDANCE CORPORATION & PLUTO INC., certifies that this brief contains 8,215 words, which complies with the word limit set by court order dated February 13, 2026.

Dated: March 2, 2026

Respectfully submitted,

WEIL, GOTSHAL & MANGES LLP

By: */s/ David R. Singh*
DAVID R. SINGH

DAVID R. SINGH
david.singh@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway, 4th Floor
Redwood Shores, CA 94065-1134
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

DAVID L. YOHAI (*pro hac vice*)
david.yohai@weil.com
BLAKE J. STEINBERG (*pro hac vice*)
blake.steinberg@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Defendant PARAMOUNT SKYDANCE CORPORATION & PLUTO INC.