UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 25-02945-KK-DTBx** | Date: | April 20, 2026 |
|---|---|---|---|

Title:   ***Raquel Diaz et al. v. Paramount Skydance Corporation et al.***

Present: The Honorable   KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Dominique Carr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   **(In Chambers) Order GRANTING Defendants' Motion to Dismiss [Dkt. 32]**

## I.
## <u>INTRODUCTION</u>

On November 4, 2025, plaintiffs Raquel Diaz on behalf of her minor child B.E., Lisa Medina on behalf of her minor child G.C., Oscar Rodriguez on behalf of his minor child F.R., Stacy Rader on behalf of her minor child S.C., and Katrina Montgomery on behalf of her minor children J.M., J.A., and J.M. (collectively, "Plaintiffs") filed the operative Class Action Complaint against defendants Paramount Skydance Corporation and Pluto Inc. ("Defendants"), asserting claims under the Video Privacy Protection Act, 18 U.S.C. § 2710, <u>et seq.</u> ("VPPA"), Electronic Communications Privacy Act, 18 U.S.C. § 2511(1), <u>et seq.</u> ("ECPA"), California Constitution, California Invasion of Privacy Act, Cal. Penal Code § 360, <u>et seq.</u> ("CIPA"), and state common law.  ECF Docket No. ("Dkt.") 1, Compl. ("Compl.").  On January 8, 2026, Defendants filed the instant Motion to Dismiss ("Motion").  Dkt. 32, Motion ("Mot.").

The Court finds this matter appropriate for resolution without oral argument.  <u>See</u> Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.  For the reasons below, Defendants' Motion is **GRANTED**.

///

///

///

## II.
## BACKGROUND

### A.    RELEVANT FACTS

The Complaint alleges the following:

Between 2024 and 2025, Plaintiffs watched pre-recorded video content in the "Kids" section of Defendants' video streaming platform ("Platform").  Compl. ¶¶ 5, 16, 20, 24, 28, 32.  To access content on the Platform, users must first register for "Pluto TV" accounts offered by defendant Paramount Skydance Corporation ("Paramount") through its subsidiary, defendant Pluto Inc. ("Pluto").[1]  Id. ¶ 5.

Companies Google and Microsoft develop surveillance software (such as "tracking pixels" and "cookies") that discerns information about internet users' online activity.  Id. ¶ 8.  Website service operators can implement this surveillance software to monitor activity of visitors to their websites.  Id.  Advertisers use information elicited by the surveillance software installed by website service operators, such as Defendants, to curate individual advertising profiles and tailor advertisements across devices.  Id. ¶¶ 6-7.  "Typical internet users" such as Plaintiffs are "unable to detect" the surveillance software.  Id. ¶ 111-12.

Defendants' "Children's Privacy Policy" states Defendants will not share personally identifiable information from minor users "without obtaining parental permission."  Id. ¶¶ 49, 105.  Despite this, Defendants "harvest personally identifiable information" about their minor users and "simultaneously" share that information with third parties, including "internet advertising giants" Google and Microsoft.  Id. ¶¶ 4, 106.  Neither Plaintiffs nor their parents gave informed consent for Defendants to share Plaintiffs' "personally identifiable information" with third parties.  Id. ¶¶ 4, 11, 106.

As a result of Defendants' disclosure of information about Plaintiffs' online activity, Plaintiffs and purported class members experienced "invasion[s] of privacy," "lack of trust in communicating with online services providers," "emotional distress," "loss of benefit to the bargain," and "diminution of value" of their personally identifiable information.  Id. ¶ 13.

### B.    PROCEDURAL HISTORY

Plaintiffs commenced this putative class action by filing the operative Complaint on November 4, 2025.  Id.  The Complaint raises the following causes of action:

1. **Cause of Action One:**  Violation of VPPA;
2. **Cause of Action Two:**  Invasion of Privacy;
3. **Cause of Action Three:**  Violation of ECPA;

---

[1] With the exception of Raquel Diaz's minor child, Plaintiffs watched content on the Platform through registered accounts.  Steinberg Decl., Ex. G, at 61 (disclosing Raquel Diaz's minor child accessed the Platform "without registering for an account").

