DAVID R. SINGH (Bar No. 300840)
david.singh@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway, 4th Floor
Redwood Shores, CA  94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

(*Additional Counsel Listed on Signature Page*)

Attorneys for Defendants PARAMOUNT
SKYDANCE CORPORATION & PLUTO INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| RAQUEL DIAZ, on behalf of her minor child, B.E., and all others similarly situated, LISA MEDINA, on behalf of her minor child, G.C., and all others similarly situated, OSCAR RODRIGUEZ, on behalf of his minor child, F.R., and all others similarly situated, STACY RADER, on behalf of her minor child, S.C., and KATRINA MONTGOMERY, on behalf of her minor children, J.M., J.A., and J.M., and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>PARAMOUNT SKYDANCE CORPORATION and PLUTO INC.,<br><br>    Defendants. | Case No. 5:25-cv-02945-KK (DTB)<br><br>**PARAMOUNT SKYDANCE CORPORATION AND PLUTO INC.'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**<br><br>Date: September 10, 2026<br>Time: 9:30 a.m.<br>Courtroom 3, 3rd Floor<br>Honorable Kenly Kiya Kato |

## NOTICE OF MOTION & MOTION

TO THE COURT AND ALL PARTIES OF RECORD:

PLEASE TAKE NOTICE that on September 10, 2026 at 9:30 a.m. or as soon thereafter as the matter may be heard, before the Honorable Kenly Kiya Kato in Courtroom 3, located at 3470 Twelfth Street, Riverside, California 92501-3801, Defendants Paramount Skydance Corp. and Pluto Inc. (together, "Defendants") will and hereby do move to dismiss the Amended Class Action Complaint filed by Raquel Diaz, on behalf of her minor child, B.E., Lisa Medina, on behalf of her minor child, G.C., Oscar Rodriguez, on behalf of his minor child, F.R., Stacy Rader, on behalf of her minor child, S.C., and Katrina Montgomery, on behalf of her minor children, J.M., J.A., and J.M. in this action.  Defendants' motion to dismiss is brought pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the Request for Judicial Notice, the Declaration of Blake J. Steinberg ("Steinberg Decl."), the Declaration of Tad Ro ("Ro Decl."), and all other pleadings and papers on file herein, and such argument and evidence as may be presented to the Court.

This motion is made after conferring with Plaintiffs' counsel pursuant to L.R. 7-3 on June 10, 2026.

Dated: June 18, 2026

Respectfully submitted,

WEIL, GOTSHAL & MANGES LLP

By:  _/s/ David R. Singh_
       DAVID R. SINGH

Attorney for Defendant Paramount Skydance Corp. & Pluto INC.

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT

CASE NO. 5:25-CV-02945-KK (DTB)

# TABLE OF CONTENTS

**Page**

I. BACKGROUND ........................................................................................................ 2

    A. Plaintiffs' Alleged Use of Pluto TV .................................................................... 2

    B. The Alleged Transmissions .................................................................................. 3

II. LEGAL STANDARD ............................................................................................... 4

III. ARGUMENT ............................................................................................................ 4

    A. Plaintiffs Still Lack Article III Standing .......................................................... 4

        1. Plaintiffs Still Have Not Adequately Pled a "Privacy Injury" ........... 5

        2. Plaintiffs Still Have Not Pled a Highly Offensive "Intrusion" ........... 6

        3. Plaintiffs Still Have Not Plausibly Alleged Economic Harm ............ 6

        4. Plaintiffs Cannot Rely on Ads Allegedly Served to Establish Article III Standing ................................................................................. 7

        5. Plaintiffs Still Have Not Pled They Were Personally Injured ........... 8

    B. The Terms of Use and Privacy Policy Still Bar Plaintiffs' Claims .............. 9

        1. The Account-Holding Plaintiffs Failed to Satisfy Conditions Precedent ............................................................................................. 10

        2. The Account-Holding Plaintiffs Consented to the Alleged Disclosures .......................................................................................... 10

    C. Plaintiffs Still Fail to State a VPPA Claim ..................................................... 11

    D. Plaintiffs Still Fail to State an ECPA Claim ................................................... 13

        1. Pluto Is a Party to the Alleged Communications ............................. 14

        2. Crime-Tort Exception Does Not Apply ............................................. 14

        3. No Content Was Transmitted to Google ........................................... 16

    E. Plaintiffs Still Fail to State Any State Law Privacy Claim .......................... 17

        1. Plaintiffs Fail to State a CIPA Claim ................................................. 17

        2. Plaintiffs Fail to Allege Common Law or California Constitution Invasion of Privacy Claims ........................................ 19

DEFENDANTS' MOTION TO DISMISS        i        CASE NO. 5:25-CV-02945-KK (DTB)
PLAINTIFFS' AMENDED COMPLAINT

3.      Plaintiffs Fail to State Any Other Common Law Claims.................21

F.      Paramount Is Not a Proper Defendant .......................................................24

G.      Plaintiffs' Case Cannot Proceed as Class Action .....................................25

IV.    LEAVE TO AMEND SHOULD BE DENIED...................................................26

V.     CONCLUSION .................................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aliign Activation Wear v. lululemon*,
2020 WL 5790418, (C.D. Cal. Aug. 24, 2020) ......................................................... 25

*Angelo v. Moriarty*,
2016 WL 640525 (N.D. Ill. Feb. 18, 2016) .............................................................. 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................... 4

*Avecilla v. Live Nation Ent.*,
2025 WL 3292617 (C.D. Cal. Nov. 25, 2025) ......................................................... 25

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................. 20

*Belluomini v. Citigroup*,
2013 WL 3855589 (N.D. Cal. July 24, 2013) .......................................................... 21

*Beltran v. Doctors Med. Ctr.*,
2025 WL 1635467 (E.D. Cal. June 9, 2025) ...................................................... 23, 24

*Bender v. Twilio*,
2025 WL 2308484 (N.D. Cal. Aug. 11, 2025) ........................................................... 9

*Benson v. Perris Elementary Sch. Dist.*,
2022 WL 3574290 (C.D. Cal. July 1, 2022) ............................................................ 15

*B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056 (C.D. Cal. 2024) ........................ 14

*Blackburn v. Etsy, Inc.*, 2023 WL 9105662 (C.D. Cal. Oct. 12, 2023) ............................ 8

*Blanco v. County of Kings*,
142 F. Supp. 3d 986 (E.D. Cal. 2015) ..................................................................... 21

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*,
949 F. Supp. 2d 486 (S.D.N.Y. 2013) ...................................................................... 22

*Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001) .................................... 16

*Burget v. R.A.M. Ent., LLC*,
  2015 WL 4490938 (N.D. Ind. July 23, 2015) ............................................................. 24

*Chandra v. Prager Univ. Found.*,
  2025 WL 3049870 (C.D. Cal. Oct. 21, 2025) .............................................................. 13

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ..................................................... 7, 8

*Cmty. Health Network v. McKenzie*,
  185 N.E.3d 368 (Ind. 2022) ........................................................................................ 21

*Cody v. Boscov's*, 2024 WL 2228973 (C.D. Cal. May 6, 2024) ................................... 18

*D'Antonio v. Smith & Wesson Inc.*, 2026 WL 446310 (N.D. Cal. Feb. 17,
  2026) ........................................................................................................................ 9, 13

*Darocha v. Wal-Mart Stores*,
  2012 WL 13032900 (D.N.J. May 9, 2012) ................................................................. 20

*Dawidzik v. Tesla*, 2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) (Kato, J.) .................. 6

*Doe v. Eating Recovery Ctr.*, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) ................ 18

*Doe v. Genesis Health Sys.*,
  2025 WL 1000192 (C.D. Ill. Mar. 18, 2025) ............................................................. 23

*Doe v. Kaiser Found. Health Plan*,
  2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ............................................................ 15

*Duffy v. Lewis Bros. Bakeries*,
  760 F. Supp. 3d 704 (S.D. Ind. 2024) ......................................................................... 23

*Dunahoo v. Hewlett-Packard*, 2012 WL 178332 (S.D.N.Y. Jan. 20, 2012) ................ 17

*Eichenberger v. ESPN*,
  876 F.3d 979 (9th Cir. 2017) .................................................................................. 12, 13

*Golden v. NBCUniversal Media, LLC*, 2026 WL 1098473 (2d Cir. Apr. 23,
  2026) ........................................................................................................................... 12

*Greenstein v. Noblr Reciprocal Exch.*,
  585 F. Supp. 3d 1220 (N.D. Cal. 2022) ...................................................................... 8, 22

*Gutierrez v. Converse*, 2025 WL 1895315 (9th Cir. July 9, 2025) .............................. 17

DEFENDANTS' MOTION TO DISMISS          iv          CASE NO. 5:25-CV-02945-KK (DTB)
PLAINTIFFS' AMENDED COMPLAINT

*Hemy v. Perdue Farms*,
    2011 WL 6002463 (D.N.J. Nov. 30, 2011)......................................................24

