Sonjay C. Singh (*pro hac vice*)
**SIRI & GLIMSTAD LLP**
400 East Pratt Street
8th Floor - #16946751
Baltimore, MD 21202
Tel: (212) 532-1091
E: ssingh@sirillp.com

Daniel Srourian, Esq. (SBN: 285678)
**SROURIAN LAW FIRM, P.C.**
468 N. Camden Dr. Suite 200
Beverly Hills, CA 90210
Tel: (213) 474-3800
Fax: (213) 471-4160
E: daniel@slfla.com

*Attorneys for Plaintiffs, Minor Plaintiffs, and the Putative Class*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**RAQUEL DIAZ**, on behalf of her minor child, **B.E.**, and all others similarly situated, **LISA MEDINA**, on behalf of her minor child, **G.C.**, and all others similarly situated, **OSCAR RODRIGUEZ**, on behalf of his minor child, **F.R.**, and all others similarly situated, **STACY RADER**, on behalf of her minor child, **S.C.**, and all others similarly situated, and **KATRINA MONTGOMERY**, on behalf of her minor children, **J.M.**, **J.A.**, and **J.M.**, and all others similar situated,

Plaintiffs,

v.

**PARAMOUNT SKYDANCE CORPORATION** and **PLUTO INC.**,

Defendants.

Case No. 5:25-cv-02945-KK (DTB)

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Date: September 10, 2026

Time: 9:30 a.m.

Courtroom 3, 3rd Floor
Honorable Kenly Kiya Kato

## TABLE OF CONTENTS


I. PRELIMINARY STATEMENT ........................................................ 1

II. LEGAL STANDARD ........................................................ 3

III. ARGUMENT ........................................................ 3

A. PLAINTIFFS HAVE ARTICLE III STANDING ........................................ 3

i. Defendants Disclosed Minor Plaintiffs' Personally Identifiable Information ("PII"). ........................................ 4

ii. Plaintiffs Properly Allege a Privacy Injury Arising Out of Minor Plaintiffs' Substantive Right to Privacy in their Video-Viewing History. 5

iii. Defendants' Collection, Disclosure and Use of Minors' Data in Violation of COPPA Further Supports Article III Standing. .................. 7

iv. Defendants' Use of Minor Plaintiffs' Data to Fuel Personalized Advertising Profiles Independently Establishes Article III Standing. ..... 8

B. DEFENDANTS' TERMS OF USE AND PRIVACY POLICY DO NOT BAR THIS ACTION ........................................ 10

i. Defendants Have Not Established That Minor Plaintiffs Agreed to the Terms and Privacy Policy. ........................................ 10

1. Minor Plaintiffs are Not Bound by their Parents' Acceptance of Defendants' Terms. ........................................ 10

2. Minor Plaintiffs have disaffirmed any contract. .......................... 10

ii. The Privacy Policy Does Not Authorize Defendants' Conduct. ..... 11

C. PLAINTIFFS' VPPA CLAIM IS WELL PLED. .............................. 12

i. Plaintiffs Plausibly Allege Disclosure of PII .............................. 12

ii. Defendants Disclosed "Specific Video Titles or Services" ............ 14

D. PLAINTIFFS' ECPA CLAIM IS WELL PLED. ............................... 14

i. Defendants' Status as "Party" to the Communications Does Not Shield Them From Liability. .................................................................... 14

ii. The Crime-Tort Exception Applies. ............................................. 15

1. Defendants acted for a criminal or tortious purpose. ................... 15

2. Defendants' Criminal and Tortious Purpose was Separate from the Interception. ........................................................................... 17

iii. Plaintiffs Allege the Interception of "Contents." ............................ 18

E. PLAINTIFFS' CIPA CLAIM IS WELL PLED ................................ 19

i. Plaintiffs Allege Interceptions in Transit. ....................................... 20

ii. Plaintiffs Allege Scienter. .............................................................. 21

F. PLAINTIFFS' INVASION OF PRIVACY CLAIM IS WELL PLED. 22

G. PLAINTIFFS' NEGLIGENCE CLAIM IS WELL PLED. ................ 23

H. PLAINTIFFS' IMPLIED CONTRACT CLAIM IS WELL PLED. .. 24

I. PLAINTIFFS' UNJUST ENRICHMENT CLAIM IS WELL PLED. 25

I. PARAMOUNT IS A PROPER DEFENDANT IN THIS ACTION .. 26

IV. CONCLUSION ....................................................................... 26

# TABLE OF AUTHORITIES

**Cases**

*Ade v. Viki, Inc.*,
2024 U.S. Dist. LEXIS 79467, 2024 WL 1880153 (N.D. Cal. 2024)..................4

*Apaydin v. Move, Inc.*,
2025 U.S. Dist. LEXIS 215336 (C.D. Cal. 2025) ............................................19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................3

*B.K. v. Eisenhower Med. Ctr.*
2024 U.S. Dist. LEXIS 67497 (C.D. Cal. 2024) ..............................................15

*Balestrieri v. SportsEdTV, Inc.*,
2025 U.S. Dist. LEXIS 194373 (N.D. Cal. 2025) ..............................................5

*Beverly v. Newport Mesa Riding Ctr.*,
2024 Cal. Super. LEXIS 39443 (Cal. Sup. Ct. 2024).......................................11

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023)................................................................8

*Cahill v. Liberty Mut. Ins. Co.*,
80 F.3d 336 (9th Cir. 1996) ...............................................................................3

*Chatrie v. United States*,
2026 U.S. LEXIS 2878 (U.S. 2026) .................................................................21

*Cheung v. Slickdeals, LLC*,
2026 U.S. Dist. LEXIS 143937 (C.D. Cal. 2026) ..............................................6

*Dellasala v. Samba TV, Inc.*,
2026 U.S. Dist. LEXIS 88089 (N.D. Cal. 2026) ................................................6

*Doe v. Epic Games, Inc.*,
435 F. Supp. 3d 1024 (N.D. Cal. 2020)............................................................10

*Doe v. Meta Platforms, Inc.*,
690 F.Supp.3d 1064 (N.D. Cal. 2023)...............................................................18

*Doe v. Regents of the Univ. of Cal.*,
672 F. Supp. 3d 813 (N.D. Cal. 2023)....................22

*Edwards v. Mubi, Inc.*,
773 F. Supp. 3d 868 (N.D. Cal. 2025)....................4, 6

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017)....................2, 7, 12

*Elkins v. Bartholomew Cnty, Pub. Hosp.*,
2024 Ind. Super. LEXIS 340 (2024)....................25

*Fan v. NBA Props. Inc.*,
2024 U.S. Dist. LEXIS 57205, 2024 WL 1297643, (N.D. Cal. 2024)....................4

*Gaige v. Exer Holding Co., LLC*,
2025 U.S. Dist. LEXIS 17146 (C.D. Cal. 2025)....................4

*Garcia v. Bandai Namco Ent. Am. Inc.*,
2025 U.S. Dist. LEXIS 152616 (C.D. Cal. 2025)....................13

*Garcia v. Bandai Namco Ent. Am. Inc.,*
2025 U.S. Dist. LEXIS 152616 (C.D. Cal. 2025)....................4

*Gerber v. Twitter, Inc.*,
2024 U.S. Dist. LEXIS 229023 (N.D. Cal.2024)....................24

*Goldstein v. Rumble Inc.*,202
6 U.S. Dist. LEXIS 113489 (C.D. Cal. 2026)....................18

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
328 F.3d 1122 (9th Cir. 2003)....................25

*In re Facebook Inc. Internet Tracking Litigation* ("*Facebook Tracking*"),
956 F.3d 589 (9th Cir. 2020)....................passim

*In re Facebook, Inc.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019)....................23

*In re Grp. Health Plan Litig.*,
709 F. Supp. 3d 707 (D. Minn. 2023)....................18

*In re Pacific Fertility Center Litigation*, U.S. Dist. LEXIS 133922 (N.D. Cal. 2019) ........ 25

*In re TikTok, Inc.*, 2025 U.S. Dist. LEXIS 218421 (C.D. Cal. 2025) ........ 8

*In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204 (C.D. Cal. 2017) ........ 6, 14

