DAVID R. SINGH (Bar No. 300840)
david.singh@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway, 4th Floor
Redwood Shores, CA 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

(*Additional Counsel Listed on Signature Page*)

Attorneys for Defendants PARAMOUNT SKYDANCE CORPORATION & PLUTO INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| RAQUEL DIAZ, on behalf of her minor child, B.E., and all others similarly situated, LISA MEDINA, on behalf of her minor child, G.C., and all others similarly situated, OSCAR RODRIGUEZ, on behalf of his minor child, F.R., and all others similarly situated, STACY RADER, on behalf of her minor child, S.C., and KATRINA MONTGOMERY, on behalf of her minor children, J.M., J.A., and J.M., and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PARAMOUNT SKYDANCE CORPORATION and PLUTO INC.,<br><br>Defendants. | Case No. 5:25-cv-02945-KK (DTB)<br><br>**PARAMOUNT SKYDANCE CORPORATION AND PLUTO INC.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**<br><br>Date: September 10, 2026<br>Time: 9:30 a.m.<br>Courtroom 3, 3rd Floor<br>Honorable Kenly Kiya Kato |

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT ..... 1

I. ARGUMENT ..... 2

A. Plaintiffs Have Failed to Establish Article III Standing ..... 2

1. Plaintiffs Fail to Allege a Concrete Privacy Injury Historically Recognized by American Courts ..... 3
2. The Creation of "Personalized Advertising Profiles" Does Not Create Standing ..... 7
3. Plaintiffs Still Have Not Plausibly Alleged Economic Harm ..... 8
4. Plaintiffs Do Not Contest That The FAC Does Not Allege Personal Injury ..... 8
5. Plaintiffs Fail to Allege Injury for Non-VPPA Claims ..... 9

B. Plaintiffs Fail to Show They Are Not Bound by the Terms of Use and Privacy Policy ..... 9

C. Plaintiffs Still Fail to State a VPPA Claim ..... 12

D. Plaintiffs Still Fail to State an ECPA Claim ..... 14

1. Pluto Is a Party to the Alleged Communications ..... 14
2. The Crime-Tort Exception Does Not Apply ..... 14
   a) Plaintiffs Allege No Criminal or Tortious Purpose ..... 14
   b) The FAC Alleges No Distinct Criminal or Tortious Purpose ..... 16
3. No Communication "Contents" Were Transmitted ..... 17

E. Plaintiffs Do Not State a CIPA Claim ..... 18

1. The Party Exemption Applies to Plaintiffs' Communications ..... 18
2. Plaintiffs Plead Neither Aiding and Abetting nor Scienter ..... 18
3. Plaintiffs' Communications Were Not "In Transit" ..... 19
4. No Contents Were Disclosed ..... 20
5. Plaintiffs Concede That No Telephone Was Used ..... 20

F. Plaintiffs Fail to Allege Common Law or California Constitution Invasion of Privacy Claims ..... 20

G. Plaintiffs Fail to State Any Other Common Law Claims ..... 21

1. Plaintiffs Fail to State a Negligence Claim ..... 22

2. Plaintiffs Fail to Allege Breach of an Implied Contract .................. 22
3. Plaintiffs Fail to Allege an Unjust Enrichment Claim ...................... 23

H. Paramount Is Not a Proper Defendant ...................................................... 24

II. CONCLUSION ........................................................................................... 24

# TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) .......... 22

*B.K. v. Eisenhower Med. Ctr.*,
721 F.Supp.3d 1056 (C.D. Cal. 2024) .......... 17, 22, 23

*Benson v. Perris Elementary Sch. Dist.*,
2022 WL 3574290 (C.D. Cal. July 1, 2022) .......... 14

*Bloom. v. ACT, Inc.*,
2018 WL 11737257 (C.D. Cal. Dec. 4, 2018) .......... 12

*Blythe Holdings, Inc. v. DeAngelis*,
750 F.3d 653 (7th Cir. 2014) .......... 23

*Buesing v. Nat'l Union Fire Ins. Corp.*,
2017 WL 3525299 (S.D. Cal. Aug. 16, 2017) .......... 24

*CAO Lighting, Inc. v. Signify N.V.*,
628 F.Supp.3d 996 (C.D. Cal. 2022) .......... 24

*Cheung v. Slickdeals, LLC*,
2026 WL 1872831 (C.D. Cal. June 29, 2026) .......... 6

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......... 8

*Cody v. Boscov's, Inc.*,
2024 WL 228973 (C.D. Cal. May 6, 2024) .......... 20

*Cody v. Boscov's, Inc.*,
658 F.Supp.3d 779 (C.D. Cal. 2023) .......... 18

*D.B. v. Bellesa Enters. US, Inc.*,
2026 WL 2058427 (C.D. Cal. July 14, 2026) .......... 13

*DaimlerChrysler v. Cuno*,
547 U.S. 332 (2006) .......... 9

*Dawidzik v. Tesla, Inc.*,
2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) .......... 5, 6, 9, 21

*De Ayora v. Inspire Brands, Inc.*,
2026 WL 1653483 (N.D. Cal. June 8, 2026) .......... 17

*Doe v. Cedars-Sinai Health Sys.*,
106 F.4th 907 (9th Cir. 2024) .......... 6

*Doe v. Epic Games, Inc.*,
435 F.Supp.3d 1024 (N.D. Cal. 2020) .......... 12

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .......... 6, 7, 13

*In re Facebook, Inc.*,
402 F.Supp.3d 767 (N.D. Cal. 2019) .......... 22

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... *passim*

*Garcia v. Roblox Corp.*,
2026 WL 928621 (C.D. Cal. Apr. 2, 2026) .......... 11, 12

*Goldstein v. Rumble Inc.*,
2026 WL 1406766 (C.D. Cal. Apr. 24, 2026) .......... 17

*Gray v. Luxottica of Am., Inc.*,
2024 WL 5689566 (C.D. Cal. Dec. 16, 2024) .......... 19

*Griffin v. Green Tree Servicing, LLC*,
166 F.Supp.3d 1030 (C.D. Cal. 2015) .......... 20, 21

*Heerde v. Learfield Commc'ns, LLC*,
741 F.Supp.3d 849 (C.D. Cal. 2024) .......... 19

*Hernandez v. Mank*,
2026 WL 784431 (C.D. Cal. Feb. 17, 2026) .......... 4

*In re Holl*,
925 F.3d 1076 (9th Cir. 2019) .......... 10

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024) .......... 21

*Hughes v. Nat'l Football League*,
2025 WL 1720295 (2d Cir. June 20, 2025) .......... 13

*Kohl's Indiana, L.P. v. Owens*,
979 N.E.2d 159 (Ind. Ct. App. 2012) .......... 23

*Kroeger v. Vertex Aerospace LLC*,
2020 WL 3546086 (C.D. Cal. June 30, 2020) .......... 12, 20

*Lakes v. Ubisoft, Inc.*,
777 F.Supp.3d 1047 (N.D. Cal. 2025) .......... 10, 11

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F.Supp.3d 1072 (C.D. Cal. 2023) .......... 18, 19

*Lipeles v. United Airlines*,
2024 WL 891792 (C.D. Cal. Jan. 9, 2024) .......... 11

*McGowan v. Weinstein*,
505 F.Supp.3d 1000 (C.D. Cal. 2020) .......... 16

*Minor v. Fedex Office & Print Servs., Inc.*,
182 F.Supp.3d 966 (N.D. Cal. 2016) .......... 22

*Mitchener v. CuriosityStream, Inc.*,
815 F.Supp.3d 845 (N.D. Cal. 2025) .......... 4

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015) .......... 12

*Morales v. Conifer Revenue Cycle Sols., LLC*,
2025 WL 1096396 (C.D. Cal. Mar. 31, 2025) .......... 22, 23, 24

