UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 25-02945-KK-DTBx** | Date: | September 29, 2026 |
| Title: | ***Raquel Diaz, et al. v. Paramount Skydance Corporation, et al.*** | | |

Present: The Honorable KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| | |
|---|---|
| Dominique Carr | Not Reported |
| Deputy Clerk | Court Reporter |

| | |
|---|---|
| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
| None Present | None Present |

**Proceedings:** **(In Chambers) Order DENYING in part and GRANTING in part Defendants' Motion to Dismiss [Dkt. 53]**

## I. INTRODUCTION

On May 5, 2026, plaintiffs Raquel Diaz, on behalf of her minor child B.E.; Lisa Medina, on behalf of her minor child, G.C.; Oscar Rodriguez, on behalf of his minor child, F.R., Stacy Rader, on behalf of her minor child, S.C.; and Katrina Montgomery, on behalf of her minor children, J.M., J.A., and J.M. (collectively, "Plaintiffs"), filed the operative Amended Class Action Complaint ("First Amended Complaint") against defendants Paramount Skydance Corporation and Pluto Inc. (collectively, "Defendants"), asserting claims under the Video Privacy Protection Act, 18 U.S.C. § 2710 et seq. ("VPPA"), Electronic Communications Privacy Act, 18 U.S.C. § 2511(1) et seq. ("ECPA"), California Constitution, California Invasion of Privacy Act, Cal. Penal Code § 360 et seq. ("CIPA"), and state common law. ECF Docket No. ("Dkt.") 48, First Amended Complaint ("FAC"). On June 18, 2026, Defendants filed the instant Motion to Dismiss ("Motion"). Dkt. 53, Motion ("Mot.").

The Court finds this matter appropriate for resolution without oral argument. See Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons below, Defendants' Motion is **DENIED** with respect to Causes of Action One, Two, Three, Four, Five, Six, and Eight and **GRANTED** with respect to Cause of Action Seven.

///

///

## II.
## BACKGROUND

### A. RELEVANT FACTS

The First Amended Complaint alleges the following:[1]

Between 2024 and 2025, Plaintiffs' minor children ("Minor Plaintiffs") used personal electronic devices to watch pre-recorded video content hosted in the "Kids' Section" of Defendants' video streaming platform ("Platform"). FAC ¶¶ 22, 31, 39, 43, 47. To access content on the Platform, users must first register for "Pluto TV" accounts offered by defendant Paramount Skydance Corporation ("Paramount") through its subsidiary, defendant Pluto Inc. ("Pluto"). Id. ¶ 10. Defendants installed software on the Platform that collected information about Plaintiffs' use of the Platform, "including the specific videos watched by minors," and shared it with third parties like Alphabet, Inc. ("Google") and Microsoft Corp. ("Microsoft") without Plaintiffs' knowledge or consent. Id. ¶ 11; see also id. ¶¶ 23, 32, 40, 44, 48.

#### 1. The Tracking Software

Companies Google and Microsoft (collectively, "Providers") provide marketing and customer analytics software to web service operators like Defendants, enabling these operators to "deploy[] targeted advertisements, perform[] minute analyses of their customer bases, and identify[] new market segments that may be exploited." Id. ¶ 13. To access this software, web service operators must "install [Providers'] surveillance software on their website, including 'tracking pixels' and third-party 'cookies' that capture sensitive, personally identifiable information ('PII') provided to the website operator by its website users." Id. ¶ 14 (citation modified).

When a user logs into their Google or Microsoft account on their web browser, the browser records a tracking cookie that contains unique identifiers linked to their account. Id. ¶¶ 109-10. As the user navigates the browser, tracking pixels collect detailed information about a user's online behavior, which is linked with the unique identifiers contained in the cookie to give the Providers comprehensive information about the specific individual associated with the identifiers. Id. ¶¶ 111-12.

The same software enables the Providers to track, identify, and compile information about individuals who do not have Google or Microsoft accounts. Id. ¶ 114. Tracking pixels collect information about a user's device and browser, such as "screen resolution, time zone setting, browser software type and version, operating system type and version, language setting, and IP address," which creates a "browser fingerprint" associated with that particular user. Id. ¶¶ 115-16. As a user's browser fingerprint develops over time, the Providers can identify the user linked to a browser fingerprint from only "a single piece of identifying information." Id. ¶ 116.

[1] For purposes of resolving Defendants' Motion to Dismiss, the Court takes as true all material factual allegations in the FAC. See Warth v. Seldin, 422 U.S. 490, 501 (1975); Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008).