4. **Cause of Action Four:** Violation of the right to privacy under California Constitution Art. 1, § 1;
5. **Cause of Action Five:** Violation of CIPA;
6. **Cause of Action Six:** Negligence;
7. **Cause of Action Seven:** Breach of Implied Contract; and
8. **Cause of Action Eight:** Unjust Enrichment.

Id. ¶¶ 149-244.

On January 8, 2026, Defendants filed the instant Motion, arguing Plaintiffs lack standing, a forum selection clause governs, and Plaintiffs fail to state a claim. Mot. In support of the Motion, Defendants include a declaration from Blake J. Steinberg, dkt. 32-1 ("Steinberg Decl."), excerpts of Defendants' Platform interface, and Defendants' Terms of Use, Privacy Policy, and Children's Privacy Policy ("Terms of Service"), id. ¶¶ 4-9, Exs. A-F.

On February 9, 2026, Plaintiffs filed an Opposition to the Motion, disputing each of Defendants' contentions. Dkt. 39, Opposition ("Opp.").

On March 2, 2026, Defendants filed a Reply. Dkt. 43, Reply. In support of the Reply, Defendants submit a declaration from Tad Ro, dkt. 43-1 ("Ro Decl."), as well as current and prior copies of the Terms of Service, id. ¶¶ 4-5, Exs. H-J.

On April 8, 2026, Defendants filed a Statement of Recent Decision regarding In re USA Today Co., Inc. Internet Tracking Litig., No. 24-CV-05150-MMC, 2026 WL 932655 (N.D. Cal. Apr. 6, 2026), dkt. 45, in which a district court found class action plaintiffs lacked Article III standing to pursue CIPA and other related claims, dkt. 45-1 at 3-6.

This matter, thus, stands submitted.

## III.
## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a case for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Plaintiffs invoking federal jurisdiction bear the burden of demonstrating Article III standing. TransUnion LLC v. Ramirez, 594 U.S. 413, 430-32 (2021). To establish Article III standing, Plaintiffs must show they have "suffered, or will suffer, an injury that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" Murthy v. Missouri, 603 U.S. 43, 57 (2024) (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013)). "In a class action, this standing inquiry focuses on the class representatives." NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc., 926 F.3d 528, 532 (9th Cir. 2019).

///

///

///

## IV.
## DISCUSSION

**A.     PLAINTIFFS LACK ARTICLE III STANDING TO BRING THEIR CLAIMS[2]**

### 1.     Applicable Law

"Article III of the Constitution limits the jurisdiction of federal courts to '[c]ases' and '[c]ontroversies.'" Murthy, 603 U.S. at 56. "A proper case or controversy exists only when at least one plaintiff establishes that [they] ha[ve] standing to sue." Id. at 57 (citation modified). The "irreducible constitutional minimum" of Article III standing consists of: (1) injury in fact, (2) causation, and (3) redressability. Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)); see also Diamond Alt. Energy, LLC v. Env't Prot. Agency, 606 U.S. 100, 111 (2025).

To show an injury in fact, the plaintiff must demonstrate an injury that is "concrete," "particularized," and "actual or imminent," not speculative. Food & Drug Admin. v. All. for Hippocratic Med., 602 U.S. 367, 381 (2024). An injury is not simply concrete because there is a statutory violation. See TransUnion LLC, 594 U.S. at 427 ("[A]n injury in law is not an injury in fact."); United States v. Texas, 599 U.S. 670, 676 (2023) ("[T]he alleged injury must be legally and judicially cognizable" (quoting Raines v. Byrd, 521 U.S. 811, 819 (1997))). Rather, the injury must be closely related "to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." TransUnion LLC, 594 U.S. at 424 (quoting Spokeo, Inc., 578 U.S. at 341); accord Popa v. Microsoft Corp., 153 F.4th 784, 789 (9th Cir. 2025) ("[H]istory [is] the touchstone for concreteness.").