*Hernandez-Silva v. Instructure, Inc.*, 2025 WL 2233210 (C.D. Cal. Aug. 5, 2025) ...................................................................................................................18

*Hill v. NCAA.*,
    7 Cal. 4th 1, 865 P.2d 633 (1994)............................................................... 6, 21

*Horton v. Dow Jones & Co.*,
    804 F. App'x 81 (2d Cir. 2020)......................................................................25

*Hughes v. NFL*,
    2025 WL 1720295 (2d Cir. June 20, 2025)...................................................12

*In re Hulu Priv. Litig.*,
    86 F. Supp. 3d 1090 (N.D. Cal. 2015)...........................................................13

*Huynh v. Quora, Inc.*,
    2020 WL 7408230 (N.D. Cal. June 1, 2020)..................................................22

*iMotorsports, Inc. v. Vanderhall Motor Works*,
    2022 IL App (2d) 210785................................................................................23

*In re iPhone Application Litig.*,
    2011 WL 4403963 (N.D. Cal. Sept. 20, 2011)...............................................24

*Irwin v. Jimmy John's Franchise*,
    175 F. Supp. 3d 1064 (C.D. Ill. 2016)...........................................................24

*Jarrett v. Upperline Health*,
    2025 WL 3067545 (S.D. Ind. Aug. 8, 2025)..................................................20

*Katz-Lacabe v. Oracle Am.*,
    668 F. Supp. 3d 928 (N.D. Cal. 2023)...........................................................14

*Khamooshi v. Politico LLC*, 2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) ...................5, 7

*King v. Bumble Trading, Inc.*, 393 F. Supp. 3d 856 (N.D. Cal. 2019) ..........................17

*Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002) ..................................18

*Kurowski v. Rush Sys. for Health*,
    659 F. Supp. 3d 931 (N.D. Ill. 2023)..............................................................20

*Kurowski v. Rush Sys. for Health*,
  683 F. Supp. 3d 836 (N.D. Ill. 2023)..................................................................21

*Lakes v. Ubisoft*,
  777 F. Supp. 3d 1047 (N.D. Cal. 2025), *appeal filed*, No. 25-2857 (9th
  Cir. May 2, 2025).......................................................................................... 11, 14

*Lax v. City of Atlantic City*,
  2019 WL 7207472 (D.N.J. Dec. 27, 2019) ......................................................22

*Licea v. Vitacost.com*, 683 F. Supp. 3d 1118 (S.D. Cal. 2023) ......................................17

*Lipeles v. United Airlines*,
  2024 WL 891792 (C.D. Cal. Jan. 9, 2024) (Kato, J.)......................................10

*Low v. LinkedIn*,
  900 F. Supp. 2d 1010 (N.D. Cal. 2012)............................................................22

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ....................................................... 7

*Martin v. Meredith Corp.*,
  657 F. Supp. 3d 277 (S.D.N.Y. 2023) ..............................................................12

*Martinez v. D2C, LLC*,
  2024 WL 4367406 (S.D. Fla. Oct. 1, 2024) .....................................................13

*McDonald v. Kiloo ApS*,
  385 F. Supp. 3d 1022 (N.D. Cal. 2019)............................................................21

*Mikulsky v. Bloomingdale's*, 713 F. Supp. 3d 833 (S.D. Cal. 2024)..............................17

*Mount v. PulsePoint*,
  2016 WL 5080131 (S.D.N.Y. Aug. 17, 2016), *aff'd*, 684 F. App'x 32
  (2d Cir. 2017)....................................................................................................24

*N.Z. v. Fenix Int'l*,
  2025 WL 3627591 (C.D. Cal. Dec. 12, 2025)..................................................12

*Nabozny v. Optio Sols. LLC*,
  84 F.4th 731 (7th Cir. 2023) .............................................................................21

*Nat'l Funding, Inc. v. Com. Credit Counseling Servs., Inc.*, 817 F. App'x
  380, 385 (9th Cir. 2020 .....................................................................................25

DEFENDANTS' MOTION TO DISMISS    vi    CASE NO. 5:25-CV-02945-KK (DTB)
PLAINTIFFS' AMENDED COMPLAINT

*Neims v. Neovia Logistics Distrib.*,
   2023 WL 6369780 (C.D. Cal. Aug. 10, 2023) ............................................................ 25

*In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262 (3d Cir. 2016) ........................ 14

*Pisciotta v. Old Nat'l Bancorp*,
   499 F.3d 629 (7th Cir. 2007) ...................................................................................... 22

*Planned Parenthood Fed'n of Am. v. Newman*,
   51 F.4th 1125 (9th Cir. 2022) ..................................................................................... 15

*Popa v. Microsoft*,
   153 F.4th 784 (9th Cir. 2025) ............................................................................ 4, 6, 20

*Provencher v. Dell, Inc.*,
   409 F. Supp. 2d 1196 (C.D. Cal. 2006) ...................................................................... 25

*Reisberg v. Renaissance Learning, Inc.*, 2026 WL 1048242 (C.D. Cal. Feb.
   17, 2026) ...................................................................................................................... 14

*Romaine v. Kallinger*,
   109 N.J. 282 (1988) ..................................................................................................... 21

*S. G. v. Epic Games*,
   796 F. Supp. 3d 614 (N.D. Cal. 2025) ........................................................................ 10

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
   2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) ............................................................ 20

*Sisti v. Bosley Inc.*, 2026 WL 1223927 (C.D. Cal. Apr. 27, 2026) .......................... *passim*

*Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*,
   131 N.Y.S.3d 817 (Sup. Ct. 2020) .............................................................................. 23

*Smith v. YETI Coolers*, 754 F. Supp. 3d 933 (N.D. Cal. 2024) ..................................... 19

*Solomon v. Flipps Media*,
   136 F.4th 41 (2d Cir. 2025), *cert. denied*, 2025 WL 3506993 (U.S. Dec.
   8, 2025) ........................................................................................................................ 12

*Sussman v. ABC*,
   186 F.3d 1200 (9th Cir. 1999) ..................................................................................... 14

*Tawam v. Feld Ent. Inc.*,
   684 F. Supp. 3d 1056 (S.D. Cal. 2023) ....................................................................... 11

*Thomas v. Papa John's,* 2025 WL 1704437 (9th Cir. June 18, 2025) ............................ 17

*Trader Joe's Co. v. Trader Joe's United*,
    150 F.4th 1040 (9th Cir. 2025) ........................................................................ 3

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ........................................................................................... 4

*Turbin v. Thumbtack*,
    2025 WL 3013972 (N.D. Cal. Oct. 28, 2025) ................................................... 9

*In re Uber Tech., Inc., Data Sec. Breach Litig.*, 2019 WL 6522843 (C.D. Cal. Aug. 19, 2019) ........................................................................................... 7

*In re U.S. Vision Data Breach Litig.*,
    732 F. Supp. 3d 369 (D.N.J. 2024) ................................................................ 23

*Valenzuela v. Keurig Green Mountain*, 674 F. Supp. 3d 751 (N.D. Cal. 2023) ................................................................................................................. 18

*Valenzuela v. Kroger*, 2024 WL 1336959 (C.D. Cal. Mar. 28, 2024) .......................... 19

*Wakley v. Sustainable Loc. Foods LLC*,
    2017 WL 1880814 (S.D. Ind. May 9, 2017) ................................................... 23

*Warth v. Seldin*, 422 U.S. 490 (1975) ............................................................................ 8

*Webster v. Bradford-Scott Data*,
    2025 WL 560917 (N.D. Ind. Feb. 20, 2025) ................................................. 22

*In re Zynga Priv. Litig.*, 750 F.3d 1098 (9th Cir. 2014) ............................................. 16

**Statutes**

Children's Online Privacy Protection Act ("COPPA"),

    15 U.S.C. § 6502 ........................................................................................... 16

Electronic Communications Privacy Act ("ECPA"),

    18 U.S.C. §§ 2511(1)(a), (c), (d) ...................................................................... 13

Video Privacy Protection Act ("VPPA"),

    18 U.S.C. §§ 2710(a)(1), (b)(1) ........................................................................ 11

California Invasion of Privacy Act ("CIPA"),

Cal. Penal Code § 631(a) ............................................................................... 17, 18, 19

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) ............................................................................................ 1, 4

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 1, 4

## PRELIMINARY STATEMENT

Despite the opportunity to amend their complaint, Plaintiffs bring the same claims telling the same story as before: they allegedly watched videos in the "Kids" section of the Pluto TV platform.  When Plaintiffs accessed those videos, certain information, including IP addresses, device information, URLs, certain cookie identifiers, and the video titles, was allegedly transmitted to Microsoft and Google, and Plaintiffs were supposedly harmed as a result.  This Court previously found that such allegations failed to establish Article III standing.  *See* Dkt. 46 ("**Order**").  What the Amended Complaint ("**FAC**") now purports to add are the specific names of the cookie identifiers allegedly transmitted and allegations that Plaintiffs exhibited behavioral issues and/or made purchase requests after seeing certain ads on Pluto TV.  But none of this rectifies the pleading deficiencies identified in the Court's Order and numerous others addressed in Defendants' prior briefing.