*Johnson v. Nice Pak Prods.*, 736 F. Supp. 3d 639 (S.D. Ind. 2024) ........ 23

*Jones v. Google LLC*, 73 F.4th 636 (9th Cir. 2023) ........ 7

*Kane v. Univ. of Rochester*, 2024 U.S. Dist. LEXIS 48515 (W.D.N.Y. 2024) ........ 15

*Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928 (N.D. Cal. 2023) ........ 8

*Kishore v. Times Internet (UK) Ltd.*, 2024 U.S. Dist. LEXIS 164633 (N.D. Cal. 2024) ........ 14

*Knappenberger v. City of Phoenix*, 566 F.3d 936 (9th Cir. 2009) ........ 3

*Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002) ........ 19

*Krayzman v. Istockphoto LP*, 2024 U.S. Dist. LEXIS 181294 (N.D. Cal. 2024) ........ 11

*Lau v. Gen. Digit. Inc.*, 2024 U.S. Dist. LEXIS 81310 (N.D. Cal. 2024) ........ 22

*Lee v. Plex,* Inc., 773 F. Supp. 3d 755 (N.D. Cal. 2025) ........ 12

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) ........ 3

*M.G. v. Therapymatch, Inc.*,
2024 U.S. Dist. LEXIS 166534 (N.D. Cal. 2024) ........................................21

*Mata v. Zillow Grp., Inc.*,
2024 U.S. Dist. LEXIS 229061 (S.D. Cal. 2024)........................................18

*Mekhail v. N. Mem'l Health Care*,
F. Supp. 3d 916 (D. 25 Minn. 2024)..........................................................15

*Meyers v. Alphabet, Inc.*,
2022 U.S. Dist. LEXIS 98298 (C.D. Cal. 2022) ..........................................11

*Morgan v. Twitter, Inc.*,
2025 U.S. App. LEXIS 10380 (9th Cir. 2025)..................................................5

*N.A. v. Nintendo of Am. Inc.*,
2023 U.S. Dist. LEXIS 220175 (N.D. Cal. 2023) ........................................10

*NovelPoster v. Javitch CanField Grp.*,
140 F. Supp. 3d 938 (N.D. Cal. 2014)..........................................................19

*Opperman v. Path, Inc.*,
87 F. Supp. 3d 1018 (N.D. Cal. 2014)..........................................................22

*Patel v. Facebook, Inc.*,
932 F.3d 1264 (9th Cir. 2019) ........................................................................4

*Plotsker v. Envato Pty Ltd.*,
2025 U.S. Dist. LEXIS 168070 (C.D. Cal. 2025) ..........................................4

*Popa v. Microsoft Corp.*,
53 F.4th 784 (9th Cir. 2025) ....................................................................2, 6

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024)......................................16, 17, 20

*R.S. v. Prime Healthcare Servs.*,
2025 U.S. Dist. LEXIS 6338 (C.D. Cal 2025) ..............................................15

*Ramirez v. Trusper, Inc.*,
2024 U.S. Dist. LEXIS 186303 (N.D. Cal. 2024) ........................................11

*Ribas v. Clark*,
38 Cal. 3d 355, 361 (1985). .......... 14

*Riganian v. LiveRamp Holdings, Inc.*,
2025 U.S. Dist. LEXIS 138122 (N.D. Cal. 2025) .......... 17

*S.G. v. Epic Games* (“*Epic*”),
796 F. Supp. 3d 614 (N.D. Cal. 2025) .......... 10

*Sellers v. Bleacher Report, Inc.*,
2023 U.S. Dist. LEXIS 131579 (N.D. Cal. 2023) .......... 13

*Smith v. Trinity Broad. of Tex., Inc.*,
2024 U.S. Dist. LEXIS 176039 (C.D. Cal. 2024) .......... 13

*Spencer v. Collins*,
156 Cal. 298 (1909) .......... 10

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 U.S. Dist. LEXIS 179067 (N.D. Cal. 2024) .......... 22

*Stein v. Edward-Elmhurst Health*,
2025 U.S. Dist. LEXIS 31273 (N.D. Ill. 2025) .......... 16

*Sussman v. ABC*,
186 F.3d 1200 (9th Cir. 1999) .......... 16

*Thornton v. Mindvalley, Inc.*,
2025 U.S. Dist. LEXIS 53202, at *11-12 (N.D. Cal. 2025) .......... 4

*Toy v. Life Line Screening of Am. Ltd.*,
2024 U.S. Dist. LEXIS 88872 (N.D. Cal. 2024) .......... 21

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 2, 4

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) .......... 20

*Y.H. v. Blizzard Entm't, Inc.*,
2023 U.S. Dist. LEXIS 92679 (C.D. Cal. 2023) .......... 10

*Yoon v. Lululemon United States*,
549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) .......................................................18

# I. PRELIMINARY STATEMENT

Defendants Paramount Skydance Corporation ("Paramount") and Pluto Inc. ("Pluto") operate PlutoTV, a video streaming service providing streaming content to over 1-billion subscribers worldwide (the "Platform").[1] In their FAC, Plaintiffs allege that their pseudonymously named minor children (collectively, "Minor Plaintiffs") watched child-directed video content hosted on the Platform's "Kids Section." *Id*. ¶¶ 4-5. Unbeknownst to Plaintiffs, Defendants secretly tracked Minor Plaintiffs' interactions with the Platform, including personally identifying information about the specific video context that they consumed (the "Sensitive Information") through the use of online surveillance software (the "Tracking Tools") produced by Microsoft Corp. ("Microsoft") and Alphabet, Inc. ("Google"). *Id.* ¶¶ 6-12. As a result, Minor Plaintiffs' Sensitive Information was disclosed the largest internet advertisers in the world without Plaintiffs' consent. Plaintiffs claim that Defendants' use of the Tracking Tools violated federal and California wiretap statutes, the Video Privacy Protection Act ("VPPA").[2] Plaintiffs also assert common law claims including invasion of privacy. *Id.* ¶¶ 13-14.

Defendants do not dispute that they collected and disclosed the Sensitive Information of Minor Plaintiffs when they accessed the Kids Section, in flagrant violation of the Children's Online Privacy Protection Act's ("COPPA") prohibition on harvesting data from any "online service directed to children."[3] Instead, Defendants attempt to minimize their conduct, ignoring copious Ninth Circuit in the process.

***First***, Defendants argue that Plaintiffs fail to allege a concrete injury sufficient to establish Article III standing. But recognizing that the Video Privacy Protection Act codifies a substantive right to privacy, the Ninth Circuit has held that **every** disclosure

---

[1] *See* ECF No. 48 (the "First Amended Complaint" or "FAC").
[2] 18 U.S.C. § 2710, *et seq.*
[3] *See* 15 USCS § 6501, *et seq.*

of a person's personally identifiable video-viewing history inflicts an Article III injury.[4] It has made this finding both before and after *TransUnion* was decided.[5] It even reiterated this conclusion in Defendant's primary authority, *Popa v. Microsoft Corp.*, and did not revisit it. [6] Defendants do not cite a single case throughout their brief where a court held that disclosures of video-viewing information did not inflict a concrete privacy injury. Nor could they. The basis for Minor Plaintiffs' privacy injury is exceedingly well-settled.

Defendants then assert that Minor Plaintiffs consented to their use of the Tracking Tools by virtue of their Privacy Policies. Even if this were true (it is not), Minor Plaintiffs have disclaimed any contract by filing this action, as is their right until they reach the age of majority. Plaintiffs asserted this argument in response to Defendants' first Motion to Dismiss and yet Defendants fail to seriously engage with the contract principles specific to minors like Minor Plaintiffs.

***Second***, Defendants' arguments relating to the Terms and Privacy Policy attached to the Motion must fail for at least four independent reasons:[7] (1) Defendants fail to show that Terms and Privacy Policy were in effect when Plaintiffs created their accounts; (2) Defendants failed to provide sufficient notice to Plaintiffs and Minor Plaintiffs of the terms that they claim establish Plaintiffs' consent; (3) Defendants fail to establish that any agreement with Plaintiffs may be imputed to Minor Plaintiffs; and (4) in any instance, Minor Plaintiffs have disaffirmed any contractual obligations with Defendants through filing the Complaint.