*N.A. v. Nintendo of Am. Inc.*,
2023 WL 8587628 (N.D. Cal. Dec. 11, 2023) .......... 12

*N.Z. v. Fenix Int'l*,
2025 WL 3627591 (C.D. Cal. Dec. 12, 2025) .......... 13

*Osheske v. Silver Cinemas Acquisition Co.*,
132 F.4th 1110 (9th Cir. 2025) .......... 6

*In re Pacific Fertility Center Litig.*,
2019 WL 3753456 (N.D. Cal. Aug. 8, 2019) .......... 24

*Pisciotta v. Old Nat'l Bancorp*,
499 F.3d 629 (7th Cir. 2007) ........ 22

*Planned Parenthood Fed'n of Am. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) ........ 16

*Popa v. Microsoft*,
153 F.4th 784 (9th Cir. 2025) ........ *passim*

*R.C. v. Walgreen Co.*,
733 F.Supp.3d 876 (C.D. Cal. 2024) ........ 19

*Rodriguez v. Brushfire Recs.*,
2025 WL 3692144 (C.D. Cal. Dec. 15, 2025) ........ 2

*Rodriguez v. Ford Motor Co.*,
722 F.Supp.3d 1104 (S.D. Cal. 2024) ........ 18

*Rose v. Variety Media, LLC*,
No. B350578 ........ 20

*S.G. v. Epic Games*,
796 F.Supp.3d 614 (N.D. Cal. 2025) ........ 11

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) ........ 14, 15, 16, 23

*Sagebrush LLC v. Cigna Health & Life Ins. Co.*,
2025 WL 3236211 (C.D. Cal. Sept. 22, 2025) ........ 23

*Spencer v. Collins*,
156 Cal. 298 (1909) ........ 12

*Straight v. EdFinancial Services, LLC*,
2026 WL 2087412 (N.D. Cal. July 20, 2026) ........ 3, 4, 5, 9

*Suarez v. Playtex Prods., Inc.*,
2009 WL 2212315 (N.D. Ill. July 24, 2009) ........ 22

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999) ........ 16

*Thele v. Google LLC*,
2026 WL 1970746 (N.D. Cal. July 7, 2026) ........ 4

*In re Tiktok, Inc., Minor Privacy Litig.*,
2025 WL 3628598 (C.D. Cal. Nov. 5, 2025). ........................................................ 7

*Torres v. Seatgeek. Inc.*,
2026 WL 1495202 (N.D. Cal. May 28, 2026)............................................ 20, 21

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)........................................................................... 3, 5, 6, 9

*In re U.S. Vision Data Breach Litig.*,
732 F.Supp.3d 369 (D.N.J. 2024)......................................................... 22

*In re Uber Tech., Inc., Data Sec. Breach Litig.*,
2019 WL 6522843 (C.D. Cal. Aug. 19, 2019) ........................................... 8

*In re Whaleco Inc. Malware Litig.*,
2025 WL 3691444 (C.D. Cal. Aug. 29, 2025) ......................................... 10

*Y.H. v. Blizzard Ent., Inc.*,
2023 WL 3565078 (C.D. Cal. Feb. 27, 2023) .......................................... 12

*Yeh v. Tesla, Inc.*,
2023 WL 6795414 (N.D. Cal. Oct. 12, 2023) .......................................... 11

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .............................................................. 17

**Statutes**

Children's Online Privacy Protection Act ("COPPA"),
15 U.S.C. § 6502(b)(1)(A)........................................................... *passim*

Electronic Communications Privacy Act ("ECPA"),
18 U.S.C. § 2511(2)(d) ................................................................ *passim*

Video Privacy Protection Act ("VPPA"),
18 U.S.C. § 2710.......................................................................... *passim*

Health Insurance Portability and Accountability Act ("HIPAA"),
42 U.S.C. § 1320d-6 .................................................................... 15

California Invasion of Privacy Act ("CIPA"),
Cal. Penal Code § 631(a) ............................................................. *passim*

**Other Authorities**

California Constitution .......................................................................................... 2, 20

## PRELIMINARY STATEMENT[1]

Despite being given the opportunity to replead a complaint that the Court dismissed in its entirety and a second chance to brief the deficiencies that proved fatal to their first complaint, Plaintiffs fail to explain how the sparse allegations they added in their FAC establish Article III standing or sustain any of their eight claims. In its Order dismissing the original complaint, the Court explained that Plaintiffs had not alleged Article III standing because the complaint did not identify any concrete privacy harms Plaintiffs had personally suffered that are as sensitive or offensive as those historically recognized at common law. But the FAC includes no new allegations describing such injuries, adding only irrelevant details about the advertisements minor Plaintiffs allegedly viewed on Pluto TV, the toys these minor Plaintiffs then allegedly requested from their parents, and the specific names of cookie identifiers that Google and Microsoft allegedly deploy. As an illustration of the inadequacy of these amendments, Plaintiffs point to almost none of their new allegations in their opposition brief to attempt to establish standing (at best, they cite to six of their 56 amended paragraphs of window dressing), none of which identify *personal or private information specific to Plaintiffs* that was purportedly collected or disclosed to third parties improperly. Thus, Plaintiffs' standing arguments rest on the same inadequate allegations that doomed their first complaint. Plaintiffs therefore again fail allege the privacy injury with historical analogues necessary to establish Article III standing.

Beyond their failure to correct standing deficiencies, Plaintiffs do not explain how their FAC can survive dismissal on other grounds. Most pertinently, Plaintiffs ignore that by failing to plead around their continued use of Pluto TV, they continue to be bound its Terms of Use and Privacy Policy to which they consented to use the service. In addition, Plaintiffs do not explain how any of their claims are plausible given that they do not:

---

[1] Capitalized or abbreviated terms used but not defined herein shall have the meaning ascribed to them in Defendants' Motion to Dismiss Plaintiffs' Amended Complaint. *See* Dkt. 53 ("MTD Brief" or "MTD Br.").

(1) identify personal information supposedly disclosed from which an ordinary person would be able to identify them, as they must to state a VPPA claim;

(2) offer a separate criminal or tortious purpose for the alleged collection of their information, as they must to state an ECPA claim;

(3) explain how Defendants are a non-party to Plaintiffs' communications, as they must to state claims for violations of the ECPA and CIPA;

(4) explain how the information allegedly disclosed conveys the "contents" of their communications, as they must to state ECPA and CIPA claims;

(5) describe the contemporaneous transmission of the information collected, as is required to state a CIPA claim;

(6) explain either that they had an objectively reasonable expectation of privacy in the information collected or that such collection was "offensive," as they must to state invasion of privacy claims under California common law and the California Constitution; or

(7) articulate fundamental elements necessary to state common law claims for negligence, implied contract, or unjust enrichment.

Finally, Plaintiffs' failure to allege how Paramount controls the Pluto TV service warrants Paramount's dismissal from this case.

Accordingly, the FAC should be dismissed in its entirety with prejudice.

## I. ARGUMENT

### A. Plaintiffs Have Failed to Establish Article III Standing

Despite the fact that the Court dismissed Plaintiffs' prior complaint explicitly because it failed to identify any theory of injury with a historical or common law analogue, Plaintiffs still fail to point to any allegation of a personal and concrete privacy harm that is traditionally recognized by American courts for invasion-of-privacy torts, as they must at this stage. *See Popa v. Microsoft*, 153 F.4th 784, 792, 794 (9th Cir. 2025); *Rodriguez v. Brushfire Recs.*, 2025 WL 3692144, at *7 (C.D. Cal. Dec. 15, 2025) (finding

no concrete privacy harm); *Straight v. EdFinancial Services, LLC*, 2026 WL 2087412, at *3 (N.D. Cal. July 20, 2026) (same). Any allegations in the FAC that were previously pled were already found deficient. And Plaintiffs' opposition does not articulate how the few *new* allegations they added to the FAC confer Article III standing to maintain this action.