Defendants installed Providers' tracking pixels on the Platform, including the Kids' Section, and "purposely configured" the tracking pixels to collect and transmit more than the default amount of data,[2] "including information specifically identifying the videos that the users watch." Id. ¶ 127; see also id. ¶¶ 124-25. Defendants did not provide a "disclaimer or warning that the [data] would be disclosed to any unauthorized third party without express parental consent." Id. ¶ 136. To the contrary, Defendants' "Children's Privacy Policy" stated they "will obtain parental consent prior to the collection of [children's] Personal Information." Id. ¶ 129; accord Dkt. 53-4, Ex. J, Children's Privacy Policy at 50 ("If we allow children to create an account or otherwise engage with us over time, we will obtain parental consent prior to the collection of their Personal Information.").

**2. The Use of the Collected Data**

The tracking software transmitted extensive data about Minor Plaintiffs' use of the Platform to the Providers, including the title and URL of videos watched from the Kids' Section, the identifier numbers attached to the cookies, and information "commonly used to create a browser footprint." FAC ¶ 124; see also id. ¶¶ 121-27. Providers then compiled information about Minor Plaintiffs' "media preferences and educational attainment" into "ever-growing advertising profile[s] specific to the individual[s]." Id. ¶ 12. These profiles are maintained by the Providers indefinitely, see id. (describing profiles as "ever-growing"), can be accessed by any of the Providers' clients, and are used to stream advertisements tailored to individuals' "demography, interests, goals, and anxieties" to their web browsers and devices. Id.; see also id. ¶ 87. Thus, by installing the tracking software, Defendants "knowingly and intentionally" caused information about Minor Plaintiffs to be transmitted to third parties and monetized "through the creation of advertising profiles and targeted advertising." Id. ¶ 128.

These profiles were used to stream advertisements to Minor Plaintiffs on the Platform. Id. ¶ 12. Some advertisements depicted sexual content and adult relationships, id. ¶¶ 26, 35, promoted nicotine products, fast food, and toys, id. ¶¶ 51-52, and recommended more content to watch on the Platform, id. ¶ 34. As a result of exposure to these advertisements, Minor Plaintiffs began using inappropriate language, id. ¶ 28, increasing their screen time, id. ¶ 34, "talk[ing] back" to their parents because they wanted to watch TV rather than complete their homework, id. ¶ 36, and requesting their parents purchase fast food and toys featured in repetitive ads, id. ¶ 51. Due to the inappropriate ads on the platform, negative changes in behavior, and increased screen time, some Plaintiffs deleted the Platform from Minor Plaintiffs' devices. Id. ¶¶ 29, 37, 53.

As a result of Defendants' conduct, Plaintiffs suffered invasions of privacy, lack of trust in communicating with online service providers, emotional distress, heightened stress, fear, and anxiety, risk of future invasions of privacy, loss of benefit of the bargain, diminution of value of the data, and statutory damages. Id. ¶¶ 19, 228. Plaintiffs characterize Defendants' actions as "an intentional intrusion on . . . solitude or seclusion," id. ¶ 184, and represent they "would not have used Defendants' services had they known their [data] would be disclosed," id. ¶ 256.

/ / /

/ / /

[2] The tracking pixels collect only "automatic events" in their default state, consisting of routine user behavior like viewing a webpage or clicking a link or advertisement. FAC ¶ 127.

## B. PROCEDURAL HISTORY

Plaintiffs filed the operative First Amended Complaint on May 5, 2026. FAC. The First Amended Complaint raises the following causes of action:

1. **Cause of Action One:** Violation of VPPA;
2. **Cause of Action Two:** Common Law Invasion of Privacy;
3. **Cause of Action Three:** Violation of ECPA;
4. **Cause of Action Four:** Invasion of Privacy under California Constitution Article I, Section 1;
5. **Cause of Action Five:** Violation of CIPA;
6. **Cause of Action Six:** Negligence;
7. **Cause of Action Seven:** Breach of Implied Contract; and
8. **Cause of Action Eight:** Unjust Enrichment.

Id. ¶¶ 173-268.

On June 18, 2026, Defendants filed the instant Motion, arguing Plaintiffs lack standing and fail to state a claim with respect to all causes of action.[3] Mot. In support of the Motion,[4] Defendants include a declaration from counsel, Dkt. 53-1, Declaration of Blake J. Steinberg ("Steinberg Decl."), excerpts of Defendants' Platform interface, Defendants' Terms of Use, Privacy Policy, and Minors' Privacy Policy, and an email from Plaintiffs' counsel confirming Plaintiffs' account information, id. ¶¶ 4-10, Exs. A-G. Defendants further include a declaration from Pluto's senior vice president, Dkt. 53-3, Declaration of Tad Ro ("Ro Decl."), along with previous versions of the same policies, id. ¶¶ 4-5, Exs. H-J.

On July 17, 2026, Plaintiffs filed an Opposition to the Motion. Dkt. 55, Opposition ("Opp.").

On August 7, 2026, Defendants filed a Reply. Dkt. 56, Reply.

---

[3] Defendants also argue the Terms of Use and Privacy Policy bar Plaintiffs' claims, Paramount Skydance Corporation is not a proper defendant, and Plaintiffs waived their right to bring class claims. Mot. The Court declines to address these arguments at this time.