Some harms, such as physical, monetary, and constitutional harms, "readily qualify" as "concrete" under Article III. TransUnion LLC, 594 U.S. at 425. For other harms, however, the plaintiff must identify "a close historical or common-law analogue" to their alleged injury, albeit not

---

[2] Defendants also move to dismiss the Complaint for improper venue under Federal Rule of Civil Procedure 12(b)(3) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). First, Defendants incorrectly argue venue is "improper" in this court because Plaintiffs agreed to Terms of Service requiring all claims be filed in New York County. Mot. at 17-18, 32; see also Compl. ¶ 5 (acknowledging users agree to register with Defendants in order to access content on the Platform). However, a valid, applicable forum-selection clause "does not render venue in a court 'wrong' or 'improper' within the meaning of . . . 12(b)(3)." Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex., 571 U.S. 49, 59 (2013). As the Supreme Court has made clear, "a valid forum-selection clause should be addressed through a motion to transfer under [28 U.S.C.] § 1404(a) rather than dismissal." Domen v. Vimeo, Inc., No. SACV 19-01278-SVW-AFMx, 2019 WL 4998782, *2 (C.D. Cal. Sep. 4, 2019) (citing Atl. Marine Constr. Co. and M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972)).

Additionally, as the Court finds Plaintiffs lack standing to bring their claims, it declines to address Defendants' remaining basis for dismissal under Federal Rule of Civil Procedure 12(b)(6). See Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 587 (1999) (counseling federal courts to "dispose" of subject matter jurisdiction issues first where they "involve no arduous inquiry"); Bell v. Hood, 327 U.S. 678, 682 (1946) (compelling federal courts to "assume jurisdiction" "before" deciding whether a complaint states a claim, not "after").

---

**CIVIL MINUTES—GENERAL**     Initials of Deputy Clerk DC

"an exact duplicate." Id. at 424; see also Popa, 153 F.4th at 791 ("[Courts] look to the specific underlying harm experienced by the plaintiff and compare it, in detail, to a specific common-law tort."). "A close analogue exists when the alleged and traditionally recognized harm[s] are similar in 'kind' rather than 'degree.'" Six v. IQ Data Int'l, Inc., 129 F.4th 630, 634 (9th Cir. 2025) (citation modified), cert. denied, 146 S. Ct. 120 (2025).

### 2. Analysis

Here, the crux of all of Plaintiffs' claims is Defendants' knowing disclosure of their "personally identifiable information to Google and Microsoft," in violation of their rights pursuant to the VPPA, ECPA, CIPA, California Constitution, and common law invasion of privacy, negligence, breach of implied contract, and unjust enrichment. Compl. ¶¶ 154, 160, 180-81, 185-86, 200, 215, 223, 230, 243. To demonstrate standing, Plaintiffs must identify "harms[s] that [they] experienced that [are] remotely similar" to the harms protected by the four "discrete" invasion-of-privacy torts traditionally recognized in American courts. Popa, 153 F.4th at 792 (quoting Nabozny v. Optio Sols. LLC, 84 F.4th 731, 735 (7th Cir. 2023)) (referring to "intrusion upon seclusion, appropriation of another person's name or likeness, publicity given to another person's private life, and publicity that places one in a false light").

In this case, the Complaint raises three theories of injury. First, Plaintiffs allege a simple "privacy injury" arising from Defendants' provision of Plaintiffs' personally identifiable information to Google and Microsoft. Compl. ¶¶ 154, 181, 200, 215-16, 223, 230. Second, Plaintiffs allege an "intrusion upon seclusion" injury arising from concern over the dissemination of their personally identifiable information. Id. ¶¶ 164-65, 202-03. Third, Plaintiffs allege "loss of valuable rights and protections," including money obtained by Defendants due to their collection of the personally identifiable information. Id. ¶¶ 204, 240. The Court addresses each argument in turn and concludes none of these theories of injury are recognized as "bas[es] for a lawsuit in American courts." TransUnion LLC, 594 U.S. at 424.

### a. Disclosure of Private Information

Plaintiffs' First (VPPA), Third (ECPA), Fifth (CIPA), Sixth (Negligence), and Seventh (breach of implied contract) causes of action are founded on alleged harm caused by Defendants' disclosure of personally identifiable information to third parties without Plaintiffs' authorization. Compl. ¶¶ 149-55, 169-95, 206-33; Opp. at 13-14. The Complaint alleges Defendants' Platform obtained this information through configuring tracking pixels that "surreptitiously acquire[d] information from [Plaintiffs'] browser[s]" and then disclosed Plaintiffs' personally identifiable information to Google and Microsoft. Compl. ¶¶ 86-88, 97, 104. The Complaint provides four examples of information Defendants' Platform collects from users: (1) the title and URL of "specific videos watched by minors," (2) "unique identifier[s] that Google and Microsoft use to identify" users, (3) "information that is commonly used to create a browser fingerprint, such as [users'] IP address[es], language selection, screen resolution, microprocessor type, internet browser software and version number, and operating system software and version number," and (4) records of how "user[s] move[] their mouse[s], how far they scroll[], and the areas of the webpage that the user[s] spent the most time reviewing." Id. ¶¶ 4, 8, 10, 98, 100-01, 103.