First, Plaintiffs still fail to establish Article III standing.  The specific cookie identifier names do not change that the information allegedly transmitted is non-personal—which this Court found insufficient to confer standing on a privacy harm theory.  As for Plaintiffs' attempt to muster up new injuries involving certain ads, they fail to plausibly allege a causal chain from Defendants' supposed wrongdoing (*i.e.*, the alleged data disclosures to Microsoft and Google) to the allegedly problematic ads, and then from the ads to the alleged behavioral changes or purchases of advertised items.  Without traceability, there can be no Article III standing.

Second, almost all of the Plaintiffs are bound by their parents' ("**Parents**") consent to the Pluto TV Terms of Use, which contain pre-litigation dispute resolution processes that they did not follow.  Even if they complied with these conditions precedent, Plaintiffs' claims would still be barred based on consent to the alleged data sharing at issue, a class action waiver, and New York law.  (And to the extent Plaintiff B.E. alone claims not to have used a Pluto TV account, that Plaintiff would not have a Video

Protection Privacy Act ("**VPPA**") claim.)  The FAC adds no allegations addressing these previously briefed issues.

Third, for all of the Plaintiffs, their claims still suffer from numerous other unaddressed pleading defects, including:

- Plaintiffs' VPPA claim fails because, *inter alia*, an ordinary person would be unable to identify a specific individual from the alleged transmission.

- Plaintiffs' Electronic Communications Privacy Act ("**ECPA**") claim fails because Plaintiffs have still not established that Defendants acted to further a crime or tort.

- Plaintiffs' California Invasion of Privacy Act ("**CIPA**") claim fails because Pluto remains a party to the communications, and no interception occurred in transit.

- Plaintiffs' nationwide and California Constitution invasion of privacy claims fail because no offensive "intrusion" occurred.

- Plaintiffs' negligence claims fail for failure to adequately allege a duty or damages.

- Plaintiffs' implied contract claims fail because fundamental elements of a contract are not pled.

- Plaintiffs' unjust enrichment claim fails because Plaintiffs are not entitled to compensation for watching free online videos.

Accordingly, the FAC should again be dismissed in its entirety—this time, with prejudice.

## I.   BACKGROUND

### A.   Plaintiffs' Alleged Use of Pluto TV

Defendant Pluto Inc. ("**Pluto**") is a subsidiary of Defendant Paramount Skydance Corporation ("**Paramount**") which owns and operates the Pluto TV video streaming service.  FAC ¶ 10; Ex. A (Pluto, *Pluto TV Live TV Webpage*, https://pluto.tv/us/live-

tv/65e23f340d4561000821540d).[1]  Individuals can watch Pluto TV online and register accounts for free, but individuals under 18 cannot create accounts.  FAC ¶ 10*; Ex. C (Pluto, *Terms of Use*, § 1, https://legal.paramount.com/us/en/plutotv/terms-of-use?r=pluto.tv).

Plaintiffs and their Parents plead they had to "sign-up" to access Pluto TV.  FAC ¶ 10.  Plaintiffs have confirmed all their Parents had accounts, with the exception of Raquel Diaz, who asserts that her minor child, Plaintiff B.E., watched Pluto TV without registering.  Ex. G (Plaintiffs' Counsel Email).  When making a Pluto TV account, they would have had to consent to the Terms of Use, Privacy Policy, and Children's Privacy Policy.  Ex. B (Pluto, Sign Up Page, https://pluto.tv/us/account/sign-up).[2]

Plaintiffs newly plead that, while using the Pluto platform, some saw ads for toys and fast food, ads that recommended more content to watch, and "age-inappropriate ads" (such as those "depicting adult relationships" or for "nicotine products").  FAC ¶¶ 25–29, 34-37, 50-54.  Such ads allegedly led to those Plaintiffs' requests for certain purchases of advertised items, "increased screen-time," and/or "talk[ing] back" to their Parents.  *Id.*

## B.  The Alleged Transmissions

Plaintiffs claim Defendants installed "tracking pixels" on the Pluto website, which allegedly transmitted Plaintiffs' information to Google and Microsoft.  FAC ¶ 14.  Plaintiffs claim when they watched videos on Pluto's platform, telemetric data (*e.g.*, clicks and scrolls), and other device-related information such as IP addresses, browser

---

[1] The Court may consider the Pluto website materials attached to the Steinberg Declaration. *See Trader Joe's Co. v. Trader Joe's United*, 150 F.4th 1040, 1053 n.2 (9th Cir. 2025); *Sisti v. Bosley Inc.*, 2026 WL 1223927, *5 (C.D. Cal. Apr. 27, 2026).  All references to exhibits ("Ex.") are to those attached to the Steinberg Declaration.

[2] Although Plaintiffs do not specify the months they accessed the website, the Terms, Privacy Policy, and sign-up flow have remained nearly identical since 2024, and Plaintiffs have not plausibly alleged the versions attached to the Steinberg Declaration meaningfully differed from those in place when they registered. https://web.archive.org/web/20240109112511/; https://legal.paramount.com/us/en/plutotv/terms-of-use. Defendants have also supplied a declaration from Pluto representative Tad Ro, confirming Pluto required agreement to the relevant terms when Plaintiffs registered. Declaration of Tad Ro ("Ro Decl.") ¶ 4–6.

software, and operating system information, were transmitted in two transmissions to Google and Microsoft without their consent. *Id.* ¶¶ 124–25. According to Plaintiffs, URLs and Google and Microsoft cookies are disclosed as well. *Id.* To supposedly illustrate this, the FAC recycles the purported screenshots from Plaintiffs' prior complaint of the alleged transmissions to Google and Microsoft, which still only concern an unidentified third-party user, not Plaintiffs themselves. *Id.*

## II.   LEGAL STANDARD

Under Rule 12(b)(1), Plaintiffs must show they have Article III standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021). A plaintiff must demonstrate they suffered "an injury in fact that is concrete, particularized, and actual or imminent," that "was likely caused by the defendant," and "would likely be redressed by judicial relief." *Id.* at 423.

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A court must disregard conclusory allegations and legal conclusions and determine whether the remaining "well-pleaded factual allegations" state a plausible claim for relief. *Id.* at 679.

## III.   ARGUMENT

### A.   Plaintiffs Still Lack Article III Standing

As explained in the Court's Order, violations of privacy statutes do not *de facto* confer Article III standing. Order at 4; *see also TransUnion LLC*, 594 U.S. at 425–26. Rather, to invoke a privacy-based injury, Plaintiffs must allege "'a close historical or common-law analogue'" based on one of the "four 'discrete' invasion-of-privacy torts traditionally recognized in American courts." Order at 4–5 (quoting *Popa v. Microsoft*, 153 F.4th 784, 792, 794 (9th Cir. 2025)).

The Court explained that, here, the crux of Plaintiffs' claims "raises three theories of injury": (1) "privacy injury," (2) "intrusion upon seclusion" injury, and (3) "loss of

valuable rights and protections" injury. *Id.* at 5. However, the Court found the prior factual allegations lacking. Despite Plaintiffs' attempt to amplify their allegations in the FAC, ultimately, their additions neither meaningfully alter the factual predicate underlying any of these theories nor support any new theory of harm. The reasoning of the Court's Order therefore applies with full force to the FAC, and it should be dismissed with prejudice.

### 1.     Plaintiffs Still Have Not Adequately Pled a "Privacy Injury"

The FAC still does not sufficiently allege a privacy injury under *TransUnion* and *Popa*. The information allegedly transmitted—video titles, URLs, IP addresses, browser data, certain cookie IDs, and telemetric mouse-movement data, FAC ¶¶ 124–25—remains the same type of non-personal metadata this Court already found insufficient to state a concrete and particularized privacy violation. *See* Order at 6–7; *see also Khamooshi*, 2025 WL 2822879, *3 (finding "browsing activity, geolocation data, device type, browser type, and 'device fingerprints'" were "insufficient to establish a concrete privacy injury" even after amendment). Plaintiffs attempt to reframe their "broad theory" privacy injury by naming the Google and Microsoft cookie identifiers at issue and baldly alleging that such identifiers "serve a similar function to social security numbers" and "are associated with only one person[.]" FAC ¶¶ 110–11. But Plaintiffs do not (and cannot) allege that such identifiers are fixed and unchangeable, making them a far cry from social security numbers, the permanent nature of which makes them susceptible to identity theft. Moreover, the Court already found the allegation that "Google and Microsoft link all of the user information collected by their Pixels on the Defendants' Platform to the user's identity" (*Id.* ¶ 112) insufficient. There are still no allegations that "Plaintiffs' names or other private personal information" were disclosed in connection with such identifiers. *See* Order at 6. Accordingly, these allegations still fail to state an Article III injury. *See id.* ("[T]he mere disclosure of Plaintiffs' viewing activity without revealing Plaintiffs'

names or other private personal information is not analogous to the disclosure of private information traditionally recognized by courts."").