***Third***, Defendants' use of the Tracking Tools to collect Minor Plaintiffs' Sensitive Information in violation of at least two substantive federal privacy statutes,

---

[4] *See Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017).
[5] *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021).
[6] *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025).
[7] *See* ECF No. 53-1 (the "Steinberg Decl."); ECF No. 53-2 ("Dfts. Exs. A-G").

the right to privacy recognized at common law, and even its own policies is sufficient to satisfy the elements of every cause of action alleged by Plaintiffs. Defendants chose to configure the Tracking Tools to collect its users' personally-identifiable video-viewing histories. It chose to install those Tracking Tools throughout the Platform, choosing not to even refrain on its Kids Section, in flagrant violation of its duties under COPPA. Defendants operate a major Internet streaming service. Even in the universe of other major corporations, they are superlatively equipped with the technical, operational and legal resources needed to build a Platform in compliance with their legal duties, and with respect for their users' privacy. They chose not to do so.

For these reasons, as explained further herein, Defendants' Motion should be denied in its entirety

## II. LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss, the burden of proof is on the movant, and the court draws all reasonable inferences in plaintiff's favor, assuming all well pleaded factual allegations to be true and determining whether they plausibly give rise to an entitlement to relief. *See, e.g., Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337– 38 (9th Cir. 1996). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Courts are instructed to freely grant leave to amend unless the defects identified could not possibly be cured. *See Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## III. ARGUMENT

### A. PLAINTIFFS HAVE ARTICLE III STANDING

Article III standing "requires only that the plaintiff's injury be fairly traceable to the defendant's conduct." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014). Intangible harms may suffice where the injuries have "a close

relationship to harms traditionally recognized as providing a basis for lawsuits in American courts. Those include, for example, reputational harms, **disclosure of private information, and intrusion upon seclusion**.” *TransUnion*, 594 U.S. at 425 (emphasis added). Indeed, “violations of the right to privacy have long been actionable at common law.” *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1272 (9th Cir. 2019) (quoting *Eichenberger*, 876 F.3d at 983).

**i. Defendants Disclosed Minor Plaintiffs’ Personally Identifiable Information (“PII”).**

At the threshold, Defendants argue that Plaintiffs allege disclosure of only “non-personal metadata” including “video titles, URLs, IP addresses, browser data, certain cookie IDs, and telemetric mouse-movement data[.]” Mot. at 5:8-10. This assertion is contradicted by the plain language of the FAC. Plaintiffs detail extensively how the transmissions made by the Tracking Tools included personally identifying cookie identifiers maintained by Microsoft and Google. *See* FAC ¶¶ 109-118, 124-125. Countless district courts have found identical allegations regarding Internet advertiser cookie identifiers sufficient to state the transmission of PII, including in connection with video-viewing information.[8] Moreover, the Ninth Circuit has issued rulings in multiple analogous internet tracking cases involving advertising identifiers, and has never even

[8] *See, e.g.*, *Archer v. NBCUniversal Media, LLC*, 794 F. Supp. 3d 716, 723 (C.D. Cal. 2025) (Facebook ID sent to Meta is PII); *Gaige v. Exer Holding Co., LLC*, 2025 U.S. Dist. LEXIS 17146, at *10 (C.D. Cal. Jan. 30, 2025) (finding that transmission in a pixel of “Plaintiff’s Facebook ID and IP address” were more than enough to establish transmission of PII); *Edwards v. Mubi, Inc.*, 773 F. Supp. 3d 868, 875 (N.D. Cal. 2025) (same as to X, Twitter, and Meta identifiers); *Thornton v. Mindvalley, Inc.*, 2025 U.S. Dist. LEXIS 53202, at *11-12 (N.D. Cal. Feb. 14, 2025) (same); *Plotsker v. Envato Pty Ltd.,* 2025 U.S. Dist. LEXIS 168070, at *20 (C.D. Cal. Aug. 26, 2025) (same); *Garcia v. Bandai Namco Ent. Am. Inc.,* 2025 U.S. Dist. LEXIS 152616, at *23 (C.D. Cal. Aug. 7, 2025) (same); *Ade v. Viki, Inc.*, 2024 U.S. Dist. LEXIS 79467, at *2 (N.D. Cal. Mar. 28, 2024) (same); *Fan v. NBA Props. Inc.*, 2024 U.S. Dist. LEXIS 57205, at *2 (N.D. Cal. Mar. 26, 2024) (same).

questioned whether plaintiffs in those matters had alleged PII. *See, e.g., Doe v. Cedars-Sinai Health Sys.*, 106 F.4th 907, 911 (9th Cir. 2024) (defendant shared "unique Facebook identification number with Facebook via the pixel"); *Osheske v. Silver Cinemas Acquisition Co.*, 132 F.4th 1110, 1112 (9th Cir. 2025) ("the Meta Pixel [and Google Analytics Pixel] intercepted and relayed information about Plaintiffs to Meta and other companies, including those patients' Facebook ID numbers"). The Court should find the same.

**ii. Plaintiffs Properly Allege a Privacy Injury Arising Out of Minor Plaintiffs' Substantive Right to Privacy in their Video-Viewing History.**

Even post-*TransUnion*, the Ninth Circuit has found that "[w]ith respect to constitutional injury-in-fact, the relevant law is settled. A statute that codifies a common law privacy right 'gives rise to a concrete injury sufficient to confer standing.'" *Jones v. Ford Motor Co.*, 85 F.4th 570, 574 (9th Cir. 2023) (quoting *In re Facebook Inc. Internet Tracking Litigation* ("*Facebook Tracking*"), 956 F.3d 589, 598 (9th Cir. 2020)). "Of course, an 'exact duplicate' is not required, and many courts require a match only in the kind of harm and not the degree." *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025). In *Eichenberger*, the Ninth Circuit applied this principle to the VPPA, holding that "every disclosure of an individual's 'personally identifiable information' and video-viewing history" constitutes a "[v]iolation[] of the right to privacy" sufficient for Article III standing. 876 F.3d at 983; *see also Morgan v. Twitter, Inc.*, 2025 U.S. App. LEXIS 10380, at *4 (9th Cir. Apr. 30, 2025) (citing *Eichenberger* as an exemplar case for the proposition that violation of a statute codifying a substantive right to privacy gives rise to concrete injury); *Balestrieri v. SportsEdTV, Inc.*, 2025 U.S. Dist. LEXIS 194373, at *20-21 (N.D. Cal. Sep. 16, 2025) (collecting cases showing that the "Ninth Circuit and its district courts have continued to cite *Eichenberger* with approval following *TransUnion*"). Defendants' conduct here—the collection of identifiable video-viewing data from minor consumers and disclosure of that data to third party

advertisers to enable Defendants' marketing operations—falls squarely within this binding precedent, as well as countless district court decisions in accord. *See Cheung v. Slickdeals, LLC*, 2026 U.S. Dist. LEXIS 143937, at *25 (C.D. Cal. June 29, 2026) (finding disclosures of video-viewing information through Facebook Tracking Tools inflicted concrete injury, as opposed to routine browsing data which did not); *Dellasala v. Samba TV, Inc.*, 2026 U.S. Dist. LEXIS 88089, at *9 (N.D. Cal. Apr. 21, 2026) ("Further supporting a protectable privacy interest [for standing purposes]…an individual's privacy interest in their video viewing information is what led to the passage of the [VPPA]"); *Edwards*, 773 F. Supp. 3d at 877 (disclosure of movies watched by plaintiffs through Tracking Tools sufficient to satisfy Article III); *Griffith v. TikTok, Inc.*, 2023 U.S. Dist. LEXIS 223098, at *2-4 (C.D. Cal. Dec. 13, 2023) (plaintiffs had Article III standing where they alleged "[d]efendants have collected without authorization their private browsing data," including video-viewing history); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1212 (C.D. Cal. 2017) (same).