### 1. Plaintiffs Fail to Allege a Concrete Privacy Injury Historically Recognized by American Courts

As Defendants explain in the MTD Brief, the basis for dismissal is straightforward: the FAC lacks the factual allegations necessary to establish a privacy injury following *TransUnion* and *Popa*. In *Popa*, the Ninth Circuit held that "Article III standing requires a concrete injury even in the context of a statutory violation," and so a putative privacy plaintiff must identify an "injury . . . [that] has a close relationship to a harm traditionally recognized" by American courts in cases involving privacy claims. *Popa*, 153 F.4th at 789 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) and *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021)). Therefore, to demonstrate standing, Plaintiffs may not merely "point[] to [] common-law privacy torts" but must explain *how* the alleged collection and disclosure of their information "caused [them] to experience [the] *kind* of harm" that rises to the level of the "highly offensive interferences or disclosures that were actionable at common law" for intrusion upon seclusion or another traditionally recognized privacy tort. *Id.* at 791 (emphasis added) (quotations omitted). This Court dismissed Plaintiffs' previous complaint for failing to do so and Plaintiffs' opposition brief fails to explain how the amended allegations correct this failure.

Indeed, the FAC lacks any allegation of the collection and transmission of information that is as personal or private as that which traditional common law claims protect against and alleges only the disclosure of non-personal metadata such as, *inter alia*, the titles of videos watched by minors, URLs, IP addresses, and cookie identifiers, which the Court has already concluded is insufficient to allege a concrete and particularized injury. *See* Order at 5–7. Plaintiffs fall back on allegations about the

mechanisms of tracking technologies that—except for a brief and generalized explanation of how Google's and Microsoft's cookies work—are *exactly* the same as those this Court already concluded were insufficient to allege a concrete injury under *Popa* and which do not describe which of *Plaintiffs'* own private and sensitive information was collected and disbursed. *See* Dkt. 55 ("Opposition" or "Opp.") at 4:12–14 (citing FAC ¶¶ 109–18, 124–25). Indeed, this Court's view was confirmed in *Straight v. Edfinancial Services, LLC*, where the court dismissed a similar complaint on Article III standing grounds because the plaintiff alleged the disclosure of financial information only "in general terms without describing what of her personally identifiable information was disclosed." 2026 WL 2087412, at *3; *see also Mitchener v. CuriosityStream, Inc.*, 815 F.Supp.3d 845, 851 (N.D. Cal. 2025) (no standing where the plaintiff failed to allege a "concrete harm to *him*" (emphasis in original)); *Thele v. Google LLC*, 2026 WL 1970746, at *2 (N.D. Cal. July 7, 2026) (no standing where Plaintiffs "generalize[d] the types of information accessible in their Google accounts" but failed to "identify what—if any—personal data Gemini actually accessed or used").

There is no basis to depart from the Court's prior dismissal and conclude that the FAC supports Article III standing. *See Hernandez v. Mank*, 2026 WL 784431, at *7 (C.D. Cal. Feb. 17, 2026) (declining to "revisit [a] prior determination" of dismissal on a prior complaint where the amended complaint "fail[ed] to plausibly allege" facts necessary to survive dismissal), *R&R adopted*, 2026 WL 780717 (C.D. Cal. Mar. 18, 2026). While Plaintiffs urge the Court to ignore its prior decision and instead rely on decisions of other district courts that "found identical allegations regarding . . . cookie identifiers sufficient to [allege] the transmission of PII" and create standing, each of those cases was decided *before* the Ninth Circuit clarified in *Popa* that any such allegation must cohere with a historical or common law analogue to the disclosure of personal information. *See* Opp. at 4 n.8 (collecting cases). At bottom, because the FAC still includes no facts that "identif[y] [what] embarrassing, invasive, or otherwise private information [was]

collected" but instead relies on impersonal metadata, it does not describe the kind of personal or invasive privacy injury historically recognized at common law. *Popa*, 153 F.4th at 791; *see also Straight*, 2026 WL 2087412, at *3 (failure to allege disclosed information was "embarrassing, invasive, or otherwise private" warranted dismissal for lack of standing (quotations omitted)).

Plaintiffs attempt to distinguish the instant case from *Popa*, but the Ninth Circuit's opinion remains on all fours with this case. ***First***, Plaintiffs again wrongly assert that the plaintiff in *Popa* did not allege any disclosures to third parties, *see* Opp. at 6:16–17, but, as here, *Popa* involved the alleged collection of information from plaintiff's visit to a website by a third-party tracker. *Popa*, 153 F.4th at 786. ***Second***, the distinction Plaintiffs try to draw between procedural and substantive violations was soundly rejected in *Popa*, which made clear that, after *TransUnion*, the assessment of concrete injury makes "no distinction between 'procedural' and 'substantive' statutory provisions"—all that matters is whether plaintiffs have sufficiently "identified a close historical or common-law analogue for their asserted injury." *Id.* at 794 (citing *TransUnion*, 594 U.S. at 424).

This baseless distinction is why the mere allegation of a substantive violation of a statute codifying a privacy right does not establish a concrete injury and, therefore, why Plaintiffs' invocations of the VPPA and COPPA do not save them. Plaintiffs blatantly mischaracterize *Popa* by asserting that the Ninth Circuit held that "any disclosure of personally identifiable video-viewing history constitutes a cognizable privacy injury" because it states a claim for a violation of the VPPA. Opp. at 7:4–8. As this Court recognized in *Dawidzik v. Tesla, Inc.*, there is no "'per se rule' that alleging a statutory privacy violation satisfies Article III standing." 2025 WL 3786963, at *4 (C.D. Cal. Dec. 29, 2025) (quoting *Popa*, 153 F.4th at 794); *see also Straight*, 2026 WL 2087412, at *3 (plaintiff does not plead an injury "just because the legislature identifies an intangible harm by statute"). Plaintiffs cannot merely assert that Defendants violated a privacy statute or that their personal information was collected, but must allege that such

information "implicate[s] [such] a [] sensitive sphere" that its disclosure or invasion would be actionable at common law. *Popa*, 153 F.4th at 791. *Cheung v. Slickdeals, LLC*, on which Plaintiffs rely, actually *reinforces Popa*, as the court distinguished between a plaintiff who satisfied the concrete injury requirement by alleging an injury analogous to the tort of intrusion upon seclusion and one who lacked standing because the complaint's "[v]ague references to 'browsing activity' and 'page interactions'" failed to "specify what personal information about [the] plaintiff" was collected in a manner "remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." 2026 WL 1872831, at *9 (C.D. Cal. June 29, 2026) (quoting *Popa*, 153 F.4th at 791).

Plaintiffs' repeated references to the Ninth Circuit's pre-*Popa* holdings in *Eichenberger* and *Facebook Tracking* are of no avail. While *Popa* did not explicitly overrule either case, the holdings in "both cases were [] limited to 'the individual circumstances giving rise to [those] plaintiffs' alleged injuries'" and cannot overcome the binding holding of *Popa* that the alleged violation of a privacy statute cannot alone create an injury-in-fact. *Dawidzik*, 2025 WL 3786963, at *4 (quoting *Popa*, 153 F.4th at 794). After *Popa*, a court still must examine the complaint's factual allegations to ascertain whether they describe a concrete injury even if the plaintiff asserts a statutory privacy violation. *That* is why the plaintiffs in *Facebook Tracking* had standing: they alleged that defendants had collected a "cradle-to-grave profile" of plaintiffs' employment history and political and religious affiliations that was considerably more private than what Plaintiffs allege here. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020).[2] And, because the court in *Eichenberger* concluded standing existed based largely on the procedural-substantive distinction that no longer applies following *TransUnion*, it cannot provide a basis for Plaintiffs' standing. *See Eichenberger v. ESPN, Inc.*, 876 F.3d

---

[2] Similarly, Plaintiffs' reliance on *Doe v. Cedars-Sinai Health Sys.*, 106 F.4th 907 (9th Cir. 2024) and *Osheske v. Silver Cinemas Acquisition Co.*, 132 F.4th 1110 (9th Cir. 2025) is inapt because in neither case did the court even analyze whether the plaintiffs had established Article III standing or discuss whether the information collected was personally identifiable.