[4] A court may take judicial notice of documents extrinsic to the complaint if no party contests their authenticity and the complaint "necessarily relies" upon the documents, Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998), superseded by statute on other grounds as recognized in Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 681 (9th Cir. 2006), or if the documents are matters of public record, Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001), overruled in part on other grounds as recognized in Gallardo v. DiCarlo, 203 F. Supp. 2d 1160, 1162 (C.D. Cal. 2002). Here, Defendants seek judicial notice of the exhibits setting forth the terms of use and privacy policies governing the Platform, as well as screenshots of the Platform and email correspondence between counsel. Dkt. 54, Request for Judicial Notice. Plaintiff does not oppose the Request for Judicial Notice. See generally Opp. As Plaintiff does not dispute the authenticity of these documents and the terms of the policies are "necessarily relie[d]" upon by Plaintiffs, Parrino, 146 F.3d at 7006, Defendants' Request is **GRANTED** as to the exhibit setting forth the Children's Privacy Policy, Ex. J. In all other respects, the request is **DENIED**. See Threshold Enters. Ltd. v. Pressed Juicery, 445 F. Supp. 3d 139, 146.

This matter, thus, stands submitted.

## III.
## LEGAL STANDARDS

### A. RULE 12(B)(1)

Federal Rule of Civil Procedure ("Rule") 12(b)(1) allows a party to move to dismiss a case for lack of subject matter jurisdiction. Plaintiffs invoking federal jurisdiction bear the burden of demonstrating Article III standing. TransUnion LLC v. Ramirez, 594 U.S. 413, 431-32 (2021). To establish Article III standing, Plaintiffs must show they have "suffered, or will suffer, an injury that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" Murthy v. Missouri, 603 U.S. 43, 57 (2024) (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013)). "In a class action, this standing inquiry focuses on the class representatives." NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc., 926 F.3d 528, 532 (9th Cir. 2019).

A party moving to dismiss a complaint under Rule 12(b)(1) may challenge jurisdiction "either on the face of the pleadings or by presenting extrinsic evidence." Warren v. Fox Fam. Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). When evaluating a facial challenge to the court's subject matter jurisdiction, the court must accept as true all factual allegations in the complaint. Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004).

### B. RULE 12(B)(6)

A complaint may be dismissed for failure to state a claim pursuant to Rule 12(b)(6) "only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). In considering whether a complaint states a claim, a court "construes the pleadings in the light most favorable to the nonmoving party," Capp v. County of San Diego, 940 F.3d 1046, 1052 (9th Cir. 2019) (citation omitted), accepting as true all factual allegations in the complaint and drawing all reasonable inferences in the nonmoving party's favor. Moreno v. UtiliQuest, LLC, 29 F.4th 567, 573 (9th Cir. 2022). The court, however, need not accept as true "a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (quoting Iqbal, 556 U.S. at 678). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

/ / /

/ / /

/ / /

## DISCUSSION

### A. PLAINTIFFS HAVE ARTICLE III STANDING TO BRING THEIR CLAIMS

#### 1. Applicable Law

"Article III of the Constitution limits the jurisdiction of federal courts to '[c]ases' and '[c]ontroversies.'" Murthy, 603 U.S. at 56. "A proper case or controversy exists only when at least one plaintiff establishes that [they] ha[ve] standing to sue." Id. at 57 (citation modified). To establish Article III standing, a plaintiff must show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." TransUnion, 594 U.S. at 423.

An injury is "concrete" if it has "a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." Id. at 424 (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 341 (2016), as revised (May 24, 2016)). Thus, a plaintiff must identify "a close historical or common-law analogue" to their alleged injury, albeit not "an exact duplicate." Id.; see also Popa v. Microsoft Corp., 153 F.4th 784, 791 (9th Cir. 2025) ("[Courts] look to the specific underlying harm experienced by the plaintiff and compare it, in detail, to a specific common-law tort."). A statutory violation, standing alone, cannot satisfy the injury-in-fact requirement, but a legislature's decision to grant a statutory cause of action to redress a harm that "exist[s] in the real world" is "instructive" in determining concreteness. TransUnion, 594 U.S. at 425-26 (citation modified). Physical, monetary, and constitutional harms "readily qualify as concrete" under Article III. Id. at 425. Intangible harms are concrete if they are "similar in kind" to traditionally recognized harms. Six v. IQ Data Int'l, Inc., 129 F.4th 630, 634 (9th Cir. 2025) (citation modified); cf. TransUnion, 594 U.S. at 425 (describing "reputational harms, disclosure of private information, and intrusion upon seclusion" as concrete).

#### 2. Analysis

Here, Plaintiffs sufficiently allege concrete injuries supporting Article III standing.