Here, having considered the alleged injuries, the Court finds none are sufficient to establish standing. Plaintiffs argue their type of injury is analogous to the traditionally recognized harm of

"disclosure of private information," by comparing their injury to harm caused by "a video clerk disseminating customer records to a third party without the customer's authorization," suggesting Defendants caused "harm or material risk" by disclosing their "embarrassing, invasive, or otherwise private" personally identifiable information to third parties.  Opp. at 12-15 (citation modified).  As discussed below, however, this argument fails to establish harm with a "close relationship" to the traditionally recognized intangible harm caused by disclosure of private information.  TransUnion LLC, 594 U.S. at 425 (citing Davis v. Fed. Election Comm'n, 554 U.S. 724, 733 (2008)).

First, Plaintiffs admit the information shared to third parties does not by itself link their watch history to them as individuals.  See Compl. ¶¶ 100-01 (describing how the Platform transmits "identifier number[s]" to third parties).  Thus, the mere disclosure of Plaintiffs' viewing activity without revealing Plaintiffs' names or other private personal information is not analogous to the disclosure of private information traditionally recognized by courts.  Cf. Davis, 554 U.S. at 732 (finding plaintiff had standing based on injury from disclosure of their private information in a government form that revealed their name and personal expenses).

Second, Plaintiffs make conclusory assertions about the nature of the alleged harm, alleging the disclosure of their Platform viewing history is intrusive because it was disclosed to "two of the largest digital advertisers in the world."  Opp. at 14.  Even accepting their allegations as true, Plaintiffs do not present any evidence that the disclosure of their Platform activity caused embarrassment, was invasive, or that the videos they watched were at all "private."  See, e.g., Wooten v. BioLife Plasma Servs. L.P., 807 F. Supp. 3d 1139, 1145 (E.D. Cal. 2025) (finding it relevant that "the third-party trackers collected any other 'embarrassing, invasive, or otherwise private information'" (quoting Popa, 153 F.4th at 794)); Rodriguez v. Brushfire Recs., No. CV 25-09797-CAS-PDx, 2025 WL 3692144, at *7 (C.D. Cal. Dec. 15, 2025) (finding "vague and generalized allegations" failed to present an injury sufficient to confer standing).  Indeed, Plaintiffs fail to meet their burden to analogize the harm caused by disclosure of their Platform viewing activity through tracking pixels and cookies.[3]  See ,e.g., Dawidzik v. Tesla, Inc., No. EDCV 25-01982-KK-SPx, 2025 WL 3786963, at *3-4 (C.D. Cal. Dec. 29, 2025) (finding the use of three pixels to transmit data to third party servers "only when the user visited [d]efendant's website" did "not rise to the same level of intrusion" caused by creation of "cradle-to-grave" user profiles (citation modified)).  The Ninth

---

[3] In their Opposition, Plaintiffs cite to cases that, in fact, undermine their theory of injury. See Opp. at 14; de Ayora v. Inspire Brands, Inc., No. 25-cv-03645-AGT, 2025 WL 3707561, at *2 (N.D. Cal. Dec. 22, 2025) (recognizing injury caused by defendants' alleged disclosure of "data generated during visits to a website" and "historical data and information about where [p]laintiffs came from via referring URLs"); Tsering v. Meta Platforms, Inc., No. 25-cv-01611-RFL, 2026 WL 89320, at *2-3 (N.D. Cal. Jan. 12, 2026) (recognizing injury based on defendants' disclosure of users' geolocation information); Gilligan v. Experian Data Corp., No. 25-cv-02873-RFL, 2026 WL 32259, at *2 (N.D. Cal. Jan. 6, 2026) (recognizing injury based on defendant's "widespread tracking" of users' web browsing activity beyond defendant's website and "across the internet"); Camplisson v. Adidas Am., Inc., 809 F. Supp. 3d 1095, 1106 (S.D. Cal. 2025) ("[R]ather than just recording clicks and movements on the Defendant's website, Plaintiffs have alleged that the [t]rackers on Defendant's website have collected a broad set of their personal identifying and addressing information[.]"); Deivaprakash v. Condé Nast Digit.,  798 F. Supp. 3d 1100, 1106-07 (N.D. Cal. 2025) (recognizing injury where defendants' trackers allegedly "allow[ed] third parties to monitor the users' behavior across the [i]nternet" and "geographic locations, incomes, and preferences").  In contrast to the cases cited where courts have found an injury sufficient to confer standing, the Complaint makes no such allegations of Plaintiffs' injuries.