Nor do Plaintiffs "present any evidence that the disclosure of their Platform activity caused embarrassment, was invasive, or that the videos they watched were at all 'private[,]'" as needed to establish a privacy injury. *Id.*; *see, e.g.*, *Sisti*, 2026 WL 1223927, *3 (dismissing with prejudice where plaintiff failed to plead "how he could have been aggravated, distressed, or inconvenienced by the disclosure of" information related to scheduling of hair transplant appointments). The titles of children's television programs—such as "Rugrats Go Wild" (FAC ¶ 124) —are not the type of "embarrassing, invasive, or otherwise private" information that gives rise to a cognizable privacy harm. *Popa*, 153 F.4th at 794.

### 2.   Plaintiffs Still Have Not Pled a Highly Offensive "Intrusion"

Relatedly, Plaintiffs' claims remain distinct from "the 'highly offensive' *intrusions* that were actionable at common law[.]" *Id.* at 791 (emphasis added). Plaintiffs still do not plead how the disclosed information was sensitive or how its disclosure would be highly offensive to a reasonable person, as required. *See* Order at 7; *see also, e.g.*, *Dawidzik v. Tesla*, 2025 WL 3786963, *5 (C.D. Cal. Dec. 29, 2025) (Kato, J.) (dismissing complaint for lack of standing where, as here, plaintiff failed to explain the sensitivity of the information or how its disclosure would offend plaintiff).[3]

### 3.   Plaintiffs Still Have Not Plausibly Alleged Economic Harm

Plaintiffs' "loss of valuable rights and protections" theory likewise still fails. The FAC recycles the same conclusory allegation that Defendants' disclosures caused a "diminution of value" of the Private Children's Data. FAC ¶¶ 19, 145. But the FAC still does not identify a market for Plaintiffs' data in which they participated or could participate, or any impairment of their ability to do so. Indeed, the "diminished value"

---

[3] Plaintiffs still do not assert a private fact communicated to the public at large. *Hill v. NCAA.*, 7 Cal.4th 1, 27 (1994) ("[P]ublic disclosure of private facts requires that the actionable disclosure be widely published and not confined to a few persons or limited circumstances.").

DEFENDANTS' MOTION TO DISMISS          6          CASE NO. 5:25-CV-02945-KK (DTB)
PLAINTIFFS' AMENDED COMPLAINT

theory is implausible because it is contrary to the thesis of Plaintiffs' case: they wanted privacy, not to sell their information. This theory therefore fails for the same reasons this Court already identified. *See* Order at 8; *In re Uber Tech., Inc., Data Sec. Breach Litig.*, 2019 WL 6522843, *5 (C.D. Cal. Aug. 19, 2019) (cleaned up) (conclusory allegations of "a 'loss of value of [Plaintiffs'] private information'…without any more details, [are] 'too abstract and speculative to support Article III standing.'"); *Sisti*, 2026 WL 1223927, *4 (finding alleged impairment in ability to sell personal data "purely hypothetical" absent past or intended future sale).[4]

### 4.   Plaintiffs Cannot Rely on Ads Allegedly Served to Establish Article III Standing

As to Plaintiffs' new theory of harm concerning ads that supposedly led to behavioral changes and purchase requests (*see* FAC ¶¶ 25–28, 35-36, 50–52), they fail to allege how any supposed injury is "fairly traceable" to Defendants' alleged data disclosures. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Without traceability, Plaintiffs cannot satisfy Article III standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("[T]here must be a causal connection between the injury and the conduct complained of[.]").

Plaintiffs assert that (1) they viewed content on Pluto TV; (2) they encountered ads, *inter alia,* for nicotine products or depicting "adult relationships"; and (3) thereafter, they exhibited "negative" behaviors such as "talk[ing] back" to their Parents. *See, e.g.*, FAC ¶¶ 26-28, 35-36, 52. However, this is nothing more than a "highly attenuated chain of possibilities" removed from Defendants' purported wrongdoing in this case. *Clapper*, 568 U.S. at 410. The FAC does not tie the purported appearance of such "age-inappropriate" ads back to the supposed disclosure of Plaintiffs' watch history of "children-directed video content"; in other words, Plaintiffs do not allege that the ads were *targeted* to them as a result of the alleged disclosures, as opposed to being served to

---

[4] Plaintiffs' citation to studies about the general market value of user data (FAC ¶¶ 142–44) is unavailing because they do not allege "Defendant's actions diminished their opportunity to get paid for such studies." *Khamooshi*, 2025 WL 2822879, *4.

DEFENDANTS' MOTION TO DISMISS   7   CASE NO. 5:25-CV-02945-KK (DTB)
PLAINTIFFS' AMENDED COMPLAINT

all Pluto TV users indiscriminately or all users watching a specific show. *See Greenstein v. Noblr Reciprocal Exch.*, 585 F. Supp. 3d 1220, 1231 (N.D. Cal. 2022) (no Article III standing where the anticipated injury "could not be specifically traced back to the data exposed by the Unauthorized Data Disclosure"). Plaintiffs also do not plausibly allege in any detail that the behavioral changes were in fact caused by the ads, as opposed to any number of other causes. *See Blackburn v. Etsy, Inc.*, 2023 WL 9105662, *5 (C.D. Cal. Oct. 12, 2023) (dismissing claims for failure to plausibly allege that defendant's purported misstatements caused the alleged price premium, noting that "many factors may have contributed" to prices).[5]

As to allegations that Parents Montgomery and Diaz were asked to purchase items based on streamed ads, these, too, are insufficient to establish Article III injury because Plaintiffs again fail to tie any plausible injury to Defendants' supposed wrongdoing. It is simply not plausible that Montgomery had no ability to decline purchasing any advertised items due to the alleged disclosures to Microsoft and Google.[6] And Diaz does not even identify any resulting purchase.

In short, Plaintiffs' "attenuated chain of inferences" cannot satisfy the traceability requirement of Article III standing. *Clapper*, 568 U.S. at 414 n.5.

**5. Plaintiffs Still Have Not Pled They Were Personally Injured**

Plaintiffs also still fail to allege particularized injury. *See Warth v. Seldin*, 422 U.S. 490, 502 (1975) (Article III standing requires the *plaintiffs* be injured, "not that injury has been suffered by other, unidentified members of the class"). Plaintiffs previously conceded their complaint's screenshots are "exemplar[s]" that do not represent

---

[5] In adding an allegation about one Plaintiff's "increased screen-time," Plaintiffs appear to be evoking recent litigations against technology companies regarding claims of social media addiction (references to which Plaintiffs also newly inject into the FAC). *See* FAC ¶¶ 7 & n.9, 34. But the claims in this case—centering on alleged data disclosures to off-platform entities, not alleged defects with the Pluto TV platform—have no relation to those other cases.

[6] Montgomery also alleges, unremarkably, that she noticed toy ads around the holidays, which is more likely the result of ordinary advertising efforts during the holidays rather than any disclosures to Google and Microsoft. *See* FAC ¶ 51.

DEFENDANTS' MOTION TO DISMISS   8   CASE NO. 5:25-CV-02945-KK (DTB)
PLAINTIFFS' AMENDED COMPLAINT

disclosures from Plaintiffs' own browsers.  Nor did they deny that they failed to plead they blocked cookies or used a browser that does so.  *See* Defs.' Reply 5–6, Dkt. No. 43.  As the FAC's screenshots are the same ones, Plaintiffs have not pled personalized injury.  *D'Antonio v. Smith & Wesson Inc.*, 2026 WL 446310, *4–5 (N.D. Cal. Feb. 17, 2026) (dismissing allegations that defendant tracked unspecified "[w]ebsite users[,]" because plaintiffs had not "alleged that they ever communicated with the website").

**B.      The Terms of Use and Privacy Policy Still Bar Plaintiffs' Claims**

Beyond the standing deficiencies, nothing in Plaintiffs' FAC changes the fact that four of five Parents consented to Pluto's Terms of Use, Privacy Policy, and Children's Privacy Policy.  FAC ¶ 10; Steinberg Decl., Ex. G (Plaintiffs' Counsel Email).  While the Court did not reach all of Defendants' arguments based on these agreements, Plaintiffs' claims should be dismissed based on their consent.

As before, Plaintiffs plead that they had to "sign-up" for accounts to access Pluto TV.  FAC ¶ 10; Ex. G.  This sign-up process provides: "By selecting Sign Up below, you confirm that you have read and agree to our Terms of Use and acknowledge our Privacy Policy."  Ex. B.  The notice is conspicuous, with hyperlinks to the documents in bright yellow, distinguished from the surrounding text, and the language appears immediately above the "Sign Up" button.  *Turbin v. Thumbtack,* 2025 WL 3013972, *3 (N.D. Cal. Oct. 28, 2025).  The Parents manifested assent by pressing "Sign Up" and thus consented to the Terms and Privacy Policy.  *Id*.; *Bender v. Twilio*, 2025 WL 2308484, *5 (N.D. Cal. Aug. 11, 2025) (finding assent to website terms).  To the extent Plaintiffs argue that Defendants have not provided the versions of the terms and conditions and individuals' experience on the website at the time "when Plaintiff[s] visited it[,]" another court in this District has rejected this argument, finding that the plaintiffs there had "failed to raise any plausible argument that these webpages actually differed from the versions of the webpages that he viewed[.]" *Sisti*, 2026 WL 1223927, *6 (dismissing privacy claims on this basis).