Defendants' reliance on *Popa* is inapposite. Unlike here, the *Popa* plaintiff did not allege any disclosures made to third parties, nor did the plaintiff identify any disclosures involving information falling within a traditionally protected sphere of privacy. *Popa*, 153 F.4th at 793-94; *see also Samba TV*, 2026 U.S. Dist. LEXIS 88089, at *8 (distinguishing plaintiffs' allegations from *Popa* because plaintiffs alleged video viewing information which is sufficiently sensitive to inflict a privacy injury). Consequently, the Ninth Circuit explicitly distinguished the facts in *Popa* from those in *Eichenberger*, explaining that the distinction between the ***procedural*** violations of the FCRA considered in *Spokeo* and the ***substantive*** right of privacy codified by VPPA "justified [its] conclusion that '*every* disclosure of an individual's 'personally identifiable information' and video-viewing history offends the interests that the statute protects'" as "'[v]iolations of the right to privacy have long been actionable at common

law,' and…the right to privacy 'encompass[es] the individual's control of information concerning his or her person.'" *Popa*, 153 F.4th at 793-94 (citations to *Eichenberger* omitted). Plaintiffs allege the same: that Defendants disclosed personally identifiable video viewing histories to unauthorized third parties. *See* FAC § IV(E)(v). Defendants thus cannot credibly assert that *Popa* supports their position when the Ninth Circuit declined to "revisit *Eichenberger*" in deciding *Popa* and instead restated *Eichenberger*'s core finding that any disclosure of personally identifiable video-viewing history constitutes a cognizable privacy injury. *See Popa*, 153 F.4th at 784. In likely recognition of this fact, Defendants do not even try to grapple with *Popa*'s treatment of *Eichenberger* and otherwise do not cite a ***single decision*** finding that video-viewing history disclosures fail to satisfy Article III. *See* Mot. at 5:7-9:6. Nor could they. Ninth Circuit courts ubiquitously find that "every disclosure of an individual's 'personally identifiable information' and video-viewing history" constitutes a "[v]iolation[] of the right to privacy" sufficient for standing, just as Plaintiffs allege here. *Eichenberger*, 876 F.3d at 983.

**iii. Defendants' Collection, Disclosure and Use of Minors' Data in Violation of COPPA Further Supports Article III Standing.**

COPPA imposes numerous restrictions on data collection from minors, and requires website operators to "safeguard the confidentiality, security, and integrity of the children's personal online information." *Jones v. Google LLC*, 73 F.4th 636, 641 (9th Cir. 2023). Among those protections is a specific prohibition on collecting personal information without written authorization from a website or online service that is "directed to children." 15 U.S.C. § 6502. The "Kids" section of the Platform is obviously child-directed, and COPPA moreover explicitly considers "customer number[s] held in a cookie," "Internet Protocol (IP) address[es]," "processor or device serial number[s]," and "unique device identifier[s]" to constitute PII. 16 C.F.R. § 312.2. Thus, there can be no serious dispute that Defendants violated COPPA.

Like the VPPA, COPPA codifies a preexisting privacy right in a specific context—the heightened privacy right accorded to minors. *See, e.g.,* Fed. R. Civ. P. 5.2(a)(3) (minors must be identified only by initials in court filings, contrary to general rule that actions must be litigated in the name of real party in interest).

> Given the Ninth Circuit's holdings in *Facebook Tracking, Patel*, and *Eichenberger*, and its characterization of COPPA in *Jones*, the Court would find that COPPA likely falls within a category of statutes protective of substantive privacy rights, and closely aligned with common-law privacy causes of action, such that adequately pleading an underlying COPPA violation suffices to establish an Article III injury for state claims predicated on such a violation.

*In re TikTok, Inc.*, 2025 U.S. Dist. LEXIS 218421, at *41-42 (C.D. Cal. Nov. 5, 2025). Defendants' violations of COPPA through use of the Tracking Tools thus additionally supports finding Article III standing.

**iv. Defendants' Use of Minor Plaintiffs' Data to Fuel Personalized Advertising Profiles Independently Establishes Article III Standing.**

In *Facebook Tracking*, the Ninth Circuit examined the plaintiffs' claim that Meta surreptitiously collected browsing data from third party websites to compile "highly personalized" "grave-to-cradle" user profiles. 956 F.3d at 601-04. In its analysis, the Ninth Circuit found that Meta's tracking practices would "cause harm or a material risk of harm to [plaintiffs'] interest in controlling their personal information" because Meta's user profiles "reveal an individual's likes, dislikes, interests, and habits[.]" *Id.* at 599. As a result, it found the plaintiffs' allegations sufficient to establish Article III standing. *Id.*; *see also Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 940 (N.D. Cal. 2023) (allegations that defendants tracked plaintiffs' activity to create profiles for targeted advertising "sufficiently allege harm to the [p]laintiffs for Article III standing"); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 920 (N.D. Cal. 2023) (standing established where the defendant "associates [users' browsing data] with their preexisting user profiles" to deliver "better, more targeted, advertisements to users").

These exact concerns underlie Plaintiffs' allegations. As evidenced by the floor comments of VPPA's sponsor, Sen. Patrick Leahy, Congress was motivated to pass VPPA in large part due to concern that "the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems is a new, more subtle and pervasive form of surveillance." S. Rep. No. 100-599, at p. 7 (1988). As applied to video-viewing history, Congress found such surveillance to be particularly invasive. As Rep. Al McCandless noted, "films are the intellectual vitamins that fuel the growth of individual thought…This intimate process should be protected from the disruptive intrusion of a roving eye…These records are a window into our loves, lives, and dislikes." *Id; cf. Facebook Tracking*, 956 F.3d 589 at 599 (finding standing because data profiles revealed plaintiffs' "likes, dislikes, interests and habits"). In other words, the privacy right codified by VPPA—and violated by Defendants—is the same right recognized by the Ninth Circuit in *Facebook Tracking*: the right to be free from surreptitious surveillance through which the core aspects of our lives may be inferred by unknown third parties. Thus, Minor Plaintiffs additionally have established concrete injury based on their right to control their personal information.

For the reasons stated above, the Ninth Circuit's decisions in *Eichenberger* and *Facebook Tracking* are clearly controlling under the instant facts. The Court should thus find that Minor Plaintiffs have Article III standing under the same reasoning as set forth in those precedential decisions.

/

/

/

/

/

/

/

### B. DEFENDANTS' TERMS OF USE AND PRIVACY POLICY DO NOT BAR THIS ACTION

#### i. Defendants Have Not Established That Minor Plaintiffs Agreed to the Terms and Privacy Policy.

1. Minor Plaintiffs are Not Bound by their Parents' Acceptance of Defendants' Terms.

Defendants argue that Minor Plaintiffs are bound by Plaintiffs' purported[9] acceptance of Defendants' Terms and Privacy Policy, citing only *S. G. v. Epic Games* ("*Epic*") in support. Mot. at 10 (citing *Epic*, 796 F. Supp. 3d 614, 620-21 (N.D. Cal. 2025)). But under *Epic*, a parent's agreement is imputed to their child only if "the parent entered the agreement at least in part for the child's benefit," Unlike in *Epic*, Defendants fail to provide any facts to suggest that (1) Plaintiffs agreed to the Terms contemporaneously with their children's use of the Platform; (2) use of Plaintiffs' Platform account was limited solely to use by Minor Plaintiffs; and/or (3) that Plaintiffs subsequently re-affirmed acceptance of the Terms after Minor Plaintiffs' use of the Platform. *See id*. Accordingly, no contractual acceptance can be imputed onto Minor Plaintiffs.

2. Minor Plaintiffs have disaffirmed any contract.

Even if Minor Plaintiffs *did* assent to the Terms, they have disaffirmed any contract by filing this action. "[A] minor may disaffirm a contract 'before majority or within a reasonable time' after reaching majority." *N.A. v. Nintendo of Am. Inc.*, 2023 U.S. Dist. LEXIS 220175, at *10 (N.D. Cal. Dec. 11, 2023) (quoting Cal. Fam. Code § 6710). "A contract (or conveyance) of a minor may be avoided by any act or declaration disclosing an unequivocal intent to repudiate its binding force and effect." *Spencer v.*

---

[9] Defendants cite ECF 53-2 at 68 to show Plaintiffs' purported acceptance, but the email referenced therein merely identifies email addresses which could be associated with PlutoTV accounts used by Minor Plaintiffs. Defendants did not ask who created the accounts. *Id*. If Minor Plaintiffs created the accounts, they may disaffirm the Terms. *See, e.g., Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1036 (N.D. Cal. 2020).