979, 983–84 (9th Cir. 2017).[3]

For this same reason, Plaintiffs cannot use a supposed violation of COPPA to maintain standing. Even assuming, *arguendo*, that Plaintiffs could assert a COPPA claim—which they cannot—they still must "demonstrate more than just a statutory violation" to allege a concrete injury. *Popa*, 153 F.4th at 793. Plaintiffs' reliance on *In re Tiktok, Inc., Minor Privacy Litigation* misses the mark, as it relies on pre-*Popa* cases to distinguish between procedural and substantive privacy statutes and conclude that the violation of substantive statutes automatically creates standing. 2025 WL 3628598, at *11 (C.D. Cal. Nov. 5, 2025). Moreover, the court specified that plaintiffs must "adequately plead[] an underlying COPPA violation . . . to establish an Article III" privacy injury. *Id.* However, because Plaintiffs do not state a COPPA claim for the reasons set forth below, they cannot rest on Defendants' supposed violation of the statute.

**2. The Creation of "Personalized Advertising Profiles" Does Not Create Standing**

Plaintiffs again rely on *Facebook Tracking* and the legislative history of the VPPA to imply that they have established standing by alleging that Defendants have deprived them of the ability to control their own personal information by creating "personalized advertising profiles." *See* Opp. at 8–9. But Plaintiffs cannot rest on these authorities because the FAC does not even allege the creation or distribution of the sort of all-encompassing user profiles that reveal highly intimate and invasive information about Plaintiffs, only nondescript data about their devices, browsers, and URLs. Although Plaintiffs focus on how the drafters of the VPPA sought to address concerns that all-encompassing information "profiles" would invade a person's privacy and how the Ninth Circuit has adjudicated allegations of such profiles in *Facebook Tracking*, *see* Opp. at 8–9, they do not (and cannot) cite a single allegation in the FAC indicating that Defendants

[3] The other cases cited for the proposition that every statutory violation that disclosed personalized information confers Article III standing are also inapposite either because they predate *Popa*, fail to follow *Popa*'s binding precedent, or do not even address Article III standing. *See* Opp. at 5–6, 8.

composed any profiles of Plaintiffs. While it alleges minor Plaintiffs received certain ads, the FAC does not assert that the ads were targeted at them, let alone that they were targeted based on some comprehensive "profile" Defendants had compiled about them. Thus, Plaintiffs cannot rest on a citation to *Facebook Tracking* without alleging that their information was harvested in the same comprehensive manner or that it was a collection of the *kind* of information that courts have historically recognized as a concrete harm. *Popa*, 153 F.4th at 791.

Moreover, this new theory of personalized advertising cannot create standing because the FAC does not plausibly articulate how these alleged personalized profiles led to the disclosure of Plaintiffs' information, then to targeted ads on Pluto TV, and finally to the behavior changes. Absent any explanation of how these behavior changes are "fairly traceable" to Defendants' alleged misuse of their data, these allegations cannot demonstrate causation necessary to establish Article III standing. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

**3. Plaintiffs Still Have Not Plausibly Alleged Economic Harm**

Plaintiffs' Opposition does not contest that because the FAC contains only conclusory allegations that the "value of [Plaintiffs'] information" "has diminished," FAC ¶ 145, without any supporting facts, Plaintiffs' theory of economic harm fails. *See In re Uber Tech., Inc., Data Sec. Breach Litig.*, 2019 WL 6522843, *5 (C.D. Cal. Aug. 19, 2019) (conclusory allegations of "a loss of value of [Plaintiffs'] private information…without any more details, [are] too abstract and speculative to support Article III standing." (quotations omitted))

**4. Plaintiffs Do Not Contest That The FAC Does Not Allege Personal Injury**

Plaintiffs do not grapple with the fact that the FAC fails not only to allege a concrete injury, but a particularized one. Because they "are separate requirements," to establish an injury-in-fact, Plaintiffs "must show that the[ir] injury is not only concrete but also particularized." *TransUnion*, 594 U.S. at 429 n.2. The FAC lacks plausible allegations of

how *these* individual Plaintiffs were *personally* harmed. Instead, the FAC rests on the same illustrative descriptions of how third-party tracking technologies collect and disclose user data *generally*. *See* FAC ¶ 122–25. Because Plaintiffs cannot rely on such impersonal allegations that give no indication that their privacy was ever actually invaded, they fail to allege an injury-in-fact. *See Straight*, 2026 WL 2087412, at *3.

#### 5. Plaintiffs Fail to Allege Injury for Non-VPPA Claims

Plaintiffs' argument for Article III standing rests almost exclusively on an attempt to leverage caselaw on the plausibility of VPPA claims. However, they must establish standing for *each* of their claims. *DaimlerChrysler v. Cuno*, 547 U.S. 332, 352 (2006). While Plaintiffs' VPPA claim fails for a variety of clear reasons, their reliance on their VPPA allegations does not cure the clear standing defects on the seven other claims in the FAC. All these claims fail as the result of the FAC's conclusory allegations about an invasion of a protected privacy right, failure to analogize the claims to common law torts, and inability to allege Plaintiffs suffered individual monetary harm on any of their common law claims. *Dawidzik*, 2025 WL 3786963, at *3–5.

### B. Plaintiffs Fail to Show They Are Not Bound by the Terms of Use and Privacy Policy

Even apart from the standing issues, Plaintiffs concede that four of five Parents have agreed to Pluto's Terms of Use, which explicitly incorporate by reference the Privacy Policy and Children's Privacy Policy and which state that any child's use of Pluto's services requires his or her parent's consent to the Terms of Use and supervision of the child's use. *See* Ex. C § 1; *see also* Opp. at 10:5–15; FAC ¶ 10.[4] Because of such agreement, these Plaintiffs are bound by the Terms of Use and have therefore consented to the Privacy Policy and Children's Policy incorporated therein.

Plaintiffs do not show that these disclosures to which the Parents consented were insufficiently conspicuous to manifest their assent to the conditions of using Pluto TV. In

[4] All references to exhibits ("Ex.") are to those attached to the Steinberg Declaration, Dkt. 53-1.

the first instance, the incorporation by reference of the Privacy Policy and Children's Privacy Policy *does* manifest Plaintiffs' consent, as such "incorporation is valid" where, as here, "it is clear that a party is assenting to a contract that incorporates other documents by reference." *In re Holl*, 925 F.3d 1076, 1084 (9th Cir. 2019).