The FAC alleges the tracking software surreptitiously 1) collects information about specific videos watched and actions taken by Minor Plaintiffs on the Platform, 2) links that information to identifier numbers "associated with only one person," and 3) transmits it to third parties to create detailed, "ever-growing" advertising profiles associated with individual Plaintiffs, which are retained indefinitely and sold to advertisers. FAC ¶¶ 12, 111. Based on this conduct, Plaintiffs argue privacy-related injuries based on violations of their "right to control their personal information," Opp. at 18, specifically pointing to the "disclosure of personally identifiable video-viewing history" and the violation of the "heightened privacy right accorded to minors," id. at 16-17; see also FAC ¶¶ 224-25. Additionally, though "privacy torts do not always require additional consequences to be actionable," Eichenberger v. ESPN, Inc., 876 F.3d 979, 983 (9th Cir. 2017), Plaintiffs further allege the unauthorized disclosures of Minor Plaintiffs' information resulted in "targeted advertising" that negatively affected their children, FAC ¶ 128. For example, some advertisements allegedly encouraged Minor Plaintiffs to watch more television, increasing their screen time and the risk of associated educational and health ramifications. See id. ¶¶ 34, 36.

Plaintiffs analogize the harms they suffered to the torts of intrusion upon seclusion and disclosure of private information, which both require "highly offensive" interferences or disclosures. Popa, 153 F.4th at 791; cf. Campbell v. Facebook, Inc., 951 F.3d 1106, 1117-19 (9th Cir. 2020) (finding standing because the privacy-related harms CIPA and ECPA protect against are closely related to traditional bases for lawsuits). To determine whether an intrusion or disclosure is "highly offensive," courts examine the nature of the information and consider the "particular circumstances" giving rise to the privacy injury. Popa, 153 F.4th at 791. Here, the information disclosed includes a unique identifier linked with the specific user and the titles and URLs of videos that user watched –information the VPPA specifically protects from unauthorized disclosure because of its sensitive nature. See Mollett v. Netflix, Inc., 795 F.3d 1062, 1065 (9th Cir. 2015) (stating Congress enacted the VPPA to "preserve personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials" after the public disclosure of a judicial nominee's video rental history). Furthermore, the data was allegedly collected from children and shared without parental consent, contrary to the Privacy Policy and in violation of the Children's Online Privacy Protection Act ("COPPA"). FAC ¶¶ 69, 135-38, 209; cf. Shah v. MyFitnessPal, Inc., 824 F. Supp. 3d 906, 914 (N.D. Cal. 2026) (finding standing "because a misrepresentation about how information would be used and the non-consensual sharing of personal information could give rise to injuries that were actionable invasions of privacy at common law"). The motivations underlying the enactment of the VPPA and COPPA demonstrate a reasonable person could find Defendants' alleged conduct highly offensive. Cf. TransUnion, 594 U.S. at 425-26 (describing legislature's role in elevating status of concrete harms). Indeed, one plaintiff alleges "Defendants violated her trust as both a parent and a consumer," FAC ¶ 54, while others allege emotional distress and anxiety about the risk of future invasions of privacy, id. ¶ 228.

The Court therefore finds that, at this stage of litigation, Plaintiffs have adequately pled an injury-in-fact for the purposes of Article III standing.[5] Accordingly, Defendants' Motion to Dismiss for lack of Article III standing is **DENIED**.

## B. PLAINTIFFS STATE PLAUSIBLE CLAIMS FOR RELIEF IN CAUSES OF ACTION ONE, TWO, THREE, FOUR, FIVE, SIX, AND EIGHT

### 1. Cause of Action One: VPPA Claim

#### a. Applicable Law

To state a claim under the VPPA, Plaintiffs must allege (1) Defendants are "video tape service provider[s]," (2) Defendants disclosed PII about a consumer to any person or entity, (3) "the disclosure was made knowingly," and (4) the disclosure was not authorized by 18 U.S.C. § 2710(b)(2). Mollett, 795 F.3d at 1066.

[5] Defendants also dispute the traceability of Defendants' alleged conduct to Plaintiffs' alleged injuries. See Mot. at 18-19. However, the Court declines to consider this argument because "such a factual dispute is intertwined with the merits" of Plaintiffs' claims, such that it is improper to resolve at this stage of the litigation. See Cheung v. Slickdeals, LLC, No. CV 26-00519-CAS-MBKx, 2026 WL 1872831, at *10 (C.D. Cal. June 29, 2026).