---

**CIVIL MINUTES—GENERAL**                Initials of Deputy Clerk DC

Circuit previously rejected this kind of "broad theory" of "free-roaming privacy right" in Popa, which held the plaintiff failed to explain how the tracking of her activity on the defendant's website was "remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." Popa, 153 F.4th at 791; see also Rodriguez v. Culligan Int'l Co., No. 25-cv-00225-AJB-KSC, 2025 WL 3064113, at *3 (S.D. Cal. Nov. 3, 2025) ("Instead of pointing to any specific tort, [the plaintiff] broadly contends that any invasion of a statutorily recognized privacy interest is sufficient to constitute an Article III injury. This is not enough." (citation omitted)).

Hence, Defendants' Motion is **GRANTED** with respect to Plaintiffs' First, Third, Fifth, Sixth, and Seventh causes of action.

### b.      Intrusion Upon Seclusion

Plaintiffs' invasion of privacy claim and claim for violation of Article 1, Section 1 of the California Constitution, providing the inalienable right to privacy, is premised on the allegation Defendants "intruded" upon Plaintiffs' "legally protected privacy interests, including interests in precluding the dissemination or misuse of their confidential [p]ersonal [i]nformation." Compl. ¶¶ 157-67; 201; Opp. at 12-14. To plead an injury for intrusion upon seclusion, Plaintiffs must establish "an intentional interference with [their] interest in solitude or seclusion, either as to [their] person[s] or as to [their] private affairs or concerns, of a kind that would be highly offensive to a reasonable [person]." Nayab v. Cap. One Bank (USA), N.A., 942 F.3d 480, 491 (9th Cir. 2019) (emphasis omitted) (citation modified).

Here, Plaintiffs fail to establish how the alleged intrusion of their information is "similar to the 'highly offensive' interferences or disclosures that were actionable at common law." Popa, 153 F.4th at 791 (citation modified). As an initial matter, Plaintiffs' allegations do not concern specific, sensitive information, but rather, vaguely "personally identifiable information" in the form of "specific videos watched by minors." Compl. ¶ 4. However, as discussed above, even under an expansive view of the disclosed personally identifiable information, the intercepted information Plaintiffs cite does not provide a sufficient basis to establish an expectation of privacy. Popa, 153 F.4th at 791 (noting plaintiff "identifie[d] no embarrassing, invasive, or otherwise private information collected"). To the contrary, the Ninth Circuit has flatly rejected Plaintiffs' assertion that viewing history constitutes personally identifiable information. See Eichenberger v. ESPN, Inc., 876 F.3d 979, 984 (9th Cir. 2017) ("'[P]ersonally identifiable information' must include more information than that which, by itself, identifies an individual as having watched certain videos."). Thus, Plaintiffs have not satisfied the first element of an intrusion upon seclusion injury. See, e.g., Rodriguez, 2025 WL 3692144, at *7 ("[The] [d]efendant's acquisition of plaintiff's IP address and other device identifiers from her visit to [the] defendant's website 'does not cause the kind of harm that can be vindicated in federal court.'" (citation modified)).

In addition, even if this information constituted specific, sensitive information, Plaintiffs have not sufficiently alleged disclosing such information was "highly offensive." See Popa, 153 F.4th at 791 ("Popa identifies no embarrassing [or] invasive . . . information."). Plaintiffs argue disclosure of viewing history to "advertising giants" created an extensive intrusion. Opp. at 13; Compl. ¶ 4. However, without more particular allegations, Plaintiffs have not "plausibly allege[d] the infringement of any [] privacy interest." Popa, 153 F.4th at 791. Thus, Plaintiffs also fail to satisfy the "highly offensive" element of intrusion upon seclusion. See Rodriguez, 2025 WL

3692144, at *7 ("[T]he Court cannot identify any harm to her privacy, much less identify a highly offensive intrusion.").