The Terms, which incorporate the Privacy Policy by reference, state that a "parent …by allowing [their children] to use the Services, [] are subject to these Terms and [] are responsible for [their] child's activity on the Services." Ex. C § 1. Further, individuals "must be at least 18 years of age," and a minor may access Pluto only with the "permission of [their] parent[s]"; the Terms provide their "use of the Services is subject to [their] parent or legal guardian's supervision and control," and require their "parent [to] read[] these Terms with [them]." *Id.* This acknowledgement binds both the Parents and Plaintiffs, since Plaintiffs received the benefit of watching Pluto TV content through their parents' accounts. *S. G. v. Epic Games*, 796 F. Supp. 3d 614, 620–21 (N.D. Cal. 2025) (binding child to agreement entered by parent).

### 1. The Account-Holding Plaintiffs Failed to Satisfy Conditions Precedent

Before commencing an action against Pluto, the Terms require "written notice of dispute" which must, *inter alia*, "be sent by certified mail[,]" "describe the nature and basis of your Claim[,]" "include any relevant facts regarding your use of the Services, including…whether you have created an account[,]" "specify the nature and basis of the specific relief sought," and "include a personally signed statement from you…verifying the accuracy of the contents[.]" Ex. C § 2.1. Additionally, parties must "engage in a good faith effort to resolve the dispute for a period of 60 days." *Id.* Those Plaintiffs with accounts do not plead they complied with these requirements, which requires dismissal. *Lipeles v. United Airlines*, 2024 WL 891792, *3-4 (C.D. Cal. Jan. 9, 2024) (Kato, J.) (dismissing class action where plaintiff did not follow contractual dispute resolution procedures).

### 2. The Account-Holding Plaintiffs Consented to the Alleged Disclosures

The consented-to Privacy Policy discloses that Pluto may "automatically receive certain information about [Plaintiffs'] device[s] using browser or device-based tracking

---

technologies,…[that] allow us…[to] provide and measure advertisements, and provide personalized content[.]" Ex. D (Pluto, *Privacy Policy,* "Cookies and Other Tracking Technologies", https://privacy.paramount.com/en/policy?r=pluto.tv#information-we-collect-about-you). Furthermore, it incorporates by reference the Children's Privacy Policy (referenced in the FAC) and discloses that on child-directed services, Pluto may collect IP addresses and identifiers associated with "cookies, pixels, tags, beacons, scripts or other…technology." FAC ¶ 129; Ex. E (Pluto, *Children's Privacy Policy*, "Information We Automatically Collect," https://privacy.paramount.com/en/minors-policy?r=privacy.paramount.com). The account-holding Plaintiffs thus consented to the alleged disclosures, which requires dismissal of their claims. *Lakes*, 777 F. Supp. 3d at 1058 (dismissing ECPA, CIPA, and VPPA claims based on consent to website terms), *appeal filed*, No. 25-2857 (9th Cir. May 2, 2025); *Sisti*, 2026 WL 1223927, *6 (dismissing ECPA, CIPA, and common law claims based on consent to privacy policy).

### C. Plaintiffs Still Fail to State a VPPA Claim

Even assuming Plaintiffs' claims are not barred, their VPPA claims still suffer from the same, numerous pleading defects that Defendants previously identified in their original motion.

***Not a "renter, purchaser, or subscriber."*** As a threshold matter, Plaintiffs must show they are "renter[s], purchaser[s], or subscriber[s] of goods or services from a video tape service provider[.]" 18 U.S.C. §§ 2710(a)(1), (b)(1). For Plaintiff B.E., who supposedly accessed Pluto TV without an account, their VPPA claim fails because they are not a "renter, purchaser, or subscriber[.]" *See, e.g., Tawam v. Feld Ent. Inc.*, 684 F. Supp. 3d 1056, 1062 (S.D. Cal. 2023) (finding viewing videos and signing up for email newsletter insufficient).

***"Ordinary person" standard not satisfied.*** Plaintiffs still allege no facts establishing that an ordinary person could use the data allegedly disclosed to identify what videos a specific person requested or obtained as required under the VPPA. *Eichenberger*

DEFENDANTS' MOTION TO DISMISS        11        CASE NO. 5:25-CV-02945-KK (DTB)
PLAINTIFFS' AMENDED COMPLAINT

*v. ESPN*, 876 F.3d 979, 985 (9th Cir. 2017); *N.Z. v. Fenix Int'l*, 2025 WL 3627591, *13 (C.D. Cal. Dec. 12, 2025) (finding collection and transmission of a user's username, interaction, and communication history insufficient for VPPA claim).  Moreover, applying the same standard used in the Ninth Circuit, the Second Circuit also has held pixel-based VPPA claims are foreclosed where an ordinary person would not be able to determine the identity of a specific <u>person</u> from the numbers allegedly transmitted. *Solomon v. Flipps Media*, 136 F.4th 41, 54 (2d Cir. 2025) ("[I]t is not plausible that an ordinary person…would see the 'c_user' [number] on [a] server[] and conclude that the phrase was a person's FID."), *cert. denied*, 2025 WL 3506993 (U.S. Dec. 8, 2025); *Hughes v. NFL*, 2025 WL 1720295, *2 (2d Cir. June 20, 2025) ("*Solomon* effectively shut the door for Pixel-based VPPA claims."); *Golden v. NBCUniversal Media, LLC*, 2026 WL 1098473, *2 (2d Cir. Apr. 23, 2026) (summary order) (also following *Solomon*).

The cookie identifiers Plaintiffs now reference with greater specificity are not alleged to be anything more than "string[s] of numerals" unintelligible to an ordinary person.  FAC ¶¶ 109, 111, 124-25; *Hughes*, 2025 WL 1720295, *3.  And Plaintiffs' allegations as to what Google or Microsoft may be able to do with this information miss the mark, as the Ninth Circuit has held that "the statute views disclosure from the perspective of the disclosing party[,]" not the party to which any information is disclosed. *Eichenberger*, 876 F.3d at 985.  Therefore, because an ordinary person could not identify an individual based on the alleged transmissions, Plaintiffs' VPPA claims should be dismissed.

***No video title allegedly transmitted to Google.*** Plaintiffs still do not allege a specific video title was included in the alleged transmission to Google.  The disclosure of "which 'specific video materials' were requested or obtained by the website visitor" is "essential information for a VPPA claim," and so their VPPA claim based on alleged transmissions to Google fails.  *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 284 (S.D.N.Y. 2023).

***Personal interactions with the Platform insufficiently pled.*** Plaintiffs again admit the screenshots depicting "network transmissions" do not represent their own interactions with Pluto. FAC ¶ 122 ("Figures 1 & 2 depicts network transmission data captured while *an Internet user* watches a video on the 'Kids' section of the Platform.") (emphasis added); Def.'s Reply 5-6, Dkt. No. 43. This, too, precludes their claim. *Chandra v. Prager Univ. Found.,* 2025 WL 3049870, *4 (C.D. Cal. Oct. 21, 2025) (screenshot not attributed to plaintiffs insufficient to state VPPA claim); *D'Antonio*, 2026 WL 446310, *4 (emphasizing that "plaintiffs do not specifically allege that *their* communications were intercepted"). Plaintiffs also fail to plead they did not block cookies or use a browser that does so. Courts have found this to be fatal. *See Martinez v. D2C, LLC*, 2024 WL 4367406, *7-8 (S.D. Fla. Oct. 1, 2024).

***No knowing disclosure.*** Plaintiffs have added no new allegations beyond their prior conclusory assertion that Defendants "knew" Pluto's website "incorporated the Tracking Tools" (FAC ¶ 155)—which is insufficient. *In re Hulu Priv. Litig*., 86 F. Supp. 3d 1090, 1105 (N.D. Cal. 2015) (dismissing VPPA claim where plaintiffs failed to establish defendant knew Facebook could link user-identifying cookie data to title-bearing watchpage addresses). Furthermore, Plaintiffs' claim is that Microsoft and/or Google obtained the relevant information, not Defendants, as the information is allegedly passed directly from Plaintiffs' browsers to those parties. FAC ¶ 14. Plaintiffs do not allege that Defendants otherwise can access that information. Defendants, therefore, cannot be held liable for allegedly disclosing information that it "never even possessed[.]" *Eichenberger*, 876 F.3d 979 at 986.

### D. Plaintiffs Still Fail to State an ECPA Claim

The ECPA provides a right of action against any person who "intentionally intercepts...any...electronic communication" or any person who discloses or uses the contents of an intercepted electronic communication. 18 U.S.C. § 2511(1)(a), (c), (d).