*Collins*, 156 Cal. 298, 303 (1909). "No specific language is required to communicate an intent to disaffirm." *Berg v. Traylor*, 148 Cal. App. 4th 809, 820 (2007). Here, Minor Plaintiffs have disaffirmed any contract that exists between them and Defendants by filing this action. *See Y.H. v. Blizzard Entm't, Inc.*, 2023 U.S. Dist. LEXIS 92679, at *6 (C.D. Cal. Feb. 27, 2023) ("a minor's initiation of a lawsuit is sufficient to disaffirm a contract…unequivocally") (collecting cases); *Beverly v. Newport Mesa Riding Ctr.*, 2024 Cal. Super. LEXIS 39443, *14 (Cal. Sup. Ct. Sep. 26, 2024) ("minor may disaffirm an arbitration agreement signed by a parent").

**ii. The Privacy Policy Does Not Authorize Defendants' Conduct.**

Here, Defendants' account creation page references two policies that users agree to by creating an account: the "Terms of Service" and "Privacy Policy". *See* Dft. Ex. B, ECF 53-2 at 4. But the Defendants' argument relies on a different policy: the Minor' Privacy Policy, which is not referenced only once by the Privacy Policy, on the ***seventeenth*** page. With regards to the sign-in wrap agreement that Defendants employ with regards to the Privacy Policy and Terms of Services, "[w]ebsite users are entitled to assume that important provisions—such as those that disclose the existence of proposed contractual terms—will be prominently displayed, not buried in fine print." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 865-66 (9th Cir. 2022) . Accordingly, "[c]ourts commonly reject [such] agreements…where a multi-step process is required for a website visitor to view the agreement at issue." *Ramirez v. Trusper, Inc.*, 2024 U.S. Dist. LEXIS 186303, at *15-16 (N.D. Cal. Oct. 11, 2024); *see also, Krayzman v. Istockphoto LP*, 2024 U.S. Dist. LEXIS 181294, at *1-2 (N.D. Cal. Oct. 3, 2024) (finding statement that users agree to a Terms of Use and Privacy Policy did not bind users to a separate License Agreement linked within the Privacy Policy and Terms of Use); *Meyers v. Alphabet, Inc.*, 2022 U.S. Dist. LEXIS 98298, at *11 (C.D. Cal. Feb. 14, 2022) (same where agreement to Terms and Conditions did not bind users

to "a forum selection clause found numerous hyperlinks away"). Defendants' thus fail to establish agreement to its Minors' Privacy Policy due to inadequacy of notice.

### C. PLAINTIFFS' VPPA CLAIM IS WELL PLED.

The VPPA prohibits a "video tape service provider" from "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider..." 18 U.S.C. § 2710(b)(1). "[C]onsistent with Congress's purpose, the [VPPA]'s language is broad." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 106 (9th Cir. 2015). Plaintiffs' allegations that Defendants disclosed Minor Plaintiffs' PII and specific video-viewing histories to Microsoft and Google is sufficient to state a VPPA claim.

#### i. Plaintiffs Plausibly Allege Disclosure of PII

The VPPA defines PII as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). PII "includes information that 'standing alone, identifies a person' as well as information that is 'capable of' identifying a person." *Lee v. Plex, Inc.*, 773 F. Supp. 3d 755, 772 (N.D. Cal. 2025) (quoting *Eichenberger*, 876 F.3d at 984). In determining whether PII is disclosed, the VPPA "focuses on what information a video service provider 'knowingly discloses.'" *Eichenberger*, 876 F.3d at 979 (quoting 18 U.S.C. § 2710(b)(1)). Here, Plaintiffs allege that when Minor Plaintiffs watched videos on the Platform, Defendants informed Google and Microsoft of the videos Minor Plaintiffs viewed and identified Minor Plaintiffs as the ones who viewed those videos using Google's and Microsoft's identifiers for Minor Plaintiffs' Google and Microsoft accounts. FAC ¶¶ 109-10, 112. Additionally, the Tracking Tools also transmit unique browser fingerprints, which help ensure the accuracy of Google's and Microsoft's identifiers. *Id.* ¶¶ 114-16.

This conclusion comports with *Eichenberger*, which acknowledged that "modern technology may indeed alter—or may already have altered—what qualifies [as PII]

under the [VPPA].” 876 F.3d at 986. “Considering how code is the primary communication medium for data sharing technologies and a growing proportion of the public has the technological fluency to discern information from lines of code, particularly with the advent of artificial intelligence tools,” the “ordinary person” inquiry must be assessed in light of contemporary technological realities. *Garcia v. Bandai Namco Ent. Am. Inc.*, 2025 U.S. Dist. LEXIS 152616, at *23 (C.D. Cal. Aug. 7, 2025). Here, Defendants, sophisticated Internet companies and significant advertisers in their own right, indisputably knew that Google and Microsoft could use their own proprietary cookie identifiers to identify Minor Plaintiffs’ Google and Microsoft accounts. These identifiers are more effective than the “[n]ames and addresses” that *Eichenberger* found “still qualify” as PII. 876 F.3d at 986. Whereas a name or address could identify multiple people, Google and Microsoft’s identifiers are unique to a specific individual. *See Sellers v. Bleacher Report, Inc.*, 2023 U.S. Dist. LEXIS 131579, at *13 (N.D. Cal. July 28, 2023) (finding Facebook identifiers “more than a unique, anonymous identifier” because “[i]t personally identifies a Facebook user”); *see also* n. 6, *supra* (collecting cases finding the same in other VPPA cases). Courts in this District have found the same with regards to substantively identical VPPA claims. *See Smith v. Trinity Broad. of Tex., Inc.*, 2024 U.S. Dist. LEXIS 176039, at *8-9 (C.D. Cal. Sept. 27, 2024) (knowing disclosure pled by allegations that defendant knew Facebook Pixel transmitted Facebook IDs and configured it to transmit more than default information); *Fan v. NBA Props. Inc.*, 2024 U.S. Dist. LEXIS 57205, at *7 (N.D. Cal. Mar. 26, 2024) (same where plaintiffs allege that defendants chose to install Meta Pixel for advertising purposes, selected which events to transmit and disclosed PII).

Defendants’ reliance on out-of-Circuit cases is unpersuasive, as “[t]he Court is not bound to follow the Second Circuit’s application of the ordinary person standard.” *Garcia*, 2025 U.S. Dist. LEXIS 152616, at *22. Under binding Ninth Circuit precedent, Plaintiffs sufficiently allege Defendants’ disclosure of PII at this preliminary stage. *Id.*,

at *22 ("[I]t is a question of fact whether an ordinary person could identify [p]laintiffs . . . from [] pixel code.").

**ii. Defendants Disclosed "Specific Video Titles or Services"**

Plaintiffs allege that Defendants' the specific videos accessed by users through the Tracking Tools, including Minor Plaintiffs. *See* FAC ¶¶ 11, 124-25. Thus, Plaintiffs allege Defendants' disclosure of their "highly specific viewing behavior data on a massive scale with great accuracy." *In re Vizio, Inc.*, 238 F. Supp. 3d at 1225 (denying motion to dismiss VPPA claim). Nothing more is required at this stage. *See Ade*, 2024 U.S. Dist. LEXIS 79467, at *6 (rejecting defendant's argument that plaintiffs' failure to allege specific video titles was fatal to their VPPA claim); *Kishore v. Times Internet (UK) Ltd.*, 2024 U.S. Dist. LEXIS 164633, at *7 (N.D. Cal. Sept. 12, 2024) (refusing to dismiss where plaintiff—"as a past subscriber who watched prerecorded videos on [the website]—had his [PII] shared with Meta by the Pixel"). Because this specific video information was disclosed alongside the PII described above, Plaintiffs' state a claim under VPPA.