More specifically, Plaintiffs cannot hide their consent by diminishing the prominence of the terms to which they agreed, as each relevant document objectively put them on notice of the conditions of using Pluto TV—including the potential collection of Plaintiffs' information. The sign-up page for Pluto TV, which the four Parents had to have used to create their accounts, shows neon yellow hyperlinks to the Terms of Use and Privacy Policy, *see* Ex. B, which is prominent enough to put the minor Plaintiffs and the Parents on notice that they would assent to them by signing up for Pluto. *See In re Whaleco Inc. Malware Litig.*, 2025 WL 3691444, at *3 (C.D. Cal. Aug. 29, 2025) (distinctly colored hyperlink to terms of use is "sufficient to put a reasonable user on notice"). In turn, the very first Term of Use—listed on the first page—states that parents or guardians must grant permission for children to use Pluto TV, *see* Ex. C at 1, and the Privacy Policy has prominent headings that list "COOKIES AND OTHER TRACKING TECHNOLOGIES"—under which the use of such technologies on Pluto TV is described in detail—and links to the Children's Privacy Policy, *see* Ex. D at 2, 17–18. Like the Privacy Policy, the Children's Privacy Policy discloses on its first and second pages that, by using Pluto's services, Defendants may collect minor users' IP addresses, cookie identifiers, and other categories of digital metadata the FAC alleges was disclosed. *See* Ex. E at 3–4. Because the Privacy Policy and Children's Privacy Policy both "explicitly state[] that Defendant[s] use[] various types of technologies such as cookies to collect" data from Plaintiffs, they are sufficient to put "reasonable user[s]" on notice that they were "consenting to the use of" such technologies, and a "more granular disclosure" is not required. *Lakes v. Ubisoft, Inc.*, 777 F.Supp.3d 1047, 1056–57 (N.D. Cal. 2025)

(citation modified).[5]

Plaintiffs' reliance on *S.G. v. Epic Games* is misplaced, because there, just as here, the court held that a parent's agreement to terms and conditions may be imputed to a child where "the parent entered the agreement at least in part for the child's benefit." 796 F.Supp.3d 614, 621 (N.D. Cal. 2025). The FAC shows that the minor Plaintiffs utilized Pluto through accounts for the use and enjoyment of watching content on Pluto TV. *See* FAC ¶ 10; Ex. C. Plaintiffs also wrongly assert that *S.G.* stands for the proposition that imputed consent requires (1) a parent's agreement to terms of use contemporaneous with the child's use and (2) a showing that the "sole[] [] use" of Pluto TV was by minor Plaintiffs. Opp. at 10. Instead, the court concluded that the parent *had* imputed consent even though he entered the agreement only *partially* for his child's benefit and there was "no evidence" that the child was using the account at the time of agreement. *S.G.*, 796 F.Supp.3d at 621. Additionally, subsequent re-affirmance of the Terms of Use is not, as Plaintiffs suggest, necessary to show consent. Opp. at 7:15–17; *Yeh v. Tesla, Inc.*, 2023 WL 6795414, *8–9 (N.D. Cal. Oct. 12, 2023) (binding child to parent's contract due to arbitration agreement signed during purchase of a vehicle without requiring reaffirmance).

Plaintiffs may not escape their consent to the alleged disclosures by claiming that their initiation of the instant action constitutes their disaffirmance of the Terms of Use and Privacy Policy. Even if a minor files a lawsuit, "equitable considerations weigh in favor of binding" the minor to a platform's terms and conditions if he or she "continue[s] [to] use [] the platform." *Garcia v. Roblox Corp.*, 2026 WL 928621, at *1 (C.D. Cal. Apr. 2, 2026). While Plaintiffs amended their pleading to allege that Pluto TV has been deleted from the devices of three of the five minor Plaintiffs, *see* FAC ¶¶ 29, 37, 53, there is no

[5] The Court also should dismiss the FAC because it lacks any allegation that Plaintiffs complied with the Parents' duties under the Terms of Use to provide Pluto notice of the dispute and try to resolve it within 60 days before filing suit. *See Lipeles v. United Airlines*, 2024 WL 891792, *3–4 (C.D. Cal. Jan. 9, 2024) (Kato, J.).

indication that they have stopped using Pluto TV altogether. The FAC *still* notes that they watch content on Pluto TV via each "*family's* personal electronic devices," *id.* ¶¶ 22, 31, 39, 43, 47 (emphasis added), not specifically their own. Therefore, because the FAC gives no indication that the minors' use of Pluto TV has ceased entirely, it would be inequitable for Plaintiffs to assert the disaffirmance defense. *Garcia*, 2026 WL 928621, at *1.[6] Finally, Plaintiffs' amended assertion that they have now deleted Pluto TV from minor Plaintiffs' own devices cannot demonstrate disaffirmance because "[a]t earlier points in this litigation, Plaintiffs at least indirectly indicated that they disaffirm[ed] something *less* than the terms and conditions as a whole," by continuing to use Pluto TV and benefitting from its services. *Bloom. v. ACT, Inc.*, 2018 WL 11737257, at *4 (C.D. Cal. Dec. 4, 2018) (equitable principles barred plaintiffs from disaffirming contract only as it suited them where earlier assertions failed to show such disaffirmance).

### C. Plaintiffs Still Fail to State a VPPA Claim

Even assuming their claims are not barred, Plaintiffs fail to explain how the FAC states a VPPA claim.

Plaintiff B.E., who claims not to even have a Pluto TV account, clearly is not a "renter, purchaser, or subscriber of" Pluto's services, which is necessary to state a VPPA claim. *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015) (quotations omitted). This failure alone warrants dismissal as to this Plaintiff. *See Kroeger v. Vertex Aerospace LLC*, 2020 WL 3546086, at *10 (C.D. Cal. June 30, 2020).

Beyond this concession, Plaintiffs also do not plausibly allege that Defendants disclosed their personally identifiable information ("PII"), which depends on whether "an ordinary person could [] use the information that Defendant[s] allegedly disclosed to

[6] The cases Plaintiffs cite do not support disaffirmance, as the courts either (i) concluded minors did not or may not continue receiving the benefit of the services after filing suit, *see Doe v. Epic Games, Inc.*, 435 F.Supp.3d 1024 (N.D. Cal. 2020) and *Spencer v. Collins*, 156 Cal. 298 (1909), or (ii) had no occasion to resolve the question, *see Y.H. v. Blizzard Ent., Inc.*, 2023 WL 3565078 (C.D. Cal. Feb. 27, 2023) and *N.A. v. Nintendo of Am. Inc.*, 2023 WL 8587628 (N.D. Cal. Dec. 11, 2023).

identify an individual." *Eichenberger*, 876 F.3d at 986 (complaint failed to allege that an ordinary person could identify the plaintiff based on the information disclosed). In fact, the Opposition reveals that *only* the "*proprietary* cookie identifiers" of Google and Microsoft—two of the world's largest tech companies, not ordinary persons—could identify Plaintiffs from the highly technical "identifiers" and "unique browser fingerprints" that were allegedly disclosed. Opp. at 12:23–25, 13:7–10 (emphasis added). Accordingly, they fail to plausibly allege that the allegedly disclosed information was "PII" under the VPPA and therefore fail to state a claim. *See Eichenberger*, 876 F.3d at 985–86; *D.B. v. Bellesa Enters. US, Inc.*, 2026 WL 2058427, at *10 (C.D. Cal. July 14, 2026) (even assuming access to Google's "back-end" page, plaintiffs failed to allege how an ordinary person could identify plaintiffs and their video-watching activity from strings of code); *N.Z. v. Fenix Int'l*, 2025 WL 3627591, at *13 (C.D. Cal. Dec. 12, 2025) (user's username, interaction, and communication history are not PII sufficient to state VPPA claim); *Hughes v. Nat'l Football League*, 2025 WL 1720295, at *2–3 (2d Cir. June 20, 2025) (applying *Eichenberger* to find Facebook IDs are not PII).

Moreover, the "PII" necessary to state a VPPA claim must include "specific video materials or services" that "identify a specific individual's video-watching behavior." *Eichenberger*, 876 F.3d. at 985 (citation modified). But the FAC includes no indication that the names of videos watched by *Plaintiffs* were provided to third parties. Plaintiffs only purport to illustrate how Pluto *generally* transmits information about a video title to Google or Microsoft, FAC ¶¶ 122–25, which are not descriptive of Plaintiffs' own interactions with Pluto.[7] Plaintiffs do not even contest this pleading deficiency in their Opposition, confirming the implausibility of their VPPA claim.