### b. Analysis

Here, the FAC states a claim under the VPPA.[6] Plaintiffs allege "when Minor Plaintiffs watched videos on the Platform, Defendants informed [Providers] of the videos Minor Plaintiffs viewed and identified Minor Plaintiffs as the ones who viewed those videos using [Providers'] identifiers for Minor Plaintiffs' . . . accounts." Opp. at 21; see also FAC ¶¶ 109-12, 124-127. As minor children who accessed the Platform on registered family devices, Minor Plaintiffs have the requisite "factual nexus or relationship between the subscription provided by [Defendants] and [Defendants'] allegedly actionable video content" to qualify as "consumers" under the statute. D.B. v. Bellesa Enters. US, Inc., No. CV 25-05099-JAK-MARx, 2026 WL 2058427, at *6 (C.D. Cal. July 14, 2026) (citation modified); see also 18 U.S.C. § 2710(a)(1) (defining "consumer" as a "subscriber" of video services). Thus, the knowing disclosure of their viewing history violates VPPA if the information "would readily permit an ordinary person to identify a specific individual's video-watching behavior." Eichenberger, 876 F.3d at 985 (citation modified).

"Considering how code is the primary communication medium for data sharing technologies and a growing proportion of the public has the technological fluency to discern information from lines of code, particularly with the advent of artificial intelligence tools," it is plausible that an ordinary person could identify Minor Plaintiffs based on the information Defendants shared using Providers' technology. Garcia v. Bandai Namco Ent. Am. Inc., No. SACV 25-00967-DOC-PVCx, 2025 WL 2451033, at *8 (C.D. Cal. Aug. 7, 2025). In any event, whether an ordinary person could identify the videos Plaintiffs watched from the information Defendants shared is a fact-intensive inquiry "ill-suited for resolution on a motion to dismiss." In re Vizio, Inc., Consumer Priv. Litig., 238 F. Supp. 3d 1204, 1225-26 (C.D. Cal. 2017). Defendants have not shown as a matter of law that the disclosures did not contain PII; therefore, the Court finds Plaintiffs have plausibly alleged the collection of information Defendants disclosed was PII. See Cheung, 2026 WL 1872831 at *13 (finding PII where defendant disclosed plaintiff's video game purchase activity and personally identifiable device identifiers to tracking entities). Additionally, because Plaintiffs allege Defendants installed tracking pixels in the Kids' Section, FAC ¶¶ 124-25, and "purposely configured" them to collect and transmit more than the default amount of data, "including information specifically identifying the videos that the users watch," id. ¶ 127, Plaintiffs have plausibly alleged the disclosure was made "knowingly and intentionally," id. ¶ 128; see also Cole v. LinkedIn Corp., 807 F. Supp. 3d 959, 968-69 (N.D. Cal. 2025) (denying motion to dismiss where plaintiff alleged defendant knowingly installed and configured a tracking pixel to convey PII to third parties).

Accordingly, Defendants' Motion to Dismiss Cause of Action One is **DENIED**.

### 2. Causes of Action Two and Four: Privacy Claims Under Common Law and California Constitution

### a. Applicable Law

To state a claim for common law intrusion upon seclusion, a plaintiff must allege "(1) a defendant 'intentionally intruded into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy,' and (2) the intrusion 'occurred in a manner highly offensive to a reasonable

[6] The parties do not appear to contest the first or fourth elements of this claim. Therefore, the Court will only address the second and third elements.

person.'" In re Facebook, Inc. Internet Tracking Litig., 956 F.3d 589, 601 (9th Cir. 2020) (citation modified) (quoting Hernandez v. Hillsides, Inc., 47 Cal. 4th 272, 286 (2009)). Similarly, to state a claim for disclosure of private facts, a plaintiff must show the disclosure "would be offensive and objectionable to the reasonable person" and "not of legitimate public concern." Shah, 824 F. Supp. 3d at 914 (quoting Taus v. Loftus, 40 Cal. 4th 683, 717 (2007)). A claim for invasion of privacy under the California Constitution involves nearly identical elements. See Garcia v. Truist Fin. Corp., 825 F. Supp. 3d 1149, 1169 (C.D. Cal. 2026).

Courts evaluating whether plaintiffs have stated claims for invasion of privacy under common law and the California Constitution "consider the claims together and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." In re Facebook, 956 F.3d at 601 (citing Hernandez, 47 Cal. 4th at 287). To determine whether a reasonable expectation of privacy exists, "courts consider a variety of factors, including the customs, practices, and circumstances surrounding a defendant's particular activities." Id. at 602. If a reasonable expectation of privacy exists and was invaded, courts determine whether that invasion is "highly offensive" by considering "the degree and setting of the intrusion," as well as "the intruder's motives and objectives." Hernandez, 47 Cal. 4th at 287.

**b. Analysis**

Here, the FAC states plausible invasion-of-privacy claims under common law and the California Constitution.

First, it is plausible Plaintiffs would "reasonably expect" Minor Plaintiffs' data not be shared with third parties without their consent because Defendants represent the same in their Children's Privacy Policy. See Children's Privacy Policy at 50 ("If we allow children to create an account or otherwise engage with us over time, we will obtain parental consent prior to the collection of their Personal Information."). Plaintiffs additionally allege "Americans are particularly sensitive about protecting the privacy of children," citing reports showing 80% of parents with minor children "worry[] about their child's privacy when using online apps," and 93% of parents support requiring websites to "ask parents' permission before they collect personal information from children under age 13." FAC at ¶ 149. Given the language in Defendants' policy and the documented concerns about protecting children's browsing data from nonconsensual collection, the Court finds Plaintiffs have adequately alleged a reasonable expectation of privacy.