Hence, Defendants' Motion is **GRANTED** with respect to Plaintiffs' Second and Fourth causes of action.

### c.    Diminished Value

Plaintiffs' unjust enrichment claim, pled as an alternative to their breach of implied contract claim, is founded on alleged harm caused by Defendants' successful pursuit of "the inherent value" of Plaintiffs' personally identifiable information.  Compl. ¶¶ 13, 121, 235, 238.   According to Plaintiffs, the use of their information saved Defendants' money and caused a "diminution of value."  Id. ¶ 13.

Plaintiffs fail to establish an injury-in-fact caused by the alleged diminution of value in their personally identifiable information.  See id. ¶¶ 234-44.  The enrichment of a defendant is only "unjust" when a plaintiff "conferred a benefit 'through mistake, fraud, coercion, or request.'" Astiana v. Hain Celestial Grp., Inc., 783 F.3d 753, 762 (9th Cir. 2015) (quoting 55 Cal. Jur. 3d Restitution § 2); accord Nibbi Bros., Inc. v. Home Fed. Sav. & Loan Ass'n, 205 Cal. App. 3d 1415, 1422 (1988) ("It must ordinarily appear that the benefits were conferred by mistake, fraud, coercion or request; otherwise, though there is enrichment, it is not unjust." (quoting 1 Witkin, Summary of Cal. Law § 97 (9th ed. 1987))).  Plaintiffs have not made this showing or otherwise alleged an analogous injury, particularly because Defendants' mutually beneficial agreement with Plaintiffs' parents negates the central premise of their claim.  Compl. ¶ 5 ("To use the Platform . . . users must first sign-up for a Pluto TV account."); see Paracor Fin., Inc. v. Gen. Elec. Cap. Corp., 96 F.3d 1151, 1167 (9th Cir. 1996) (noting a claim for unjust enrichment "does not lie when an enforceable, binding agreement exists"); In re Plum Baby Food Litig., No. 4:21-CV-00913-YGR, 2024 WL 1354447, at *9 (N.D. Cal. Mar. 28, 2023) (same); Khamooshi v. Politico LLC, 786 F. Supp. 3d 1174, 1183 (N.D. Cal. 2025) (finding the defendant's disclosure of IP addresses was not "unjust" because such information "is so commonly shared across the internet that it cannot reasonably be considered private" (citing Heeger v. Facebook, Inc., 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020))); In re Uber Techs., Inc., Data Sec. Breach Litig., No. CV 18-02970-PSG-GJSx, 2019 WL 6522843, *5 (C.D. Cal. Aug. 19, 2019) (explaining that to plead diminution of value, a plaintiff must "establish both the existence of a market for her personal information and an impairment of her ability to participate in that market" (citation omitted)).

Hence, Defendants' Motion is **GRANTED** with respect to Plaintiffs' Eighth cause of action.

## B.    LEAVE TO AMEND

### 1.    Applicable Law

A court should "freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2); see also Moss v. U.S. Secret Serv., 572 F.3d 962, 972 (9th Cir. 2009).  The court may dismiss without leave to amend, however, "if it determines that 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,' or if the plaintiff had several

opportunities to amend its complaint and repeatedly failed to cure deficiencies." Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010) (citation modified).

> **2.      Analysis**

Here, the Court cannot conclude amendment would be futile because it is possible "allegation of other facts consistent with the challenged pleading could . . . cure the deficiency." Id. at 1003.  In addition, leave to amend would not prejudice Defendants or produce undue delay.

Accordingly, the Complaint is **DISMISSED with leave to amend**.

**V.**
**CONCLUSION**

For the reasons set forth above, the Motion is **GRANTED** and the Complaint is **DISMISSED WITH LEAVE TO AMEND**.

**No later than 14 days from this order**, Plaintiffs may file a First Amended Complaint.  If Plaintiffs choose to file an amended complaint, Plaintiffs shall lodge as an exhibit a redlined version of the amended pleading indicating all additions and deletions of material.  **Plaintiffs are expressly warned that failure to timely file a First Amended Complaint will result in this action being dismissed for failure to prosecute and comply with Court orders.**  See Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED**.