### 1.    Pluto Is a Party to the Alleged Communications

ECPA provides an exemption from liability if the alleged eavesdropper is a "party" to the communication. *Reisberg v. Renaissance Learning, Inc.*, 2026 WL 1048242, *6 (C.D. Cal. Feb. 17, 2026). When a user requests to view a video on Pluto's platform, Pluto is the intended recipient of that request and, thus, a necessary party to the alleged communications. *Id.* (dismissing CIPA and ECPA claims against developer of children's educational software based on party exception); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024); FAC ¶ 27. Plaintiffs do not contest this. Nor do Plaintiffs' ages create any consent issues: the federal "Wiretap Act's one-party consent regime [does not] depend[] on the age of the non-consenting party…[g]iven the vast potential for unexpected liability whenever a minor happened to browse an Internet site that deployed cookies…." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 275 (3d Cir. 2016).

### 2.    Crime-Tort Exception Does Not Apply

Plaintiffs still fail to plausibly allege that the crime-tort exception to the one-party exemption applies.

#### a)    No Criminal or Tortious Purpose

In order for the crime-tort exception to apply, Plaintiffs must plausibly allege that Defendants acted "for the purpose of facilitating some further impropriety, such as blackmail[.]" *See Sussman v. ABC*, 186 F.3d 1200, 1202–03 (9th Cir. 1999); *see also* 18 U.S.C. § 2511(2)(d). But as before, at most, the FAC alleges only that Defendants attempted to increase its profits. FAC ¶¶ 128, 139, 214. There is nothing criminal or tortious about using an analytics service to improve a website's functionality or attempt to make money. *Katz-Lacabe v. Oracle Am.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (declining to apply crime-tort exception where defendant's purpose was economic gain); *Lakes*, 777 F. Supp. 3d at 1058 (rejecting ECPA theory where defendant's "primary motivation was economic benefit").

### b) No "Temporally Distinct" Crime or Tort

The crime-tort exception also requires Plaintiffs to plead that "[t]he recording party . . . [had] the independent criminal or tortious purpose at the time the recording was made." *Planned Parenthood Fed'n of Am. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022). That is, the further criminal or tortious act must occur at some point *after* and be distinct from the interception or disclosure. *Sisti*, 2026 WL 1223927, *7 (explaining that "[b]y claiming that Bosley had a 'tortious purpose' in disclosing Plaintiff's website interactions[,]" plaintiff failed to satisfy the crime-tort exception because he was "merely claiming that the interception itself was committed for a tortious purpose."); *Doe v. Kaiser Found. Health Plan*, 2024 WL 1589982, *8–10 (N.D. Cal. Apr. 11, 2024) (crime-tort exception inapplicable to tracking technologies when the further crime or tort "inheres in the alleged interception"). There is a clear practical reason for this requirement. If an act synonymous with the interception or disclosure could trigger the crime-tort exception, any alleged interception or disclosure could trigger it, and the exception would swallow the rule whole.

Here, Plaintiffs' claims remain predicated upon the same event: an alleged disclosure of information to third parties. FAC ¶¶ 63, 178, 183, 202, 226, 238, 244, 254, 261. Therefore, Plaintiffs do not—and cannot—allege Defendants intercepted any communication in furtherance of a later, temporally distinct crime or tort.

### c) Plaintiffs Cannot Rely On COPPA

While Plaintiffs have added various general allegations concerning children's use of the internet and the related impact to children, they have not—and cannot—plead facts sufficient to invoke the Children's Online Privacy Protection Act ("**COPPA**") in service of the crime-tort exception. FAC ¶¶ 1–9, 95, 98, 100. To start, courts do not permit private plaintiffs to enforce COPPA and regularly dismiss attempts to bring COPPA claims, which Plaintiffs are effectively doing here. *Benson v. Perris Elementary Sch. Dist.*, 2022 WL 3574290, *5 (C.D. Cal. July 1, 2022) (rejecting COPPA claims brought

by private plaintiffs); *see also Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 353 (2001) (bringing claims reserved for government enforcement would "exert an extraneous pull on the scheme established by Congress[.]").

Moreover, Plaintiffs have not added any allegations demonstrating Defendants' conduct violated COPPA. For example, COPPA requires a lack of verifiable parental consent, 15 U.S.C. § 6502, but as explained above, Plaintiffs admit their Parents gave consent. COPPA also requires the website operator to have "actual knowledge that it is collecting . . . personal information *from a child*," *id.* (emphasis added), but Plaintiffs do not even allege that Defendants knew—or reasonably could have known—that the information allegedly disclosed (such as IP addresses and device identifiers) pertains to the minor Plaintiffs rather than to their Parents. Nor could they, considering individuals under 18 cannot make accounts, and Plaintiffs still do not plead they used Pluto's separate "Kids Mode" when they watched through their Parents' accounts.[7] Ex. F (Pluto, *What streaming features are available on Pluto TV?*, https://support.pluto.tv/s/article/PTV-What-streaming-features-are-available-on-Pluto-TV?language=en_US) (describing "Kids Mode"). Plaintiffs' attempt to rely on COPPA is further belied by their new suggestion they received "age-inappropriate" ads, which would reinforce that Pluto was unaware it was the children, as opposed to their Parents, using the service. FAC ¶¶ 26–27, 35, 52. Plaintiffs, thus, cannot rely on COPPA to satisfy the crime-tort exception.

### 3.    No Content Was Transmitted to Google

To state an ECPA claim, a plaintiff must show the *content* of their communication was intercepted. The alleged Google transmission—which remains unchanged from Plaintiffs' original complaint—includes only cookie identifiers, device and browser information, IP address, and a URL. FAC ¶¶ 124-25. This "record information" does not qualify as "content" for purposes of the ECPA. *In re Zynga Priv. Litig.*, 750 F.3d 1098,

---

[7] Plaintiffs plead only watching programming in a "Kid's section[,]" which differs from Pluto's "Kids Mode," a setting that can be toggled on that filters content from the entire service to show only children's programming. FAC ¶ 10; Ex. F.

DEFENDANTS' MOTION TO DISMISS    16    CASE NO. 5:25-CV-02945-KK (DTB)
PLAINTIFFS' AMENDED COMPLAINT

1108-09 (9th Cir. 2014) (a URL without "a search term or similar communication" was contentless); *Mikulsky v. Bloomingdale's*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) ("[I]nteractions with [a] website" are not contents). Because no content was transmitted to Google, Plaintiffs cannot state an ECPA claim based on the alleged Google transmissions.

### E.   Plaintiffs Still Fail to State Any State Law Privacy Claim

Plaintiffs do not dispute that they consented to New York law in the Pluto TV Terms, barring claims predicated on other states' laws, or that "New York does not recognize a common-law right to privacy." *Dunahoo v. Hewlett-Packard*, 2012 WL 178332, *4 (S.D.N.Y. Jan. 20, 2012); *King v. Bumble Trading, Inc.*, 393 F. Supp. 3d 856, 867 (N.D. Cal. 2019) (dismissing certain California claims because of New York choice of law provision). Therefore, their various state-law privacy claims can and should be dismissed on that basis alone. But even if the Court were to consider the claims, the FAC's allegations are still lacking in multiple respects.

### 1.   Plaintiffs Fail to State a CIPA Claim

### a)   Pluto Is a Party to the Alleged Communications

Like ECPA, CIPA § 631(a) has a one-party exception. This exception defeats Plaintiffs' CIPA claim because Defendants were necessary parties to the alleged communications. *Licea v. Vitacost.com*, 683 F. Supp. 3d 1118, 1121 (S.D. Cal. 2023); *Thomas v. Papa John's,* 2025 WL 1704437, *1 (9th Cir. June 18, 2025) ("A party to a conversation cannot be liable under section 631 for 'eavesdropping'"); *Sisti*, 2026 WL 1223927, *7. Defendants are therefore exempt from CIPA § 631(a) liability.

### b)   Plaintiffs Can Prove No Underlying Violation of § 631

Even without the exception, Plaintiffs fail to plead any underlying violation of CIPA § 631.

First, Plaintiffs' claim under CIPA § 631(a)'s first clause fails because they still do not allege use of a telephone, as required. *Gutierrez v. Converse*, 2025 WL 1895315, *1

DEFENDANTS' MOTION TO DISMISS   17   CASE NO. 5:25-CV-02945-KK (DTB)
PLAINTIFFS' AMENDED COMPLAINT

(9th Cir. July 9, 2025) (dismissing claim because plaintiffs did not allege an "unauthorized connection through a telephone"); *Cody v. Boscov's*, 2024 WL 2228973, *2 (C.D. Cal. May 6, 2024).