**D. PLAINTIFFS' ECPA CLAIM IS WELL PLED.**

**i. Defendants' Status as "Party" to the Communications Does Not Shield Them From Liability.**

The ECPA provides liability for "simultaneous unknown duplication and communication of" requests made by a web browser to a website "under the party exception" because the ECPA's "paramount objective [is] to protect effectively the privacy of communications" and "prevent the acquisition of the contents of a message by an unauthorized third-party or 'an unseen auditor.'" *Facebook Tracking*, 956 F.3d at 607 (quoting S. REP. NO. 90-1097). "Permitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion, allowing the [party] exception to swallow the rule." *Id.*

Defendants contemporaneously shared Minor Plaintiffs' Platform communications with unseen third parties. FAC ¶¶ 11, 126, 130. "[S]uch secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the first-hand dissemination of his statements." *Ribas v. Clark*, 38 Cal. 3d 355, 361 (1985).

**ii. The Crime-Tort Exception Applies.**

The crime-tort exception applies where a "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C.S.§ 2511(2)(d).

1. <u>Defendants acted for a criminal or tortious purpose.</u>

***First***, Plaintiffs allege that Defendants installed the Tracking Tools and configured them to transmit information from the Kids Section of the Platform. Defendants' purpose in installing the Tracking Tools was thus to perform an unlawful act: transmission of minor information in violation of COPPA. Defendants argue that COPPA does not have a private right of action. Plaintiffs agree. There is no COPPA cause of action asserted in the FAC. But, a violation of federal privacy law does not need a private right of action to constitute a "violation of the… laws of the United States" as required under the crime-tort exception. 18 U.S.C.S.§ 2511(2)(d). Indeed,

Courts ubiquitously find that violations of HIPAA suffice.[10] Like HIPAA, COPPA is a federal statute that protects a substantive privacy right with enforcement vested in agencies of the federal government rather than private right. Defendants do not explain why HIPAA violations have overwhelmingly been found sufficient but COPPA violations are not.

***Second***, while Defendants argue that they did not violate COPPA because they lacked actual knowledge that Platform users like Minor Plaintiffs were minors, COPPA requires more, prohibiting data collection not only from known minors, but also from any "online service directed to children." 15 U.S.C. § 6502(b)(1); *see also* 16 CFR § 312.2. Defendants' argument that "Pluto was unaware it was the children" cannot be taken seriously. After resolving factual disputes in favor of Plaintiffs, it should not be difficult for the Court to conclude that the Platform's Kids Section was indeed directed towards kids, and that Defendants consequently violated COPPA by installing the Tracking Tools on it. Moreover, Defendants' violations of COPPA notwithstanding, Plaintiffs' claim for invasion of privacy also independently satisfies the crime-tort exception. *See, e.g., R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024) (denying motion to dismiss ECPA and CIPA claims where plaintiffs' invasion of privacy claim was sufficiently pled).

---

[10] *See, e.g., R.S. v. Prime Healthcare Servs*., No. 5:24-cv-00330-ODW (SPx), 2025 U.S. Dist. LEXIS 6338, at *16 (C.D. Cal. Jan. 13, 2025) ("[Plaintiff] does not allege that [Defendant's] interception itself violated HIPAA. Instead, [Plaintiff] asserts that the violation stems from [Defendant's] intentional disclosure of the collected Private Information [via Tracking Tools], which constitutes a 'further impropriety' independent and separate from [the] interception"); *B.K. v. Eisenhower Med. Ctr.*, 2024 U.S. Dist. LEXIS 67497, at *4 (C.D. Cal. Apr. 11, 2024) ) (crime-tort exception satisfied where defendant intercepted and unlawfully disclosed sensitive health information with third parties through Tracking Tools installed on website in violation of HIPAA); *Kane v. Univ. of Rochester*, No. 23-CV-6027-FPG, 2024 U.S. Dist. LEXIS 48515, at *23 (W.D.N.Y. Mar. 19, 2024) (same); *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 928 (D. 25 Minn. 2024) (same);

***Third***, that Defendants' purpose in using the Tracking Tools was "to improve [their] website's functionality or attempt to make money" is of no import. Mot. at 14:23-24. "[T]he existence of a lawful purpose does not mean that the interception is not also for a tortious or unlawful purpose." *Sussman v. ABC*, 186 F.3d 1200, 1202 (9th Cir. 1999). Defendants' argument is "difficult to square with the statutory text" of the ECPA as the "language of the statute gives no hint that conduct falls outside the reach of the statute if a person acted based on financial motivations." *Stein v. Edward-Elmhurst Health*, 2025 U.S. Dist. LEXIS 31273, at *14 (N.D. Ill. Feb. 21, 2025). Indeed:

> [I]t would be odd to exclude an otherwise criminal or tortious act solely because it was also motivated by financial gain. The existence of an underlying financial motivation does not mean that the act lacked a criminal or a tortious purpose. That's like saying that a bank robber's purpose was not to commit a crime — it was to make money.

*Id*. at *14-16; *see also Riganian v. LiveRamp Holdings, Inc*., 2025 U.S. Dist. LEXIS 138122, at *29 (N.D. Cal. July 18, 2025) (declining to adopt a bright-line rule insulating financial motives from crime-tort exception); *Doe v. Tenet Healthcare Corp*., 2025 U.S. Dist. LEXIS 109134, at *69 (E.D. Cal. June 9, 2025) ("Plaintiffs' allegations that Defendants were financially motivated to disclose their information to Meta do not immunize Defendants from liability under the ECPA").

2. <u>Defendants' Criminal and Tortious Purpose was Separate from the Interception</u>.

Defendants contend that Plaintiffs fail to allege a distinct crime or tort because their claims "are predicated upon the same event: an alleged disclosure of information to third-parties." Mot. at 15:16-17. But the crime-tort exception requires a purpose distinct from the **<u>interception</u>**, not distinct from any **<u>disclosure</u>** of the intercepted communications. "[T]he use of intercepted communications is often the criminal or tortious purpose." *Costco*, 2024 U.S. Dist. LEXIS 207197, at *18-

19 (finding disclosure of information intercepted using pixels distinct from interception). Plaintiffs allege that Defendants knowingly intercepted their communications to share their Sensitive Information with unauthorized third parties in violation of COPPA, VPPA, and Minor Plaintiffs' common law privacy rights. Plaintiffs thus allege that Defendants had a criminal or tortious purpose for their interceptions. *See, e.g.*, *Walgreen*, 733 F. Supp. 3d at 901 (finding crime-tort exception applied because communications were intercepted with intent to commit the tort of invasion of privacy); *Cheung v. Slickdeals, LLC*, 2026 U.S. Dist. LEXIS 143937, at *48 (C.D. Cal. June 29, 2026) (holding that alleged disclosure of video purchase information to advertisers is tortious conduct that is independent of the interception itself). Moreover, if Defendants had built their own proprietary Tracking Tools and deployed them on their own web properties to perform their own analytics, this case would never have been filed. The interception would have been made but no further disclosure would have occurred. The interception and disclosure are separate and extricable—it is no tough feat to imagine a scenario where an interception is made with no intent to disclose.

Finally, Defendants' intent is a factual issue that cannot be resolved at this stage. *See, e.g.*, *Doe v. Meta Platforms, Inc.*, 690 F.Supp.3d 1064, 1076 (N.D. Cal. 2023) (noting the intent inquiry turned on "disputed questions of fact that need development on a full evidentiary record"); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 719 (D. Minn. 2023) ("determination of [defendant]'s actual purpose for . . . using the Pixel Code requires a factual undertaking").