[7] Unlike Plaintiffs' cited cases, *see* Opp. at 13–14, the FAC does not allege the disclosure of highly specific and accurate data about *Plaintiffs'* own video-viewing behavior.

### D. Plaintiffs Still Fail to State an ECPA Claim

#### 1. Pluto Is a Party to the Alleged Communications

Plaintiffs offer no substantive response to Defendants' argument that they cannot be subject to ECPA liability because Pluto is an intended recipient of the information that Plaintiffs transmit to Pluto TV. Where, as here, the alleged interceptor of communications operates the platform on which the plaintiffs transmitted their information, it is a consensual party to the communication and is exempt from liability under the ECPA. *Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 WL 1141168, at *12–13 (C.D. Cal. Feb. 27, 2025). While Plaintiffs point to *Facebook Tracking* to argue the party exemption does not apply, the case is inapposite because there, the defendant was a third-party entity that employed trackers on communications between plaintiffs and a platform, rather than the operator of the platform with which plaintiffs communicated directly. 956 F.3d at 607–08.

#### 2. The Crime-Tort Exception Does Not Apply

##### a) Plaintiffs Allege No Criminal or Tortious Purpose

Plaintiffs now argue the crime-tort exception applies based almost entirely on a theory that Defendants' have violated COPPA by installing on Pluto TV Tracking Tools that transmit information about minor children. *See* Opp. at 15:11–14. The Court should dismiss this theory because private parties such as Plaintiffs have no right of action under COPPA. *See Benson v. Perris Elementary Sch. Dist.*, 2022 WL 3574290, at *5 (C.D. Cal. July 1, 2022).

Regardless, Plaintiffs' theory fails for three reasons. ***First***, COPPA provides only that any collection of information from an "online service directed to children" requires (i) parent or guardian consent and (ii) notice on the website of what information is collected and how and for what purpose the website operator collects it. 15 U.S.C. § 6502(b)(1)(A). Thus, even assuming, *arguendo*, that Pluto qualifies as "online service directed to children," Plaintiffs have no COPPA claim because the Parents *have consented*

to their children's use of Pluto TV by signing the Terms of Use and agreeing to the Privacy Policy and Children's Privacy Policy—each of which contain the necessary disclosures. *See supra* Section B.

***Second***, while Plaintiffs rely heavily on the implication that Tracking Tools collected and transmitted information from Plaintiffs because Defendants *knew* minor Plaintiffs were children, Opp. at 16:6–13, the FAC's new allegations undermine this theory. Plaintiffs now assert that they have been harmed by receiving age-inappropriate advertisements targeted at adult viewers while using Pluto TV. *See* FAC ¶¶ 26–29, 35–37, 52–53. Even accepting these allegations as true, they cannot be reconciled with Plaintiffs' assertion that the Tracking Tools are allegedly installed on Pluto TV to develop "personalized advertising profiles" that capture users' "likes, dislikes, interests, and habits." *See* Opp. at 8–9 (quotations and citations omitted). If Defendants delivered ads based on individualized dossiers of likes, interests, and habits, it is implausible that it would target ads for nicotine products or containing sexual content at *young children*, who, according to Plaintiffs, never even expressed interest in such materials until they watched Pluto TV. If any information was collected to target those ads, the only plausible inference is that it was not information known to be from minor Plaintiffs and was instead collected from adults who had indicated interests in those topics.

***Third***, other courts' conclusions that violations of *HIPAA* satisfy the crime-tort exception do not require this Court to conclude that a violation of *COPPA* satisfies it as well. These are two completely different statutes with different enforcement regimes that Plaintiffs do not adequately analogize. More crucial, however, is that where a HIPAA claim may not legally be asserted against an entity, "a hypothetical violation" is not "sufficient to invoke the Crime-Tort Exception." *Saedi*, 2025 WL 1141168, at *13. Because Plaintiffs similarly may not assert a COPPA claim against Defendants, the statute fails to satisfy the crime-tort exception.

Finally, because Plaintiffs fail to plead facts necessary to "sufficiently state a claim

for intrusion upon seclusion," *see infra*, the tort "cannot serve as the basis for the Crime-Tort Exception to apply," either. *Id.*

**b) The FAC Alleges No Distinct Criminal or Tortious Purpose**

The crime-tort exception also requires Plaintiffs to plead that "[t]he recording party . . . [had] the independent criminal or tortious purpose at the time the recording was made." *Planned Parenthood Fed'n of Am. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022). Plaintiffs argue the collection of information that underlies their ECPA claim is distinct from the criminal or tortious purpose of disclosing that information. *See* Opp. at 17:23–25. But, to have a distinct criminal or tortious purpose, the collection must be undertaken "for the purpose of committing some other *subsequent* crime or tort." *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (emphasis added). The FAC does not allege that the supposedly unlawful purpose of disclosing Plaintiffs' information was undertaken subsequent to its alleged interception. To the contrary, Plaintiffs argue Defendants send "contemporaneous[]" transmissions of their information to "unseen third parties" as they collect it, Opp. at 15:1–2. Plaintiffs cannot at once argue that Defendants simultaneously collect and disclose their information and that such collection and disclosure are distinct. Accordingly, the crime-tort exception does not apply. *Sussman*, 186 F.3d at 1202.

Plaintiffs also fail to plead facts necessary to show that Defendants' disclosure had a criminal or tortious *purpose*. Defendants' purpose is not a factual issue requiring discovery, as the FAC must "set forth [] allegations that Defendants intended to or did blackmail, intimidate, or commit any tortious act" or crime through disclosure. *McGowan v. Weinstein*, 505 F.Supp.3d 1000, 1015 (C.D. Cal. 2020). The only purposes alleged are "track[ing] and identify[ing] consumers," "identifying the videos that [Pluto] users watch," and "advertising." FAC ¶¶ 109, 127, 130. Because the FAC does not affirmatively allege how these commercial actions necessarily "constitute[] independently illegal or actionable conduct," Plaintiffs fail to establish that the crime-tort

exception applies. *B.K. v. Eisenhower Med. Ctr.*, 721 F.Supp.3d 1056, 1065 (C.D. Cal. 2024), *on reconsideration in part*, 2024 WL 2037404 (C.D. Cal. Apr. 11, 2024). Knowing they cannot plead an independent criminal or tortious purpose, Plaintiffs fall back on their assertion that the disclosure of Plaintiffs information is a criminal or tortious act because it violates COPPA, the VPPA, and common law privacy rights. *See* Opp. at 18:3–5. But because, as described herein, Plaintiffs fail to state any of those claims, they fail to allege Defendants committed an independent crime or tort.

**3. No Communication "Contents" Were Transmitted**

Plaintiffs cannot sustain an ECPA claim because no "contents" of their communication with Pluto were shared. Plaintiffs still do not contest that the cookie identifiers, device and browser information, IP addresses, and URLs allegedly disclosed to third parties are mere "record information" that does not qualify as "contents." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1107–09 (9th Cir. 2014). But the claim also fails for a similar reason as the VPPA claim: the FAC does not allege that *their* "identifiable information" or the "specific videos *they* watched" were disclosed to any third party. Opp. at 19:2-4 (emphasis added) (citing FAC ¶¶ 11, 122–25, 203). The FAC does not allege that any information was disclosed about which video content these *particular* Plaintiffs watched on Pluto TV; it only illustrates broadly how information about the video titles users watch *may* be transmitted to third parties. ¶¶ FAC 122–25. This failure to allege that information regarding what video titles they *personally* viewed is fatal to their ECPA claim. *See De Ayora v. Inspire Brands, Inc.*, 2026 WL 1653483, at *6 (N.D. Cal. June 8, 2026).[8]

[8] This is also what distinguishes this case from *Goldstein v. Rumble Inc.*, where the court concluded "contents" of communications were transmitted because the plaintiff alleged disclosure of the "descriptive title of the exact video [plaintiff] viewed." 2026 WL 1406766, at *4 (C.D. Cal. Apr. 24, 2026).