Second, and for the same reasons, it is plausible the alleged invasion would be "highly offensive" to a reasonable person. See In re Facebook, 956 F.3d at 606 ("[T]he highly offensive analysis focuses on the degree to which the intrusion is unacceptable as a matter of public policy."); In re Vizio, 238 F. Supp. 3d at 1233 (finding an intrusion highly offensive considering the "quantum and nature of the information collected" and "the purported failure to respect consumers' privacy choices"). Plaintiffs allege Minor Plaintiffs' personal information was collected and shared without consent to create "ever-growing advertising profile[s]," FAC ¶ 12, accessible to any of Providers' current clientele, id. ¶ 87. Because this is not an "insubstantial impact on privacy interests," Hill v. NCAA, 7 Cal. 4th 1, 40 (1994), the Court finds Plaintiffs have adequately alleged a "highly offensive" invasion of privacy, In re Facebook, 956 F.3d at 601.

Accordingly, Defendants' Motion to Dismiss Causes of Action Two and Four is **DENIED**.

### 3. Causes of Action Three and Five: Wiretapping Claims Under ECPA and CIPA

#### a. Applicable Law

The ECPA provides a private right of action against any person or entity who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a); see also id. § 2520 (authorizing civil damages). "[T]he consent of one party is a complete defense to liability," Brown v. Google LLC, 685 F. Supp. 3d 909, 933 (N.D. Cal. 2023), unless the "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State," 18 U.S.C. § 2511(d). The CIPA, California's equivalent state law, similarly provides a private right of action where a person uses "electronic means to 'learn the contents or meaning' of any 'communication' 'without consent' or in an 'unauthorized manner,'" and contains a one-party consent exemption. In re Facebook, 956 F.3d at 607 (quoting Cal. Penal Code § 631(a)); see also Cal. Penal Code § 637.2(a). The statute further provides relief where a defendant "aids" another in violating CIPA. Cal. Penal Code § 631(a).

"The analysis for a violation of CIPA is the same as that under the federal Wiretap Act." Hammerling v. Google LLC, 615 F. Supp. 3d 1069, 1092 (N.D. Cal. 2022) (citation omitted); see also In re Facebook, 956 F.3d at 607 ("Courts perform the same analysis for both the Wiretap Act and CIPA regarding the party exemption."). Therefore, to state a claim under the ECPA and CIPA, a "plaintiff must allege that [a] defendant (1) intentionally (2) intercepted (or procured another to intercept) (3) the contents of (4) plaintiff's electronic communications (5) using a device." Cheung, 2026 WL 1872831, at *14 (citation modified). If a defendant was a party to the communications at issue, a plaintiff must further allege "the interception occurred for the purpose of committing [a] criminal or tortious act . . . separate and independent from the act of the recording." Id. (citation modified).

#### b. Analysis

As an initial matter, Plaintiffs do not dispute Defendants were a party to the communications at hand, so their claims survive only if the crime-tort exception applies. See Reply at 14-16, 18; Dellasala v. Samba TV, Inc., No. 3:25-CV-03470-JSC, 2026 WL 1138358, at *9 (N.D. Cal. Apr. 21, 2026). Plaintiffs argue the crime-tort exception applies because "Defendants knowingly intercepted their communications to share their [s]ensitive [i]nformation with unauthorized third parties in violation of COPPA, VPPA, and Minor Plaintiffs' common law privacy rights." Opp. at 27; see also FAC ¶ 206. The Court agrees. Because the Court has found Plaintiffs adequately allege invasion-of-privacy claims, the FAC sufficiently pleads Defendants' independent tortious intent and satisfies the crime-tort exception. See Dellasala, 2026 WL 1138358 at *10; R.C. v. Walgreen Co., 733 F. Supp. 3d 876, 901 (C.D. Cal. 2024) ("[E]ven where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that the defendant's conduct violated state law, including state law privacy claims."); Brown v. Google LLC, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) ("[T]he association of Plaintiffs' data with preexisting user profiles is a further use of Plaintiffs' data that satisfies this exception.").

The Court also finds Plaintiffs sufficiently plead factual allegations supporting their ECPA and CIPA claims.[7]

First, Plaintiffs allege Defendants intentionally installed tracking software in the Kids' Section of the Platform and specifically configured it to capture Minor Plaintiffs' video-watching history. See FAC ¶¶ 121-28. These allegations, taken as true and viewed in the light most favorable to Plaintiffs, demonstrate Defendants "acted consciously and deliberately with the goal of intercepting wire communications." United States v. Christensen, 828 F.3d 763, 775 (9th Cir. 2015). Therefore, Plaintiffs adequately plead the intent requirements of the statutes. See R.C., 733 F. Supp. 3d at 902.