Second, "[t]o be liable [under CIPA], the eavesdropper must listen to a communication... [while it is] in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state.'" *Valenzuela v. Keurig Green Mountain*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023). Notwithstanding that Defendants previously flagged Plaintiffs' failure to allege how Microsoft or Google intercepted communications at the same time they were made to Pluto, the FAC still only alleges in a conclusory manner that Pluto allowed Microsoft and Google to "intercept in real-time…Plaintiffs'…communications." FAC ¶ 233. Plaintiffs' statement, as before, "does little more than restate the pleading requirement of real time interception." *Valenzuela*, 674 F. Supp 3d at 758; *Sisti*, 2026 WL 1223927, *6. At most, when Plaintiffs describe how this technology works, they allege the Pixels request identifying information, then first "combine the data received[,]" and only then "transmit the information back to Google and Microsoft." FAC ¶ 112. But this amounts to a stepwise sequence of events, not an in-transit interception. *Hernandez-Silva v. Instructure, Inc.*, 2025 WL 2233210, *5 (C.D. Cal. Aug. 5, 2025) ("Learning the content of a communication after it has been sent is not eavesdropping"), *appeal filed*, No. 25-5438 (9th Cir. Aug. 27, 2025); *see also Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (explaining interception requires acquisition during transmission, not from electronic storage).

Moreover, because CIPA is a criminal statute, the rule of lenity applies. *Doe v. Eating Recovery Ctr.*, 2025 WL 2971090, *6 (N.D. Cal. Oct. 17, 2025). CIPA was enacted in the 1960s and uses technological conventions of its time, and a term like "in transit" is "ill-suited for application to internet communications." *Id.* Because there is no indication the California legislature intended to criminalize the conduct alleged, the "in transit" requirement should not be read "so broadly as to cover the conduct at issue

here." *Id.*

Third, "'contents' of a communication under CIPA has the same meaning as the parallel term in the [ECPA]." *Id.* at *4. Therefore, for the reasons explained above, Plaintiffs also cannot bring a CIPA § 631(a) claim based on alleged Google transmissions.

### c) Pluto Did Not Aid and Abet a § 631 Violation

Plaintiffs also do not plausibly allege Defendants aided and abetted a CIPA violation. While some courts have held otherwise, the better view is "in the absence of an explicit statutory scienter requirement, in California civil actions, the common law definition [of aiding and abetting] applies." *Valenzuela v. Kroger*, 2024 WL 1336959, *4 (C.D. Cal. Mar. 28, 2024); *Smith v. YETI Coolers*, 754 F. Supp. 3d 933, 942 (N.D. Cal. 2024) (CIPA's "fourth clause does require some level of knowledge and intent.").[8] Therefore, Plaintiffs must show Defendants "(a) kn[e]w[] the other's conduct constitutes a breach of duty and g[a]ve[] substantial assistance or encouragement to the other to so act or (b) g[a]ve[] substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty[.]" *Kroger*, 2024 WL 1336959, *4. Although Defendants identified this pleading deficiency in their prior motion, Plaintiffs have made no effort to add allegations establishing that Defendants *knew* their actions would violate CIPA. Thus, Plaintiffs still have not plausibly alleged Defendants intended to participate in a CIPA violation, requiring dismissal.

### 2. Plaintiffs Fail to Allege Common Law or California Constitution Invasion of Privacy Claims

Plaintiffs' non-CIPA privacy claims similarly continue to suffer from the same deficiencies that plagued their prior complaint. To start, Plaintiffs again fail to specify which state laws they are invoking. That itself is a basis for dismissal. *See* F.C.R.P.

---

[8] Cases such as *R.C. v. Walgreen Co.* and *Toy v. Life Line Screening of Am. Ltd.*, which hold otherwise, fail to properly analyze whether the common law aiding and abetting definition should apply, given the statute lacks an explicit, defined scienter requirement. 733 F.Supp.3d 876, 903 (C.D. Cal. 2024); 2024 WL 1701263, *1 (N.D. Cal. Mar. 19, 2024).

8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Assuming Plaintiffs intend to bring these claims under the law of their states of residence—California, Illinois, Indiana, and New Jersey—they still fail.

### a) Plaintiffs Do Not State a Common Law Invasion of Privacy Claim

There are four common law privacy torts: intrusion upon seclusion; appropriation of likeness; publication of private fact; and false light. *Popa*, 153 F.4th at 792.[9] Plaintiffs have not alleged which common law tort underlies their claim, and instead again plead a generic "Invasion of Privacy[.]" FAC ¶¶ 180–92. Notwithstanding this deficiency, Plaintiffs' Invasion of Privacy claim cannot be animated by any common law torts.

### (1) Intrusion Upon Seclusion

Plaintiffs cannot state a claim for intrusion upon seclusion under Indiana law because they allege no physical intrusion: Indiana courts "narrowly construe [the tort] by requiring the invasion be of the plaintiff's *physical* space." *Jarrett v. Upperline Health,* 2025 WL 3067545, *7 (S.D. Ind. Aug. 8, 2025). As to the remaining states, Plaintiffs again incorrectly suggest a disclosure constitutes an intrusion. FAC ¶ 184. The proper basis for an intrusion upon seclusion claim is not a disclosure but an *offensive* intrusion. *Angelo v. Moriarty*, 2016 WL 640525, *5 (N.D. Ill. Feb. 18, 2016); *Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 WL 1141168, *6 (C.D. Cal. Feb. 27, 2025). Moreover, where a party was the intended recipient of information, there is no "intrusion." *Kurowski v. Rush Sys. for Health,* 659 F. Supp. 3d 931, 944 (N.D. Ill. 2023) (dismissing claims involving alleged disclosure of health information sent in "voluntary communications with defendant"); *Saedi,* 2025 WL 1141168, *6 (no "intrusion" via tracking tools when plaintiff "voluntarily provide[d] information" like IP address, website activity, and health information); *Darocha v. Wal-Mart Stores*, 2012 WL 13032900, *4 (D.N.J. May 9, 2012). As before, because Plaintiffs "provided" their information to

---

[9] Plaintiffs do not allege facts suggesting they are making appropriation of likeness or false light claims.

Defendants, there was no intrusion, let alone a highly offensive one.  FAC ¶ 260.[10]

### (2)    Public Disclosure of Private Facts

Plaintiffs similarly still do not allege publication of private facts because the names of children's movies are not "sensitive or scandalizing," and because the purported disclosure was made to private companies and not the public-at-large, as required. *Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 736 (7th Cir. 2023); *Cmty. Health Network v. McKenzie*, 185 N.E.3d 368, 382 (Ind. 2022) ("[I]nformation must be communicated in a way that either reaches or is sure to reach the public [or] is sure to become public knowledge"); *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 849 (N.D. Ill. 2023) (emphasizing the "only disclosures allegedly made were to…private companies" like Google, not "the public at large"); *Romaine v. Kallinger*, 109 N.J. 282, 297 (1988); *Hill v. NCAA.*, 7 Cal. 4th 1, 27, 865 P.2d 633, 648–49 (1994).

### b)    Plaintiffs Do Not State an Invasion of Privacy Claim Under California's Constitution

The intrusion upon seclusion and constitutional privacy inquiries "[are] functionally identical" and "analyzed…together" when predicated on the same facts. *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1033 (N.D. Cal. 2019).  In the FAC, Plaintiffs still do not and cannot surmount the "high bar" California courts set for "an invasion of privacy claim" under "both" the "California Constitution and the common law."  *Belluomini v. Citigroup*, 2013 WL 3855589, *6 (N.D. Cal. July 24, 2013). Moreover, even so, the California Constitution "does not permit a private right of action for money damages…for an alleged violation of the privacy provision[.]"  *Blanco v. County of Kings*, 142 F. Supp. 3d 986, 1000 (E.D. Cal. 2015).

### 3.    Plaintiffs Fail to State Any Other Common Law Claims

Plaintiffs again assert three further common law claims: negligence, breach of implied contract, and unjust enrichment—all fail.

---

[10] Further, as this Court previously noted in its Article III discussion, "the intercepted information Plaintiffs cite does not provide a sufficient basis to establish an expectation of privacy."  Order at 7.

### a) Plaintiffs Fail to State a Negligence Claim

To plead damages establishing a negligence claim, Plaintiffs must allege an "appreciable, nonspeculative, present injury." *Low v. LinkedIn*, 900 F. Supp. 2d 1010, 1032 (N.D. Cal. 2012) (dismissing negligence claim absent "actual harm"); *Lax v. City of Atlantic City*, 2019 WL 7207472 (D.N.J. Dec. 27, 2019) (stating negligence requires actual damages); *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 639-40 (7th Cir. 2007); *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 949 F. Supp. 2d 486, 504 (S.D.N.Y. 2013) (same).