**iii. Plaintiffs Allege the Interception of "Contents."**

The "contents" of a communication include "any information concerning the substance, purport, or meaning of that communication." *Yoon v. Lululemon United States*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021). The "content" inquiry is "a contextual 'case-specific' analysis hinging on 'how much information would be

revealed by the information's tracking and disclosure." *Id.* at 1082 (citations omitted). Minor Plaintiffs allege the interception of their identifiable information, the specific videos they watched, and any other interactions on the Platform. FAC ¶¶ 11, 122-25, 203. This is not "record information" as Defendants suggest (Mot. at 16), but information that reveals the specific video content that Minor Plaintiffs requested and viewed on the Platform. *See Goldstein v. Rumble Inc.*, 2026 U.S. Dist. LEXIS 113489, at *10 (C.D. Cal. Apr. 24, 2026) ("full-string URL which includes the descriptive title of the exact video viewed, in addition to the user's Facebook ID…suffices to allege 'contents' were intercepted because the name of a specific video 'concern[s] the substance' of a user's communications.") (quoting *Mata v. Zillow Grp., Inc.*, 2024 U.S. Dist. LEXIS 229061, at *14 (S.D. Cal. Dec. 18, 2024)); *see also Yoon*, 549 F. Supp. 3d at 1082 ("user-generated material" is protected). This District has found, "[a]s many courts in the Ninth Circuit" have, that allegations like Plaintiffs' adequately state the "content" requirement. *Apaydin v. Move, Inc.*, 2025 U.S. Dist. LEXIS 215336, at *8-9 (C.D. Cal. Oct. 29, 2025) (sustaining CIPA claim where plaintiff alleged that the "specific video content they requested . . . and the type of actions they [took] on the website" were disseminated through the use of Facebook Tracking Tools) (collecting cases)). For the foregoing reasons, the Court should deny Defendants' motion to dismiss Plaintiffs' ECPA claim.

**E. PLAINTIFFS' CIPA CLAIM IS WELL PLED**

Defendants' arguments for dismissal of Plaintiffs' CIPA § 631(a) claim fail because, ***first***, Defendants are not exempt from liability as "party" to the communications for the reasons stated in § III(D), *supra*, and ***second***, Plaintiffs' allegations establish that Defendants violated CIPA both by intercepting the contents[11]

[11] Defendants concede that "contents" of a communication under CIPA has the same meaning as under the ECPA. Mot. at 19. Therefore, Plaintiffs have alleged the interception of "content" for the reasons stated in § III(D), *supra*.

of Minor Plaintiffs' communications while in-transit, and by aiding and abetting Google and Microsoft to do the same.

**i. Plaintiffs Allege Interceptions in Transit.**

For a communication with a website to be "intercepted" without authorization, it "must be acquired during transmission, not while it is in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002); *NovelPoster v. Javitch CanField Grp.*, 140 F. Supp. 3d 938, 954 (N.D. Cal. 2014) (applying *Konop* in the context of a CIPA claim). A plaintiff properly alleges interception in transit where they allege that communications made with a website were "replicated and sent in parallel to the tracking entities." *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849 (C.D. Cal. 2024); *see also Facebook Tracking*, 956 F.3d at 608 ("simultaneous, unknown duplication and communication of GET requests do not exempt a defendant from liability under the party exception"). Here, Plaintiffs repeatedly allege that Defendants' transmissions of Sensitive Information occur contemporaneously as Minor Plaintiffs navigate the Platform. *See* FAC ¶¶ 11, 126, 130, 208 (characterizing transmissions as simultaneous, contemporaneous duplication and transmission). These allegations clearly state interception in-transit under Ninth Circuit law. *See Gray v. Luxottica of Am., Inc.*, 2024 U.S. Dist. LEXIS 243633 (C.D. Cal. Dec. 16, 2024) ("*Facebook Tracking* squarely controls" where pixels directed users' browsers to "contemporaneously send a separate message to Facebook's

servers”).[12]

**ii. Plaintiffs Allege Scienter.**

To plead intent under CIPA, a plaintiff must plead facts showing that the defendant “acted consciously and deliberately with the goal of intercepting wire communications.” *Walgreen Co.*, 733 F. Supp. 3d at 902 (quoting *United States v. Christensen*, 828 F.3d 763, 775 (9th Cir. 2015)). Plaintiffs allege that Defendants knowingly and intentionally installed the Tracking Tools on the Platform to collect data, including Minor Plaintiffs’ Sensitive Information, knowing that they would receive “compensation in the form of advanced advertising and data analysis services and/or cost-effective marketing on third-party platforms[.]” FAC ¶¶ 121, 128, 130, 201, 204-06, 214, 235. These allegations demonstrate that Defendants knew that Google and Microsoft were violating CIPA by collecting and monetizing Minor Plaintiffs’ communications through the Platform and installed the Tracking Tools to further those violations. This is sufficient to plead scienter under CIPA. *See, e.g.*, *Toy v. Life Line Screening of Am. Ltd.*, 2024 U.S. Dist. LEXIS 88872, at *3 (N.D. Cal. Mar. 19, 2024) (allegations that defendant “purposely installed these tracking technologies to optimize its advertising and marketing” satisfied scienter); *M.G. v. Therapymatch, Inc.*, 2024 U.S. Dist. LEXIS 166534, at *5 (N.D. Cal. Sept. 16, 2024) (allegations that defendant “knowingly agreed to use Google Analytics, embedded tracking technology code on its website, and allowed Google to have direct access to [defendant’s website]

---

[12] Defendants’ passing argument that there is “no indication the California legislature intended to criminalize the conduct alleged” is equally unavailing. Mot. at 18:25-26. Indeed, the California Legislature enacted CIPA in response to “advances in science and technology” that “have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications[,]” recognizing that “the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.” FAC ¶ 231 (quoting Cal. Pen. Code § 630).

users' private medical information" sufficiently pled aiding and abetting under CIPA). The Court should deny Defendants' motion to dismiss Plaintiffs' CIPA claim.

### F. PLAINTIFFS' INVASION OF PRIVACY CLAIM IS WELL PLED.

The elements of a claim for intrusion upon seclusion under California common law and the California constitution are nearly identical. "Because of the similarity of the tests, courts consider the claims together and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *Facebook Tracking*, 956 F.3d at 601. A reasonable expectation of privacy may exist when a plaintiff voluntarily shares information with the defendant, if plaintiff would reasonably have expected the defendant to keep the information private. *See Chatrie v. United States*, 2026 U.S. LEXIS 2878, at *25 (U.S. June 29, 2026) (individuals can have a reasonable expectation of privacy of information about them even in information possessed by others). The logic applies in the context of digital communications: if a communicator would reasonably expect their communications to remain private, but the recipient revealed their contents, California law authorizes invasion of privacy claims to remedy the use of Tracking Tools to intercept and disclose the contents of those communications.[13]

Here, Plaintiffs allege that they had a reasonable expectation of privacy because the data they sent to Defendants was "Private Children's Data" that reasonable people expect to be kept private, which Plaintiffs expected Defendants to keep private, and which federal law requires defendants to keep private, but which Defendants did not

---

[13] *See, e.g.*, *Silver*, 2021 U.S. Dist. LEXIS 141090, at *15 ("plaintiffs' allegations that [defendant] compiled and disseminated plaintiffs' sensitive data precludes the Court from finding that plaintiffs have no reasonable expectation of privacy"); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 801 (same); *Doe v. Regents of the Univ. of Cal.*, 672 F. Supp. 3d 813, 820 (N.D. Cal. 2023) (same); *St. Aubin v. Carbon Health Techs., Inc.*, 2024 U.S. Dist. LEXIS 179067, at *37 (N.D. Cal. Oct. 1, 2024) (same).

keep private. FAC ¶¶ 184-189. In analogous situations, courts allow invasion of privacy claims to proceed. *See, e.g., Lau v. Gen. Digit. Inc.*, 2024 U.S. Dist. LEXIS 81310, at *8 (N.D. Cal. Apr. 3, 2024) (finding the defendant could not "escape liability [for invasion of privacy] by arguing that there is no 'intrusion'" because the plaintiffs "did not expect for [the program] to collect and store extensive dossiers of their browsing data that could later be sold to third-party advertisers").[14] Moreover, if the Court is inclined to analyze whether Plaintiffs' expectations of privacy were reasonable, that analysis requires discovery. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 799 (California courts are "generally hesitant" to decide privacy claims on the pleadings).