### E. Plaintiffs Do Not State a CIPA Claim

#### 1. The Party Exemption Applies to Plaintiffs' Communications

As described in detail above, Defendants were parties to Plaintiffs' "communications" with Pluto. As such, the FAC fails to state a CIPA claim. *See Licea v. Am. Eagle Outfitters, Inc.*, 659 F.Supp.3d 1072, 1082 (C.D. Cal. 2023) ("Defendant was a party to the purported conversation with Plaintiff and, as such, cannot be held liable under" CIPA.).

#### 2. Plaintiffs Plead Neither Aiding and Abetting nor Scienter

Because Plaintiffs do not dispute Defendants are a party to the communications at issue, their only viable CIPA claim is under a theory of aiding and abetting a third-party interception of the communications. *See Rodriguez v. Ford Motor Co.*, 722 F.Supp.3d 1104, 1113 (S.D. Cal. 2024). However, the FAC fails to allege aiding and abetting. To do so, the FAC "must provide facts suggesting that" the third-party Trackers are "recording [Plaintiffs'] information for some use or potential future use beyond simply supplying this information back to Defendant[s]." *Cody v. Boscov's, Inc.*, 658 F.Supp.3d 779, 782 (C.D. Cal. 2023). More specifically, the FAC must contain facts showing Defendants (1) knew Google and Microsoft were acting in breach of a duty to Plaintiffs and gave them substantial assistance to do so or (2) gave substantial assistance to Google and Microsoft to commit a tortious result, in breach of Defendants' own duty to Plaintiffs. *See Rodriguez*, 722 F.Supp.3d at 1123. But because the FAC includes no facts indicating Defendants knew their actions were assisting third parties to breach the third parties' duty to or otherwise commit a tortious result against Plaintiffs, they have not alleged aiding and abetting liability.

Knowing this pleading defect, Plaintiffs instead assert that the FAC plausibly alleges Defendants' scienter. *See* Opp. at 21. But Plaintiffs' assertion that Defendants knew their actions would violate CIPA relies on conclusory allegations in the FAC, unchanged from the original complaint, that Defendants "knowingly" or "intentionally"

intercepted Plaintiffs' communications. *See* Opp. at 21:6–11 (citing FAC ¶¶ 121, 128, 130, 201, 204-06, 214, 235). These assertions are unsupported by factual allegations showing such knowledge or intent, and are certainly less specific than what the plaintiffs alleged in *R.C. v. Walgreen Co.*, in which the complaint described the defendant's deliberate "configur[ation] [of] Pixels" on a website in a manner designed to "capture the characteristics of [] communications with Defendant's websites." 733 F.Supp.3d 876, 902 (C.D. Cal. 2024) (quotations omitted).

**3. Plaintiffs' Communications Were Not "In Transit"**

Plaintiffs fail to point to any allegation in the FAC demonstrating that their communications with Defendants were "intercepted while in transit," as they must to sustain their claim. *Licea*, 659 F.Supp.3d at 1084. While Plaintiffs assert that communications to websites are intercepted in transit when they are "replicated and sent in parallel to the tracking entities," the FAC permits no inference that their information is disclosed to third parties at the time it is being collected. Opp. at 20:10 (quotations and citations omitted).[9] Plaintiffs point to various paragraphs in the FAC that purport to support their theory of interception in transit, *see id.* at 20:15 (citing FAC ¶¶ 11, 126, 130, 208). But because each of these allegations contains only conclusory assertions of "simultaneous" transmission without any supporting "facts [describing] how and *when* the third party receives the communications," the FAC does not plausibly allege the "in transit" element and cannot survive dismissal. *Licea*, 659 F.Supp.3d at 1085 (emphasis added).[10]

---

[9] Plaintiffs' reliance on *Heerde v. Learfield Commc'ns, LLC*, 741 F.Supp.3d 849 (C.D. Cal. 2024) and *Facebook Tracking*, 956 F.3d 589 (9th Cir. 2020) is misplaced because in each case the defendant was not the owner of the relevant website with whom plaintiffs intended to communicate.

[10] This failure also distinguishes this case from *Gray v. Luxottica of America, Inc.*, where the plaintiff "allege[d] specific facts about when the purported interception occurred and how the transmission occurred contemporaneously." 2024 WL 5689566, at *7 (C.D. Cal. Dec. 16, 2024).

**4. No Contents Were Disclosed**

For the reasons described above with respect to Plaintiffs' ECPA claim, which applies the same definition of "contents," Plaintiffs' failure to allege that any information transmitted to third parties (1) is anything but "record information" or (2) personally identifies Plaintiffs defeats their CIPA claim.

**5. Plaintiffs Concede That No Telephone Was Used**

Plaintiffs' Opposition does not contest that the FAC does not allege the use of a telephone, as it must to state their CIPA claim. *Cody v. Boscov's, Inc* , 2024 WL 2228973, at *2 (C.D. Cal. May 6, 2024). As such, dismissal is warranted. *See Kroeger*, 2020 WL 3546086, at *10.[11]

**F. Plaintiffs Fail to Allege Common Law or California Constitution Invasion of Privacy Claims**

Plaintiffs' Opposition advances no arguments on the common law invasion of privacy claims under Illinois, Indiana, New Jersey, or New York law and instead clarifies that the non-CIPA state law privacy claims they assert are (1) a violation of the California Constitution and (2) a claim for intrusion upon seclusion under California common law. *See* Opp. at 22:4–5. "Because [Plaintiffs] did not oppose defendants' motion to dismiss" common law claims under the laws of these four other states, the Court should dismiss such claims with prejudice due to Plaintiffs' abandonment. *Griffin v. Green Tree Servicing, LLC*, 166 F.Supp.3d 1030, 1054 (C.D. Cal. 2015).

Plaintiffs still fail to plausibly allege invasion of privacy claims arising under the California Constitution or intrusion upon seclusion, each of which requires an allegation (1) that Plaintiffs had a reasonable expectation of privacy in their information and (2) a highly offensive intrusion upon that privacy. *See Torres v. Seatgeek. Inc.*, 2026 WL 1495202, at *6–7 (N.D. Cal. May 28, 2026). While the Opposition focuses only on the

[11] California's Second Appellate Department is likely to decide soon whether telephone use is necessary to sustain a claim under CIPA § 638.51, *see Rose v. Variety Media, LLC*, No. B350578, which may bear more broadly on whether plaintiffs must allege telephone use for all CIPA claims.

reasonable expectation of privacy, the FAC does not establish one. First, Plaintiffs wrongly claim the Court must evaluate *Plaintiffs'* expectation, but it is an objective standard evaluated from the "reasonable user['s]" perspective. *Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024). Plaintiffs do not adequately allege they had an objectively reasonable expectation that the information described in the FAC would remain private because "reasonable user[s] should expect" that URLs, IP addresses, and cookie identifiers will be tracked when they browse the internet. *Id.* And, by virtue of their access to Pluto TV and consent to Pluto's Privacy Policy and Children's Policy, Plaintiffs were necessarily on notice that this very information could be collected when they used Pluto TV. Accordingly, they had no reasonable expectation of privacy.

Plaintiffs also concede that the alleged disclosure of their information was not a "highly offensive intrusion," which is fatal to their claims. Even beyond this concession, the claims fail because the FAC does not allege that Defendants "intercept[ed] [Plaintiffs'] embarrassing or sensitive data" or "collect[ed] intimate or sensitive information." *Torres*, 2026 WL 1495202, at *3, *7 (quotations and citations omitted). The information Plaintiffs allege was disclosed consists of non-personal metadata like URLs, IP addresses, and cookie identifiers, none of which qualifies as "sensitive" or "intimate."[12] *Id.*; *see also Dawidzik*, 2025 WL 3786963, at *5 (dismissing complaint that lacked particular allegations explaining how tracking tools revealed embarrassing or invasive information).