Second, Plaintiffs allege Defendants' transmissions of Minor Plaintiffs' PII occur contemporaneously as the Minor Plaintiffs navigate the Platform and their communications with the Platform are "replicated and sent in parallel to the tracking entities." Opp. at 29 (quoting Heerde v. Learfield Commc'ns, LLC, 741 F. Supp. 3d 849, 862 (C.D. Cal. 2024)); see also FAC ¶¶ 11, 126, 130, 208. Plaintiffs' factual allegations about the "method" and "nature" of the data transmitted to Providers "while" a user watches a video from the Kids' Section of the Platform plausibly alleges their communications were intercepted while in transit. See FAC ¶¶ 122-28; Heiting v. Taro Pharms. USA, Inc., 728 F. Supp. 3d 1112, 1126 (C.D. Cal. 2024) ("To plausibly allege that Plaintiff's communications were intercepted while in transit, factual allegations regarding the method, or nature, of interception are required.").

Third, Plaintiffs allege the interception of their identifiable information and the titles and URLs of specific videos they watched. See FAC ¶¶ 124-27. This information is protected "content" if it concerns the substance, purpose, or meaning of a communication, as opposed to "the characteristics of the message that is generated in the course of the communication." In re Zynga Priv. Litig., 750 F.3d 1098, 1106 (9th Cir. 2014). Because the data allegedly collected and disclosed includes the titles of videos Minor Plaintiffs watched, Plaintiffs have adequately alleged contents at this stage. See R.C., 733 F. Supp. 3d at 902 (denying motion to dismiss where information disclosed "substantive message" about plaintiffs' "personal interests, queries, and habits").

Accordingly, Defendants' Motion to Dismiss Cause of Action Three and Five is **DENIED**.

### 4. Cause of Action Six: Negligence

#### a. Applicable Law

To state a negligence claim, Plaintiffs must allege (1) the existence of a legal duty; (2) breach of that duty; (3) causation; and (4) a cognizable injury. Ladd v. County of San Mateo, 12 Cal.4th 913, 917 (1996).[8]

/ / /

/ / /

[7] The parties do not appear to dispute the fourth and fifth elements of the claims at hand. See generally Mot.; Opp.; Reply.

[8] Defendants only contest the first and fourth elements. See generally Mot.; Reply.

**b. Analysis**

As an initial matter, Plaintiffs plausibly allege by collecting and storing Plaintiffs' information, "Defendants had a duty of care to use reasonable means to secure and safeguard it from unauthorized disclosure to third parties." FAC ¶ 243. See, e.g., In re Meta Android Priv. Litig., 833 F. Supp. 3d 1010, 1030 (N.D. Cal. 2026) (explaining courts often find duty of care "between companies that obtain sensitive information and the individuals who provided that data"). Second, Plaintiffs plausibly allege Defendants breached that duty because they failed to take steps to protect Minor Plaintiffs' data from being disclosed to third parties without parental consent and did not inform Plaintiffs of the use and transmission of the data. FAC ¶¶ 244-45. Third, Plaintiffs plausibly allege Defendants' conduct in accessing, storing, and disseminating Minor Plaintiffs' data caused them to suffer cognizable injuries. Id. ¶¶ 19, 247; see also In re Meta, 833 F. Supp. 3d at 1031-32 ("Causation is a question of fact which cannot be decided as a matter of law from the allegations of a complaint unless the only reasonable conclusion is an absence of causation." (citation modified)). Finally, Plaintiffs allege they suffered "present and non-speculative privacy injuries," In re Facebook, Inc., Consumer Priv. User Profile Litig., 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019); see also FAC ¶¶ 18-19, 68-69, which, at this stage of the litigation, are enough to survive a motion to dismiss, see In re Ambry Genetics Data Breach Litig., 567 F. Supp. 3d 1130, 1142 (C.D. Cal. 2021) (denying motion to dismiss negligence claim where plaintiffs alleged privacy injuries, anxiety, concern, and unease); Landon v. TSC Acquisition Corp., No. CV 23-01377-SVW-PDx, 2024 WL 5317240, at *5-6 (C.D. Cal. Nov. 1, 2024) (same).

Accordingly, Defendants' Motion to Dismiss is **DENIED** as to Cause of Action Six.