As before, Plaintiffs conclusorily allege "Defendants' conduct has caused Plaintiffs' Children and Class Members to suffer damages by having their Private Children's Data accessed, stored, and disseminated[.]" FAC ¶ 247. However, notwithstanding Defendants' arguments in its prior motion, Plaintiffs do not allege how this alleged dissemination resulted in actual monetary losses. *Huynh v. Quora, Inc.*, 2020 WL 7408230, *6 (N.D. Cal. June 1, 2020) (dismissing negligence claims where Plaintiffs failed to allege monetary damages due to data breach). Plaintiffs also contend Defendants "still hold[] the [data] in an unsafe and unsecure manner[,]" FAC ¶¶ 247, 249, but this allegation, as before, represents an inadequate "speculative" harm without factual support. *Low*, 900 F. Supp. 2d at 1032; *Webster v. Bradford-Scott Data*, 2025 WL 560917, *8 (N.D. Ind. Feb. 20, 2025).

Moreover, as explained *supra* § III(A), Plaintiffs' allegations that they suffered damages due to the "diminution" of value of data, FAC ¶ 19, and that Plaintiffs Diaz and Montgomery were asked to purchase items based on streamed ads, *id.* ¶¶ 25, 51, are also insufficient. *Greenstein*, 585 F. Supp. 3d at 1229 ("[P]laintiffs must show that the loss of value is not arbitrary or hypothetical"). Finally, the alleged disclosure is not personal information—and is at most allegedly a disclosure regarding use of the Pluto website in connection with a device. It is implausible Plaintiffs' information diminished in value when that information did not specifically identify them. For these reasons, Plaintiffs

continue to fail to plausibly allege actual damages, and their negligence claims should be dismissed.

Illinois "has not recognized an independent common law duty to safeguard personal information." *Doe v. Genesis Health Sys.*, 2025 WL 1000192, *4 (C.D. Ill. Mar. 18, 2025). Similarly, Indiana courts have either not recognized or rejected a common law duty to protect private information. *Duffy v. Lewis Bros. Bakeries*, 760 F. Supp. 3d 704, 720 (S.D. Ind. 2024) (citation omitted) (explaining state statutes "strongly suggest that Indiana law would not recognize' a common law duty…to protect and safeguard [] private information"). Accordingly, Plaintiffs' negligence claims fail under Illinois and Indiana law. FAC ¶ 243.

### b)    Plaintiffs Fail to Allege a Breach of an Implied Contract

Plaintiffs' implied contract claim fails because Plaintiffs still do not plausibly allege the parties reached a "meeting of the minds" with respect to the information allegedly disclosed. *Wakley v. Sustainable Loc. Foods LLC*, 2017 WL 1880814, *3 (S.D. Ind. May 9, 2017); *iMotorsports, Inc. v. Vanderhall Motor Works*, 2022 IL App (2d) 210785, ¶ 32; *Beltran v. Doctors Med. Ctr.*, 2025 WL 1635467, *12 (E.D. Cal. June 9, 2025); *In re U.S. Vision Data Breach Litig.*, 732 F. Supp. 3d 369, 377-78 (D.N.J. 2024); *Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*, 131 N.Y.S.3d 817, 826 (Sup. Ct. 2020).

Plaintiffs again allege when they "provided their Private Children's Data[,]" "they entered into an implied contract pursuant to which Defendants agreed to safeguard and not disclose their Private Children's Data without consent." FAC ¶ 251. However, Plaintiffs' FAC, like their prior complaint, is predicated on Defendants "intentionally" disclosing their information. *Id.* ¶ 121. So again, by Plaintiffs' own account, there was never a "meeting of the minds" to "safeguard and not disclose" their data, rendering their implied contract claim implausible. *See, e.g.*, *Vision Data*, 732 F. Supp. 3d at 378.

Plaintiffs also fail to allege any consideration (*e.g.*, payment). *See, e.g.*, *Beltran*, 2025 WL 1635467, \*12 (dismissing implied contract claims where "Plaintiffs have not made any allegations regarding consideration received by Defendants for their purported promise to safeguard Plaintiffs' information"). Finally, Plaintiffs fail to explain how any breach damaged them. *See, e.g.*, *id.* at \*11. Because Plaintiffs fail to allege a meeting of the minds, consideration, and damages, their implied contract claims fail.

**c) Plaintiffs Fail to Allege an Unjust Enrichment Claim**

Plaintiffs cannot state an unjust enrichment claim in any state because (1) there is no independent unjust enrichment cause of action under California law, and (2) Plaintiffs do not—and cannot—allege they expected to receive renumeration or some benefit they did not receive from Defendants under New Jersey, Indiana, and Illinois law. *In re iPhone Application Litig.*, 2011 WL 4403963, \*15 (N.D. Cal. Sept. 20, 2011); *Hemy v. Perdue Farms*, 2011 WL 6002463, \*22-23 (D.N.J. Nov. 30, 2011) (dismissing unjust enrichment claim for failure to allege an expectation of remuneration)*; Burget v. R.A.M. Ent., LLC*, 2015 WL 4490938 at \*7-8 (N.D. Ind. July 23, 2015) (same). Furthermore, Plaintiffs do not allege any benefit that Defendants received from a third-party that should have been given to Plaintiffs, as required under Illinois law. *Irwin v. Jimmy John's Franchise*, 175 F. Supp. 3d 1064, 1072 (C.D. Ill. 2016) (dismissing unjust enrichment claims where plaintiff "paid for food[,]" not "a side order of data security and protection"). Nor can Plaintiffs state a claim for unjust enrichment under New York law, given they do not plausibly allege the value of their information was diminished. *Mount v. PulsePoint*, 2016 WL 5080131,\*13 (S.D.N.Y. Aug. 17, 2016) (emphasizing failure "to plead injury based on misappropriation of the value of their browsing information"), *aff'd*, 684 F. App'x 32 (2d Cir. 2017). Plaintiffs have made no effort to address these pleading deficiencies in the FAC, and their unjust enrichment claims fail.

**F. Paramount Is Not a Proper Defendant**

Paramount is still not a proper defendant, and Plaintiffs have added no allegations

to the FAC establishing otherwise. Plaintiffs assert "Pluto is a Paramount subsidiary operating the Pluto TV video streaming service[,]" FAC ¶ 10, and Pluto's Terms provide: "Welcome to the network of interactive services provided by Pluto Inc. ('Pluto TV')[.]" Ex. C, Preamble. Paramount is a separate corporation that is not alleged to control Pluto, and is thus not a proper defendant. *Aliign Activation Wear v. lululemon*, 2020 WL 5790418, *2 (C.D. Cal. Aug. 24, 2020) ("[T]he corporation and its shareholders are distinct entities…insulat[ing] a parent corporation from liability created by its subsidiary, notwithstanding the parent's ownership of the subsidiary") (citation omitted).

### G. Plaintiffs' Case Cannot Proceed as Class Action

Lastly, Plaintiffs' class claims should be dismissed because the Terms to which those Plaintiffs with accounts agreed contain a class waiver. *Provencher v. Dell, Inc.*, 409 F. Supp. 2d 1196, 1201 (C.D. Cal. 2006) ("[T]here is no blanket policy in California against class action waivers in the consumer context."). The Terms state that "YOU AND WE EACH AGREE TO RESOLVE SUCH DISPUTES THROUGH AN INDIVIDUAL BINDING ARBITRATION OR AN INDIVIDUAL ACTION IN SMALL CLAIMS COURT." Ex. C § 2. Though the Terms mandate application of New York law, class action waivers are routinely enforced by New York and California courts. *Neims v. Neovia Logistics Distrib.*, 2023 WL 6369780, *6–8 (C.D. Cal. Aug. 10, 2023) (enforcing class waiver); *Avecilla v. Live Nation Ent.*, 2025 WL 3292617, *1 (C.D. Cal. Nov. 25, 2025) (similar); *Horton v. Dow Jones & Co.*, 804 F. App'x 81, 84–85 (2d Cir. 2020) (summary order) (similar). Because the account-holding Plaintiffs consented to the class waiver, their class claims should be dismissed.

## IV. LEAVE TO AMEND SHOULD BE DENIED

As explained above, Plaintiffs have not cured the multiple pleading deficiencies previously identified by Defendants and the Court. Accordingly, the FAC should be dismissed with prejudice. *See Nat'l Funding, Inc. v. Com. Credit Counseling Servs., Inc.*, 817 F. App'x 380, 385 (9th Cir. 2020) (affirming dismissal where amendments "failed to

cure the deficiencies explicitly identified by the district court in its prior order").

## V.     CONCLUSION

For the foregoing reasons, the Court should dismiss the Amended Complaint in its entirety with prejudice.

The undersigned, counsel of record for Paramount Skydance Corporation and Pluto Inc., certifies that this brief contains 8,242 words, which complies with the word limit of L.R. 11-6.1.

Dated: June 18, 2026

Respectfully submitted,

WEIL, GOTSHAL & MANGES LLP

By: _/s/ David R. Singh_
    DAVID R. SINGH

DAVID R. SINGH
david.singh@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway, 6th Floor
Redwood Shores, CA 94065-1134
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

DAVID L. YOHAI (*pro hac vice* pending)
david.yohai@weil.com
BLAKE J. STEINBERG (*pro hac vice* pending)
blake.steinberg@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Defendants PARAMOUNT SKYDANCE CORPORATION & PLUTO INC.