**G. PLAINTIFFS' NEGLIGENCE CLAIM IS WELL PLED.**

Defendants argue that Plaintiffs fail to allege a cognizable injury in support of their negligence claim. But "privacy injuries" caused by a defendant's alleged collection and dissemination of user information to third parties is a cognizable injury. *In re Facebook, Inc.*, 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019). Plaintiffs allege a privacy injury that is recognizable under applicable law. *See Desert Care*, 2024 U.S. Dist. LEXIS 18970, at *28 (finding plaintiffs' allegations that certain categories of medical information were "improperly accessed, disclosed, and otherwise compromised" were sufficient to establish harm); Further, Plaintiffs allege that Defendants' conduct violated COPPA. FAC ¶¶ 18, 68-69. Thus, Plaintiffs need not allege future misuse of their Sensitive Information as under COPPA, "the collection of children's private

---

[14] *See also Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1060 (N.D. Cal. 2014) (finding plaintiffs stated an intrusion upon seclusion claim where defendant's mobile phone app secretly collected information from plaintiffs' mobile phone address books and used it for commercial purposes, because allegations that consent was fraudulently obtained supported a finding that plaintiffs had a reasonable expectation of privacy in the copied contacts).

information in the first instance . . . is the harm." *TikTok, Inc.*, 2025 U.S. Dist. LEXIS 218421, at *79-80.

Plaintiffs also state a claim for negligence under Illinois and Indiana law. *See, e.g., Stein*, 2025 U.S. Dist. LEXIS 31273, at *22-23 (finding in similar case involving Tracking Tools that "Illinois law imposes a duty on data collectors to maintain reasonable security measures…."); *Johnson v. Nice Pak Prods.*, 736 F. Supp. 3d 639, 647 (S.D. Ind. 2024) (denying motion to dismiss negligence claim in data breach context). Defendants' argument that there is no common law duty to safeguard personal information in Illinois, Mot. at 22, ignores that "the Illinois legislature has … created a duty that requires data collectors to maintain reasonable security measures under the Illinois Information Protection Act." *Theys*, 2026 U.S. Dist. LEXIS 46654, at *23 (internal citations omitted). "The court therefore cannot conclude at this stage that, as a matter of law, Defendants had no duty to safeguard Plaintiffs' personal information." *Id*. at *24.

Finally, Defendants' arguments that plaintiffs must allege actual monetary losses are grounded in the economic loss doctrine, "which bars tort recovery for purely economic losses based on the failure to perform contractual obligations." *Id*., at *25. But the economic loss doctrine does not apply here, because "the alleged duty to protect confidential information does not arise purely out of contract, so the Illinois negligence claims are not barred." *Id.* Therefore, the Court should deny Defendants' motion to dismiss Plaintiffs' negligence claim.

### H. PLAINTIFFS' IMPLIED CONTRACT CLAIM IS WELL PLED.

Plaintiffs exchanged their Sensitive Information for Defendants' services with the understanding, based on a reasonable person's expectation of privacy, that Defendants would safeguard the information and not disclose it without consent—an understanding without which Plaintiffs would not have entrusted their data to Defendants. FAC ¶¶ 251-53. Defendants breached that implied agreement by disclosing

Plaintiffs' Sensitive Information to Google and Microsoft without consent. *Id.* at ¶ 254. Such allegations are sufficient at the pleadings stage. *See, e.g., Gerber v. Twitter, Inc.*, 2024 U.S. Dist. LEXIS 229023, at *27 (N.D. Cal. Dec. 18, 2024). As alleged, Defendants' breach caused Minor Plaintiffs' numerous injuries, including invasion of privacy, emotional distress, loss of trust in online services, loss of the benefit of the bargain, statutory damages, and diminution in value of their Sensitive Information. *See* FAC ¶¶ 19, 145.

Defendants suggest that their intentional disclosure of Plaintiffs' information means they cannot have also promised to safeguard Plaintiffs information. *See* Mot. at 23.[15] But the parties should reasonably have expected Defendants to follow the law and to not share personally identifiable video viewing histories and personally identifiable information about the online activities of minors in the absence of any reason to believe otherwise. *See* §§ III(A)(iii), III(C).

**I. PLAINTIFFS' UNJUST ENRICHMENT CLAIM IS WELL PLED.**

Plaintiffs allege their unjust enrichment claim in the alternative to their breach of implied contract claim. FAC ¶ 259. Ninth Circuit precedent "does not preclude a plaintiff from pleading equitable remedies in the alternative." *Gerber*, 2024 U.S. Dist. LEXIS 229023, at *27 (citation omitted). Plaintiffs' allegations that Defendants intentionally disclosed Minor Plaintiffs' Sensitive Information suffice to adequately plead unjust enrichment at the motion to dismiss stage. *See Walgreen*, 733 F. Supp. 3d at 900 (declining to dismiss unjust enrichment claim where plaintiffs alleged data collected and disclosed through Tracking Tools was used to enhance advertising services and increase defendant's own profits); *Allen v. Midwest Express Care, Inc.*, 2025 U.S. Dist. LEXIS 151237, at *12 (N.D. Ill. Aug. 6, 2025) (unjust enrichment

---

[15] Defendants' cite *In re United States Vision Data Breach Litig.*, 732 F. Supp. 3d 369, 377 (D.N.J. 2024), but there, the parties had no direct relationship, contractual or otherwise. Here, Plaintiffs are customers and users of Defendants' services.

claims proper where plaintiff alleged defendant was motivated by financial profit when it disclosed plaintiff's data to unauthorized third parties); *Elkins v. Bartholomew Cnty, Pub. Hosp.*, 2024 Ind. Super. LEXIS 340, at *10 (Dec. 16, 2024) ("[p]laintiff did not expect monetary compensation for their data *precisely because* they assumed that the data would not be shared with any third parties") (emphasis in original).

## I. PARAMOUNT IS A PROPER DEFENDANT IN THIS ACTION

Paramount asserts that it is not a proper defendant in this action because Pluto is its subsidiary. Mot. 20:27-28. But Plaintiffs need only "make a prima facie showing of jurisdiction to avoid the defendant's motion to dismiss….Unless directly contravened [through affidavit], [Plaintiffs'] version of the facts is taken as true[.]" *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003); *see also In re Pacific Fertility Center Litigation*, U.S. Dist. LEXIS 133922, at *10-11 (N.D. Cal. Aug. 8, 2019) ("…where the defendants are alleged to be 'related entities' who acted in concert 'it is entirely possible that the allegations of wrongdoing are intended to include each and every entity defendant.'"). Here, Defendants provide no sworn statement contradicting Plaintiffs' allegations that Paramount exercises control over the Platform. On the contrary, the exhibits to Defendants' Motion suggest that Paramount does have relevant control over the conduct at-issue. *See* Dfts. Ex. C (Platform Terms hosted on Paramount Website); Dfts. Ex. D-E (privacy policies titled as "Paramount's" Privacy Policy and refer to Paramount and its affiliates collectively as the "Paramount Services"). Plaintiffs made this same argument in their response to Defendants' first Motion to Dismiss, yet Defendants again chose not to procure the affidavit required for this argument.

## IV. <u>CONCLUSION</u>

For the aforementioned reasons, this Honorable Court should **DENY** Defendants' Motion to Dismiss.

The undersigned counsel certifies that this brief contains 8,120 words, which complies with the Court's May 28, 2026 Order. ECF No. 52.

Dated: July 17, 2026

Respectfully submitted,

/s/ Sonjay C. Singh
Sonjay C. Singh (*pro hac vice*)
**SIRI & GLIMSTAD LLP**
400 East Pratt Street
8th Floor - #16946751
Baltimore, MD 21202
Tel: (212) 532-1091
E: ssingh@sirillp.com

Daniel Srourian, Esq. (SBN: 285678)
**SROURIAN LAW FIRM, P.C.**
468 N. Camden Dr. Suite 200
Beverly Hills, CA 90210
Tel: (213) 474-3800
Fax: (213) 471-4160
E: daniel@slfla.com

*Attorneys for Plaintiffs, Minor Plaintiffs, and the Putative Class*