### G. Plaintiffs Fail to State Any Other Common Law Claims

Plaintiffs do not cite New York law in support of any of their remaining common law claims, do not cite New Jersey law in support of their negligence or unjust enrichment claims, and do not cite Indiana or Illinois law in support of their implied contract claims. Those claims are therefore abandoned. *See Griffin*, 166 F.Supp.3d at 1054. Moreover,

[12] This failure also distinguishes the FAC from the cases Plaintiffs cite in support of their common law privacy claims, as each involved disclosures of health and medical information far more intimate than the metadata Defendants allegedly disclosed. *See* Opp. at 22–23.

Plaintiffs' remaining common law claims fail even under the law they do cite.

**1. Plaintiffs Fail to State a Negligence Claim**

Plaintiffs' Opposition does not identify the "appreciable, nonspeculative, present harm" the FAC must allege to state a negligence claim under California law. *Morales v. Conifer Revenue Cycle Sols., LLC*, 2025 WL 1096396, at *4 (C.D. Cal. Mar. 31, 2025) (quotations omitted). The FAC includes no specific articulation of what Plaintiffs have lost, asserting only their data was collected and disseminated unsafely without any claim of monetary loss. *See* FAC ¶¶ 247–49. Because these unspecific allegations are "too speculative to constitute a cognizable injury," they cannot sustain a negligence claim under California law. *Morales*, 2025 WL 1096396, at *4 (quotations omitted). The cases Plaintiffs cite do not indicate otherwise, as they rely on pre-*Popa* cases that held only that alleging a privacy injury suffices to establish *Article III standing*, not to state a plausible negligence claim. *See B.K. v. Desert Care Network*, 2024 WL 1343305, at *10 (C.D. Cal. Feb. 1, 2024); *In re Facebook, Inc.*, 402 F.Supp.3d 767, 799 (N.D. Cal. 2019).[13] For this same reason, Plaintiffs' entirely speculative allegations of harm cannot support negligence claims under Illinois or Indiana law. *See Suarez v. Playtex Prods., Inc.*, 2009 WL 2212315, at *3 (N.D. Ill. July 24, 2009); *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 639–40 (7th Cir. 2007).

**2. Plaintiffs Fail to Allege Breach of an Implied Contract**

Plaintiffs fail to plead a meeting of the minds, an exchange of consideration, or contractual damages, each of which is required to support their implied contract claim. *See Eisenhower Med. Ctr.*, 721 F.Supp.3d at 1067; *In re U.S. Vision Data Breach Litig.*, 732 F.Supp.3d 369, 377–78 (D.N.J. 2024). The Court should reject Plaintiffs' unfounded

[13] Plaintiffs' invocation of COPPA in their negligence argument is improper because (1) the FAC does not allege any facts plausibly stating Defendants violated COPPA, and (2) Plaintiffs did not plead a negligent violation of COPPA. *Minor v. Fedex Office & Print Servs., Inc.*, 182 F.Supp.3d 966, 977 (N.D. Cal. 2016) ("Plaintiff may not use his opposition to raise and argue new allegations or claims not in the complaint").

theory that a meeting of the minds occurred in which they agreed to providing information in exchange for Defendants' agreement not to disclose it. *See* Opp. at 24:23–27. As Defendants explained in the MTD Brief, this allegation is implausible considering Plaintiffs' other allegations that Defendants intentionally disclosed Plaintiffs' information. *See* MTD Br. at 23:22–24. In any event, courts in this District have already considered and dismissed implied contract claims based on this very theory that providing information in exchange for Defendants' agreement not to disclose it forms an implied contract with Defendants. *Eisenhower Med. Ctr.*, 721 F.Supp.3d at 1067.

### 3. Plaintiffs Fail to Allege an Unjust Enrichment Claim

Plaintiffs cannot state an unjust enrichment claim under California, Indiana, or Illinois law. Contrary to Plaintiffs' assertion, California does not recognize unjust enrichment as a separate cause of action. *See Sagebrush LLC v. Cigna Health & Life Ins. Co.*, 2025 WL 3236211, at *3 (C.D. Cal. Sept. 22, 2025). Regardless, the claim should be dismissed because the allegation that Defendants intentionally disclosed sensitive information, even accepted as true, is insufficient to state an unjust enrichment claim. To sustain their claim, Plaintiffs must "show that [] [D]efendant[s] received and unjustly retained a benefit at [Plaintiffs'] expense." *Morales*, 2025 WL 1096396, at *7 (quotations omitted); *Blythe Holdings, Inc. v. DeAngelis*, 750 F.3d 653, 658 (7th Cir. 2014); *Kohl's Indiana, L.P. v. Owens*, 979 N.E.2d 159, 167 (Ind. Ct. App. 2012) ("plaintiff must establish that a *measurable* benefit has been conferred on the defendant" (emphasis added)). In *Saedi*, the court dismissed an unjust enrichment claim based on the exact same premise that the plaintiffs' information had high value and was improperly conferred upon the defendant website operator through its use of third-party tracking technologies because the complaint did not articulate the "actionable wrong" that is necessary to seek relief for unjust enrichment. 2025 WL 1141168, at *14 (citation modified). The unjust enrichment claim should also be dismissed for the additional reason that Plaintiffs do not allege what expense or harm they have incurred as a result of Defendants' actions. *See*

*Morales*, 2025 WL 1096396, at *7.

### H. Paramount Is Not a Proper Defendant

Plaintiffs contend Paramount is a proper defendant because they have made a prima facie showing of jurisdiction over Paramount that is uncontroverted by affidavit. *See* Opp. at 26:8–10. But Plaintiffs do not, in fact, make a prima facie showing because, even taken as true, the FAC alleges not that Paramount controls Pluto but that "Pluto is a Paramount subsidiary," FAC ¶ 10, which is insufficient to assert jurisdiction over a parent company. *See CAO Lighting, Inc. v. Signify N.V.*, 628 F.Supp.3d 996, 1002 (C.D. Cal. 2022). Even if that was a sufficient prima facie showing, Plaintiffs put forth no basis that a *sworn statement* is necessary to defeat it. Indeed, Defendants may "present [any] evidence outside of the pleadings" to defeat personal jurisdiction, which is what they have done. *Buesing v. Nat'l Union Fire Ins. Corp.*, 2017 WL 3525299, at *2 (S.D. Cal. Aug. 16, 2017). The assertion that Paramount controls Pluto dissolves with one look at the Terms of Use, which states that Pluto TV is only "provided by Pluto Inc." Ex. C, Preamble. Finally, Plaintiffs' reliance on *In re Pacific Fertility Center Litigation* is misplaced, because Plaintiffs do not allege Paramount and Pluto have "acted in concert" to injure Plaintiffs. 2019 WL 3753456, at *3 (N.D. Cal. Aug. 8, 2019).

## II. CONCLUSION

For the foregoing reasons, the Court should dismiss the FAC in its entirety with prejudice.

The undersigned, counsel of record for Paramount Skydance Corporation and Pluto Inc., certifies that this brief contains 8,207 words, which complies with the word limit set by court order dated May 28, 2026.

Dated: August 7, 2026

Respectfully submitted,

WEIL, GOTSHAL & MANGES LLP

By: */s/ David R. Singh*
DAVID R. SINGH

DAVID R. SINGH
david.singh@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway, 6th Floor
Redwood Shores, CA 94065-1134
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

DAVID L. YOHAI (*pro hac vice*)
david.yohai@weil.com
BLAKE J. STEINBERG (*pro hac vice*)
blake.steinberg@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Defendants PARAMOUNT SKYDANCE CORPORATION & PLUTO INC.