**5. Cause of Action Seven: Breach of Implied Contract**

**a. Applicable Law**

To state a claim for breach of implied contract, a plaintiff must show "the same elements necessary to evidence an express contract: mutual assent or offer and acceptance, consideration, legal capacity and lawful subject matter." B.K. v. Eisenhower Med. Ctr., 721 F. Supp. 3d 1056, 1067 (C.D. Cal. 2024) (citation modified), reconsidered in part, No. EDCV 23-02092-JGB-DTBx, 2024 WL 2037404 (C.D. Cal. Apr. 11, 2024). "An implied contract requires that both parties agree to its terms and have a 'meeting of the minds,' but the creation of an implied contract can be manifested by conduct rather than words." Id. (quoting Castillo v. Seagate Tech., LLC, No. 16-CV-01958-RS, 2016 WL 9280242, at *8 (N.D. Cal. Sept. 14, 2016)). Plaintiffs must show "appreciable and actual damage," not merely "nominal damages, speculative harm, or the threat of future harm." Aguilera v. Pirelli Armstrong Tire Corp., 223 F.3d 1010, 1015 (9th Cir. 2000) (citation modified) (declining to recognize "fear of future layoff" as an actionable injury in contract).

**b. Analysis**

Plaintiffs allege they exchanged information for Defendants' services with the understanding "Defendants would safeguard the information and not disclose it without consent." Opp. at 33; see also FAC ¶¶ 251-53. They argue this breach caused "numerous injuries, including invasion of privacy, emotional distress, loss of trust in online services, loss of the benefit of the bargain, statutory damages, and diminution in value" of their information. Opp. at 34. However, Plaintiffs have not pled a cognizable theory of contract damages because they fail to allege "appreciable and

actual" damages that would put them "in the same economic position [they] would have occupied had the contract been fully performed." B.K., 721 F. Supp. 3d at 1067-68 (citation modified); see also id. at 1068 (rejecting loss-of-value claim where plaintiffs did not "persuasively allege[] that they reasonably expected that they would be compensated for the value of their personal information" (citation modified)).

Accordingly, Defendants' Motion to Dismiss is **GRANTED** as to Cause of Action Seven.

**6. Cause of Action Eight: Unjust Enrichment**

**a. Applicable Law**

To state a claim for unjust enrichment, a plaintiff must allege "the defendant received and unjustly retained a benefit at the plaintiff's expense," and "the benefits were conferred by mistake, fraud, coercion or request." Cheung, 2026 WL 1872831, at *15 (citation modified); cf. ESG Cap. Partners, LP v. Stratos, 828 F.3d 1023, 1038 (9th Cir. 2016) (recognizing availability of unjust enrichment claim through quasi-contract, while acknowledging "California case law appears unsettled").

**b. Analysis**

Here, Plaintiffs allege they conferred the benefit of the value of Minor Plaintiffs' data by mistake. See FAC ¶¶ 260-65 (alleging Minor Plaintiffs' data had "inherent" value and Defendants exchanged it for valuable marketing and advertising services, the data was collected without Plaintiffs' consent, and Plaintiffs would not have provided data had they known Minor Plaintiffs' data would not be secure). These allegations are sufficient at this stage to plead an unjust enrichment claim in the alternative to Plaintiffs' breach of implied contract claim. See R.C., 733 F. Supp. 3d at 900 (denying motion to dismiss where "Plaintiffs allege their data has financial value and Defendant received a financial benefit from disclosing their data without Plaintiffs' consent" by way of enhancing advertising services and utilizing cost-effective marketing to increase profits).

Accordingly, Defendants' Motion to Dismiss is **DENIED** as to Cause of Action Eight.

## C. PLAINTIFF IS GRANTED LEAVE TO AMEND

**1. Applicable Law**

Leave to amend should be "freely given." Foman v. Davis, 371 U.S. 178, 182 (1962); see also Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Nevertheless, a court may deny leave to amend where amendment "would prejudice the opposing party, produce an undue delay in the litigation, or result in futility for lack of merit." Jackson v. Bank of Haw., 902 F.2d 1385, 1387 (9th Cir. 1990). Amendment would be futile where "allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010) (quoting Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986)).

/ / /

/ / /

**2. Analysis**

Here, the Court cannot conclude amendment would be futile because it is possible the "allegation of other facts consistent with the challenged pleading could . . . cure the deficiency." Schreiber, 806 F.2d at 1401. In addition, leave to amend would not prejudice Defendant or produce undue delay. Accordingly, Cause of Action Seven is **DISMISSED WITH LEAVE TO AMEND**.

## V.
## CONCLUSION

For the reasons set forth above, the Motion is **DENIED** with respect to Causes of Action One, Two, Three, Four, Five, Six, and Eight and **GRANTED** with respect to Cause of Action Seven.

**No later than fourteen (14) days from the date of this Order**, Plaintiffs shall file either (1) a Second Amended Complaint or (2) a statement indicating their intent to proceed on the surviving causes of action in the FAC. If Plaintiffs choose to file an amended complaint, Plaintiffs shall lodge as an exhibit a redlined version of the amended pleading indicating all additions and deletions of material. **Plaintiffs are expressly warned failure to file a Second Amended Complaint or a statement of intent will result in this action being dismissed for failure to prosecute and comply with Court orders**. See Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED**.